UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE FIELDTURF ARTIFICIAL TURF
MARKETING AND SALES PRACTICES
LITIGATION

Civil Action No. 17-md-02779 MAS TJB

**CONSOLIDATED AMENDED
<u>CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION .................................................................................................1

II.     PARTIES .............................................................................................................7

        A.      Plaintiffs..................................................................................................7

        B.      Defendants ...........................................................................................13

III.    JURISDICTION AND VENUE .......................................................................15

IV.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS........................16

        A.      The Artificial Turf Industry ................................................................16

        B.      FieldTurf's Artificial Turf Products....................................................17

        C.      FieldTurf's Development and Launch of the Duraspine Turf Fields ...................18

        D.      FieldTurf Represented That Duraspine Turf Was a "Breakthrough" Product With "Unmatched" Endurance and a Life Span of More Than Ten Years. ...................19

        E.      FieldTurf's Marketing Succeeded in Inducing Consumers to Buy Duraspine Turf at Premium Prices. ...................27

        F.      FieldTurf Also Warrantied the Duraspine Turf Fields. ......................30

        G.      FieldTurf Knew Duraspine Turf Was Not What FieldTurf Represented .............31

        H.      FieldTurf's "Finger-Coating" Method Did Not Adequately Secure the Fiber to the Backing ...................39

        I.      FieldTurf Also Deceived Consumers About Infill and Safety Testing.................41

        J.      As Customer Complaints About Duraspine Mounted, FieldTurf Denied Its Knowledge of the Problem. ...................43

        K.      FieldTurf Sued TenCate and Specifically Claimed That Duraspine Fiber Was "Defective" and "Inferior"...................52

        L.      The 2016 Exposé by NJ Advance Media Begins to Reveal the Truth.................54

        M.      FieldTurf's Fraud and Deception Was Comprehensive, Widespread, and Intentionally Concealed From the Public ...................55

V.      CLASS ALLEGATIONS ....................................................................................57

VI.     TOLLING OF STATUTE OF LIMITIONS .....................................................65

        A.      Discovery Rule.......................................................................................65

        B.      Fraudulent Concealment ........................................................................69

        C.      Estoppel..................................................................................................70

VII.    CAUSES OF ACTION .......................................................................................71

        A.      Claims Brought on Behalf of the Nationwide Class (or, in the alternative, each
                State Class)..............................................................................................71

        B.      Claims Brought on Behalf of the Alabama Class. ..................................81

        C.      Claims Brought on Behalf of the Alaska Class. .....................................85

        D.      Claims Brought on Behalf of the Arizona Class.....................................90

        E.      Claims Brought on Behalf of the Arkansas Class...................................95

        F.      Claims Brought on Behalf of the California Class. ...............................101

        G.      Claims Brought on Behalf of the Colorado Class.................................106

        H.      Claims Brought on Behalf of the Connecticut Class. ...........................111

        I.      Claims Brought on Behalf of the Delaware Class. ................................116

        J.      Claims Brought on Behalf of the District of Columbia Class. ............123

        K.      Claims Brought on Behalf of the Florida Class. ...................................129

        L.      Claims Brought on Behalf of the Georgia Class....................................134

        M.      Claims Brought on Behalf of the Idaho Class. ....................................141

        N.      Claims Brought on Behalf of the Illinois Class. ..................................146

        O.      Claims Brought on Behalf of the Indiana Class....................................151

        P.      Claims Brought on Behalf of the Iowa Class........................................157

        Q.      Claims Brought on Behalf of the Kansas Class. ...................................160

        R.      Claims Brought on Behalf of the Kentucky Class. ..............................163

S.      Claims Brought on Behalf of the Louisiana Class.................................................169

T.      Claims Brought on Behalf of the Maine Class. ...................................................173

U.      Claims Brought on Behalf of the Maryland Class.................................................179

V.      Claims Brought on Behalf of the Massachusetts Class. ......................................184

W.      Claims Brought on Behalf of the Michigan Class.................................................190

X.      Claims Brought on Behalf of the Minnesota Class...............................................195

Y.      Claims Brought on Behalf of the Missouri Class. ................................................202

Z.      Claims Brought on Behalf of the Montana Class. ................................................207

AA.     Claims Brought on Behalf of the Nebraska Class. ...............................................212

BB.     Claims Brought on Behalf of the Nevada Class. ..................................................217

CC.     Claims Brought on Behalf of the New Hampshire Class. ....................................222

DD.     Claims Brought on Behalf of the New Jersey Class.............................................227

EE.     Claims Brought on Behalf of the New Mexico Class...........................................233

FF.     Claims Brought on Behalf of the New York Class...............................................238

GG.     Claims Brought on Behalf of the North Carolina Class. .....................................244

HH.     Claims Brought on Behalf of the Ohio Class.......................................................249

II.     Claims Brought on Behalf of the Oklahoma Class..............................................252

JJ.     Claims Brought on Behalf of the Oregon Class...................................................258

KK.     Claims Brought on Behalf of the Pennsylvania Class. ........................................263

LL.     Claims Brought on Behalf of the Rhode Island Class. ........................................268

MM.     Claims Brought on Behalf of the South Carolina Class. ......................................274

NN.     Claims Brought on Behalf of the South Dakota Class.........................................279

OO.     Claims Brought on Behalf of the Tennessee Class...............................................284

PP.     Claims Brought on Behalf of the Texas Class. ....................................................290

QQ.     Claims Brought on Behalf of the Utah Class. ........................................................296

RR.     Claims Brought on Behalf of the Vermont Class. ................................................302

SS.     Claims Brought on Behalf of the Virginia Class. ................................................307

TT.     Claims Brought on Behalf of the Washington Class. ..........................................313

UU.     Claims Brought on Behalf of the West Virginia Class. .......................................318

VV.     Claims Brought on Behalf of the Wisconsin Class. .............................................325

Plaintiffs Borough of Carteret, City of Fremont, County of Hudson, Levittown Union Free School District, Township of Medford, Neshannock Township School District, State-operated School District of the City of Newark, and Santa Ynez Valley Union High School District, on behalf of themselves and all others similarly situated, file this Consolidated Amended Class Action Complaint against FieldTurf USA, Inc. (FieldTurf USA), FieldTurf Inc. (FieldTurf Inc.), FieldTurf Tarkett SAS (FieldTurf SAS), and Tarkett Inc. (as successor to FieldTurf Tarkett, Inc.) (collectively, FieldTurf or Defendants).[1]

## I.     INTRODUCTION

1.      This case concerns FieldTurf's campaign to foist defective artificial turf fields on schools, municipalities, businesses, and other consumers throughout the United States. Consumers paid FieldTurf more than a half a billion dollars for fields FieldTurf touted as premium products using "breakthrough" technology that featured "unmatched" endurance and a ten-year plus lifespan.  FieldTurf's representations were lies.

2.      The fields were inherently and materially defective.  The fiber FieldTurf used to make the artificial grass was made from inferior ingredients, lacked necessary chemical components, had an improper design that could not withstand forced bending and compression, and performed poorly in multiple pre-manufacture tests for overall durability.  In addition, FieldTurf used a "tuft binding" method that failed to sufficiently secure the grass to the backing, such that the grass would shed and shear-off in normal, expected use.  And FieldTurf instructed installers to use insufficient amounts of infill (artificial soil), exacerbating the defects in the product's composition and design.

---

[1] The individual class representatives and putative class members do not waive any right to appeal from any final decision on their individual claims.

3.      In short, from the moment a field was installed, it was an inferior, defective product that, by design and composition, did not have the qualities, properties, and lifespan FieldTurf continuously represented in its sales and marketing materials and pitches.  These fields were neither designed nor engineered to be used for the ordinary, expected purpose as outdoor, year-round fields.  Above all, the fields did not have the built-in resistance to wear and UV radiation, a "breakthrough" fiber that would spring back upright after compression, or sufficient "tuft" adhesion that FieldTurf promised, let alone enough for the fields to have a useful lifespan of more than ten years—a key driver in FieldTurf's sales and marketing tactics.

4.      These inherent defects in materials, composition, design, and engineering also led to premature degradation, with grass shedding, shearing off, matting, and disintegrating within the first few years of use.

5.      FieldTurf knew all this when it marketed, sold, and installed the fields.  Yet, FieldTurf hid its lies and ignored its promises as it lined its pockets.  This lawsuit seeks restitution and compensation for the customers FieldTurf bilked.

6.      From 2005 to 2012, FieldTurf marketed a high-end artificial turf field product manufactured using a monofilament fiber supplied by Mattex and Tencate (defined below). FieldTurf sold the turf under various names, including "Duraspine," "Duraspine Pro," and "Prestige XM" (collectively, "Duraspine Turf").  With sweeping, deceptive, and misleading statements, FieldTurf induced municipalities, school districts, athletic organizations, businesses, and other consumers into buying Duraspine Turf fields.  FieldTurf sold at least 1,450 Duraspine Turf fields in nearly all 50 states and the District of Columbia.  FieldTurf charged a premium price for its Duraspine Turf fields and took in at least $570 million in revenue on sales—much of which came from taxpayers.

7.    Marketed as a "breakthrough in technology," and the best that money could buy, FieldTurf represented that Duraspine Turf's "monofilament"-based system had "unmatched durability" and "unmatched memory" that would provide improved wear and UV resistance, prevent matting, and more closely mimic a natural grass surface than existing turf products. Nationwide, centrally-administrered marketing campaigns drove home the key message that Duraspine Turf was made of proven, high-quality, durable materials and had a lifespan of more than 10 years—and would last nearly _twice_ along as FieldTurf's existing synthetic surface, slit film.  FieldTurf assured customers its representations were "fact," supported by testing, and not mere "marketing spin."

8.    The only fact, however, was that FieldTurf was lying.  Rather than having a robust, revolutionary chemical composition and durable design, the Duraspine Turf fields were made from cheap, inferior plastics that lacked required UV protection, with grass fibers that "fibrillated" (i.e., shredded), fell over and/or came loose during routine use due to their design and FieldTurf's manufacturing process.  The fields did not have the lifespan Defendants represented, but instead were chemically and physically degrading prematurely, matting like carpet, shedding fiber onto players and students, and deteriorating with ordinary, expected use. As one New Jersey high school football coach remarked, "You grab it and it rips."

9.    FieldTurf knew from the outset that Duraspine Turf was defective, not fit for its ordinary and expected use, and nowhere close to the premium product FieldTurf represented to the public as having a 10+ years lifespan.  When FieldTurf marketed, sold, and installed the Duraspine Turf fields, it knew the turf's composition and design lacked durability and resistance to wear and UV, causing the turf to deteriorate prematurely, wilt, break, and shear off.  Within the first year of selling the fields, FieldTurf was aware that fields were degrading prematurely.

In the words of a FieldTurf executive, given the known weakness of the product, the company's "claims made regarding the Duraspine … are ridiculous.  Every day we are putting stuff out there that can't and won't live up to the marketing spin."

10.     Nevertheless, FieldTurf did not pull the product and did not change its "marketing spin."  Despite clear evidence that Duraspine Turf was totally defective when it was installed and not what FieldTurf represented to the market, FieldTurf aggressively marketed and sold the product continuously from 2005 to 2012 to consumers throughout the United States.

11.     Even when alarms were going off internally at FieldTurf due to its belief that it was facing "massive field failures," FieldTurf publicly denied knowledge of any problems. During the entire relevant period, and even to this day, FieldTurf engaged in a systematic campaign to conceal and minimize Duraspine Turf's numerous defects.

12.     FieldTurf told customers the problems were ordinary wear and tear, that the customers did not understand how turf should perform, and that the issues customers were seeing would get better with time.  Customers relied on FieldTurf's superior knowledge and claimed expertise in assessing field condition.  FieldTurf knew that most customers would not know the turf was inherently defective in its composition and design, would not recognize signs of the resulting deterioration (which often were not visible to the non-expert observer), and that, once the field began to break down, the physical and chemical process was irreversible.

13.     FieldTurf also tried to minimize the problems, brushing them off as a matter of a few bad batches or claiming any issues were limited to areas with intense UV radiation, like Texas and California.  What is now beginning to be revealed from FieldTurf's own records and admissions, however, is that Duraspine Turf was made from an "inferior" fiber with a deficient chemical composition that was not designed to withstand heavy, outdoor use and UV exposure,

and that FieldTurf's manufacturing process did not sufficiently secure the grass to the backing. At the same time FieldTurf was minimizing the problems customers reported, it knew fields were experiencing widespread, premature deterioration and failures <u>nationwide</u>, including in multiple fields in New Jersey—exactly as the early warnings to FieldTurf predicted.

14.     FieldTurf also sought to blame the victims of its lies and systematically avoid its own warranties.  It claimed problems with Duraspine Turf were due to poor field maintenance by customers or were not real problems at all.  It delayed processing of warranty claims and then denied the claims upon expiration of the eight-year warranty period.  FieldTurf also used customer complaints or warranty claims as an opportunity to upsell the customer to a more expensive product—or to replace one defective Duraspine Turf field with another as a deliberate tactic to run out the warranty period.

15.     Bottom line, despite longstanding knowledge it was selling a defective product, FieldTurf officials failed even to notify existing customers of the defects, let alone stop selling the product.  And not once did FieldTurf change its sales pitch before discontinuing sales of Duraspine Turf in or around 2012.  As FieldTurf's marketing director later testified, FieldTurf's representations remained unchanged because he "wasn't asked to change them."  Rather, FieldTurf steadfastly denied the defect, compounding the public deception.

16.     Although FieldTurf did nothing to protect its customers, it did look after itself. Realizing it could stall and deceive consumers for only so long and facing enormous liabilities for the defective fields, FieldTurf sued its fiber manufacturer in 2011.  In that lawsuit, FieldTurf specifically admitted that the fiber used in the Duraspine Turf was "<u>defective</u>," "<u>inferior</u>," and "exhibited <u>premature and significant signs of both physical and chemical degradation</u>," due to "poor thermal stability," and the lack of "necessary" UV stabilizers.

17.      FieldTurf settled that lawsuit for an undisclosed amount.  Still, FieldTurf did not notify its customers, let alone refund the monies customers paid for the "defective," "inferior" Duraspine Turf products.

18.      FieldTurf's scheme finally began to be exposed in December 2016, when NJ Advance Media published findings from its lengthy, in-depth investigation into Duraspine Turf failures in New Jersey and elsewhere.[2]  As part of its investigation, NJ Advance Media commissioned the University of Michigan's Breaker Space Lab to test turf fibers from three Duraspine Turf fields.  The tests confirmed the tensile strength (i.e., the amount a material can stretch without breaking) of the fibers to be well below industry standards—and below FieldTurf's own standards.

19.      NJ Advance Media's investigation also concluded:

- FieldTurf knew its Duraspine Turf fields were defective.  When FieldTurf marketed, sold and installed the fields, executives were aware the turf was much weaker and inferior than it said and did not have the expected durability and lifespan.

- FieldTurf misled its customers.  Despite candid, internal email discussions about its overblown sales pitches, executives never changed FieldTurf's marketing and sales campaign for Duraspine Turf fields.

- FieldTurf tried to cover up its lies.  A lawyer warned that internal admissions about the defects and FieldTurf's knowledge could be damaging in a lawsuit.  When a FieldTurf executive sought to delete the revealing emails, an IT professional refused, calling the destruction of such evidence a "possible crime."

- FieldTurf continues to keep quiet about its lies and defective products.  Even today, executives have never told most customers about Duraspine Turf's problems or how to identify signs it was prematurely falling apart.

---

[2] *See The 100-Yard Deception*, NJ Advance Media, http://fieldturf.nj.com/ (last visited May 1, 2017). As part of the six month investigation, NJ Advance Media filed 40 public records requests, obtained more than 5,000 pages of company records, emails, court filings and testimony, and interviewed coaches, officials, and current and former FieldTurf employees.

- FieldTurf stonewalled customers who did report issues, slow-footing warranty claims and telling them the deterioration was normal, the fields needed more maintenance, and the problems would get better with time.

- To this day, in testimony before governmental bodies, and in publicly released statements, FieldTurf continues to publicly deny there was a widespread defect with its Duraspine Turf products.

20.    In sum, FieldTurf sold a uniformly "inferior" and "defective" product that did not meet industry standards, was not suitable for its ordinary use, and did not and could not live up to the specific, factual representations FieldTurf made to potential customers.  FieldTurf undertook a nationwide marketing and sales campaign that intentionally hid the product's defects and made false claims that FieldTurf knew the product did not meet, but were used to induce customers to purchase and install Duraspine Turf fields.  FieldTurf then used unfair, false, and deceptive tactics to fend off, minimize, ignore, and deny customer complaints and warranty claims.

21.    As a result of FieldTurf's wrongdoing, Plaintiffs and the class members suffered multiple injuries, including paying (and overpaying) for defective fields they otherwise would not have bought, paying more for field maintenance and repair than they otherwise would have, and losing fees and payments associated with games and events they were unable to host due to field conditions or unscheduled maintenance.

22.    It is time for FieldTurf to be held accountable for its intentional and egregious conduct.

## II.    PARTIES

**A.    Plaintiffs**

23.    <u>Carteret</u>:  The Borough of Carteret ("Carteret" and, for purpose of this paragraph, "Plaintiff") is a municipal corporation having offices at 61 Cooke Ave, Carteret, New Jersey 07008, that exists under the laws of the State of New Jersey. Carteret purchased six defective

Duraspine Turf fields: (1) the four fields at Civic Center Park were contracted for in September 2006, and installed in 2008; (2) the John Street Park field was contracted for in January 2007, and installed in May 2007; and (3) Sullivan Field was contracted for in 2010 and installed in September 2011.  Plaintiff decided to buy the Duraspine Turf fields based in part on FieldTurf's representations that the fields had superior materials and design such that they had greater durability and resistance to wear, matting, and UV than competing products and a useful lifespan of more than 10 years.  These representations, along with the claimed comparative cost savings of Duraspine Turf fields, were among the primary reasons Plaintiff chose the Duraspine Turf fields. At the time the fields were purchased, Plaintiff did not know that the fields were composed of defective and inferior materials that did not have the durability, resistance to wear, matting, and UV, and useful lifespan FieldTurf represented.  Plaintiff would not have purchased the Duraspine Turf fields, or would have paid less for them, had it known that the fields were defective and did not have the qualities and lifespan represented. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Duraspine Turf fields, or would have paid less for them, had Defendants not concealed and misrepresented the actual qualities and lifespan of the fields.

24.    Fremont:  The City of Fremont ("Fremont" and, for purpose of this paragraph, "Plaintiff") is a city in Alameda County, California.  Fremont purchased one defective Duraspine Turf field in 2007 and another in 2011.  Plaintiff decided to buy the Duraspine Turf fields based in part on FieldTurf's representations that the fields had superior materials and design such that they had greater durability and resistance to wear, matting, and UV than competing products and a useful lifespan of more than 10 years.  These representations, along with the claimed comparative cost savings of Duraspine Turf fields, were among the primary reasons Plaintiff

chose the Duraspine Turf fields.  At the time of purchase, Plaintiff did not know that the fields were composed of defective and inferior materials that did not have the durability, resistance to wear, matting, and UV, and useful lifespan FieldTurf represented.  Plaintiff would not have purchased the Duraspine Turf fields, or would have paid less for them, had it known that the fields were defective and did not have the qualities and lifespan represented.  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Duraspine Turf fields, or would have paid less for them, had Defendants not concealed and misrepresented the actual qualities and lifespan of the fields.

25.     <u>Hudson</u>:  The County of Hudson, New Jersey ("Hudson" and, for purpose of this paragraph, "Plaintiff") is a political subdivision of the State of New Jersey.  Hudson purchased five defective Duraspine Turf fields: (1) the Laurel Hill field, contracted for in 2007 and installed between 2007 and 2009, (2) Fields 10 and 11, contracted for in 2007 and installed between 2007 and 2008, and (3) Fields 2 and 3, contracted for in 2009 and installed between 2009 and 2010. Plaintiff decided to buy the Duraspine Turf fields based in part on FieldTurf's representations that the fields had superior materials and design such that they had greater durability and resistance to wear, matting, and UV than competing products and a useful lifespan of more than 10 years.  These representations, along with the claimed comparative cost savings of Duraspine Turf fields, were among the primary reasons Plaintiff chose the Duraspine Turf fields.  At the time of purchase, Plaintiff did not know that the fields were composed of defective and inferior materials that did not have the durability, resistance to wear, matting, and UV, and useful lifespan FieldTurf represented.  Plaintiff would not have purchased the Duraspine Turf fields, or would have paid less for them, had it known that the fields were defective and did not have the qualities and lifespan represented.  Plaintiff has suffered a concrete injury as a direct and

proximate result of Defendants' misconduct, and would not have purchased the Duraspine Turf

fields, or would have paid less for them, had Defendants not concealed and misrepresented the

actual qualities and lifespan of the fields.

26.     Levittown:  Levittown Union Free School District ("Levittown" and, for purpose

of this paragraph, "Plaintiff") is a school district serving areas of Levittown, Wantagh, Seaford,

Plainedge and Hicksville, New York.  Levittown purchased two defective Duraspine Turf fields

in the spring of 2008.  The fields were installed at General Douglas MacArthur High School and

Division Avenue High Schools in or around July and September 2008, respectively.  Plaintiff

decided to buy the Duraspine Turf fields based in part on FieldTurf's representations that the

fields had superior materials and design such that they had greater durability and resistance to

wear, matting, and UV than competing products and a useful lifespan of more than 10 years.

These representations, along with the claimed comparative cost savings of Duraspine Turf fields,

were among the primary reasons Plaintiff chose the Duraspine Turf fields.  At the time of

purchase, Plaintiff did not know that the fields were composed of defective and inferior materials

that did not have the durability, resistance to wear, matting, and UV, and useful lifespan

FieldTurf represented.  Plaintiff would not have purchased the Duraspine Turf fields, or would

have paid less for them, had it known that the fields were defective and did not have the qualities

and lifespan represented.  Plaintiff has suffered a concrete injury as a direct and proximate result

of Defendants' misconduct, and would not have purchased the Duraspine Turf fields, or would

have paid less for them, had Defendants not concealed and misrepresented the actual qualities

and lifespan of the fields.

27.     Medford:  The Township of Medford ("Medford" and, for purpose of this

paragraph, "Plaintiff") is located in Burlington County, New Jersey.  Medford purchased a

defective Duraspine Turf field in 2006.  Plaintiff decided to buy the Duraspine Turf Field based in part on FieldTurf's representations that the field had superior materials and design such that it had greater durability and resistance to wear, matting, and UV than competing products and a useful lifespan of more than 10 years.  These representations, along with the claimed comparative cost savings of a Duraspine Turf Field, were among the primary reasons Plaintiff chose the Duraspine Turf Field.  At the time of purchase, Plaintiff did not know that the field was composed of defective and inferior materials that did not have the durability, resistance to wear, matting, and UV, and useful lifespan FieldTurf represented.  Plaintiff would not have purchased the Duraspine Turf Field, or would have paid less for it, had it known that the field was defective and did not have the qualities and lifespan represented.  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Duraspine Turf Field, or would have paid less for it, had Defendants not concealed and misrepresented the actual qualities and lifespan of the field.

28.     <u>Neshannock</u>:  Neshannock Township School District ("Neshannock" and, for purpose of this paragraph, "Plaintiff") is a public school district organized under the laws of the State of Pennsylvania.  Neshannock purchased a defective Duraspine Turf field in 2008. Plaintiff decided to buy the Duraspine Turf Field based in part on FieldTurf's representations that the field had superior materials and design such that it had greater durability and resistance to wear, matting, and UV than competing products and a useful lifespan of more than 10 years. These representations, along with the claimed comparative cost savings of the Duraspine Turf Field, were among the primary reasons Plaintiff chose the Duraspine Turf Field.  At the time of purchase, Plaintiff did not know that the field was composed of defective and inferior materials that did not have the durability, resistance to wear, matting, and UV, and useful lifespan

FieldTurf represented.  Plaintiff would not have purchased the Duraspine Turf Field, or would have paid less for it, had it known that the field was defective and did not have the qualities and lifespan represented.  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Duraspine Turf Field, or would have paid less for it, had Defendants not concealed and misrepresented the actual qualities and lifespan of the field.

29.     Newark:  The State-operated School District of the City of Newark ("Newark" and, for purpose of this paragraph, "Plaintiff") is a school district under State intervention having offices located at 2 Cedar Street, Newark, NJ 07102.  Newark purchased four defective Duraspine Turf fields between late 2006 and 2010.  Plaintiff decided to buy the Duraspine Turf fields based in part on FieldTurf's representations that the fields had superior materials and design such that they had greater durability and resistance to wear, matting, and UV than competing products and a useful lifespan of more than 10 years.  These representations, along with the claimed comparative cost savings of Duraspine Turf fields, were among the primary reasons Plaintiff chose the Duraspine Turf fields.  At the time of purchase, Plaintiff did not know that the fields were composed of defective and inferior materials that did not have the durability, resistance to wear, matting, and UV, and useful lifespan FieldTurf represented.  Plaintiff would not have purchased the Duraspine Turf fields, or would have paid less for them, had it known that the fields were defective and did not have the qualities and lifespan represented.  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Duraspine Turf fields, or would have paid less for them, had Defendants not concealed and misrepresented the actual qualities and lifespan of the fields.

30.    <u>Santa Ynez</u>:  Santa Ynez Valley Union High School District ("Santa Ynez" and, for purpose of this paragraph, "Plaintiff") is a political subdivision and public school district that exists under the laws of the State of California.  Santa Ynez purchased a defective Duraspine Turf field in 2006.  Plaintiff decided to buy the Duraspine Turf Field based in part on FieldTurf's representations that the field had superior materials and design such that it had greater durability and resistance to wear, matting, and greater UV protection than competing products and a useful lifespan of more than 10 years.  These representations, along with the claimed comparative cost savings of the Duraspine Turf Field, were among the primary reasons Plaintiff chose the Duraspine Turf Field.  At the time of purchase, Plaintiff did not know that the field was composed of defective and inferior materials that did not have the durability, UV protection, resistance to wear and matting, and useful lifespan FieldTurf represented.  Plaintiff would not have purchased the Duraspine Turf Field, or would have paid less for it, had it known that the field was defective and did not have the qualities and lifespan represented.  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Duraspine Turf Field, or would have paid less for it, had Defendants not concealed and misrepresented the actual qualities and lifespan of the field.

## B.    Defendants

31.    Defendant FieldTurf USA Inc. is a Florida corporation with its principal place of business located at 75 North Industrial Blvd., N.E., Calhoun, Georgia 30701.  FieldTurf USA marketed, manufactured, sold, and installed the defective Duraspine Turf products throughout the United States.

32.    Defendant FieldTurf, Inc. is a Canadian corporation with its principal place of business located at 8088 Montview Road, Montreal, Quebec, H4P 2L7.  Upon information and

13

belief, FieldTurf Inc., also manufactured and sold the defective Duraspine Turf products or otherwise conducts business in the United States, including New Jersey.

33.     Defendant FieldTurf Tarkett SAS ("FieldTurf SAS") is a French corporation with its principal place of business located at 2 Rue de L'Egalitee, 92748 Nanterre Cedex, France.  It is the parent corporation to FieldTurf USA.

34.     Defendant Tarkett Inc. is the successor to FieldTurf Tarkett, Inc.  Tarkett, Inc. is a Canadian corporation with its principal place of business located at 8088 Montview Road, Montreal, Quebec, H4P 2L7.  Upon information and belief, Tarkett manufactures, sells and installs artificial turf or otherwise conducts business in the United States, including New Jersey.

35.     FieldTurf USA Inc., FieldTurf, Inc., FieldTurf Tarkett, and Tarkett Inc. are referred to collectively as FieldTurf.

36.     The unified FieldTurf website refers to "FieldTurf" as "a Tarkett Sports Company," with Tarkett in turn holding itself out as part of the unified FieldTurf sales and marketing message as:

> [A] global leader in innovative and sustainable solutions for flooring and sports surfaces.  With a wide range of products including vinyl, linoleum, carpet, rubber, wood & laminate, synthetic turf and athletics track, the Group serves customers in more than 100 countries worldwide.  With 11,000 employees and 30 production sites, Tarkett sells 1.3 million square meters of flooring every day, for hospitals, schools, housing, hotels, offices, stores and sports fields.  Committed to sustainable development, the Group has implemented an eco-innovation strategy and promotes circular economy.  Tarkett net sales of 2.5 billion euros in 2013 are balanced between Europe, North America and new economies.[3]

---

[3] http://www.fieldturf.com/en/artificial-turf/about-fieldturf.

37.     On information and belief, all of FieldTurf entities jointly worked to develop and test the Duraspine Turf products, as well as to develop a coordinated sales and marketing campaign, and all were aware of the defects in the products and were actively involved in concealing those defects from consumers in the United States, including through the continual publication of misleading and false statements about the products on the worldwide FieldTurf website.

38.     Absent discovery, the specific role each FieldTurf entity performed in the fraudulent scheme to sell the defective Duraspine Turf fields is within the exclusive knowledge and control of the Defendants.

### III.     JURISDICTION AND VENUE

39.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and (2), and Plaintiffs and Defendants are citizens or subjects of different states and/or foreign states and the amount in controversy exceeds $75,000.00.

40.     The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action in which each Plaintiff, class members, is a citizen of a different state than each Defendant, the aggregate sum of class damages exceeds $5,000,000.00, and the proposed class exceeds 100 members.

41.     Plaintiffs allege that the Court has personal jurisdiction over each Defendant because each is a corporation authorized to conduct business in New Jersey, does business in New Jersey, or did sufficient business in New Jersey, has sufficient minimum contacts with New Jersey, or otherwise intentionally availed themselves of the New Jersey consumer market through the promotion, marketing, and sale of defective Duraspine Turf products and that this purposeful availment renders permissible the exercise of personal jurisdiction by this Court over

FieldTurf and its affiliated or related entities under traditional notions of fair play and substantial justice.

42.     Plaintiffs further allege that venue is proper in this forum pursuant to 28 U.S.C. §1407 and the June 1, 2017 Transfer Order of the Judicial Panel on Multidistrict Litigation in MDL 2779 or, in the alternative, pursuant to 28 U.S.C. § 1391 because FieldTurf transacts business and may be found in this District.  Venue is also proper in this District because a substantial portion of the allegations complained of herein, including transaction of business with Defendants by one or more Plaintiffs, occurred in the District of New Jersey.

43.     Neither the filing of this Consolidated Amended Complaint, nor its allegations, is intended to waive the right of any Plaintiff or proposed class member to seek remand of individual cases under 28 U.S.C. § 1407, which right of remand is fully preserved.

## IV.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.     The Artificial Turf Industry

44.     Artificial turf is an alternative to natural grass.  Artificial turf fields are intended to be used year-round in a wide range of weather conditions and for extended periods of playing time without downtime for recovery between games or events.  Artificial turf also eliminates the upkeep required for natural grass, such as weed removal, watering, fertilizing, and the like, lowering field maintenance costs.

45.     Artificial turf consists of at least three components:  (1) plastic grass blades, which are manufactured from plastic "fiber" or "yarn" and bundled into individual "tufts"; (2) a backing material to which the tufts are attached; and (3) an adhesive used to secure the tufts to the backing.  Other components, such as "infill" (artificial soil), may also be incorporated into a field.  The assembled components are sometimes referred to as a turf "system."

46.     Because artificial turf is commonly used for football, soccer, and other athletic fields, it typically comes in a range of colors so that school and team logos, as well as field markings, can be incorporated into the field design.

47.     Artificial turf fields, including FieldTurf's fields, were at all times (and remain) widely and publicly marketed, including in mass media and on the Internet.  For example, at all relevant times, FieldTurf had published numerous advertising and promotional materials in magazines and on Youtube.com, as well as on its website.  FieldTurf also received substantial and widespread press from various local and national media outlets, such as NBC.  Upon information and belief, FieldTurf had paid celebrity endorsements, such as from Cal Ripken Jr., for the purpose of building its brand name and securing national acclaim for its so-called revolutionary and superior products.

48.     The design and performance of an artificial turf field involves sophisticated engineering and specialized knowledge beyond the ken of the average consumer, be it a school, a recreation department, or an individual small business owner.  As a result, purchasers (including Plaintiffs and the Class members here) necessarily rely on the sellers of the fields (including FieldTurf) for complete and accurate information on the quality and expected performance of the fields.  Similarly, the average purchaser does not possess the expertise to pick up on signs that a field is degrading prematurely.

**B.     FieldTurf's Artificial Turf Products**

49.     FieldTurf markets, manufactures, sells, and installs artificial turf surfaces throughout the United States.  Since introducing its first artificial grass systems in 1988, FieldTurf has grown to be a leader in the U.S. artificial turf industry.

17

50.     FieldTurf is known, in particular, for its "infilled" artificial turf products. "Infilled" refers to the use of rubber dirt and sand mixture poured between the artificial grass tufts during installation.  The infill supports and protects the fiber tufts and helps create a resilient playing surface that mimics real soil.

51.     FieldTurf heavily emphasizes its supposed expertise and prowess in its marketing materials.  For example, FieldTurf prominently advertises that it has one or more patents that cover its infilled systems.

52.     FieldTurf also controls the installation of the fields its sells.  FieldTurf fields (including the fields at issue here) are installed by installers authorized by FieldTurf.  FieldTurf itself supplies the infill used for each installation.  FieldTurf assures its customers that "every single FieldTurf field is installed in exactly the same way" and that each installation uses an "identical" engineered system.

53.     In 1995, FieldTurf began marketing an infilled field using "slit film" for the artificial grass.  Slit film is a sheet of plastic cut into individual blades.  The blades are bunched and sewn together into a backing material and then infilled with sand and rubber.

54.     Slit film was marketed as softer and more shock absorbent than competing surfaces, such as AstroTurf.  In 1999, FieldTurf sold a system to the University of Nebraska, leading to skyrocketing sales.

## C.     FieldTurf's Development and Launch of the Duraspine Turf Fields

55.     In November 2003, FieldTurf's then-CEO John Gilman met Jeroen van Balen of Mattex Leisure Industries ("Mattex") at a trade show.[4]  Mattex was a manufacturer of the

---

[4] Mattex refers collectively to Mattex Leisure Industries and any of its affiliated entities.

artificial grass fibers used to make artificial turf fields.  Van Balen introduced Gilman to a new

artificial grass fiber Mattex was producing.  Unlike the slit film used in FieldTurf's existing

products, the new Mattex fiber used a "monofilament" design.  The monofilament design was

made by pushing plastic fibers through an extruder, making individual strands like spaghetti.

Each strand had a central "spine" down the middle.

56.     FieldTurf entered into an exclusive agreement with Mattex in September 2005.

57.     Under the agreement with Mattex, FieldTurf was able to buy the fiber (which

FieldTurf dubbed "Duraspine") for less than the slit film it used in its existing product.  At the

same time, FieldTurf planned to sell Duraspine Turf fields at a higher price than its slit film

products, on the theory that Duraspine Turf was longer-lasting and had greater resistance to

wear and to UV radiation than slit film surfaces.

58.     At the time it learned about the Duraspine fiber, FieldTurf was concerned that its

competitive position in the market had weakened in the years since it launched its slit film

fields.  Duraspine Turf fields presented FieldTurf with a golden opportunity to introduce an

ostensibly new, improved, and exclusive product—and at a higher margin.  FieldTurf was

eager to use Duraspine Turf fields to strengthen its competitive position.

59.     FieldTurf began selling Duraspine Turf fields in late 2005.  FieldTurf claims it

stopped selling them in 2012.  From 2005 to 2012, FieldTurf sold at least 1,450 Duraspine Turf

fields across the U.S. under various brand names.  The fields sold for an average of $300,000

to $500,000 each, yielding sales revenues to FieldTurf of more than half a billion dollars.

**D.      FieldTurf Represented That Duraspine Turf Was a "Breakthrough" Product With "Unmatched" Endurance and a Life Span of More Than Ten Years.**

60.     FieldTurf executed a uniform marketing campaign to induce consumers to

purchase the Duraspine Turf fields. FieldTurf hired CanSpan Communications to prepare all of

the marketing materials for Duraspine Turf fields.  The materials were subject to FieldTurf's

final approval.  FieldTurf then directed its network of sales representatives to distribute these

marketing materials to potential consumers. FieldTurf thus carefully controlled the consistent

marketing message delivered to each Duraspine Turf field consumer.

61.     In its advertising and marketing of Duraspine Turf fields, FieldTurf showcased

high-profile clients (such as NFL teams) and touted its Duraspine Turf fields as being the best

fields money could buy.  Among the pivotal representations FieldTurf made in marketing

Duraspine Turf fields to Plaintiffs and the Class members were:

- Duraspine Turf was a "breakthrough in technology" with "double the expected useful life" of an artificial turf field;
- Duraspine Turf was "stronger" and "more chemically uniform" than existing products, and that its chemical design "wear[s] more slowly," and was more resistant to "environmental agents";
- Duraspine Turf had "unmatched durability, especially resistance to wear" and the Duraspine fiber was "far more resistant to UV and foot traffic" than competing slit tape systems;
- Duraspine Turf had "unmatched" fiber memory, such that it was designed to spring back to an upright position after being compressed in athletic play;
- Duraspine Turf had an expected lifespan of more than 10 years—far longer than competitor turfs and even FieldTurf's previous products;
- Duraspine Turf was "actually cheaper over the long run" than competitor products, despite the higher price, because it was designed to last more than 10 years and "would virtually eliminate the maintenance costs associated with natural grass";
- Duraspine Turf was backed by FieldTurf's warranties; and
- "FieldTurf has nothing to hide."  Duraspine's quality was "no marketing spin"; its representations were "fact" supported by testing.

62.     FieldTurf drove home these and other key representations in multiple advertising,

marketing, and sales channels throughout the 2005-2012 period.

63.     In 2006, FieldTurf's then-CEO John Gilman claimed in a trade publication that,

among other things, his company's "breakthrough in technology" would "change the industry,"

as Duraspine Turf "will <u>double the expected useful life</u>" of an artificial turf field.  He specifically represented that the fibers used in Duraspine Turf (the new monofilament fibers) were "stronger" and "more chemically uniform" than existing products, "wear more slowly," and were more resistant to "environmental agents."  As a result, Gilman said, the Duraspine Turf fields had an expected lifespan "longer than the 10 years" already expected from slit film ("tape filament") products.

### Versatile and Adaptable

Monofilament is a significant technological advance, according to FieldTurf Tarkett CEO John Gilman. "We believe it will change the industry as much as the original material did," he says. "For one thing, it will double the expected useful life of the installation because the individual fibers used in the mono surface are both stronger and more chemically uniform than those used in the traditional product. That means they wear more slowly and can be formulated to resist environmental agents, like ozone, which attack polymer materials."

Mono is an important new product, Gilman explains: "It's a breakthrough in technology every bit as important as the original surface was," he says. "Mono is the result of a lot of hard work in collaboration with our material suppliers to develop a product and a process that significantly improves the properties of the playing surface."

The shape of the monofilament fiber is based on similar structures found in nature. The arched profile features a durable "spine," which runs vertically through the center of each fiber. The fiber is extruded through a spinneret and is a "true" monofilament fiber, not a flimsy slit tape like competing systems.

**"We anticipate that a mono surface will have a useful life longer than the 10 years we expect from a tape filament surface. We have also developed a patented process that causes some of the filaments in the mono surface to lie over while others stand straight up." – John Gilman, CEO, FieldTurf Tarkett**

The yarn is also much stronger than the tape filaments. "So the surface will last longer, all things being equal," says Gilman. "We anticipate that a FieldTurf mono surface will have a useful life longer than the 10 years we expect from a tape filament surface. We have also developed a patented process that causes some of the filaments in the mono surface to lie over while others stand straight up. This helps keep the infill material in place much better than the first generation materials. Even the 'splash' from a bouncing soccer ball is completely encapsulated on a FieldTurf Duofilament field."

64.     Likewise, FieldTurf's marketing materials represented that Duraspine had "unmatched 'memory' and thus resistance to matting."  It specifically referenced "testing" it claimed showed that Duraspine had "unmatched durability, especially resistance to wear" and

that the Duraspine fiber was "far more resistant to UV and foot traffic" than competing slit tape systems, which FieldTurf said were "flimsy" compared with Duraspine:



65.     In another flyer, FieldTurf stated that "[b]y choosing to invest in quality, safety and performance rather than basement pricing, FieldTurf has helped to ensure a successful future for your athletes, your program, your facilities and your finances….  [A]lthough FieldTurf sometimes costs more to install it is actually cheaper over the long term."

66.     Likewise, in a key marketing document entitled "10 Reasons Why FieldTurf and Its MonoGrass System Should be Selected," FieldTurf again cited supposed "testing" to claim that Duraspine Turf would "last longer" and had a "wide gap in wear resistance" over slit film fibers, "including FieldTurf's own slit film, which has a proven 8-10 year life."

67.     In the same document, FieldTurf underscored that the durability and longer life of Duraspine Turf was a "fact" and that Duraspine's supposed longevity "will allow [the buyer] to amortize the life of the field on a 10+ year basis . . . ."



### 10 Reasons Why FieldTurf
### And Its MonoGrass System
### Should be Selected

#### 1.   MONOFILAMENT FIBERS—DURABILITY AND VALUE

In the last few years, FieldTurf has focused on new products that have all the best attributes of traditional PE slit film yarns, with the added *durability* that is only possible with the monofilament production process.  FieldTurf's efforts have resulted in a patented fiber unavailable to any other company.

FieldTurf's new "DuraSpine" MONOFILAMENT fiber offers INCREASED PRODUCT LIFE.  Comparative wear testing shows a wide gap in wear resistance between standard, proven slit film fibers (including FieldTurf's own slit film, which has a proven 8-10 year life cycle) and this new generation of "true" monofilament.  Although at this point it is impossible to correlate this additional toughness to a set period of extended product life, the fact remains that the new FieldTurf system will last longer.

*And the longer a product lasts, the more economical it is from a life cycle standpoint!  Buying FieldTurf with the new MONOFILAMENT, regardless of initial price, is a BETTER VALUE.*

This added longevity will actually allow the District to amortize the life of the field on a 10+ year basis rather than the 8+ year life expectancy.  This represents a much greater return on investment than the older slit film products currently being installed by most companies in the market.  FieldTurf has in place over 40 MONOFILAMENT applications in North America, including fields at the NCAA Division I level.  No other company has this kind of fiber or such proven fields in place.

#### 2.   MONOFILAMENT FIBERS—PLAYABILITY AND AESTHETICS

FieldTurf's new-generation monofilament system is the closest thing yet to a grass-like surface.

- The fibers have excellent "memory" so they remain looking like new grass— erect fibers, not a matted carpet.
- The erect fibers offer "resistance" to soccer balls, making the system more grass-like—the ball rolls and plays exactly like it does on grass according to FIFA testing--and thus is more useful for soccer players.
- The fibers, though more durable, are quite soft, which will virtually eliminate skin abrasions.

#### 3.  COMPLETE PRODUCT QUALITY CONTROL

68.     The "10 Reasons Why" document was part of a national marketing campaign distributed to all potential customers.  FieldTurf specifically intended for customers to rely on the information in the document, as well as information in its other sales and marketing materials

69.     A typical FieldTurf marketing pitch from 2005 – 2012 claimed Duraspine Turf fields "would virtually eliminate the maintenance costs associated with natural grass and could be used 12 months a year, dawn to dusk and under the lights."  It continued, "[t]hese fields would also last far longer than competitor turfs and even FieldTurf's previous products."

70.     Further, FieldTurf boasted about its unrivaled and rigorous quality control, its eight-year warranty (which it claimed the fields would far outlast), and the fact that "FieldTurf has nothing to hide."  Duraspine's remarkable qualities, it proclaimed, was "[n]o marketing spin."

71.     FieldTurf emphasized that, even though its products may initially be more expensive than its competitor's products to install, "it is actually cheaper over the long run," FieldTurf's products would potentially save the customer up to $1 million on a single installation:



**E.      FieldTurf's Marketing Succeeded in Inducing Consumers to Buy Duraspine Turf at Premium Prices.**

72.     FieldTurf's marketing efforts were successful.  As FieldTurf intended, customers believed FieldTurf's representations about the supposed durability, performance, and lifespan of Duraspine Turf and were induced to contract for the purchase and installation of Duraspine Turf fields.

73.     As a result of its deceptive and misleading sales and marketing campaign, FieldTurf's sales of Duraspine Turf fields nearly doubled within a few years.

74.     Likewise, as FieldTurf intended, its representations about Duraspine Turf's supposedly improved fiber, durability, and lifespan also allowed FieldTurf to charge a premium price for the product.

75.     FieldTurf's Duraspine Turf fields were the most expensive on the market.  The average price for a Duraspine Turf Field was between $300,000 and $500,000, with some consumers paying more than $1 million for construction and installation.

76.     A typical field was sold for an average premium of at least $85,000, or approximately about $1 per square foot, more than the competition.

77.     Again, purchasers were induced to pay the premium price for Duraspine Turf because they were induced by FieldTurf's alleged <u>factual</u> representations about the product, including that testing supposedly showed the product had a lifespan of more than ten years—and, therefore, would allow amortization of the cost over that period.  Indeed, court records from FieldTurf's own lawsuit (discussed below) show that town and school officials frequently pointed to "FieldTurf's claims about fields lasting 10-plus years," as well as the warranties (discussed below) to win over skeptical residents worried about the price tag for the Duraspine Turf fields.

78.     These same representations were made to and relied upon by Plaintiffs here.  For example:

79.     <u>Newark</u>:  A FieldTurf representative, Mr. DiPiazza, convinced Newark employees that the FieldTurf product was the best artificial turf available, with a quality of design and materials and a durability and useful life that no competitor could match.  Among other things, Mr. DiPiazza provided Newark employee Satish Desai and others with promotional materials

containing misrepresentations on which Newark relied.  These materials included the "10

Reasons Why" document, which was emailed to Mr. Desai in March 2008.

80.   <u>Carteret</u>:  In the Fall of 2006, Mr. DiPiazza also provided the "10 Reasons Why"

document to Carteret and other marketing materials that boasted FieldTurf, unlike its competitors

who had "no track record, no testing, no engineering and no expertise," had "proven

performance," "proven quality," and "proven limited risk."  FieldTurf represented to Carteret

that Duraspine Turf was a solid investment because it was the only artificial turf company with

"fields in use every day after 7 or more years."

81.   <u>Santa Ynez</u>:  Likewise, in the Fall of 2005, FieldTurf's Regional Sales

Representative, Tim Coury, told Santa Ynez's Athletic Director, Ken Fredrickson, that the

Duraspine Turf product had a useful life of 10+ years, and would last beyond the eight year

warranty period, discussed below.

82.   <u>Fremont</u>:  In August 2006, FieldTurf provided Fremont employees marketing

materials stating that that Duraspine Turf would hold up well after nine years of use, with 3,000

hours of use per year.

83.   <u>Levittown</u>:  In or around Spring 2008, FieldTurf representatives, including Marty

Lyons, provided Levittown employees, including Joseph Ewald and Keith Snyder, with two

boxed samples of complete Duraspine Turf field systems, including infill, and promotional

materials.  These promotional materials had printed representations on them, including that UV

inhibitors were added to the product to make it "UV resistant" and to give it "twice the resistance

to ultraviolet rays as that of other fibers."  The representations also claimed that the product is

"far more resistant to foot traffic," includes tufts of eight blades to "deliver unmatched

durability," includes ten pounds per square foot of infill, and would last more than 10 years. Levittown relied on these misrepresentations in selecting the Duraspine Turf product.

84.    <u>Neshannock</u>:  FieldTurf also represented in its marketing materials given to Neshannock in or around Spring 2008 that the expected useful life of Duraspine Turf was 10+ years, which was supported by "10 Year Cost Analysis FieldTurf v. Natural Grass" marketing brochure provided to Neshannock, and that Duraspine Turf had durability and longevity superior to its competitors' turf products.

85.    <u>Medford</u>:    Medford purchased a defective Duraspine Turf field in 2006 based in part on FieldTurf's representations that the field had superior materials and design such that it had greater durability and resistance to wear, matting, and UV than competing products and a useful lifespan of more than 10 years.  These representations, along with the claimed comparative cost savings of a Duraspine Turf Field, were among the primary reasons Medford chose the Duraspine Turf Field.

86.    <u>Hudson</u>:  Hudson purchased Duraspine Turf fields based in part on FieldTurf's representations to the market throughout the 2007-2009 period that the fields had superior materials and design such that they had greater durability and resistance to wear, matting, and UV than competing products and a useful lifespan of more than 10 years.  Mr. DiPiazza served as FieldTurf's representative to Hudson in the sales process and thereafter.

**F.    FieldTurf Also Warrantied the Duraspine Turf Fields.**

87.    Finally, although FieldTurf assured customers they likely would never need a warranty, it provided an express eight-year warranty for purchases of Duraspine Turf.

88.    The warranty stated:

> FieldTurf USA warrants that if [Duraspine Turf] proves to be
> defective in material or workmanship, resulting in premature wear,

during normal and ordinary use of the Product for sporting
activities set out below or for any other uses for which FieldTurf
gives written authorization, within 8 years from the date of
completion of installation, FieldTurf will, at FieldTurf's option,
either repair or replace the affected area without charge, to the
extent required to meet the warranty period (but no cash refunds
will be made).

89. On information and belief, FieldTurf provided customers with the eight-year
warranty only after the customer had been induced to contract, and had contracted, to purchase
and install a field.

90. As further detailed below, no "notice" of any breach of warranty is required here
because FieldTurf knew and was aware of the inherent defects in the Duraspine Turf fields when
they marketed, sold, and installed them.  In addition, FieldTurf itself was aware that an alarming
number of fields were failing as a result of the known, inherent defects in the product, and that
customers were complaining.  Yet FieldTurf intentionally ignored the issue, instructing its field
representatives not to affirmatively inspect Duraspine Turf fields for signs of failure due to the
defects and not to tell customers when FieldTurf itself had observed, with its expert
understanding, the symptoms of field failure.

**G.     FieldTurf Knew Duraspine Turf Was Not What FieldTurf Represented**

91. Facts now emerging from FieldTurf's 2011 lawsuit and from the NJ Advance
Media investigation have begun to reveal that, from the moment it sold and installed its first
Duraspine Turf field, FieldTurf knew the product did not have the quality and durability needed
for a long-term field installation, let alone the "unmatched" and "breakthrough" properties and
lifespan FieldTurf represented and promised.

92. In early 2004, FieldTurf and its consultants began examining the tests its supplier,
Mattex, was performing on the Duraspine fiber itself.  FieldTurf determined Mattex's tests were

inadequate and could not realistically determine the durability of the fiber.  Thus, in late 2004, FieldTurf began to perform its own testing.  However, FieldTurf used non-standard testing equipment that, it knew, did not produce results that reliably equated to a field's expected lifespan.

93.     By at least early 2005, FieldTurf's own testing showed a drop in the fiber's expected performance, with the fiber "fibrillating" within 1/3 of the expected wear time.  The results were so materially different than expected that FieldTurf contacted representatives of Mattex to inquire about the formula and raw materials used.

94.     In the Spring of 2005, FieldTurf learned of more evidence confirming major problems with the fiber's durability.  Bonar Yarns, another FieldTurf supplier, reported that the fiber showed "poor results" on a standard industry test called the Lisport test, used by FIFA (the world-wide governing body for soccer).  In a May 30, 2005 email from Frans Harmeling at Bonar Yarns & Fabrics to John Gilman, Harmeling stated, "[w]e have just finished testing of the Mattex monofilament for the second time, again with poor results in the Lisport test! As you [sic] aware, the Lisport test is adapted as standard by FIFA and other sports bodies, it should simulate 5 years of use at 1500 playing hours per year."

95.     Gilman expressed concern about Bonar Yarns' report.  In a May 2005 email to FieldTurf's director of manufacturing, Derek Bearden, Gilman questioned whether FieldTurf had "erred in our over exuberance in the adoption of the monofilament yarns, specifically the Mattex yarns?"

96.     The next day, Bearden said FieldTurf would "run another series" of tests with some adjustments to the infill Gilman requested, although Bearden doubted that would significantly change the results.  Further, he acknowledged the Mattex fibers "pull out" in the

Lisport test and that this was also seen and "reported" in FieldTurf's internal tests.  Bearden noted the "finger coating" method FieldTurf used to attach the fiber to the backing was not reliable and secure, and he preferred to use a "full" coating construction.

97.     The known defects with Duraspine Turf within FieldTurf were such that, in July 2005, Jim Mendenhall, FieldTurf's primary installer on the west coast, cautioned that FieldTurf should not go ahead with its planned market launch in the Fall of 2005 because FieldTurf had "no idea whether it [Duraspine Turf] will work" and that FieldTurf should not "rush a product to market and have it fail."

98.     At that same time, FieldTurf's Bearden underscored that turf made from monofilament fibers, such as Duraspine, was inherently less durable than other turf designs. Bearden emphasized that "we all know there is an issue with tuft bind on bundled mono fibers," meaning the fiber was susceptible to shedding and shearing off, and that the "finger-coating" method of adhesion FieldTurf chose to use exacerbated the tuft bind issues.  Bearden highlighted that these were all "known issues" with Duraspine Turf.

99.     In mid-2005, FieldTurf also ran internal tests on the Duraspine Turf at a facility in France.  In an August 10, 2005 email, Pascal Harel, Outdoor & Tennis Product Manager at FieldTurf Tarkett in France, told John Gilman that each of the five samples tested deteriorated 40-80% after tests simulating just five to six years of use—well short of the more than ten-year lifespan FieldTurf claimed Duraspine Turf had, and even short of the eight-year warranty FieldTurf touted as unnecessary.

100.     In sum, from the moment FieldTurf began selling Duraspine Turf fields to customers like Plaintiffs and the class members, it knew (a) Duraspine Turf was defective and not fit for its ordinary, expected use, and (b) FieldTurf's representations concerning Duraspine

Turf's durability and lifespan were false and contradicted by its own testing, as well as by testing by others.

101.    Nevertheless, FieldTurf pushed Duraspine Turf to market.

102.    Likewise, throughout the time it sold and installed Duraspine Turf fields, FieldTurf repeatedly confirmed its awareness that Duraspine Turf was defective, lacked necessary strength, durability, and resistance and did not have the lifespan FieldTurf claimed.

103.    In 2006, FieldTurf's operations director for Latin America informed FieldTurf's CEO and other high-ranking executives that Duraspine Turf fields installed in 2005 (made of the same materials as those sold to Plaintiffs and the class members here) already were showing signs of premature deterioration.  He stated that, in fields in South America, "[t]he corner kick and goal mouth areas are showing premature wear in both the small fields and the big fields."

104.    Around the same time, this employee reported on a customer complaint that a Duraspine Turf field installed in 2005 was in worse condition than a slit-film field installed in 2003.  The employee concluded, "I gather that the mono fiber [Duraspine] did not perform as expected."

105.    Likewise, in January 2006, a FieldTurf employee observed that a Duraspine Turf field installed near Paris just nine months before was already failing.  Although not "visible" to the customer, the FieldTurf employee observed that the "grass" fiber had lost its resiliency and was laying down due to "the characteristics of the fiber."  The employee did not alert the customer to the defects in and deterioration of the field.

106.    As a result of these reports, FieldTurf's then-CEO Gilman wrote to Mattex in December 2006, explaining, "We are seeing fields showing splitting under a year of play and have already had to replace one full-sized field due to yarn failure after only a few months of

installation!"  When van Balen tried to brush off the evidence that the fiber was defective, Gilman emphatically retorted "we know with heavy use, the fiber is coming apart."  By New Year's Eve 2006, Gilman admitted to van Balen that FieldTurf expected more complaints when other customers realized Duraspine Turf was defective, stating: "It's all about that old story of waiting for the next shoe to drop.  We have had a few failures as you know.  The question is … will many others fail? Who knows?"

107.    Gilman further warned Mattex that the apparent problem with Duraspine Turf could lead FieldTurf to submit a warranty claim to Mattex—which in turn might interfere with Mattex's effort to be acquired by another entity, Royal Tencate N.V. ("TenCate").[5]  (That acquisition eventually did occur and was personally very lucrative for van Balen).

108.    FieldTurf's vice president of operations, Kevin Reynolds, later testified that it was "very clear" to FieldTurf that Duraspine Turf "was not living up to expectations."  Reynolds "recall[ed] having discussions privately, informally, with our marketing people and from an operational standpoint making the point that, 'Hey, this product really isn't doing what we claim it's going to do, and you really need to back up because it's creating a major pain in my backside.'"

109.    In 2007, Ken Gilman (John Gilman's son and a FieldTurf executive) repeatedly tried to raise an alarm within FieldTurf about Duraspine Turf's defects and the misrepresentations FieldTurf was making to its customers and potential customers.  Among other things, Ken Gilman arranged a trip for FieldTurf's then-Interim CEO, David Moszkowski, to

---

[5] Tencate refers collectively to Royal Tencate N.V., its subsidiary Tencate Thiolon MiddeEast LLC, and any other affiliated entities.

visit New Jersey to learn more about the problems with Duraspine Turf.  Ken Gilman

summarized the findings of the trip in an email.  He wrote:

> [Duraspine] is nowhere near as robust or resilient as we initially
> thought and probably will not last that much longer than a high
> quality slit-film yarn…. In all likelihood in years 5 and 6 these
> Duraspine Turf fields will be matted down and fibrillating pretty
> heavily…. Our marketing claims and sales pitches need to reflect
> this reality.

Duraspine, he explained, was "beginning to deteriorate at an alarming rate."  Gilman further

stated that the "advantages of monofilament (have) been exaggerated."

110.    Gilman also noted that "[t]he eventuality of filaments [i.e., fibers] coming out"

was such an inherent quality of the Duraspine Turf product that it "should be part of the sales

process/presentation" so that customers who did not want "tuft loss" could, instead, buy a slit-

film product.

111.    Gilman also observed that FieldTurf was foisting unnecessary and ineffective

maintenance equipment on its customers, such as the "SMG Sportchamp," which Gilman

concluded was a "glorified vacuum cleaner" that, contrary to sales representations made by

FieldTurf, would not "rejuvenate a field."

112.    FieldTurf's lawyer opined that the email above was discoverable and could be

used against FieldTurf in litigation.  Ken Gilman then asked FieldTurf's IT consultant whether

the email chain could be permanently destroyed, explaining:

> It's our lawyer's opinion that this email thread contains
> information that could be used against us in a lawsuit as it is
> 'discoverable' . . . Can we somehow get it zapped off?

Gilman copied CEO Moszkowski on his request to "zap[] off" the email confirming Duraspine's

defects.

36

113.    The IT consultant responded and said it was not likely the email could be wiped from FieldTurf's systems.  He also understood that "[l]egally, it is not possible … You would be asking me … to commit a possible crime."

114.    Ken Gilman persisted in urging Moszkowski and his successors to revise FieldTurf's sales and marketing claims because FieldTurf knew the Duraspine Turf fields "can't possibly meet" the claim, FieldTurf was making to the market:

| From: | Kenny Gilman <kgilman@fieldturf.com> |
|---|---|
| Sent: | Friday, November 9, 2007 10:03 AM |
| To: | Kevin Reynolds <Kevin.Reynolds@fieldturftarkett.com>; David Moszkowski <David.Moszkowski@fieldturftarkett.com> |
| Subject: | Directives from legal department to salespeople and marketing department |

David / Kevin,

As you know our sales and marketing guys continually make claims that we can't possibly meet in the real world.  This opens us up to tons of exposure from a legal standpoint.  For example drainage claims by our salespeople currently have blown up in our face and there's pending lawsuits and 100's of thousands in holdbacks outstanding due to the fact that the fields can't possibly drain as fast as the sales guy's claim they will.  On the marketing side the claims made regarding the Duraspine and Hard / Soft fiber are ridiculous.  Everyday we are putting stuff out there that can't and won't live up to the marketing spin.  We have to control this somehow!!!

Thanks
Kenny

CONFIDENTIAL                                                    GILMAN-TEN000102

115.    Despite knowing Duraspine Turf was a weak, inferior product that "can't possibly" meet the marketing claims, FieldTurf installed 317 Duraspine Turf fields in 2007 valued no less than $127 million.

116.    In a February 2008 email to Moszkowski, Ken Gilman again wrote that "Duraspine is not all that it's cracked up to be especially in terms of wear resistance."

117.    Around the same time, Gilman also emphasized that marketing claims about the "memory" and supposed ability of Duraspine fibers to spring back and stay upright were materially overstated and misleading.  After receiving a complaint from a Duraspine Turf field customer in Pennsylvania about "layover" in a field (i.e., fibers laying down instead of staying upright), Gilman reminded FieldTurf executives that "All fields will layover regardless of the type of fiber used.  That is a fact.  This needs to be communicated to reps and clients."

118.    Likewise, FieldTurf was aware that the "spine" design (called the "geometry" of the fiber) was not appropriate for turf that would be under repeated, forceful compression from athletic and other uses.  Tensile and compressive forces occur inside any filament when it is forced to bend.  These forces become more extreme in a filament with a cross-section, like Duraspine, that is designed to resist bending.  Forced bending of a filament with these cross-section characteristics can easily result in failure due to mechanical degradation, i.e., fibrillation and disintegration of the turf fiber.  FieldTurf knew this was the case with the Duraspine Turf fibers.  In sum, the fiber "memory" qualities and design FieldTurf touted as making Duraspine Turf superior and more long-lasting than other products, in fact was an inherent defect in the product that stripped it of long-lasting resistance to wear and made it unsuitable for its ordinary and expected use as an athletic field.

119.    When FieldTurf named Joe Fields as CEO in March 2008, Ken Gilman again sought to engage FieldTurf upper management, stating "Irresponsible sales and marketing claims are made continuously that the product [Duraspine Turf] simply <u>cannot possibly technically deliver on</u>."  Gilman opined that the false representations "set[] us up for future claims, unhappy customers, lawsuits, etc."

120.    FieldTurf did not revise its sales and marketing claims, let alone pull the Duraspine Turf products from the market or tell any customers that the fields "cannot possibly technically" meet FieldTurf's claims.  Instead, in 2008 FieldTurf fired Ken Gilman—and doubled-down and signed another exclusive supply agreement for Duraspine with TenCate in or around July 2008.

121.    Notably, that same year, FieldTurf's sales of Duraspine Turf peaked, with 419 installations in the United States generating at least $168 million in sales for FieldTurf.

## H.    FieldTurf's "Finger-Coating" Method Did Not Adequately Secure the Fiber to the Backing

122.    In manufacturing infill turf fields, fibers are stitched or "tufted" into a backing material in rows to allow cleats to penetrate the infill material rather than the fiber on the surface of the field.  This spacing formula was intended to provide a better play experience.

123.    After fibers are tufted into the backing, polyurethane is applied to secure the fibers in place.  The purpose of the polyurethane coating is to prevent "tuft bind" issues.  Tuft bind is a problem when fibers pull out of the backing, and occurs when the coating (which serves as a secondary backing) does not sufficiently lock individual fibers in place.

124.    Tuft bind failures cause fibers to lay on top of the field like grass after a lawn has been mowed.

125.    Before FieldTurf began commercially manufacturing and selling Duraspine Turf fields, FieldTurf's then-Vice President of Manufacturing, Derek Bearden, recommended using an existing method of a full coating of polyurethane to cover the entire backing in the Duraspine Turf fields, and then adding punch holes between the rows of tufts to facilitate drainage.

126.    FieldTurf ignored Bearden's recommendation and, instead, chose to use a "finger-coating" method to apply the polyurethane.  This method applied polyurethane only to the back of each row of tufted fibers, leaving the rest of the backing material between the tuft rows entirely uncoated.

127.    The result was just what was expected:  Duraspine Turf fields experienced significant tuft bind failures because the finger-coating method was inadequate to secure the tufts in ordinary and expected use of the fields.

128.    After receiving several complaints about tuft bind issues in Duraspine Turf fields, Bearden again told FieldTurf management (specifically, CEO Gilman) that replacing the finger-coating method with the full coating alternative would "immediately make a significant difference."

129.    FieldTurf refused to adopt the alternative method and chose to continue using the finger-coating method, which—like the "inferior" Duraspine fiber—cost less.

130.    And, rather than fix the tuft bind problem, FieldTurf concealed the defect by manipulating test results.  FieldTurf's Senior Research and Development Project Manager, John Rodgers confirmed that FieldTurf routinely achieved passing scores for "tuft bind pull force" testing on Duraspine Turf products by "throwing out" the five lowest of the twenty pulls.  Mr. Rodgers stated "When one picks and chooses data, any theory can be proved, sometimes with a catastrophic result, for example."

131.    FieldTurf compounded its fraud, and inflicted additional injuries on customers, when it launched a new field product in 2012, the "Revolution Turf" fields.  The Revolution Turf fields used the new "Revolution" monofilament fiber created by FieldTurf in or around 2011, and FieldTurf began manufacturing and installing fields using the Revolution fiber instead of the Duraspine fiber ("Revolution Turf").

132.    The Revolution Turf suffers from at least the same attachment defects as Duraspine Turf (i.e., the tufts pull out due to the inferior and inadequate "finger-coating" one thread FieldTurf uniformly used in its monofilament turf fields).

## I.    FieldTurf Also Deceived Consumers About Infill and Safety Testing.

133.    The above were not the only lies and manipulations by FieldTurf.  The culture of deception at FieldTurf was rampant.

134.    Duraspine Turf field installation that FieldTurf represented in marketing materials and sales presentations as using 10 pounds of infill per square foot of turf in the installations actually used far less based on FieldTurf's instructions to its installers.

135.    An internal FieldTurf report confirmed that the "low infill phenomenon is real."

136.    Infill has a direct impact on the durability, safety, and performance of artificial turf systems.

137.    On information and belief, the under-filling increased the rate of premature degradation of fields.  When fields are not installed with the proper amount of infill, fibers will not stay erect, but will instead layover.  Layover exposes the fibers to more wear, resulting in accelerated degradation and failures in artificial turf fields.

138.    Further, FieldTurf knew that providing less infill per square foot than represented created a harder, sub-par playing surface, far from the "premium" product FieldTurf marketed

and Plaintiffs, class members, and, in many instances, taxpayers, paid for.  Nonetheless, FieldTurf billed (and was paid) for the promised materials and labor associated with the infill that customers did not receive.

139.    On information and belief, FieldTurf's deceptive practice with respect to providing less than the represented amount of infill was and is so pervasive that it began with turf products that preceded the Duraspine Turf fields (such as the slit film products) and continues to this day.

140.    Finally, FieldTurf also falsely touted allegedly "independent" safety studies in its marketing materials comparing artificial turf fields to natural grass.

141.    The first study cited in FieldTurf's marketing materials, "Incidence, Causes, and Severity of High School Football Injuries On FieldTurf Versus Natural Grass," was authored by Bill S. Barnhill, M.D., and Michael C. Meyers, Ph.D. and published in August 2004 in the American Journal of Sports Medicine (hereinafter referred to as the "2004 Study").

142.    The second study cited in FieldTurf's marketing materials, "Incidence, Mechanisms, and Severity of Game-Related College Football Injuries on FieldTurf Versus Natural Grass – a 3-Year Prospective Study," was authored solely by Michael C. Meyers, Ph.D. and published in the American Journal of Sports Medicine in 2010 (hereinafter the "2010 Study").

143.    In 2013, Dr. John Orchard published a paper in the British Journal of Sports Medicine alleging that both the 2004 Study and the 2010 Study were funded by FieldTurf and, therefore, were not "independent."

**J.      As Customer Complaints About Duraspine Mounted, FieldTurf Denied Its Knowledge of the Problem.**

144.      The inherent defects in Duraspine Turf's chemical composition, design, and tuft attachment were not apparent to the average customer.  FieldTurf knew, for example, that a field could be close to catastrophic failure mode, and, yet, have a visually good appearance.

145.      Nonetheless, in 2009 and 2010, FieldTurf received an "alarming number of complaints from customers" who purchased Duraspine Turf.  The customers uniformly "complained that the fiber on their field[s] is fading, splitting, thinning and ultimately disintegrating within two to three years of installation."[6]

146.      Plaintiffs here experienced similar premature degradation of their Duraspine Turf fields.  For example:

   a.  Levittown:  By 2013, the fibers on the Levittown fields were tearing and shredding, leading to degradation so complete that in many areas players and referees could not see the lines on the fields because the colored fibers had completely broken off above the black infill.  Coaches have had to move drills because of problem areas on the fields, and have had to limit practices to certain areas of the fields until repairs could be made.  On at least six occasions, referees or other officials threatened to cancel games because of the condition of the field and only agreed to hold the games upon assurances that repairs would be made before any subsequent games.

---

[6] *Summary of Results of Investigation Into Causes of Fiber Failure*, available at http://media.nj.com/ledgerupdates_impact/other/2016/11/15/FT%20Internal%20Investigation.pdf (last visited January 5, 2017).

<u>Newark</u>:  Likewise, as Newark's football coach at Malcolm X Shabazz High School described the Duraspine Turf field at that school, "You grab it and it rips. It rips like grass.  And it was really bad [in 2015], and we were almost talking about canceling games."  On information and belief, from the date of installation through 2016, more than fifty repairs were required on Newark's Shabazz Field alone.  Issues with the fields also have impaired Newark's ability to use them as athletic fields.

b.   <u>Fremont</u>:  FieldTurf also knew Fremont's Irvington Ballfield was deteriorating prematurely.  Results from January 26, 2011 impact attenuation testing—known as *g*-max testing—that FieldTurf commissioned for the Irvington Ballfield demonstrated significant fibrillation and test points that failed industry-accepted safety and quality standards, resulting in areas of the field not being suitable for normal use.  Despite having this information, FieldTurf did not disclose the deficient turf before Fremont reported problems with the Irvington Ballfield.  And even after Fremont contacted FieldTurf about issues with the Irvington Ballfield, FieldTurf denied that the field had any problems and assured Fremont that the deterioration was merely a function of normal wear and tear.  Not until January 2016, when the contractor who performed the testing informed Fremont of the 2011 test results, did Fremont learn that the field was failing prematurely.

147.   In response to customer complaints and known defects, FieldTurf engaged in a systematic campaign to deceive customers and avoid FieldTurf's own warranties by (a) not disclosing that FieldTurf knew the installed product was defective in composition and design, (b) not telling customers when FieldTurf's own representatives observed symptoms of field failure,

(c) minimizing field failures when customers actually observed it themselves, and (d) seeking to dissuade customers from enforcing their warranties.  Key to this was FieldTurf's decision to place responsibility for responding to customer complaints in the hands of its sales and marketing organization, i.e., the very people who misled customers into buying the defective Duraspine Turf fields in the first place.

148.   FieldTurf implemented a multi-faceted claims-handling process that was designed to avoid its obligations under the warranty and create an opportunity to sell its latest product at an additional charge to consumers.

149.   Step one in the process was to deny to the existence of any known defect. FieldTurf abused its discretion under the warranties and, relying on its industry expertise, took advantage of Plaintiffs and Class members' inability to detect field failures.  Thus, when customers complained to FieldTurf that their Duraspine Turf fields were experiencing issues, FieldTurf would cast the known defects as an anomaly or "normal wear and tear" or claim that the issues would improve with time.

150.   FieldTurf followed this denial with delay.  FieldTurf would advise consumers that, despite there being no issue requiring a repair or replacement, it would continue to monitor their fields for issues, and return for additional inspections in six to eight months.  By repeating this deny-and-delay cycle on each field, FieldTurf was able to avoid taking action until the warranty period expired.

151.   FieldTurf was aware, however, that it could not deny and delay taking any action on all fields.  For those fields with more demanding consumers, FieldTurf invented a product called "FiberGuard."  FiberGuard was a clear coat of paint that would be applied to the fiber in Duraspine Turf fields.  FieldTurf knew that FiberGuard did nothing to repair fibers that had

already degraded or fields that had already failed, and merely hoped that FiberGuard would slow the rate of premature deterioration and put defect claims outside the warranty period.

152.     Further, although FiberGuard was set to be applied to all Duraspine Turf fields, FieldTurf expedited the application on fields in high UV areas that had only one or two years left in the warranty period.  This was designed to buy FieldTurf a few extra years before Duraspine Turf fields completely, visibly failed and also put defect claims outside the warranty period.

153.     From coast to coast, numerous customers of FieldTurf fell victim to FieldTurf's deceptive and unfair business practices in processing warranty claims, relying on FieldTurf's assurances that their deterioration was normal wear and tear not subject to a warranty claim or considered defective.  Yet many of the Duraspine Turf fields that FieldTurf advised consumers were experiencing normal wear and tear were actually claimed to be defective by FieldTurf in the TenCate Litigation.

154.     Moreover, when FieldTurf actually replaced a field "at no cost" under the warranty, it only gave the customer more of the defective product.  For example, Valhalla High School in California purchased a defective Duraspine Turf field from FieldTurf in 2007, which began to fail within four years of installation.  FieldTurf replaced the defective Duraspine Turf field with more of the defective turf.  The replaced field has since failed again.  Valhalla High School is one of many financially-strapped FieldTurf customers across the country who was forced to take a second defective product from FieldTurf to avoid incurring further expense with FieldTurf.

155.     For those FieldTurf customers who refused to accept more of the same, defective product, FieldTurf has found another means of taking advantage, namely offering to replace the defective Duraspine Turf field with an "upgrade" field for an additional cost.  In some cases, the

upgrade was actually more of the Duraspine Turf.  For others, FieldTurf offered its new (but still defective) Revolution Turf product, which consisted of components developed entirely in-house at FieldTurf.

156.    Again, Plaintiffs here were victims of all of the above tactics.  For example:

157.    <u>Carteret</u>:  Carteret contacted FieldTurf regarding the premature degradation in April 2013.  Carteret's DuPont initially spoke with FieldTurf's DiPiazza and Andrew Schwartz to report a warranty claim for the defective fields.  Schwartz and DiPiazza informed DuPont that FieldTurf would need to conduct an inspection of each defective field.  Five months later, FieldTurf conducted a formal inspection of the defective fields for the warranty claims.

158.    More than a year passed before Carteret received any reliable information on the warranty claims, and that was only after DuPont sent a letter requesting a status update in October 2014.  A week later, FieldTurf advised DuPont that he must meet with Schwartz and DiPiazza to discuss options moving forward.  Thereafter, FieldTurf continued to stall.  Carteret's numerous requests for status updates were continually met with delays.

159.    Nearly two years after the initial call to FieldTurf, DiPiazza emailed DuPont apologizing for the delays and promising to ease Carteret's concerns: "Please trust that we will address your concerns. . . ."  DiPiazza's email was a hollow gesture.

160.    Despite three additional formal letters sent from Carteret to FieldTurf between October 2015 and May 2016, and multiple assurances from FieldTurf, no inspection had taken place to move the warranty claims forward.  Finally, in June 2016, Carteret received "personal apologies" from FieldTurf's sale representative Tess North.

161.    FieldTurf's stonewalling appears to have been an effort to allow the warranty period to expire.  Several months after Carteret heard from North, FieldTurf emailed three

proposals that would require Carteret to pay thousands of dollars in repair and replacement costs. To "help" Carteret "keep [its] costs down," FieldTurf offered the repair and replacement services at cost.

162.   <u>Hudson</u>:  On October 15, 2015, Hudson notified FieldTurf by e-mail that it had received complaints about the condition of two of its Duraspine Turf fields, explaining that upon inspection its maintenance crews were "stunned at how rapidly the fibers had deteriorated" and that "[t]he turf in some areas were worn right down to the fabric backing.  No fiber at all." FieldTurf never responded.

163.   In 2014, Hudson County representative, Joe Cecchini, complained to FieldTurf representative, Perry DiPiazza, about the deteriorating condition of all the Duraspine Turf fields. In response, FieldTurf put Hudson County in touch with the Landtek Group Inc. with which the county contracted to perform maintenance work (specifically deep grooming and testing) to all the fields, on three different instances, at a total cost of over $11,000.00 to Hudson County.  In 2016, Hudson County paid FieldTurf $330,000 to remove and replace two of Hudson County's Duraspine Turf fields with FieldTurf Class HD 2" synthetic fields.

164.   <u>Fremont</u>:  In March 2011, after Fremont representatives raised concerns about the field's condition, Fremont contacted FieldTurf employee Andrew Rowley.  FieldTurf representatives, including Mr. Rowley, then visited the Irvington Ballfield, accompanied by Fremont employees.  The FieldTurf representatives offered to repair the line and number deterioration, but they denied that field deterioration was unusual or excessive.  FieldTurf instead advised Fremont that the field was in normal condition and had enough remaining blades, assuring Fremont that the loss of fiber amounted to normal wear and tear and was no cause for concern.

165.    By 2015, Fremont's Irvington Ballfield had deteriorated and was in need of replacement.  Fremont replaced the field in May 2017.

166.    <u>Levittown</u>:  Levittown's fields required dozens of repairs.  FieldTurf rejected a number of warranty claims for these repairs, in which cases the expenses were paid by Levittown.  In late 2016, Levittown determined that the fields needed to be replaced as soon as possible.  In early 2017, the board of education held special meetings to prepare and approve plans to replace the fields, at a cost of more than $2 million.

167.    <u>Neshannock</u>:  Similarly, in or around July 2015, Neshannock noticed that parts of its FieldTurf fields were breaking, splitting and thinning of the individual fibers characterized by fibrillation, fiber breakage and pile layover.  Neshannock had spent approximately $3,500 out of pocket to repair fibers that were lying down and sink holes that had formed on the fields.  In or around August 2015, FieldTurf sent a technician to inspect Neshannock's fields.  At that time, Neshannock informed FieldTurf that it was concerned about the problem conditions it noticed on its fields, as stated above.  In response, the FieldTurf technician informed Neshannock that the complained of conditions would be remedied by grooming the fields, which according to FieldTurf, would rejuvenate the fibers and lift them back up.  A FieldTurf technician groomed Neshannock's fields in or around August 2015.  But the very same problems returned four weeks later (in or around September 2015).

168.    <u>Newark</u>:  By email dated August 5, 2015, FieldTurf denied warranty coverage for any future repairs to Newark's Shabazz High and Schools Stadium fields, on the basis that Newark had not performed sufficient maintenance on the fields inasmuch as Newark had not retained Landtek to perform the maintenance.

169.     In 2015 and 2016 alone, Newark Public Schools incurred more than $50,000 in increased maintenance and repair costs.  The increased maintenance and repairs were performed by LandTek, but have not been covered by FieldTurf under the warranty provided with the fields.

170.     <u>Santa Ynez</u>:  In or about May 2011, in response to complaints from Santa Ynez that its field was prematurely deteriorating, Tim Coury and Martin Olinger of FieldTurf conducted a site inspection of the field at Santa Ynez.  During that inspection, Coury and Olinger told Santa Ynez's Athletic Director, Ken Fredrickson, that while FieldTurf had experienced some issues at other schools due to the defective Duraspine Turf, FieldTurf would replace Santa Ynez's field with an improved version of Duraspine called "Duraspine Pro" at no cost to the District.  However, in a subsequent letter to Santa Ynez, dated May 11, 2011, Martin Olinger, Senior V.P. of Sales for FieldTurf, reneged on that offer and told Santa Ynez it had only three options for the replacement of the defective field: (1) receive more of the same Duraspine Turf (which FieldTurf knew was defective); (2) receive Duraspine Pro for a $20,000 upcharge (which FieldTurf also knew was defective); or (3) receive Duraspine Pro or Revolution with a new eight year warranty for $100,000 (again, knowing Duraspine Pro also was defective and, on information and belief, knowing Revolution suffered from some of the same defects, such as defective tuft bind).

171.     On June 20, 2011, Mr. Olinger sent another letter to Santa Ynez, which again changed the terms of FieldTurf's replacement offer and stated, "Based upon pending litigation with the manufacturer of the earlier version of Duraspine used on your current field, we must revise our previous offer and options for replacement…."  This letter only offered to replace Santa Ynez 's defective field with either an improved version of the original Duraspine Turf

product, or replace it with "FieldTurf Revolution", which was FieldTurf's new proprietary turf product which it manufactured itself.  The option to replace Santa Ynez 's defective field with the new Revolution product was offered at a "discounted" $125,000 "upcharge" according to this letter.  Again, FieldTurf did not disclose to the District that the "no charge" option involved using the Duraspine Turf, which FieldTurf secretly knew was defective.

172.    On information and belief, the turf used by FieldTurf to replace the Santa Ynez field in 2012 was the same Duraspine Turf product FieldTurf knew was defective.  Among other things, FieldTurf had sued the supplier of the Duraspine Turf two months earlier alleging the Duraspine Turf was defective and would prematurely deteriorate.  FieldTurf concealed these material facts from Santa Ynez.  The replacement turf installed by FieldTurf at Santa Ynez in 2012 was defective, has prematurely failed and now must be completely removed and replaced with a non-defective turf field at substantial expense to Santa Ynez.

173.    Further, the representations made by Mr. Olinger in his May 11, 2011 letter that Duraspine Turf offered as the replacement product included "improvements that have been made to the Duraspine system" were false.  Mr. Olinger's June 20, 2011 letter also falsely represented that the replacement option selected by Santa Ynez would include the "Original Duraspine design but with improved polymer."  Had Santa Ynez known of the falsity of these representations, it would never have accepted the replacement.  Instead, Santa Ynez would have insisted that FieldTurf use a non-defective turf to replace the Santa Ynez field at FieldTurf's sole cost and expense.

174.    Other FieldTurf customers experienced the same mistreatment.

175.    For example, when the Palisades School District in suburban Philadelphia, Pennsylvania complained of defective Duraspine Turf in 2012, FieldTurf offered an upgrade to

an entirely new product – at a cost to the school district of $410,611.00.  When school officials

balked, FieldTurf offered a replacement for $325,000.00 – in direct conflict with the express

warranty's promise of a no-cost repair.

176.     Likewise, when the Collinsville, Oklahoma School District sought a replacement

for its defective Duraspine Turf, FieldTurf offered to replace it for around $250,000.00, again in

violation of the warranty.

177.     And, when the Duraspine Turf field installed in 2009 at the Municipal Stadium in

Daytona Beach, Florida began deteriorating in 2012, FieldTurf offered to replace that failed

Duraspine Turf field "at cost" for $300,000.  On information and belief, the replacement cost is

only $200,000, providing FieldTurf with a $100,000 windfall.

178.     In short, FieldTurf's campaign of deception and abuse was directed to all

consumers of its Duraspine Turf products, not only the Plaintiffs here.  Moreover, because so

many of those consumers were public and/or taxpayer funded entities, FieldTurf's wrongful acts

directly impacted the public interest in honest dealings with such consumers and in ensuring that

public funds and taxpayer dollars are not wasted on defective, inferior, and fraudulent goods.

**K.     FieldTurf Sued TenCate and Specifically Claimed That Duraspine Fiber Was
        "Defective" and "Inferior"**

179.     On March 1, 2011, FieldTurf sued TenCate, the successor to Mattex.

Mattex/Tencate supplied the monofilament fiber used in all of the Duraspine Turf fields

FieldTurf sold and installed to Plaintiffs and the Class Members.

180.     In support of its own claims against Tencate/Mattex, FieldTurf was forced to

admit what it failed and refused to tell its own customers, namely that the fiber used to

manufacture Duraspine Turf fields was "inferior" and "defective" in its chemical composition

and design.  Indeed, FieldTurf claimed that representations Tencate/Mattex made to FieldTurf

about the "suitability and superiority" of the fiber—materially identical to the representations FieldTurf made to the Plaintiffs and Class members here—were false, unsupported, and misleading.

181.    For example, FieldTurf admitted that the fiber supplied by Mattex/TenCate was a "cheap[]," "defective," "less durable fiber" that lacked "an adequate amount of the ultraviolet ("UV") stabilizers required to prevent loss of tensile strength, increasing its premature disintegration . . . ."  FieldTurf further admitted that the defects in the fiber were due to the "inferior" materials Mattex/Tencate used in its recipe for the fiber and that Mattex/TenCate did not use "the necessary type, quantity or dispersion of UV stabilizers required for the fiber to maintain its strength under prolonged UV exposure."  FieldTurf further stated that Mattex/Tencate used a manufacturing process that diminished the fiber's quality.

182.    FieldTurf itself said that the defective nature of the fiber was supported by expert scientific analysis.  FieldTurf's own experts' testing revealed the fiber "exhibited premature and significant signs of both physical and chemical degradation" due to the use of a "C4-based LLDPE" that had "poor thermal stability" and created a "weakened . . . matrix" that contributed to the fiber's "premature degradation, especially in high temperature, high UV installations." FieldTurf's own experts also concluded that the Tencate/Mattex fiber had inadequate levels of UV protection in its chemical composition.

183.    FieldTurf's experts further opined that the "breaking, splitting, thinning and overall deterioration of the [Duraspine Turf] fiber in a number of the FieldTurf, Duraspine, and Prestige fields" confirmed the defective nature of the fiber, including with respect to tensile strength and UV stability.

184.    FieldTurf's CEO, Eric Daliere, testified that FieldTurf continued to sell, install, and profit from Duraspine Turf fields despite knowing they were defective.

185.    The upshot of all this was that FieldTurf itself said that "representations that [the] monofilament artificial grass fiber was superior" to other fibers were materially false, as were representations that the fiber was suitable for use in products such as FieldTurf's Duraspine Turf fields

**L.    The 2016 Exposé by NJ Advance Media Begins to Reveal the Truth.**

186.    In December 2016, NJ Advance Media published the shocking results of its thorough and searching investigation into the defective Duraspine Turf fields, and Defendants' elaborate and well-concealed fraud.7  Indeed, it took NJ Advance Media six months of in-depth investigation, analyzing 5,000 pages of production from 40 document requests, interviewing dozens of coaches, officials, and current and former FieldTurf employees, examining 50 fields in New Jersey, and commissioning the services of the University of Michigan's Breaker Space Lab to test turf fibers from three Duraspine Turf fields in New Jersey to uncover the breadth of the fraudulent scheme

187.    The Breaker Space Lab tests confirmed the tensile strength of the turf to be well below industry standards, and FieldTurf's own standards.  According to Breaker Space Lab, new fibers should withstand at least 3.6 lbs. of force and lose no more than 50% of tensile strength after eight years, i.e., 1.8 lbs. of force.  The lab tested fibers collected from low-traffic areas of three Duraspine Turf fields installed in New Jersey in 2008.  All three samples showed tensile strength well below 1.8 lbs. of force.

---

[7]    *Id.*

188.   The NJ Advance Media investigation also concluded:

- FieldTurf knew its Duraspine Turf fields were defective.  For most of the time they sold the fields, which cost at least $300,000 to $500,000 each, executives were aware the turf was deteriorating faster than expected and might not last a decade or more as promised.

- They misled their customers.  Despite candid, internal email discussions about their overblown sales pitches, executives never changed their marketing campaign for Duraspine Turf fields.

- They have and continue to keep quiet about their lies.  From the time fields began to fail in 2006 until today, executives have never told most customers about Duraspine Turf's problems or how to identify signs it was prematurely falling apart.

- FieldTurf officials slow-footed warranty claims and told customers the deterioration was normal, or that their fields needed more maintenance, or the problems would get better.  Further, to this day, in testimony before governmental bodies, and in publicly released statements, FieldTurf continues to publicly deny there was a widespread defect with its Duraspine Turf products.

## M.   FieldTurf's Fraud and Deception Was Comprehensive, Widespread, and Intentionally Concealed From the Public

189.   The full extent of FieldTurf's massive deception is, as yet, known only to FieldTurf.  However, as detailed above, the known facts confirm that its affirmative misrepresentations and omissions of material fact included at least the following:

| What FieldTurf Represented | The Truth |
| --- | --- |
| Duraspine would last longer than slit film products. | Duraspine fibers were naturally prone to detach and shed more than slit film fibers and FieldTurf's "finger-coating" adhesion method exacerbated the "tuft bind" defect. |
| Duraspine Turf fields had an expected lifespan of more than 10 years. | Fields were expected to deteriorate within the first 5-6 years. |
| Duraspine Turf fields were installed using 10 pounds of infill per square foot of turf. | FieldTurf's own "recipe" and instructions for installation led to use of only 8-9 pounds of infill per square foot of turf. |

| | |
|---|---|
| Duraspine was "breakthrough" technology superior to existing and competing products, such as slit film. | Duraspine used an "inferior" and "defective" fiber that degraded prematurely and fell apart more readily than slit film. |
| Duraspine had "unmatched" durability backed up by testing. | Duraspine performed "poorly" on industry-standard tests, FieldTurf's own testing was not standard and not a reliable indicator of actual product lifespan, and testing showed Duraspine fiber had only 1/3 the expected wear and tear duration. |
| Duraspine had "unmatched" fiber memory, such that it would spring back after being compressed in athletic play. | Duraspine Turf fields had no appreciable resistance to "layover" and the fibers would fall similar to other products. |
| Duraspine had adequate UV protection for a field marketed for outdoor, year-round use throughout the country. | The raw materials used to manufacture the Duraspine fiber lacked the required UV resistant components. |
| The quality and suitability of Duraspine Turf fields were backed up by warranties. | FieldTurf actively sought to avoid honoring its warranties, including misleading customers about the fact, nature, and extent of the defects in their fields, failing to tell customers of symptoms of field failure observed by FieldTurf personnel, using complaints as a sales opportunity to induce customers to buy new fields, and slow-footing responses to complaints in an attempt to run-out-the-clock on the warranties FieldTurf provided. |
| Duraspine Turf was free from defects in the material and workmanship. | The fiber was inferior and defective, made from cheap materials lacking the required chemical and physical durability and the inherent weaknesses in the monofilament fiber were exacerbated by FieldTurf's uniformly poor tuft binding technique and its "recipe" for less than 10 lbs. of infill per square foot. |
| Rapid deterioration and inferior performance of the Duraspine Turf was the result of improper maintenance or other fault of | The product "could not and would not" perform in the manner, nor for as long, as |

| Plaintiffs and Class members and not FieldTurf's responsibility. | FieldTurf represented, promised, and warrantied. |
|---|---|

190. As detailed above, FieldTurf had knowledge of the defects in the Duraspine Turf fields and the premature degradation in the fields caused as a result thereof by: (1) NJ Advance Media's publication of its findings resulting from its six-month investigation into the defective Duraspine Turf fields; (2) the numerous legal complaints filed against FieldTurf related to the defective Duraspine Turf fields; (3) the warranty claims made by certain of the Plaintiffs within a reasonable amount of time after their defective Duraspine Turf fields prematurely deteriorated before the expiration of the eight-year warranty; (4) the investigation into FieldTurf's conduct by the New Jersey state legislature, including a hearing before the NJ Senate Commerce Committee in which FieldTurf's CEO, Eric Daliere, and others, testified; (5) FieldTurf's numerous internal investigations concerning the defective Duraspine Turf fields; and (6) the litigation initiated by FieldTurf against one of its Duraspine Field raw material suppliers, alleging that the supplier provided defective raw materials and caused Duraspine Turf fields to fail.

## V.     CLASS ALLEGATIONS

191. Plaintiffs bring this action against FieldTurf on behalf of themselves, and as a class action, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following class (the "Nationwide Class"):

> All persons or entities in the United States and its territories who purchased one or more Duraspine Turf fields for their own use and not for resale.  Excluded from the Class are FieldTurf, or its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.  Also excluded from the Class are authorized Duraspine Turf field installers.

192.    In addition to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure Rule 23(c)(5), Plaintiffs seek to represent the following State Classes or subclasses, as well as any subclasses or issue classes as Plaintiffs may propose and/or the Court may designate at the time of class certification:

**Alabama State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Alabama or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Alabama.

**Alaska State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Alaska or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Alaska.

**Arizona State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Arizona or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Arizona.

**Arkansas State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Arkansas or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Arkansas.

**California State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within California or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in California.

**Colorado State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Colorado or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Colorado.

**Connecticut State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Connecticut or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Connecticut.

**Delaware State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Delaware or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Delaware.

**District of Columbia Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within District of Columbia or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in the District of Columbia.

**Florida State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Florida or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Florida

**Georgia State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Georgia or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Georgia.

**Idaho State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Idaho or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Idaho.

**Illinois State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Illinois or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Illinois.

**Indiana State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Indiana or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Indiana.

**Iowa State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Iowa or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Iowa.

**Kansas State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Kansas or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Kansas.

**Kentucky State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Kentucky or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Kentucky.

**Louisiana State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Louisiana or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Louisiana.

**Maine State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Maine or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Maine.

**Maryland State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Maryland or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Maryland.

**Massachusetts State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Massachusetts or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Massachusetts.

**Michigan State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Michigan or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Michigan.

**Minnesota State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Minnesota or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Minnesota.

**Missouri State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Missouri or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Missouri.

**Montana State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Montana or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Montana.

**Nebraska State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Nebraska or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Nebraska.

**Nevada State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Nevada or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Nevada.

**New Hampshire State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within New Hampshire or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in New Hampshire.

**New Jersey State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within New Jersey or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in New Jersey.

**New Mexico State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within New Mexico or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in New Mexico.

**New York State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within New York or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in New York.

**North Carolina State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within North Carolina or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in North Carolina.

**Ohio State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Ohio or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Ohio.

**Oklahoma State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Oklahoma or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Oklahoma.

**Oregon State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Oregon or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Oregon.

**Pennsylvania State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Pennsylvania or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Pennsylvania.

**Rhode Island State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Rhode Island or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Rhode Island.

**South Carolina State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within South Carolina or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in South Carolina.

**South Dakota State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within South Dakota or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in South Dakota.

**Tennessee State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Tennessee or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Tennessee.

**Texas State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Texas or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Texas.

**Utah State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Utah or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Utah.

**Vermont State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Vermont or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Vermont.

**Virginia State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Virginia or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Virginia.

**Washington State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Washington or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Washington.

**West Virginia State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within West Virginia or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in West Virginia.

**Wisconsin State Class:**

All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within Wisconsin or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in Wisconsin.

193.    Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

194.    The proposed classes exceed 1,400 purchasers.  As such, joinder would be impracticable.

195.    The class members are ascertainable, as the names and addresses of all class members can be identified in FieldTurf's business records.

196.    Numerous questions of law or fact arise from FieldTurf's conduct that are common to each class, including, but not limited to:

    a.    Whether Duraspine Turf is defective under normal use and within expected useful lifespan, as advertised by FieldTurf;

    b.    Whether and when FieldTurf had knowledge of the defects in Duraspine Turf;

    c.    Whether FieldTurf concealed defects in Duraspine Turf;

d.  Whether FieldTurf had a duty to disclose material facts to Plaintiffs and the Classes regarding defects in the Duraspine Turf;

e.  Whether FieldTurf's omissions regarding the Duraspine Turf were likely to deceive Plaintiffs and the Classes;

f.  Whether FieldTurf's alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense, false promise and misrepresentation within the meaning of the applicable state consumer fraud statutes;

g.  Whether FieldTurf has been unjustly enriched under applicable state laws;

h.  Whether FieldTurf has violated its express warranties to Plaintiffs and the Classes;

i.  Whether FieldTurf has violated the implied warranty of merchantability under applicable state law;

j.  Whether FieldTurf actively concealed the Duraspine Turf defect in order to maximize profits to the detriment of Plaintiffs and the Classes;

k.  Whether Plaintiffs and the Class members are entitled to damages, restitution, disgorgement, equitable relief, or other relief;

l.  The amount and nature of such relief to be awarded to Plaintiffs and the Classes; and

m.  Whether FieldTurf's bad faith and fraudulent conduct, including concealment of defects in the Duraspine Turf, toll any applicable statutes of limitations.

These and other questions are common to the Classes and predominate over any questions affecting only individual class members.

197.    Plaintiffs' claims are typical of the Classes in that Plaintiffs received the same misrepresentations and warranties from FieldTurf and were subject to the same omissions of material fact as all other class members.  Plaintiffs and all class members were damaged by the same wrongful conduct of FieldTurf, and the relief sought is common to the Class.

198.    Plaintiffs will fairly and adequately represent the interests of the Classes in that each has no conflict with any other members of the Class.  Furthermore, Plaintiffs have retained competent counsel experienced in product defect, fraud, class action and other complex commercial litigation.

199.    This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution as a class action will eliminate the possibility of repetitive litigation.  There will be no material difficulty in the management of this action as a class action.

200.    The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for FieldTurf.

## VI.    TOLLING OF STATUTE OF LIMITIONS

### A.    Discovery Rule

201.    Plaintiffs and the Class members did not discover, and could not have discovered through the exercise of reasonable diligence, that FieldTurf had misrepresented the superior quality, performance, and durability of the Duraspine Turf fields and omitted material facts regarding the defective Duraspine Turf product.

202.     Emails between FieldTurf employees and officers show that FieldTurf was aware of the defects when it marketed, sold, and installed Duraspine Turf fields.  Among other things, FieldTurf knew that Duraspine Turf:

a.  Was made with defective fiber that lacked durability and resistance to wear;

b.  Had a defective fiber design that would lead to premature degradation;

c.  Did not have anywhere near a life-span expected for such a field, let alone the 10 plus years FieldTurf touted;

d.  Failed industry standard tests for wear and tensile strength;

e.  Was manufactured without adequate UV stabilizers required to prevent loss of tensile strength;

f.  Showed very high and inconsistent shrinkage rates, which reflected the poor thermal stability of the fiber;

g.  Did not have superior fiber "memory" to spring back to an upright position after compression, but would, instead, "fall" or "layover" like most artificial grass;

h.  Had poor "tuft bind" due to the inherent properties of monofilament fibers and FieldTurf's decision to use a "finger-coating" method to apply adhesive to the product;

i.  Had an infill recipe that called for less than the full 10 lbs./square foot of infill FieldTurf represented and promised;

j.  Exhibited premature and significant signs of both physical and chemical degradation; and

k.  Was not free from visual defects and defects in materials and workmanship.

203.    Plaintiff and Class members had no way of knowing about the defects in Duraspine Turf and the other information concealed by FieldTurf.  FieldTurf systematically lied to Plaintiff and Class Members concerning the qualities of Duraspine Turf.  When problems were discovered, FieldTurf claimed there was no defect, and provided other reasons for the rapid deterioration in FieldTurf's products, like poor maintenance.  In addition, FieldTurf advised Plaintiff and Class Members that over time, the problems they were experiencing, would diminish.

204.    Further, FieldTurf has repeatedly and consistently misled Plaintiff and the Class by engaging in extensive misdirection towards the Plaintiff and the class.  FieldTurf repeatedly represented that to the extent any customers had experienced more rapid deterioration in their field than promised, the problem related only to those customers in "high UV" areas. FieldTurf's CEO, Eric Daliere, specifically said the New Jersey was not a "high UV" area, therefore suggesting that Duraspine Turf fields in New Jersey were not subject to any known defects.

205.    In addition, internally FieldTurf acknowledged that the Duraspine Turf defect may not be visibly evident to a consumer until several years after installation.  For example, in an internal email, a FieldTurf executive: "[Duraspine] is nowhere near as robust or resilient as we initially thought and probably will not last that much longer than a high quality slit-film yarn…. In all likelihood in years 5 and 6 these Duraspine Turf fields will be matted down and fibrillating pretty heavily…. Our marketing claims and sales pitches need to reflect this reality."

206.    In at least one instance, FieldTurf management even sought to destroy material evidence of its fraud (by trying to "zap" damning emails) in order to prevent customers and the public from learning the truth about the defective Duraspine Turf.  Indeed, it took NJ Advance

Media six months of in-depth investigation, analyzing 5,000 pages of production from 40 document requests, interviewing dozens of coaches, officials, and current and former FieldTurf employees, examining 50 fields in New Jersey, and commissioning the services of an independent testing laboratory, the University of Michigan's Breaker Space Lab, to test turf fibers from three different Duraspine Turf fields in New Jersey even to begin to uncover the breadth of FieldTurf's fraudulent scheme.

207.    Even now, FieldTurf stonewalls and denies the very facts it admitted in its own lawsuit against TenCate: that, at a minimum, the fiber used in the Duraspine Turf fields was "defective" and "inferior" in its chemical composition and design.  Requests from government officials to open federal and state investigations into the scheme are pending, investigations which could reveal even more deceit that has yet to be discovered.

208.    Plaintiffs and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that FieldTurf knew that its products were defective, nor would a reasonable and diligent investigation have disclosed that FieldTurf had information in its possession about the existence of defects and that FieldTurf opted to conceal, and still conceals, information about the defect.

209.    Within the period of any applicable statutes of limitation, Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that FieldTurf was concealing defects in its Duraspine Turf products.  Plaintiffs and Class members had no realistic ability to discover the omissions or fraudulent nature of the misrepresentations until at least December 2016, when NJ Advance Media published the results of its investigation.

210.    Any statute of limitations otherwise applicable to any claims asserted herein have been tolled by operation of the discovery rule.[8]

**B.    Fraudulent Concealment**

211.    All applicable statute of limitations have also been tolled by FieldTurf's knowing, active, and ongoing fraudulent concealment of the facts alleged herein throughout the period relevant to this action and through today.

212.    FieldTurf knew Duraspine Turf was defective each time it sold and installed a field.  It further knew that the defects in the product would not be evident to a buyer, at least until years after installation and that buyers reasonably relied on FieldTurf's superior technical knowledge and claimed "testing" of the products it was selling.  Further, FieldTurf intentionally concealed from, or failed to notify, Plaintiffs, Class members, and the public of the defective product, and the true quality, performance, and durability of the Duraspine Turf fields. Incredibly, instead of telling the truth about the inferior, low-performing Duraspine Turf, FieldTurf falsely represented that the "revolutionary" Duraspine Turf was superior in quality to all other products on the market with unmatched performance, durability, and far more resistant to UV and foot traffic.

213.    FieldTurf knowingly manufactured, marketed, sold, and installed Duraspine Turf fields well after it knew, or had reason to know, the fields were defective in their composition, design, engineering, and installation, and yet FieldTurf never amended or updated its marketing, promotional, or sales material used universally by FieldTurf and provided to Plaintiffs and Class members.

---

[8] Any applicable statutes of limitations also have been equitably tolled by the filing of prior class action complaints.

214.    FieldTurf's fraudulent concealment was uniform across all Class members; FieldTurf concealed from everyone the true nature of the defect in the Duraspine Turf, as evinced by its desire to destroy material evidence of its fraud.

## C.    Estoppel

215.    FieldTurf was under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Duraspine Turf fields, including the character, quality, and nature of its defective component fibers.  Instead, FieldTurf actively concealed the true character, quality, and nature of the Duraspine Turf fields, knowingly made misrepresentations about the quality, reliability, durability, characteristics, and performance of the Duraspine Turf fields, and omitted material information in its marketing and advertisements, in its contracts and warranty certificates, and in its communications with Plaintiffs and Class members.

216.    Among other things, FieldTurf reassured Plaintiffs and Class members that the problems that they were having with the low-performing turf were not related to any defect in the Duraspine Turf or the fault of FieldTurf.  FieldTurf blamed the victims of its fraud and sought to delay, suppress, and disavow warranty claims by falsely representing the degradation of the Duraspine Turf was the result of Plaintiffs' and Class members' improper maintenance or other fault of the Plaintiffs and Class members.  FieldTurf also advised Plaintiffs and Class members that the problems and low-performance of the Duraspine Turf would resolve over time, despite knowing the defect manifested at the manufacturing stage and the Duraspine Turf would only deteriorate further.  All of these were lies.

217. FieldTurf's fraudulent concealment was uniform across all Class members, and Plaintiffs and Class members reasonably relied upon FieldTurf's knowing and affirmative misrepresentations and/or active concealment of these facts.

218. Based on the foregoing, FieldTurf is estopped from relying on any statute of limitations in defense of this action.

## VII.  CAUSES OF ACTION

A. **Claims Brought on Behalf of the Nationwide Class (or, in the alternative, each State Class).**

### COUNT I

### FRAUD

219. Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

220. Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Classes under the common law of fraud, which is materially uniform in all states.  In the alternative, Plaintiffs bring this claim on behalf of each state subclass under the law of each state in which Plaintiffs and class members purchased the Duraspine Turf fields.

221. As described above, Defendants defrauded Plaintiffs and Class members by knowingly and intentionally misrepresenting to them and to the public at large that Duraspine Turf had superior composition, design, and quality, with "unmatched" fiber memory that minimized fibers laying down and matting, and "unmatched" durability such that fields had a lifespan of 10+ years due to allegedly superior resistance to UV and to foot traffic.

222. As described above, Defendants carried out their fraudulent and deceptive conduct through affirmative misrepresentations, omissions, suppressions, and concealments of material fact to Plaintiffs and the Class Members, as well as to the public at large.

223.     Defendants' intentional and material misrepresentations included, among other things, its advertising, marketing materials and messages, and other standardized statements directed and provided to Plaintiffs and the Class Members.  As detailed above, among other things, Defendants fraudulently made the following misrepresentations of material fact:

    a.   Representing to Plaintiffs and Class members that the Duraspine Turf had unmatched durability that was far more resistant to wear and tear than anything on the market;

    b.   Representing to Plaintiffs and Class members that the Duraspine Turf was designed to stand up after repeated usage like real grass and thus resist matting;

    c.   Representing to Plaintiffs and Class members that the Duraspine Turf was far more resistant to UV and foot traffic, the two main enemies of any turf system;

    d.   Representing to Plaintiffs and Class members that the Duraspine Turf was stronger than the tape filaments;

    e.   Representing to Plaintiffs and Class members that, despite the higher upfront cost, the Duraspine Turf will be cheaper in the long-term since the installations will not require replacement as often as anything else on the market;

    f.   Representing to Plaintiffs and Class members that the Duraspine Turf was free from visual defects and defects in the material and workmanship; and

    g.   Representing to Plaintiffs and Class members that the rapid deterioration and inferior low-performance of the Duraspine Turf was result of improper maintenance or other fault of Plaintiffs and Class members and not the responsibility of Defendants.

224. These representations were false, as detailed above. Defendants knew that the representations were false and acted with knowledge of their falsity intentionally to induce Plaintiffs and Class members to buy Duraspine Turf fields, as well as avoid Defendants' warranty obligations, and achieve windfall profits at the expense of Plaintiffs and all Class members.

225. Plaintiffs and Class members had no reasonable means of knowing that Defendants' representations were false and misleading.

226. Defendants' actions constitute actual fraud and deceit because Defendants did the following with the intent to deceive Plaintiffs and Class member and to induce them to enter into their contracts:

    a. Suggesting that Duraspine Turf was far superior to anything on the market with unmatched performance and durability, and far more resistant to UV and foot traffic, even though it knew this to be not true;

    b. Positively asserting that Duraspine Turf was far superior to anything on the market with unmatched performance and durability, and far more resistant to UV and foot traffic, in a manner not warranted by the information available to Defendants; and

    c. Promising to deliver installations that would double the useful life of other products on the market and save Plaintiffs and Class members substantial sums by not having to replace Duraspine Turf as often, with no intention of so doing.

227. Defendants' misrepresentations were material in that they would affect a reasonable consumer's decision to purchase Duraspine Turf fields and/or file a warranty claim. Plaintiffs and Class members paid a premium for Duraspine Turf fields precisely because they

purportedly offered superior quality and performance than anything on the market.  Whether Defendants' Duraspine Turf fields were defective would have been an important factor in Plaintiffs' and the class members' decisions to purchase or obtain Duraspine Turf fields.  The fields were expensive and would be used by members of the public.  Plaintiffs and the Class members trusted Defendants not to sell them fields that were defective.

228.     Defendants' intentionally deceptive conduct induced Plaintiffs and Class members to purchase Duraspine Turf fields and resulted in harm and damage to them.

229.     Plaintiffs believed and relied to their detriment upon Defendants' affirmative misrepresentations.  Class members are presumed to have believed and relied upon Defendants' misrepresentations because those facts are material to a reasonable consumer's decision to purchase Duraspine Turf fields.

230.     As a result of Defendants' inducements, Plaintiffs and Class members sustained actual damages including but not limited to receiving a product that did not perform as promised and not receiving the benefit of the bargain of their Duraspine Turf purchases.  If Plaintiffs and Class members had known about the defect, they would not have purchased Duraspine Turf fields or would have paid significantly less for them.  Defendants are therefore liable to Plaintiffs and Class members in an amount to be proven at trial.

231.     Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class members' rights and interests.  Defendants' conduct thus warrants an assessment of punitive damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## COUNT II

## FRAUDULENT CONCEALMENT

232.     Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

233.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, which is materially uniform in all states.  In the alternative, Plaintiffs bring this claim on behalf of each state subclass under the law of each state in which Plaintiffs and class members purchased Duraspine Turf fields.

234.     Defendants fraudulently concealed and suppressed material facts regarding the defective Duraspine Turf fields.  Despite advertising these products as having a 10-plus-year lifespan, Defendant knew when it marketed, sold, and installed the fields that Duraspine Turf fields were inferior in composition and design and did not have the superior qualities of UV and wear resistance and fiber memory Defendants represented, nor the lifespan Defendants claimed. Defendants failed to disclose these facts to consumers at the time they marketed, sold, and installed the fields.  Defendants knowingly and intentionally engaged in this concealment in order to boost sales and revenues, maintain their competitive edge in the artificial turf market, and obtain windfall profits.

235.     Plaintiffs and class members had no reasonable means of knowing that Defendants' representations were false and misleading, or that Defendants had omitted to disclose material details relating to the fields.  Plaintiffs and class members did not and could not reasonably discover Defendants' concealment on their own.

236.     Defendants had a duty to disclose, rather than conceal and suppress, the full scope and extent of the defects in its Duraspine Turf fields because:

a.  Defendants had exclusive or far superior knowledge of the defect in Duraspine Turf fields and concealment thereof;

b.  The details regarding the defect in Duraspine Turf fields and concealment thereof were known and/or accessible only to Defendants;

c.  Defendants knew Plaintiffs and Class members did not know about the defect in Duraspine Turf fields and concealment thereof and that the untrained observer would not be able to detect early symptoms of the inherent defects in Duraspine Turf fields; and

d.  Defendants made representations and assurances about the qualities of Duraspine Turf fields, including statements about its superior performance and abilities that were misleading, deceptive, and incomplete without the disclosure of the fact that Duraspine Turf fields were not designed, manufactured, or installed to perform as promised.

237.   These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase Duraspine Turf fields, and because they substantially reduced the value of Duraspine Turf fields that Plaintiffs and class members purchased.  Whether Defendants' Duraspine Turf fields were defective would have been an important factor in Plaintiffs' and the class members' decisions to purchase or obtain Duraspine Turf fields.  The fields were expensive and would be used by members of the public.  Plaintiffs and the class members trusted Defendants not to sell them products that were defective.

238.   Defendants intentionally and actively concealed and suppressed these material facts to falsely assure consumers that their Duraspine Turf fields were free from defects, as represented by Defendants and as reasonably expected by consumers.

239.    Defendants intentionally and actively concealed and suppressed these material facts, in whole or in part, to protect their profits, avoid warranty replacements, and disavow responsibility, which would impair Defendants' image, cost them money, and undermine their competitiveness within the artificial turf industry.

240.    Plaintiffs and the class members were unaware of these omitted material facts and would have paid less for Duraspine Turf fields, or would not have purchased them at all, if they had known of the concealed and suppressed facts.  Plaintiffs and the class members did not receive the benefit of their bargain due to Defendants' fraudulent concealment.  Plaintiffs' and class members' actions in purchasing Duraspine Turf fields were justified.  Defendants were in exclusive control of the material facts and such facts were not reasonably known or knowable to the public, Plaintiffs, or class members.

241.    Plaintiffs and class members relied to their detriment upon Defendants' reputations, fraudulent misrepresentations, and material omissions regarding the durability, reliability, and cost-effectiveness of Duraspine Turf fields in deciding to purchase the fields.

242.    Defendants' fraudulent concealment was also uniform across all Class members; Defendants concealed from everyone the true nature of the defect in the Duraspine Turf fields, as evinced by Defendants' desire to destroy material evidence of its fraud.

243.    As a direct and proximate result of Defendants' deceit and fraudulent concealment, including their intentional suppression of the true facts, Plaintiffs and the class suffered injury.  They purchased Duraspine Turf fields that had a diminished value by reason of Defendants' concealment of, and failure to disclose, the defects.  Plaintiffs and the class paid substantial money to repair or replace the defective Duraspine Turf fields.

244.    Plaintiffs and the class sustained damages as a direct and proximate result of Defendants deceit and fraudulent concealment in an amount to be proven at trial.

245.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and class members' rights, with the aim of enriching Defendants, justifying an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future.

## COUNT III

## FRAUD IN THE INDUCEMENT

246.    Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

247.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Classes under the common law of fraudulent in the inducement, which is materially uniform in all states.  In the alternative, Plaintiffs bring this claim on behalf of each state subclass under the law of each state in which Plaintiffs and class members purchased the Duraspine Turf fields.

248.    As described above, Defendants induced Plaintiffs and Class members to contract to purchase and install Duraspine Turf fields through knowing, intentional and material misrepresentations and omissions of fact concerning the composition, design, qualities, and lifespan of Duraspine Turf fields.

249.    Plaintiffs and the Class Members justifiably relied to their detriment on the truth and completeness of Defendants' material representations about the composition, design, testing, quality, and lifespan of Duraspine Turf fields in deciding to contract for the purchase and

installation of the fields because those facts are material to any reasonable consumer's decision to purchase Duraspine Turf fields.

250.    Defendants' fraud and concealment was also uniform across all Class members; Defendants concealed from everyone the true nature of the defects in the Duraspine Turf fields.

251.    Plaintiffs and Class members would not have agreed to purchase Duraspine Turf fields, or would have paid less for them, but for Defendants' misrepresentations and omissions of material facts concerning the actual composition, design, testing, quality, and lifespan of Duraspine Turf fields.

252.    As a result of Defendants' inducements, Plaintiffs and Class members sustained actual damages, including not receiving a product that performs as promised and not receiving the benefit of the bargain of their Duraspine Turf field purchases.

253.    Defendants' conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class members' rights and interests.  Defendants' conduct thus warrants an assessment of punitive damages, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

## COUNT IV

## UNJUST ENRICHMENT/QUASI CONTRACT

254.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

255.    Plaintiffs bring this cause of action for themselves and on behalf of the Nationwide Class.  In the alternative, Plaintiffs bring this claim on behalf of each state subclass

under the law of each state in which Plaintiffs and class members purchased Duraspine Turf fields.

256.     Plaintiffs bring this claim as an alternative to the contractual warranty claims asserted below and in the event that Plaintiffs prevail on their claims that any contract with FieldTurf (including any express or implied warranty) was fraudulently induced and/or Plaintiffs prevail in proving that the warranties cannot be enforced by FieldTurf due to FieldTurf having provided the warranties only after entering into a contract with a purchaser, or due to FieldTurf's intentional and deceptive efforts to conceal the defects in Duraspine Turf fields and avoid its warranty obligations.

257.     FieldTurf received at least $570 million in revenue from the sale of over 1,400 defective Duraspine Turf fields between 2005 and 2012.

258.     This $570 million in revenue was a benefit conferred upon FieldTurf by Plaintiff and the Class, which includes municipalities, school districts, universities, and athletic organizations across the United States.

259.     FieldTurf manufactured, marketed, sold, and installed defective Duraspine Turf fields to Plaintiffs and the Class while actively concealing the product's known defects all while claiming Duraspine Turf fields were cost effective with a ten-plus year lifespan.

260.     FieldTurf was unjustly enriched through financial benefits conferred upon it by Plaintiff and the Class, in the form of the amounts paid to FieldTurf for the purchase and installation of Duraspine Turf fields.  On information and belief, that amount is at least $570 million.

261.     Plaintiff and the Class elected to purchase and install Duraspine Turf fields based upon FieldTurf's misrepresentations, deception, and omissions.  FieldTurf knew and understood

that it would and did receive a financial benefit, and voluntarily accepted the same, from Plaintiff and the Class when they elected to purchase and install Duraspine Turf fields.

262.    By selecting Duraspine Turf fields and purchasing them at a premium price, Plaintiff and the Class reasonably expected that Duraspine Turf fields would have the lifespan and performance promised by FieldTurf and would not deteriorate within a few years of installation.  The reduced lifespan of Duraspine Turf fields and premature deterioration within a few years of installation unjustly enriched FieldTurf beyond its legal rights by securing through deceit and falsehoods $570 million in revenues between 2005 and 2012.

263.    Therefore, because FieldTurf will be unjustly enriched if it is allowed to retain the revenues obtained through falsehoods, deception, and misrepresentations, Plaintiffs and each Class member are entitled to recover the amount by which FieldTurf was unjustly enriched at his or her expense.

264.    Accordingly, Plaintiffs, on behalf of themselves and each Class member, seeks damages against FieldTurf in the amounts by which FieldTurf has been unjustly enriched at Plaintiffs' and each Class member's expense, and such other relief as this Court deems just and proper.

**B.    Claims Brought on Behalf of the Alabama Class.**

**COUNT I**

**BREACH OF EXPRESS WARRANTY[9]**
**(ALA. CODE § 7-2-313)**

265.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

---

[9] Each of the warranty claims alleged in this Consolidated Amended Complaint is brought in the alternative and without waiver of Plaintiffs' claims that any warranty or contract cannot be

266.    This count is brought on behalf of the Alabama State Class against Defendants.

267.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ALA. CODE § 7-2-104(1), and "sellers" of the Duraspine Turf fields under § 7-2-103(1)(d).

268.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ALA. CODE § 7-2-105(1).

269.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Alabama State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Alabama State Class.

270.    Defendants' warranties formed a basis of the bargain that was reached when the Alabama State Class members purchased their Duraspine Turf fields.

271.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Alabama State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Alabama State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

---

enforced by the Defendants due to fraud in the inducement and failure to present the warranty prior to execution of any relevant contract.

272.     The Alabama State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

273.     Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Alabama State Class is not limited to its remedies.

274.     Accordingly, the Alabama State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Alabama State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

275.     As a direct and proximate result of Defendants' breach of their express warranty, the Alabama State Class members have been damaged in an amount to be determined at trial.

276.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT II

## BREACH OF IMPLIED WARRANTIES
### (ALA. CODE §§ 7-2-314 AND 7-2-315)

277.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

278.     This count is brought on behalf of the Alabama State Class against Defendants.

279.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ALA. CODE § 7-2-104(1), and "sellers" of the Duraspine Turf fields under § 72-103(1)(d).

280.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ALA. CODE § 7-2-105(1).

281.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ALA. CODE § 7-2-314.

282.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to ALA. CODE § 7-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Alabama State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Alabama State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

283.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

284.    As a direct and proximate result of Defendants' breach of their implied warranties, the Alabama State Class members have been damaged in an amount to be determined at trial.

285.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

C.      **Claims Brought on Behalf of the Alaska Class.**

## COUNT I

**VIOLATION OF THE ALASKA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION ACT
(ALASKA STAT. ANN. § 45.50.471, *ET SEQ.*)**

286.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

287.    This count is brought on behalf of the Alaska State Class against Defendants The Duraspine Turf fields are "goods" within the meaning of ALASKA STAT. ANN. § 45.50.471.

288.    Defendants are engaged in "trade" or "commerce" within the meaning of ALASKA STAT. ANN. § 45.50.471.

289.    The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or  "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged."  ALASKA STAT. ANN. § 45.50.471.

290.    In the course of their business, Defendants violated the Alaska CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.  Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in ALASKA STAT. ANN. § 45.50.471:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised; and/or

    d.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields, whether or not any person has in fact been misled, deceived or damaged thereby.

291.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Alaska State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Alaska State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Alaska State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

292.    Alaska State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

293.     Defendants had an ongoing duty to the Alaska State Class to refrain from unfair and deceptive practices under the Alaska CPA in the course of their business.  Specifically, Defendants owed Alaska State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Alaska State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

294.     The Alaska State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

295.     Pursuant to ALASKA STAT. ANN. §§ 45.50.531 and 45.50.535, the Alaska State Class seeks an order awarding damages, punitive damages, treble damages, and any other just and proper relief available under the Alaska CPA.

### COUNT II

### BREACH OF EXPRESS WARRANTY
### (ALASKA STAT. ANN. § 45.02.313)

296.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

297.     This count is brought on behalf of the Alaska State Class against Defendants.

298.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ALASKA STAT. ANN. § 45.02.104(a), and "sellers" of the Duraspine Turf fields under § 45.02.103(a)(4).

299.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ALASKA STAT. ANN. § 45.02.105(a).

300.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Alaska State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Alaska State Class.

301.    Defendants' warranties formed a basis of the bargain that was reached when the Alaska State Class members purchased their Duraspine Turf fields.

302.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Alaska State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Alaska State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

303.    The Alaska State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

304.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Alaska State Class is not limited to its remedies.

305.    Accordingly, the Alaska State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Alaska State Class

members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

306.    As a direct and proximate result of Defendants' breach of their express warranty, the Alaska State Class members have been damaged in an amount to be determined at trial.

307.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
## (ALASKA STAT. ANN. §§ 45.02.314 AND 45.02.315)

308.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

309.    This count is brought on behalf of the Alaska State Class against Defendants.

310.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ALASKA STAT. ANN. § 45.02.104(a), and "sellers" of the Duraspine Turf fields under § 45.02.103(a)(4).

311.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ALASKA STAT. ANN. § 45.02.105(a).

312.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ALASKA STAT. ANN. § 45.02.314.

313.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to ALASKA STAT. ANN. § 45.02.315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Alaska State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability,

and that the Alaska State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

314.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

315.    As a direct and proximate result of Defendants' breach of their implied warranties, the Alaska State Class members have been damaged in an amount to be determined at trial.

316.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**D.    Claims Brought on Behalf of the Arizona Class.**

**COUNT I**

**VIOLATIONS OF THE CONSUMER FRAUD ACT**
**(ARIZ. REV. STAT. § 44-1521, *ET SEQ.*)**

317.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

318.    This count is brought on behalf of the Arizona State Class against Defendants.

319.    Defendants and Arizona State Class members are "persons" within the meaning of ARIZ. REV. STAT. § 44-1521(6).

320.    The Duraspine Turf fields are "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

90

321.    The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  ARIZ. REV. STAT. § 44-1522(A).

322.    In the course of their business, Defendants violated the Arizona CFA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in deceptive acts or practices, as outlined in ARIZ. REV. STAT. § 441522(A), including using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields.

323.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Arizona State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Arizona State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Arizona State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

324.     The Arizona State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

325.     Defendants had an ongoing duty to the Arizona State Class to refrain from unfair and deceptive practices under the Arizona CFA in the course of their business.  Specifically, Defendants owed the Arizona State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Arizona State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

326.     The Arizona State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

327.     The Arizona State Class seeks an order awarding damages and any other just and proper relief available under the Arizona CFA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (ARIZ. REV. STAT. § 47-2313)

328.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

329.     This count is brought on behalf of the Arizona State Class against Defendants.

330.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ARIZ. REV. STAT. § 47-2104(A), and "sellers" of the Duraspine Turf fields under § 47-2103(A)(4).

331.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ARIZ. REV. STAT. § 47-2105(A).

332.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Arizona State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Arizona State Class.

333.    Defendants' warranties formed a basis of the bargain that was reached when the Arizona State Class members purchased their Duraspine Turf fields.

334.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Arizona State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Arizona State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

335.    The Arizona State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

336.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Arizona State Class is not limited to its remedies.

337.     Accordingly, the Arizona State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Arizona State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

338.     As a direct and proximate result of Defendants' breach of their express warranty, the Arizona State Class members have been damaged in an amount to be determined at trial.

339.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**COUNT III**

**BREACH OF IMPLIED WARRANTIES**
**(ARIZ. REV. STAT. §§ 47-2314 AND 47-2315)**

340.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

341.     This count is brought on behalf of the Arizona State Class against Defendants.

342.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ARIZ. REV. STAT. § 47-2104(A), and "sellers" of the Duraspine Turf fields under § 47-2103(A)(4).

343.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ARIZ. REV. STAT. § 47-2105(A).

344.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ARIZ. REV. STAT. § 47-2314.

345.     In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to ARIZ. REV. STAT. § 47-2315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Arizona State Class intended to use

94

those fields as athletic fields requiring a particular standard of performance and durability, and that the Arizona State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

346.     The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

347.     As a direct and proximate result of Defendants' breach of their implied warranties, the Arizona State Class members have been damaged in an amount to be determined at trial.

348.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**E.     Claims Brought on Behalf of the Arkansas Class.**

**COUNT I**

**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT**
**(ARK. CODE ANN. § 4-88-101, *ET SEQ.*)**

349.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

350.     This count is brought on behalf of the Arkansas State Class against Defendants.

351.     Defendants and the Arkansas State Class are "persons" within the meaning of ARK. CODE ANN. § 4-88-102(5).

352.     The Duraspine Turf fields are "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

353.     The Arkansas Deceptive Trade Practice Act ("Arkansas DTPA") makes unlawful "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]"  ARK. CODE ANN. § 4-88-107(a)(10).  The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."  ARK. CODE ANN. § 4-88-108.

354.     In the course of their business, Defendants violated the Arkansas DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in ARK. CODE ANN. §§ 4-88-107-108:

    a.     Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

    b.     Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

    c.     Advertising the Duraspine Turf fields with the intent not to sell them as advertised; and/or

    d.     Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields, whether or not any person has in fact been misled, deceived or damaged thereby.

355.     Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Arkansas State Class, and Defendants misrepresented, concealed,

or failed to disclose the truth with the intention that the Arkansas State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Arkansas State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

356.    The Arkansas State Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

357.    Defendants had an ongoing duty to the Arkansas State Class to refrain from unfair and deceptive practices under the Arkansas DTPA in the course of their business.  Specifically, Defendants owed the Arkansas State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Arkansas State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

358.    The Arkansas State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

359.    The Arkansas State Class seeks an order awarding damages pursuant to ARK. CODE ANN. § 4-88-13(f), and any other just and proper relief available under the Arkansas DTPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (ARK. CODE ANN. § 4-2-313)

360.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

361.    This count is brought on behalf of the Arkansas State Class against Defendants.

362.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ARK. CODE ANN. § 4-2-104(1), and "sellers" of the Duraspine Turf fields under § 4-2-103(1)(d).

363.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ARK. CODE ANN. § 4-2-105(1).

364.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Arkansas State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Arkansas State Class.

365.    Defendants' warranties formed a basis of the bargain that was reached when the Arkansas State Class members purchased their Duraspine Turf fields.

366.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Arkansas State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Arkansas State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

367.    The Arkansas State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

368.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Arkansas State Class is not limited to its remedies.

369.    Accordingly, the Arkansas State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Arkansas State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

370.    As a direct and proximate result of Defendants' breach of their express warranty, the Arkansas State Class members have been damaged in an amount to be determined at trial.

371.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (ARK. CODE ANN. §§ 4-2-314 AND 4-2-315)

372.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

373.    This count is brought on behalf of the Arkansas State Class against Defendants.

374.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ARK. CODE ANN. § 4-2-104(1), and "sellers" of the Duraspine Turf fields under § 4-2-103(1)(d).

375.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ARK. CODE ANN. § 4-2-105(1).

376.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ARK. CODE ANN. § 4-2-314.

377.     In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to ARK. CODE ANN. § 4-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Arkansas State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Arkansas State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

378.     The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

379.     As a direct and proximate result of Defendants' breach of their implied warranties, the Arkansas State Class members have been damaged in an amount to be determined at trial.

380.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**F.      Claims Brought on Behalf of the California Class.**

**COUNT I**

**UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS PRACTICES UNDER THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

381.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

382.     Plaintiffs Fremont and Santa Ynez (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against Defendants.

383.     California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

384.     In the course of their business, Defendants violated the UCL by engaging in the following unlawful, fraudulent, and unfair business acts and practices:

a.      Knowingly and intentionally concealing from Plaintiffs and the other California State Class members that the Duraspine Turf fields suffer from a defect while obtaining money from Plaintiffs and Class members;

b.      Marketing the Duraspine Turf fields as durable, reliable, cost-effective and defect-free; and

c.      Violating California statutory and common law prohibiting false advertising, fraudulent concealment and breach of warranty.

385.     Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to Plaintiffs and the California State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that Plaintiffs and the California State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, Plaintiffs and the Calfornia State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

386.     Plaintiffs and California State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.  Pursuant to CAL. BUS. & PROF. CODE § 17200, Plaintiffs and the California State Class seek any such orders or judgments as may be necessary to restore to Plaintiffs and California State Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§ 17203 and 3345, and any other just and proper relief available under the California UCL.

## COUNT II

**FALSE ADVERTISING UNDER THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)**

387.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

388.     Plaintiffs Fremont and Santa Ynez (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the California State Class against Defendants.

389.     CAL. BUS. & PROF. CODE § 17500 states:  "It is unlawful for any person, … corporation …or any employee thereof with intent directly or indirectly to dispose of real or personal property… or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

390.     Defendants each made or caused to be made and disseminated throughout California and the United States, through advertising, marketing, and other publications, numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to each Defendant, to be untrue and misleading to consumers, including Plaintiff and the other California State Class members. Numerous examples of these statements and advertisements appear throughout this Complaint.

391.     Pursuant to CAL. BUS. & PROF. CODE § 17500, Plaintiffs and the California State Class seek any such orders or judgments as may be necessary to restore to Plaintiffs and the California State Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the UCL.

## COUNT III

## BREACH OF EXPRESS WARRANTY
### (CAL. COM. CODE § 2313)

392.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

393.     This count is brought on behalf of the California State Class against Defendants.

394.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under CAL. COM. CODE § 2104(1), and "sellers" of the Duraspine Turf fields under § 2103(1)(d).

395.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of CAL. COM. CODE § 2105(1).

396.     In connection with the purchase of all Duraspine Turf fields, Defendants provided the California State Class with a written warranty covering defects in materials and workmanship

of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various

oral and written representations regarding the Duraspine Turf fields' durability, reliability,

specifications, and performance constituted express warranties to the California State Class.

397.    Defendants' warranties formed a basis of the bargain that was reached when the

California State Class members purchased their Duraspine Turf fields.

398.    Defendants breached their express warranties (including the implied covenant of

good faith and fair dealing) by: (1) knowingly providing the California State Class with

Duraspine Turf fields containing defects in material that were never disclosed to the California

State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within

the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims

in bad faith, and (4) supplying products and materials that failed to conform to the

representations made by FieldTurf.

399.    The California State Class have given Defendants a reasonable opportunity to

cure their breaches of express warranty or, alternatively, were not required to do so because such

an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and

consequential damages flowing therefrom.

400.    Thus, Defendants' eight-year written warranty fails of its essential purpose and

the recovery of the California State Class is not limited to its remedies.

401.    Accordingly, the California State Class asserts as additional and/or alternative

remedies, the revocation of acceptance of the goods and the return to the California State Class

members of the purchase price of all Duraspine Turf fields currently owned, and for such other

incidental and consequential damages as allowed.

402.     As a direct and proximate result of Defendants' breach of their express warranty, the California State Class members have been damaged in an amount to be determined at trial.

403.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT IV

## BREACH OF IMPLIED WARRANTIES
### (CAL. COM. CODE §§ 2314 AND 2315)

404.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

405.     This count is brought on behalf of the California State Class against Defendants.

406.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under CAL. COM. CODE § 2104(1), and "sellers" of the Duraspine Turf fields under § 2103(1)(d).

407.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of CAL. COM. CODE § 2105(1).

408.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to CAL. COM. CODE § 2314.

409.     In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to CAL. COM. CODE § 2315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the California State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the California State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

410.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

411.    As a direct and proximate result of Defendants' breach of their implied warranties, the California State Class members have been damaged in an amount to be determined at trial.

412.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**G.    Claims Brought on Behalf of the Colorado Class.**

**COUNT I**

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
(COLO. REV. STAT. § 6-1-101, *ET SEQ.*)**

413.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

414.    This count is brought on behalf of the Colorado State Class against Defendants.

415.    Defendants and the Colorado State Class members are "persons" within the meaning of § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), COLO. REV. STAT. § 6-1-101, et seq.  The Colorado State Class members are "consumers" within the meaning of COL. REV. STAT § 6-1-113(1)(a).

416.    The Colorado CPA makes unlawful deceptive trade practices in the course of a person's business.

417.    In the course of their business, Defendants violated the Colorado CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in COLO. REV. STAT. § 6-1-105:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised; and/or

    d.    Failing to disclose material information concerning the Duraspine Turf fields known to Defendants at the time of advertisement or sale, with the intention of inducing the Colorado State Class members to purchase Duraspine Turf fields.

418.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Colorado State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Colorado State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Colorado State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

419.    The Colorado State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

420.    Defendants had an ongoing duty to the Colorado State Class to refrain from unfair and deceptive practices under the Colorado CPA in the course of their business.  Specifically,

Defendants owed the Colorado State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Colorado State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

421.    The Colorado State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

422.    Pursuant to COLO. REV. STAT. § 6-1-113, the Colorado State Class seeks an order awarding damages, treble or punitive damages, and any other just and proper relief available under the Colorado CPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (COLO. REV. STAT. § 4-2-313)

423.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

424.    This count is brought on behalf of the Colorado State Class against Defendants.

425.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under COLO. REV. STAT. § 4-2-104(1), and "sellers" of the Duraspine Turf fields under § 4-2-103(1)(d).

426.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. § 4-2-105(1).

427.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Colorado State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various

oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Colorado State Class.

428.    Defendants' warranties formed a basis of the bargain that was reached when the Colorado State Class members purchased their Duraspine Turf fields.

429.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Colorado State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Colorado State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

430.    The Colorado State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

431.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Colorado State Class is not limited to its remedies.

432.    Accordingly, the Colorado State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Colorado State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

433.    As a direct and proximate result of Defendants' breach of their express warranty, the Colorado State Class members have been damaged in an amount to be determined at trial.

434.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (COLO. REV. STAT. §§ 4-2-314 AND 4-2-315)

435.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

436.    This count is brought on behalf of the Colorado State Class against Defendants.

437.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under COLO. REV. STAT. § 4-2-104(1), and "sellers" of the Duraspine Turf fields under § 4-2-103(1)(d).

438.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. § 4-2-105(1).

439.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to COLO. REV. STAT. § 4-2-314.

440.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to COLO. REV. STAT. § 4-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Colorado State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Colorado State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

441.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

442.    As a direct and proximate result of Defendants' breach of their implied warranties, the Colorado State Class members have been damaged in an amount to be determined at trial.

443.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**H.    Claims Brought on Behalf of the Connecticut Class.**

## COUNT I

### VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A, *ET SEQ.*)

444.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

445.    This count is brought on behalf of the Connecticut State Class against Defendants.

446.    Defendants and the Connecticut State Class members are "persons" within the meaning of CONN. GEN. STAT. § 42-110a(3) of the Connecticut Unfair Trade Practices Act ("Connecticut UTPA").  Defendants are engaged in "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).

447.    The Connecticut UTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

448.    In the course of their business, Defendants violated the Connecticut UTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b(a):

a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised;

d.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

e.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields, whether or not any person has in fact been misled, deceived or damaged thereby.

449.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Connecticut State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Connecticut State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Connecticut State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

450.    The Connecticut State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

451.    Defendants had an ongoing duty to the Connecticut State Class to refrain from unfair and deceptive practices, in the course of their business, including a duty to disclose all material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge that was intentionally concealed and withheld and/or Defendants made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

452.    The Connecticut State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

453.    Pursuant to CONN. GEN. STAT. § 42-110g, the Connecticut State Class seeks an order and awarding damages, punitive damages, and any other just and proper relief available under the Connecticut UTPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (CONN. GEN. STAT. ANN. § 42A-2-313)

454.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

455.    This count is brought on behalf of the Connecticut State Class against Defendants.

456.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under CONN. GEN. STAT. ANN. § 42a-2-104(1), and "sellers" of the Duraspine Turf fields under § 42a-2-103(1).

457.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of CONN. GEN. STAT. ANN. § 42a-2-105(1).

458.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Connecticut State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Connecticut State Class.

459.    Defendants' warranties formed a basis of the bargain that was reached when the Connecticut State Class members purchased their Duraspine Turf fields.

460.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Connecticut State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Connecticut State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

461.    The Connecticut State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

462.     Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Connecticut State Class is not limited to its remedies.

463.     Accordingly, the Connecticut State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Connecticut State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

464.     As a direct and proximate result of Defendants' breach of their express warranty, the Connecticut State Class members have been damaged in an amount to be determined at trial.

465.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (CONN. GEN. STAT. ANN. §§ 42A-2-314 AND 42A-2-315)

466.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

467.     This count is brought on behalf of the Connecticut State Class against Defendants.

468.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under CONN. GEN. STAT. ANN. § 42a-2-104(1), and "sellers" of the Duraspine Turf fields under § 42a-2-103(1).

469.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of CONN. GEN. STAT. ANN. § 42a-2-105(1).

470.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to CONN. GEN. STAT. ANN. § 42A-2-314.

471.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to CONN. GEN. STAT. ANN. § 42A-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Connecticut State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Connecticut State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

472.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

473.    As a direct and proximate result of Defendants' breach of their implied warranties, the Connecticut State Class members have been damaged in an amount to be determined at trial.

474.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**I.    Claims Brought on Behalf of the Delaware Class.**

**COUNT I**

**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT**
**(6 DEL. CODE § 2513, *ET SEQ.*)**

475.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

476.    This count is brought on behalf of the Delaware State Class against Defendants.

477.     Defendants and the Delaware State Class members are "persons" within the meaning of 6 DEL. CODE § 2511(7).

478.     The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."  6 DEL. CODE § 2513(a).

479.     In the course of their business, Defendants violated the Delaware CFA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants used or employed deception, fraud, false pretense, false promise or misrepresentation, and the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields.

480.     Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Delaware State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Delaware State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Delaware State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

481.    The Delaware State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

482.    Defendants had an ongoing duty to the Delaware State Class to refrain from unfair and deceptive practices under the Delaware CFA in the course of their business. Specifically, Defendants owed the Delaware State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Delaware State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

483.    The Delaware State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

484.    Pursuant to 6 DEL. CODE § 2525, the Delaware State Class seeks an order awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware CFA.

## COUNT II

### VIOLATIONS OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT
### (6 DEL. CODE § 2531, *ET SEQ.*)

485.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

486.    This count is brought on behalf of the Delaware State Class against Defendants.

487.    Defendants and the Delaware State Class members are "persons" within the meaning of 6 DEL. CODE § 2531(5).

488.     The Delaware Deceptive Trade Practices Act ("Delaware DTPA") makes unlawful deceptive trade practices in the course of a person's business.

489.     In the course of their business, Defendants violated the Delaware DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in 6 DEL. CODE § 2532(a):

a.     Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

b.     Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

c.     Advertising the Duraspine Turf fields with the intent not to sell them as advertised; and/or

d.     Engaging in other conduct which created a likelihood of confusion or misunderstanding.

490.     Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Delaware State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Delaware State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Delaware State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

491.     The Delaware State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

492.    Defendants had an ongoing duty to the Delaware State Class to refrain from unfair and deceptive practices under the Delaware DTPA in the course of their business. Specifically, Defendants owed the Delaware State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Delaware State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

493.    The Delaware State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

494.    Pursuant to 6 DEL. CODE § 2533, the Delaware State Class seeks an order awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware DTPA.

## COUNT III

## BREACH OF EXPRESS WARRANTY
### (6 DEL. CODE § 2-313)

495.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

496.    This count is brought on behalf of the Delaware State Class against Defendants.

497.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under 6 DEL. C. § 2-104(1), and "sellers" of the Duraspine Turf fields under § 2-103(1)(d).

498.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of 6 DEL. C. § 2-105(1).

499.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Delaware State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Delaware State Class.

500.    Defendants' warranties formed a basis of the bargain that was reached when the Delaware State Class members purchased their Duraspine Turf fields.

501.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Delaware State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Delaware State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

502.    The Delaware State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

503.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Delaware State Class is not limited to its remedies.

504.    Accordingly, the Delaware State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Delaware State Class

members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

505.    As a direct and proximate result of Defendants' breach of their express warranty, the Delaware State Class members have been damaged in an amount to be determined at trial.

506.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**COUNT IV**

**BREACH OF IMPLIED WARRANTIES**
**(6 DEL. CODE §§ 2-314 AND 2-315)**

507.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

508.    This count is brought on behalf of the Delaware State Class against Defendants.

509.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under 6 DEL. C. § 2-104(1), and "sellers" of the Duraspine Turf fields under § 2-103(1)(d).

510.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of 6 DEL. C. § 2-105(1).

511.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 6 DEL. CODE § 2-314.

512.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to 6 DEL. CODE § 2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Delaware State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the

Delaware State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

513.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

514.   As a direct and proximate result of Defendants' breach of their implied warranties, the Delaware State Class members have been damaged in an amount to be determined at trial.

515.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**J.     Claims Brought on Behalf of the District of Columbia Class.**

### COUNT I

### VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT
### (D.C. CODE § 28-3901, *ET SEQ*.)

516.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

517.   This count is brought on behalf of the District of Columbia Class against Defendants.

518.   Defendants and the District of Columbia Class members are "persons" within the meaning of D.C. CODE § 28-3901(a)(1).  The District of Columbia Class members are "consumers" within the meaning of D.C. CODE § 28-3901(1)(2).

519.    Defendants are engaged in "trade practices" within the meaning of D.C. CODE § 28-3901.

520.    The District of Columbia Consumer Protection Procedures Act ("District of Columbia CPPA") makes unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.  D.C. CODE § 28-3901, *et seq.*

521.    In the course of their business, Defendants violated the District of Columbia CPPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.  Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in D.C. CODE § 28-3901, *et seq.*:

a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

522.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the District of Columbia Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the District of Columbia Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the District of Columbia Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

523.    The District of Columbia Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

524.    Defendants had an ongoing duty to the District of Columbia Class to refrain from unfair and deceptive practices under the District of Columbia CPPA in the course of their business.  Specifically, Defendants owed the District of Columbia Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the District of Columbia Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

525.    The District of Columbia Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

526.    Defendants' violations present a continuing risk to the District of Columbia Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

527.    Pursuant to D.C. CODE § 28-3901, the District of Columbia Class seeks an order awarding damages, treble and/or punitive damages, and any other just and proper relief available under the District of Columbia CPPA.

## COUNT II

## BREACH OF EXPRESS WARRANTY
### (D.C. CODE § 28:2-313)

528.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

529.    This count is brought on behalf of the District of Columbia Class against Defendants.

530.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under D.C. CODE § 28:2-104(1), and "sellers" of the Duraspine Turf fields under § 28:2-103(1)(d).

531.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of D.C. CODE § 28:2-105(1).

532.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the District of Columbia Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the District of Columbia Class.

533.    Defendants' warranties formed a basis of the bargain that was reached when the District of Columbia Class members purchased their Duraspine Turf fields.

534.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the District of Columbia Class with Duraspine Turf fields containing defects in material that were never disclosed to the District of Columbia Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

535.     The District of Columbia Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

536.     Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the District of Columbia Class is not limited to its remedies.

537.     Accordingly, the District of Columbia Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the District of Columbia Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

538.     As a direct and proximate result of Defendants' breach of their express warranty, the District of Columbia Class members have been damaged in an amount to be determined at trial.

539.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (D.C. CODE §§ 28:2-314 AND 28:2-315)

540.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

541.     This count is brought on behalf of the District of Columbia Class against Defendants.

542. Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under D.C. CODE § 28:2-104(1), and "sellers" of the Duraspine Turf fields under § 28:2-103(1)(d).

543. The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of D.C. CODE § 28:2-105(1).

544. A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to D.C. CODE § 28:2-314.

545. In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to D.C. CODE § 28:2-315. Defendants knew at the time of sale and installation of the Duraspine Turf fields that the District of Columbia Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the District of Columbia Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

546. The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above. In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

547. As a direct and proximate result of Defendants' breach of their implied warranties, the District of Columbia Class members have been damaged in an amount to be determined at trial.

548. Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**K.**    **Claims Brought on Behalf of the Florida Class.**

### COUNT I

### VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201, *ET SEQ*.)

549.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

550.    This count is brought on behalf of the Florida State Class against Defendants.

551.    The Florida State Class members are "consumers" within the meaning of FLA. STAT. § 501.203(7).

552.    Defendants are engaged in "trade" or "commerce" within the meaning of FLA. STAT. § 501.203(8).

553.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …"  FLA. STAT. § 501.204(1).

554.    In the course of their business, Defendants violated the FDUTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.  Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by FLA. STAT. § 501.204(1):

   a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

b.  Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

c.  Advertising the Duraspine Turf fields with the intent not to sell them as advertised;

d.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

e.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields.

555.  Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Florida State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Florida State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Florida State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

556.  The Florida State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

557.  Defendants had an ongoing duty to the Florida State Class to refrain from unfair and deceptive practices under the FDUTPA in the course of their business.  Specifically, Defendants owed the Florida State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Florida State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

558.    The Florida State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

559.    Pursuant to FLA. STAT. § 501.2105(1)-(2), the Florida State Class seeks an order awarding damages and any other just and proper relief available under the FDUTPA.

### COUNT II

### BREACH OF EXPRESS WARRANTY
### (FLA. STAT. § 672.313)

560.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

561.    This count is brought on behalf of the Florida State Class against Defendants.

562.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under FLA. STAT. § 672.104(1), and "sellers" of the Duraspine Turf fields under § 672.103(1)(d).

563.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of FLA. STAT. § 672.105(1).

564.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Florida State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Florida State Class.

565.    Defendants' warranties formed a basis of the bargain that was reached when the Florida State Class members purchased their Duraspine Turf fields.

566.     Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Florida State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Florida State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

567.     The Florida State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

568.     Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Florida State Class is not limited to its remedies.

569.     Accordingly, the Florida State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Florida State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

570.     As a direct and proximate result of Defendants' breach of their express warranty, the Florida State Class members have been damaged in an amount to be determined at trial.

571.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (FLA. STAT. §§ 672.314 AND 672.315)

572.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

573.   This count is brought on behalf of the Florida State Class against Defendants.

574.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under FLA. STAT. § 672.104(1), and "sellers" of the Duraspine Turf fields under § 672.103(1)(d).

575.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of FLA. STAT. § 672.105(1).

576.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to FLA. STAT. § 672.314.

577.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to FLA. STAT. § 672.315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Florida State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Florida State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

578.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

579.     As a direct and proximate result of Defendants' breach of their implied warranties, the Florida State Class members have been damaged in an amount to be determined at trial.

580.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**L.     Claims Brought on Behalf of the Georgia Class.**

**COUNT I**

**VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(GA. CODE ANN. § 10-1-370,** *ET SEQ.***)**

581.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

582.     This count is brought on behalf of the Georgia State Class against Defendants.

583.     Defendants and the Georgia State Class members are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE ANN. § 10-1-371(5).

584.     The Georgia UDTPA prohibits any "deceptive trade practices," which include misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  GA. CODE ANN. § 10-1-372(a).

585.     In the course of their business, Defendants violated the Georgia UDTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following deceptive trade practices:

a.   Representing that the Duraspine Turf fields have characteristics, uses, or benefits that they do not have;

b.   Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

c.   Advertising the Duraspine Turf fields with the intent not to sell them as advertised; and/or

d.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

586.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Georgia State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Georgia State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Georgia State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

587.   The Georgia State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

588.   Defendants had an ongoing duty to the Georgia State Class to refrain from unfair and deceptive practices under the Georgia UDTPA in the course of their business.  Specifically, Defendants owed the Georgia State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Georgia State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

589.    The Georgia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

590.    Pursuant to GA. CODE ANN. § 10-1-373, the Georgia State Class seeks any such orders or judgments as may be necessary to restore to Plaintiffs and Georgia State Class members any money acquired by deceptive trade practices, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Georgia UDTPA.

## COUNT II

## VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (GA. CODE ANN. § 10-1-390, *ET SEQ.*)

591.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

592.    This count is brought on behalf of the Georgia State Class against Defendants.

593.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful.  GA. CODE ANN. § 10-1-393(a).

594.    In the course of their business, Defendants violated the Georgia FBPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in GA. CODE ANN. § 10-1-393(b):

a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

595.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Georgia State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Georgia State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Georgia State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

596.    The Georgia State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

597.    Defendants had an ongoing duty to the Georgia State Class to refrain from unfair and deceptive practices under the Georgia FBPA in the course of their business.  Specifically, Defendants owed the Georgia State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Georgia State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

598.    The Georgia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

599.    Pursuant to GA. CODE ANN. § 10-1-399, the Georgia State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Georgia FBPA.

600.    Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above.  In addition, on October 19, 2017, a notice letter was sent on behalf of the Georgia State Class to Defendants pursuant to GA. CODE ANN. § 10-1-399(b). Because Defendants failed to remedy their unlawful conduct within the requisite time period, the Georgia State Class seeks all damages and relief to which they are entitled.

## COUNT III

### BREACH OF EXPRESS WARRANTY
### (GA. CODE ANN. § 11-2-313)

601.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

602.    This count is brought on behalf of the Georgia State Class against Defendants.

603.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under GA. CODE ANN. § 11-2-104(1), and "sellers" of the Duraspine Turf fields under § 11-2-103(1)(d).

604.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of GA. CODE ANN. § 11-2-105(1).

605.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Georgia State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Georgia State Class.

606.    Defendants' warranties formed a basis of the bargain that was reached when the Georgia State Class members purchased their Duraspine Turf fields.

607.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Georgia State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Georgia State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

608.    The Georgia State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

609.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Georgia State Class is not limited to its remedies.

610.    Accordingly, the Georgia State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Georgia State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

611.    As a direct and proximate result of Defendants' breach of their express warranty, the Georgia State Class members have been damaged in an amount to be determined at trial.

612.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

### COUNT IV

### BREACH OF IMPLIED WARRANTIES
### (GA. CODE ANN. §§ 11-2-314 AND 11-2-315)

613.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

614.   This count is brought on behalf of the Georgia State Class against Defendants.

615.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under GA. CODE ANN. § 11-2-104(1), and "sellers" of the Duraspine Turf fields under § 11-2-103(1)(d).

616.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of GA. CODE ANN. § 11-2-105(1).

617.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to GA. CODE ANN. § 11-2-314.

618.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to GA. CODE ANN. § 11-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Georgia State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Georgia State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

619.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty

repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

620.     As a direct and proximate result of Defendants' breach of their implied warranties, the Georgia State Class members have been damaged in an amount to be determined at trial.

621.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**M.     Claims Brought on Behalf of the Idaho Class.**

### COUNT I

### VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CODE § 48-601, *ET SEQ.*)

622.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

623.     This count is brought on behalf of the Idaho State Class against Defendants.

624.     Defendants and the Idaho State Class members are "persons" within the meaning IDAHO CODE § 48-602(1).

625.     Defendants are engaged in "trade" or "commerce" within the meaning of IDAHO CODE § 48-602(2).

626.     The Duraspine Turf fields are "goods" within the meaning of IDAHO CODE § 48-602(6).

627.     The Idaho Consumer Credit and Protection Act ("Idaho CPA") makes unlawful misleading, false, or deceptive acts.

628.     In the course of their business, Defendants violated the Idaho CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability,

performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices proscribed by IDAHO CODE § 48-603:

a.   Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

b.   Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

c.   Advertising the Duraspine Turf fields with the intent not to sell them as advertised; and/or

d.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

629.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Idaho State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Idaho State Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Idaho State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

630.   The Idaho State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

631.   Defendants had an ongoing duty to the Idaho State Class to refrain from unfair and deceptive practices under the Idaho CPA in the course of their business. Specifically, Defendants owed the Idaho State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they

intentionally concealed it from the Idaho State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

632.    The Idaho State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

633.    Pursuant IDAHO CODE § 48-608, the Idaho State Class seeks an order awarding damages, punitive damages, and any other just and proper relief available under the Idaho CPA.

### COUNT II

### BREACH OF EXPRESS WARRANTY
### (IDAHO CODE § 28-2-313)

634.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

635.    This count is brought on behalf of the Idaho State Class against Defendants.

636.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under IDAHO CODE § 28-2-104(1), and "sellers" of the Duraspine Turf fields under § 28-2-103(1)(d).

637.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of IDAHO CODE § 28-2-105(1).

638.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Idaho State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Idaho State Class.

639.    Defendants' warranties formed a basis of the bargain that was reached when the Idaho State Class members purchased their Duraspine Turf fields.

640.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Idaho State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Idaho State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

641.    The Idaho State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

642.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Idaho State Class is not limited to its remedies.

643.    Accordingly, the Idaho State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Idaho State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

644.    As a direct and proximate result of Defendants' breach of their express warranty, the Idaho State Class members have been damaged in an amount to be determined at trial.

645.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (IDAHO CODE §§ 28-2-314 AND 28-2-315)

646.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

647.     This count is brought on behalf of the Idaho State Class against Defendants.

648.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under IDAHO CODE § 28-2-104(1), and "sellers" of the Duraspine Turf fields under § 28-2-103(1)(d).

649.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of IDAHO CODE § 28-2-105(1).

650.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to IDAHO CODE § 28-2-314.

651.     In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to IDAHO CODE § 28-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Idaho State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Idaho State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

652.     The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty

145

repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf

fields, they fail to cure Defendants' breach of implied warranties.

653.    As a direct and proximate result of Defendants' breach of their implied

warranties, the Idaho State Class members have been damaged in an amount to be determined at

trial.

654.    Defendants were provided notice of the issues raised in this Count and this

Consolidated Amended Complaint as detailed above.

**N.     Claims Brought on Behalf of the Illinois Class.**

**COUNT I**

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ.* AND 510/2)**

655.    Plaintiffs incorporate by reference each preceding paragraph as though fully set

forth herein.

656.    This count is brought on behalf of the Illinois State Class against Defendants.

657.    Defendants and the Illinois State Class members are "persons" within the

meaning 815 ILCS 505/1(c) and 510/1(5).  The Illinois State Class members are "consumers"

within the meaning of 815 ILCS 505/1(e).

658.    The Illinois Consumer Fraud and Deceptive Practices Act ("Illinois CFA") makes

unlawful "unfair or deceptive acts or practices, including but not limited to the use or

employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact … in the conduct of trade or

commerce … whether any person has in fact been misled, deceived or damaged thereby."  815

146

ILCS 505/2. The Illinois CFA further makes unlawful deceptive trade practices undertaken in the course of business. 815 ILCS 510/2.

659.    In the course of their business, Defendants violated the Illinois CFA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by 815 ILCS 505/2 and 510/2:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised;

    d.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

    e.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields, whether or not any person has in fact been misled, deceived or damaged thereby.

660.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Illinois State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Illinois State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Illinois State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

661.    The Illinois State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

662.    Defendants had an ongoing duty to the Illinois State Class to refrain from unfair and deceptive practices under the Illinois CFA in the course of their business.  Specifically, Defendants owed the Illinois State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Illinois State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

663.    The Illinois State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

664.    Defendants' violations present a continuing risk to Plaintiffs and the Illinois State Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

665.    Pursuant to 815 ILCS 505/10a(a) and 510/3, Illinois State Class seeks an order awarding damages, punitive damages, and any other just and proper relief available under the Illinois CFA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (810 ILL. COMP. STAT. § 5/2-313)

666.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

667.    This count is brought on behalf of the Illinois State Class against Defendants.

668.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under 810 ILL. COMP. STAT. § 5/2-104(1), and "sellers" of the Duraspine Turf fields under § 5/2-103(1)(d).

669.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of 810 ILL. COMP. STAT. § 5/2-105(1).

670.     In connection with the purchase of all Duraspine Turf fields, Defendants provided the Illinois State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Illinois State Class.

671.     Defendants' warranties formed a basis of the bargain that was reached when the Illinois State Class members purchased their Duraspine Turf fields.

672.     Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Illinois State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Illinois State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

673.     The Illinois State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

674.     Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Illinois State Class is not limited to its remedies.

675.     Accordingly, the Illinois State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Illinois State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

676.     As a direct and proximate result of Defendants' breach of their express warranty, the Illinois State Class members have been damaged in an amount to be determined at trial.

677.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
### (810 ILL. COMP. STAT. §§ 5/2-314 AND 5/2-315)

678.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

679.     This count is brought on behalf of the Illinois State Class against Defendants.

680.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under 810 ILL. COMP. STAT. § 5/2-104(1), and "sellers" of the Duraspine Turf fields under § 5/2-103(1)(d).

681.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of 810 ILL. COMP. STAT. § 5/2-105(1).

682.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 810 ILL. COMP. STAT. § 5/2-314.

683.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to 810 ILL. COMP. STAT. § 5/2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Illinois State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Illinois State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

684.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

685.    As a direct and proximate result of Defendants' breach of their implied warranties, the Illinois State Class members have been damaged in an amount to be determined at trial.

686.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**O.      Claims Brought on Behalf of the Indiana Class.**

### COUNT I

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (IND. CODE § 24-5-0.5-3)

687.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

688.     This count is brought on behalf of the Indiana State Class against Defendants.

689.     Defendants and the Indiana State Class members are "persons" within the meaning of IND. CODE § 24-5-0.5-2(2).  Each Defendant is also a "supplier" within the meaning of IND. CODE § 24-5-.05-2(a)(3).

690.     The Indiana State Class members' purchases of the Duraspine Turf fields are "consumer transactions" within the meaning of IND. CODE § 24-5-.05-2(a)(1).

691.     The Indiana Deceptive Consumer Sales Act ("Indiana DCSA")  prohibits a person from engaging in a "deceptive act," which includes representing:  "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."  IND. CODE § 24-5-0.5-3.

692.     In the course of their business, Defendants violated the Indiana DCSA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.

Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in IND. CODE § 24-5-0.5-3:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

693.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Indiana State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Indiana State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Indiana State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

694.    The Indiana State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

695.    Defendants had an ongoing duty to the Indiana State Class to refrain from unfair and deceptive practices under the Indiana DCSA in the course of their business.  Specifically, Defendants owed the Indiana State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Indiana State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

696.     The Indiana State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

697.     Pursuant to IND. CODE § 24-5-0.5-4, the Indiana State Class seeks an order awarding damages, punitive damages, and any other just and proper relief available under the Indiana DCSA.

698.     Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above.  In addition, on October 19, 2017, a notice letter was sent on behalf of the Indiana State Class to Defendants pursuant to IND. CODE § 24-5-0.5-5(a).  Because Defendants failed to remedy their unlawful conduct within the requisite time period, the Indiana State Class seeks all damages and relief to which they are entitled.

## COUNT II

## BREACH OF EXPRESS WARRANTY
## (IND. CODE § 26-1-2-313)

699.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

700.     This count is brought on behalf of the Indiana State Class against Defendants.

701.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under IND. CODE § 26-1-2-104(1), and "sellers" of the Duraspine Turf fields under § 26-1-2-103(1)(d).

702.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of IND. CODE § 26-1-2-105(1).

703.     In connection with the purchase of all Duraspine Turf fields, Defendants provided the Indiana State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Indiana State Class.

704.     Defendants' warranties formed a basis of the bargain that was reached when the Indiana State Class members purchased their Duraspine Turf fields.

705.     Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Indiana State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Indiana State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

706.     The Indiana State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

707.     Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Indiana State Class is not limited to its remedies.

708.     Accordingly, the Indiana State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Indiana State Class

members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

709.    As a direct and proximate result of Defendants' breach of their express warranty, the Indiana State Class members have been damaged in an amount to be determined at trial.

710.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (IND. CODE §§ 26-1-2-314 AND 26-1-2-315)

711.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

712.    This count is brought on behalf of the Indiana State Class against Defendants.

713.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under IND. CODE § 26-1-2-104(1), and "sellers" of the Duraspine Turf fields under § 26-1-2-103(1)(d).

714.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of IND. CODE § 26-1-2-105(1).

715.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to IND. CODE § 26-1-2-314.

716.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to IND. CODE § 26-1-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Indiana State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and

that the Indiana State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

717.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

718.    As a direct and proximate result of Defendants' breach of their implied warranties, the Indiana State Class members have been damaged in an amount to be determined at trial.

719.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**P.      Claims Brought on Behalf of the Iowa Class.**

**COUNT I**

**BREACH OF EXPRESS WARRANTY
(IOWA CODE § 554.2313)**

720.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

721.    This count is brought on behalf of the Iowa State Class against Defendants.

722.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under IOWA CODE § 554.2104(1), and "sellers" of the Duraspine Turf fields under § 554.2103(1)(d).

723.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of IOWA CODE § 554.2105(1).

157

724.     In connection with the purchase of all Duraspine Turf fields, Defendants provided the Iowa State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Iowa State Class.

725.     Defendants' warranties formed a basis of the bargain that was reached when the Iowa State Class members purchased their Duraspine Turf fields.

726.     Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Iowa State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Iowa State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

727.     The Iowa State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

728.     Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Iowa State Class is not limited to its remedies.

729.     Accordingly, the Iowa State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Iowa State Class

members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

730.    As a direct and proximate result of Defendants' breach of their express warranty, the Iowa State Class members have been damaged in an amount to be determined at trial.

731.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT II

### BREACH OF IMPLIED WARRANTIES
### (IOWA CODE §§ 554.2314 AND 554. 2315)

732.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

733.    This count is brought on behalf of the Iowa State Class against Defendants.

734.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under IOWA CODE § 554.2104(1), and "sellers" of the Duraspine Turf fields under § 554.2103(1)(d).

735.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of IOWA CODE § 554.2105(1).

736.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to IOWA CODE § 554.2314.

737.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to IOWA CODE § 554. 2315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Iowa State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the

Iowa State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

738.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

739.    As a direct and proximate result of Defendants' breach of their implied warranties, the Iowa State Class members have been damaged in an amount to be determined at trial.

740.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**Q.    Claims Brought on Behalf of the Kansas Class.**

### COUNT I

### BREACH OF EXPRESS WARRANTY
### (KAN. STAT. ANN. § 84-2-313)

741.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

742.    This count is brought on behalf of the Kansas State Class against Defendants.

743.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under KAN. STAT. ANN. § 84-2-104(1), and "sellers" of the Duraspine Turf fields under § 84-2-103(1)(d).

744.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of KAN. STAT. ANN. § 84-2-105(1).

745.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Kansas State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Kansas State Class.

746.    Defendants' warranties formed a basis of the bargain that was reached when the Kansas State Class members purchased their Duraspine Turf fields.

747.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Kansas State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Kansas State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

748.    The Kansas State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

749.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Kansas State Class is not limited to its remedies.

750.    Accordingly, the Kansas State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Kansas State Class

members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

751.     As a direct and proximate result of Defendants' breach of their express warranty, the Kansas State Class members have been damaged in an amount to be determined at trial.

752.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT II

### BREACH OF IMPLIED WARRANTIES
### (KAN. STAT. ANN. §§ 84-2-314 AND 84-2-315)

753.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

754.     This count is brought on behalf of the Kansas State Class against Defendants.

755.     Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under KAN. STAT. ANN. § 84-2-104(1), and "sellers" of the Duraspine Turf fields under § 84-2-103(1)(d).

756.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of KAN. STAT. ANN. § 84-2-105(1).

757.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to KAN. STAT. ANN. § 84-2-314.

758.     In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to KAN. STAT. ANN. § 84-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Kansas State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability,

and that the Kansas State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

759.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

760.    As a direct and proximate result of Defendants' breach of their implied warranties, the Kansas State Class members have been damaged in an amount to be determined at trial.

761.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**R.    Claims Brought on Behalf of the Kentucky Class.**

## COUNT I

**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
(KY. REV. STAT. § 367.110, *ET SEQ.*)**

762.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

763.    This count is brought on behalf of the Kentucky State Class against Defendants.

764.    Defendants and the Kentucky State Class members are "persons" within the meaning of KY. REV. STAT. § 367.110(1).

765.    Defendants are engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.110(2).

766.     The Duraspine Turf fields are "goods" within the meaning of KY. REV. STAT. § 367.220(1).

767.     The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce …."  KY. REV. STAT. § 367.170(1).

768.     In the course of their business, Defendants violated the Kentucky CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices in violation of KY. REV. STAT. § 367.170(1):

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised;

    d.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

    e.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields.

769.     Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Kentucky State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Kentucky State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the

Kentucky State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

770.    The Kentucky State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

771.    Defendants had an ongoing duty to the Kentucky State Class to refrain from unfair and deceptive practices under the Kentucky CPA in the course of their business. Specifically, Defendants owed the Kentucky State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Kentucky State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

772.    The Kentucky State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

773.    Pursuant to KY. REV. STAT. ANN. § 367.220, the Kentucky State Class seeks an order awarding damages, punitive damages, and any other just and proper relief available under the Kentucky CPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (KY. REV. STAT. § 355.2-313)

774.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

775.    This count is brought on behalf of the Kentucky State Class against Defendants.

776.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under KY. REV. STAT. § 355.2-104(1), and "sellers" of the Duraspine Turf fields under § 355.2-103(1)(d).

777.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of KY. REV. STAT. § 355.2-105(1).

778.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Kentucky State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Kentucky State Class.

779.    Defendants' warranties formed a basis of the bargain that was reached when the Kentucky State Class members purchased their Duraspine Turf fields.

780.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Kentucky State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Kentucky State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

781.    The Kentucky State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

782.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Kentucky State Class is not limited to its remedies.

783.    Accordingly, the Kentucky State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Kentucky State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

784.    As a direct and proximate result of Defendants' breach of their express warranty, the Kentucky State Class members have been damaged in an amount to be determined at trial.

785.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (KY. REV. STAT. §§ 355.2-314 AND 355.2-315)

786.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

787.    This count is brought on behalf of the Kentucky State Class against Defendants.

788.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under KY. REV. STAT. § 355.2-104(1), and "sellers" of the Duraspine Turf fields under § 355.2-103(1)(d).

789.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of KY. REV. STAT. § 355.2-105(1).

790.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to KY. REV. STAT. § 355.2-314.

791.     In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to KY. REV. STAT. § 355.2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Kentucky State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Kentucky State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

792.     The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

793.     As a direct and proximate result of Defendants' breach of their implied warranties, the Kentucky State Class members have been damaged in an amount to be determined at trial.

794.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

S.      **Claims Brought on Behalf of the Louisiana Class.**

### COUNT I

### VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. REV. STAT. § 51:1401, *ET SEQ.*)

795.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

796.    This count is brought on behalf of the Louisiana State Class against Defendants.

797.    Defendants and the Louisiana State Class members are "persons" within the meaning of LA. REV. STAT. § 51:1402(8).  The Louisiana State Class members are "consumers" within the meaning of LA. REV. STAT. § 51:1402(1).

798.    Defendants are engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. § 51:1402(10).

799.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A).

800.    In the course of their business, Defendants violated the Louisiana CPL by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in LA. REV. STAT. § 51:1405(A):

      a.      Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

     b.      Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

     c.      Advertising the Duraspine Turf fields with the intent not to sell them as advertised;

     d.      Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

     e.      Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields.

801.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Louisiana State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Louisiana State Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Louisiana State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

802.    The Louisiana State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

803.    Defendants had an ongoing duty to the Louisiana State Class to refrain from unfair and deceptive practices under the Louisiana CPA in the course of their business. Specifically, Defendants owed the Louisiana State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Louisiana State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

804.    The Louisiana State Class members suffered ascertainable loss and actual

damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or

failure to disclose material information.

805.    Pursuant to LA. REV. STAT. § 51:1409, the Louisiana State Class seeks an order

awarding damages, punitive damages, and any other just and proper relief available under the

Louisiana CPL.

## COUNT II

## BREACH OF WARRANTY AGAINST REDHIBITORY DEFECTS/BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (LA. CIV. CODE ART. 2520, 2524)

806.    Plaintiffs reallege and incorporate by reference all preceding allegations as though

fully set forth herein.

807.    This count is brought on behalf of the Louisiana State Class against Defendants.

808.    Defendants are and were at all relevant times "merchants" with respect to the

Duraspine Turf fields, and "sellers" of the Duraspine Turf fields.

809.    In connection with the purchase of all Duraspine Turf fields, Defendants provided

the Louisiana State Class with a written warranty covering defects in materials and workmanship

of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various

oral and written representations regarding the Duraspine Turf fields' durability, reliability,

specifications, and performance constituted express warranties to the Louisiana State Class.

810.    Defendants' warranties formed a basis of the bargain that was reached when the

Louisiana State Class members purchased their Duraspine Turf fields.

811.    Defendants breached their express warranties (including the implied covenant of

good faith and fair dealing) by: (1) knowingly providing the Louisiana State Class with

Duraspine Turf fields containing defects in material that were never disclosed to the Louisiana State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

812.   Additionally, A warranty that the Duraspine Turf fields were in merchantable condition and fit for the ordinary purpose for which such fields are used is implied by law in the instant transactions.

813.   The Louisiana State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

814.   Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Louisiana State Class is not limited to its remedies.

815.   Accordingly, the Louisiana State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Louisiana State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

816.   Moreover, Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Louisiana State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Louisiana State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

817.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

818.    As a direct and proximate result of Defendants' breach of their express warranty, and their implied warranty of merchantability, the Louisiana State Class members have been damaged in an amount to be determined at trial.

819.    Defendants were provided notice of the issues raised in this Count and this Complaint as a detailed above.

**T.    Claims Brought on Behalf of the Maine Class.**

COUNT I

**VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
(ME. REV. STAT. ANN. TIT. 5 § 205-A, *ET SEQ.*)**

820.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

821.    This count is brought on behalf of the Maine State Class against Defendants.

822.    Defendants and the Maine State Class members are "persons" within the meaning of ME. REV. STAT. ANN. TIT. 5 § 206(2).

823.    Defendants are engaged in "trade" or "commerce" within the meaning of ME. REV. STAT. ANN. TIT. 5 § 206(3).

824.    The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."  ME. REV. STAT. ANN. TIT. 5 § 207.

173

825.    In the course of their business, Defendants violated the Maine UTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in ME. REV. STAT. ANN. TIT. 5 § 207:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, or benefits that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not;

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised;

    d.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

    e.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Duraspine Turf fields, whether or not any person has in fact been misled, deceived or damaged thereby.

826.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Maine State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Maine State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Maine State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

827.    The Maine State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

828.    Defendants had an ongoing duty to the Maine State Class to refrain from unfair and deceptive practices under the Maine UTPA in the course of their business.  Specifically, Defendants owed the Maine State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Maine State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

829.    The Maine State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

830.    Pursuant to ME. REV. STAT. ANN. TIT. 5 § 213, the Maine State Class seeks an order awarding damages, punitive damages, and any other just and proper relief available under the Maine UTPA.

831.    Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above.  In addition, on October 19, 2017, a notice letter was sent on behalf of the Maine State Class to Defendants pursuant to Me. Rev. Stat. Ann. Tit. 5 § 213(1-A). Because Defendants failed to remedy their unlawful conduct within the requisite time period, the Maine State Class seeks all damages and relief to which they are entitled.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (ME. REV. STAT. ANN. TIT. 11 § 2-313)

832.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

833.    This count is brought on behalf of the Maine State Class against Defendants.

834.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ME. REV. STAT. ANN. TIT. 11 § 2-104(1), and "sellers" of the Duraspine Turf fields under § 2-103(1)(d).

835.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ME. REV. STAT. ANN. TIT. 11 § 2-105(1).

836.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Maine State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Maine State Class.

837.    Defendants' warranties formed a basis of the bargain that was reached when the Maine State Class members purchased their Duraspine Turf fields.

838.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Maine State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Maine State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith,

and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

839.    The Maine State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

840.    Thus, Defendants' eight-year written warranty fails of its essential purpose and the recovery of the Maine State Class is not limited to its remedies.

841.    Accordingly, the Maine State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Maine State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

842.    As a direct and proximate result of Defendants' breach of their express warranty, the Maine State Class members have been damaged in an amount to be determined at trial.

843.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (ME. REV. STAT. ANN. TIT. 11 §§ 2-314, 2-315)

844.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

845.    This count is brought on behalf of the Maine State Class against Defendants.

846.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under ME. REV. STAT. ANN. TIT. 11 § 2-104(1), and "sellers" of the Duraspine Turf fields under § 2-103(1)(d).

847.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of ME. REV. STAT. ANN. TIT. 11 § 2-105(1).

848.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to ME. REV. STAT. ANN. TIT. 11 § 2-314.

849.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to ME. REV. STAT. ANN. TIT. 11 § 2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Maine State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Maine State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

850.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

851.    As a direct and proximate result of Defendants' breach of their implied warranties, the Maine State Class members have been damaged in an amount to be determined at trial.

852.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

U.      **Claims Brought on Behalf of the Maryland Class.**

## COUNT I

## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE COM. LAW § 13-101, *ET SEQ.*)

853.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

854.    This count is brought on behalf of the Maryland State Class against Defendants.

855.    Defendants and the Maryland State Class members are "persons" within the meaning of Md. Code Comm. Law § 13-101(h).  The Maryland State Class members are "consumers" within the meaning of MD. CODE COMM. LAW § 13-101(c)(1).

856.    The Duraspine Turf fields are "consumer goods" within the meaning of MD. CODE COMM. LAW § 13-101(d)(1).

857.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good.  MD. CODE COM. LAW § 13-303. MD. CODE COM. LAW § 13-301 defines unfair or deceptive trade practices.

858.    The Maryland CPA makes unlawful several specific acts, including, but not limited to, representing that "(2)(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; . . . (iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; . . . (3) Failure to state a material fact if the failure deceives or tends to deceive . . . ."  MD. CODE COM. LAW § 13-301.

859.    In the course of their business, Defendants violated the Maryland CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability,

179

reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.

Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields,

Defendants engaged in one or more of the following unfair or deceptive acts or practices as

defined in Md. Code Com. Law § 13-301 defines unfair or deceptive trade practices:

> a.   Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;
>
> b.   Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or
>
> c.   Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

860.   Defendants' scheme and concealment of the true characteristics of the Duraspine

Turf fields were material to the Maryland State Class, and Defendants misrepresented,

concealed, or failed to disclose the truth with the intention that the Maryland State Class would

rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the

Maryland State Class would not have purchased the Duraspine Turf fields, or would have paid

significantly less for them.

861.   The Maryland State Class members had no way of discerning that Defendants'

representations were false and misleading, or otherwise learning the facts that Defendants had

concealed or failed to disclose.

862.   Defendants had an ongoing duty to the Maryland State Class to refrain from

unfair and deceptive practices under the Maryland CPA in the course of their business.

Specifically, Defendants owed the Maryland State Class members a duty to disclose all the

material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge,

they intentionally concealed it from the Maryland State Class, and/or they made

misrepresentations that were rendered misleading because they were contradicted by withheld facts.

863.     The Maryland State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

864.     Pursuant to MD. CODE COM. LAW § 13-408, the Maryland State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Maryland CPA.

**COUNT II**

**BREACH OF EXPRESS WARRANTY**
**(MD. CODE COM. LAW § 2-313)**

865.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

866.     This count is brought on behalf of the Maryland State Class against Defendants.

867.     Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under MD. CODE COM. LAW § 2-103(1)(d), and "merchants" under MD. CODE COM. LAW § 2-104(1).  Plaintiffs were "buyers" of the Duraspine Turf fields. MD. CODE COM. LAW § 2-103(1)(a).

868.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MD. CODE COM. LAW § 2-105(1).

869.     In connection with the purchase of all Duraspine Turf fields, Defendants provided the Maryland State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various

oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Maryland State Class.

870.    Defendants' warranties formed a basis of the bargain that was reached when the Maryland State Class members purchased their Duraspine Turf fields.

871.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Maryland State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Maryland State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

872.    The Maryland State Class has given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

873.    Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Maryland State Class is not limited to its remedies.

874.    Accordingly, the Maryland State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Maryland State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

875.     As a direct and proximate result of Defendants' breach of express warranty, the Maryalnd State Class members have been damaged in an amount to be determined at trial.

876.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
### (MD. CODE COM. LAW § 2-314)

877.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

878.     This count is brought on behalf of the Maryland State Class against Defendants.

879.     Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under MD. CODE COM. LAW § 2-103(1)(d), and "merchants" under MD. CODE COM. LAW § 2-104(1).

880.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MD. CODE COM. LAW § 2-105(1).

881.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MD. CODE COM. LAW § 2-314.

882.     In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to MD. CODE COM. LAW § 2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Maryland State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Maryland State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

883.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

884.    As a direct and proximate result of Defendants' breach of their implied warranties, the Maryland State Class members have been damaged in an amount to be determined at trial.

885.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**V.    Claims Brought on Behalf of the Massachusetts Class.**

**COUNT I**

**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
(MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.*)**

886.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

887.    This count is brought on behalf of the Massachusetts State Class against Defendants.

888.    Defendants and the Massachusetts State Class members are "persons" within the meaning of M.G.L.A. CH. 93A, § 1(a).

889.    The Defendants engaged in "trade" or "commerce" within the meaning of M.G.L.A. CH. 93A, § 1(b).

890.    The Massachusetts Consumer Protection Act (The Massachusetts Act") prohibits

"unfair or deceptive acts or practices in the conduct of any trade or commerce."  M.G.L.A. Cʜ.

93A, § 2.

891.    In the course of their business, Defendants violated the Massachusets Act by

knowingly misrepresenting and intentionally concealing material facts regarding the durability,

reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.

Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields,

Defendants engaged in one or more of the following unfair or deceptive acts or practices:

   a.    Representing that the Duraspine Turf fields have approval, characteristics, uses,
         benefits, or qualities that they do not have;

   b.    Representing that the Duraspine Turf fields are of a particular standard, quality
         and grade when they are not; and/or

   c.    Advertising the Duraspine Turf fields with the intent not to sell them as
         advertised.

892.    Defendants' scheme and concealment of the true characteristics of the Duraspine

Turf fields were material to the Massachusetts State Class, and Defendants misrepresented,

concealed, or failed to disclose the truth with the intention that the Massachusetts State Class

would rely on the misrepresentations, concealments, and omissions.  Had they known the truth,

the Massachusetts State Class would not have purchased the Duraspine Turf fields, or would

have paid significantly less for them.

893.    The Massachusetts State Class members had no way of discerning that

Defendants' representations were false and misleading, or otherwise learning the facts that

Defendants had concealed or failed to disclose.

894.    Defendants had an ongoing duty to the Massachusetts State Class to refrain from

unfair and deceptive practices under the Massachusetts Law in the course of their business.

Specifically, Defendants owed the Massachusetts State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Massachusetts State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

895.    The Massachusetts State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

896.    Pursuant to M.G.L.A. CH. 93A, § 9, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff.  Because Defendants' conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff, up to three times actual damages, but no less than two times actual damages.

897.    Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above.  In addition, on October 19, 2017, a notice letter was sent on behalf of the Massachusetts State Class to Defendants pursuant to M.G.L.A. CH. 93A, § 9(3). Because Defendants failed to remedy their unlawful conduct within the requisite time period, the Massachusetts State Class seeks all damages and relief to which they are entitled.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (M.G.L.A. CH. 106, § 2-313)

898.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

899.    This count is brought on behalf of the Massachusetts State Class against Defendants.

900.    Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under M.G.L.A. CH. 106 § 2-103(1)(d), and "merchants" under M.G.L.A. CH. 106 § 2-104(1).  Plaintiffs were "buyers" of the Duraspine Turf fields.  M.G.L.A. CH. 106 § 2-103(1)(a).

901.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of M.G.L.A. CH. 106 § 2-105(1).

902.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Massachusetts State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Massachusetts State Class.

903.    Defendants' warranties formed a basis of the bargain that was reached when the Massachusetts State Class members purchased their Duraspine Turf fields.

904.    Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Massachusetts State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Massachusetts State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

905.    The Massachusetts State Class has given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

906.    Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Massachusetts State Class is not limited to its remedies.

907.    Accordingly, the Massachusetts State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Massachusetts State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

908.    As a direct and proximate result of Defendants' breach of express warranty, the Massachusetts State Class members have been damaged in an amount to be determined at trial.

909.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
### (M.G.L.A. 106, §§ 2-314, 2-315)

910.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

911.    This count is brought on behalf of the Massachusetts State Class against Defendants.

912.    Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under M.G.L.A. Cн. 106 § 2-103(1)(d), and "merchants" under M.G.L.A. Cн. 106 § 2-104(1).

913.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of M.G.L.A. Cн. 106 § 2-105(1).

914.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to M.G.L.A. Cн. 106 § 2-314.

915.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to M.G.L.A. Cн. 106 § 2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Massachusetts State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Massachusetts State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

916.    The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

917.    As a direct and proximate result of Defendants' breach of their implied warranties, the Massachusetts State Class members have been damaged in an amount to be determined at trial.

918.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**W.   Claims Brought on Behalf of the Michigan Class.**

## COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903, *ET SEQ.*)

919.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

920.    This count is brought on behalf of the Michigan State Class against Defendants.

921.    Defendants and the Michigan State Class members are "persons" within the meaning of MICH. COMP. LAWS § 445.902(d). Defendants are engaged in "trade" or "commerce" within the meaning of MICH. COMP. LAWS § 445.902(g).

922.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce …."  MICH. COMP. LAWS § 445.903(1).  "Unfair" and "deceptive" acts under this statute, include, but are not limited to: "(c) Representing that goods or services have … characteristics … that they do not have ….;" "(e) Representing that goods or services are of a particular standard … if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  MICH. COMP. LAWS § 445.903(1).

923.    In the course of their business, Defendants violated the Michigan CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in MICH. COMP. LAWS § 445.903(1):

   a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

   b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

   c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

924.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Michigan State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Michigan State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Michigan State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

925.    The Michigan State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

926.    Defendants had an ongoing duty to the Michigan State Class to refrain from unfair and deceptive practices under the Michigan CPA in the course of their business. Specifically, Defendants owed the Michigan State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge,

they intentionally concealed it from the Michigan State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

927.    The Michigan State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

928.    Pursuant to MICH. COMP. LAWS § 445.911, the Michigan State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Michigan CPA.

## COUNT II

## BREACH OF EXPRESS WARRANTY
### (MICH. COMP. LAWS § 440.2313)

929.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

930.    This count is brought on behalf of the Michigan State Class against Defendants.

931.    Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under MICH. COMP. LAWS § 440.2103(1)(c), and "merchants" under MICH. COMP. LAWS § 440.2104(1).  Plaintiffs were "buyers" of the Duraspine Turf fields. MICH. COMP. LAWS § 440.2103(1)(a).

932.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS § 440.2105(1).

933.    In connection with the purchase of all Duraspine Turf fields, Defendants provided the Michigan State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various

oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Michigan State Class.

934.   Defendants' warranties formed a basis of the bargain that was reached when the Michigan State Class members purchased their Duraspine Turf fields.

935.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Michigan State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Michigan State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

936.   The Michigan State Class has given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

937.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Michigan State Class is not limited to its remedies.

938.   Accordingly, the Michigan State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Michigan State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

939.     As a direct and proximate result of Defendants' breach of express warranty, the Michigan State Class members have been damaged in an amount to be determined at trial.

940.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
### (MICH. COMP. LAWS § 440.2314, § 440.2315)

941.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

942.     This count is brought on behalf of the Michigan State Class against Defendants.

943.     Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under MICH. COMP. LAWS § 440.2103(1)(c), and "merchants" under MICH. COMP. LAWS § 440.2104(1).  Plaintiffs were "buyers" of the Duraspine Turf fields. MICH. COMP. LAWS § 440.2103(1)(a).

944.     The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS § 440.2105(1).

945.     A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MICH. COMP. LAWS § 440.2314.

946.     In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to MICH. COMP. LAWS § 440.2315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Michigan State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Michigan State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

947.     The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

948.     As a direct and proximate result of Defendants' breach of their implied warranties, the Michigan State Class members have been damaged in an amount to be determined at trial.

949.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## X.     Claims Brought on Behalf of the Minnesota Class.

### COUNT I

### VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68, *ET SEQ*.)

950.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

951.     This count is brought on behalf of the Minnesota State Class against Defendants.

952.     Defendants and the Minnesota State Class members are "persons" within the meaning of MINN. STAT. § 325F.69.  The Duraspine Turf fields are "merchandise" within the meaning of MINN. STAT. § 325F.69.

953.     The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely

thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1).

954.    In the course of their business, Defendants violated the Minnesota CFA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by the Minnesota CFA:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

955.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Minnesota State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Minnesota State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Minnesota State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

956.    The Minnesota State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

957.    Defendants had an ongoing duty to the Minnesota State Class to refrain from unfair and deceptive practices under the Minnesota CFA in the course of their business.

Specifically, Defendants owed the Minnesota State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Minnesota State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

958.    The Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

959.    Pursuant to the Minnesota CFA, and MINN. STAT. § 8.31(3a), the Minnesota State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Minnesota CFA.

## COUNT II

## VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (MINN. STAT. § 325D.43-48, *ET SEQ*.)

960.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

961.    This count is brought on behalf of the Minnesota State Class against Defendants.

962.    Defendants and the Minnesota State Class members are "persons" within the meaning of MINN. STAT. § 325D.44.  The Duraspine Turf fields are "goods" within the meaning of MINN. STAT. § 325D.44.

963.    The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person

does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised."  MINN. STAT. § 325D.44.

964.    In the course of their business, Defendants violated the Minnesota DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in MINN. STAT. § 325D.44:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

965.    Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Minnesota State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Minnesota State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Minnesota State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

966.    The Minnesota State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

967.    Defendants had an ongoing duty to the Minnesota State Class to refrain from unfair and deceptive practices under the Minnesota DTPA in the course of their business. Specifically, Defendants owed the Minnesota State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Minnesota State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

968.    The Minnesota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

969.    Pursuant to MINN. STAT. § 8.31(3a) and 325D.45, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

## COUNT III

### BREACH OF EXPRESS WARRANTY
### (MINN. STAT. § 336.2-313)

970.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

971.    This count is brought on behalf of the Minnesota State Class against Defendants.

972.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under MINN. STAT. § 336.2-104, and "sellers" of the Duraspine Turf fields under MINN. STAT. § 336.2-103(1)(d).

973.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MINN. STAT. § 336.2-105(1).

974.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Minnesota State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Minnesota State Class.

975.   Defendants' warranties formed a basis of the bargain that was reached when the Minnesota State Class members purchased their Duraspine Turf fields.

976.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Minnesota State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Minnesota State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

977.   The Minnesota State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

978.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Minnesota State Class is not limited to its remedies.

979.    Accordingly, the Minnesota State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Minnesota State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

980.    As a direct and proximate result of Defendants' breach of express warranty, the Minnesota State Class members have been damaged in an amount to be determined at trial.

981.    Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT IV

## BREACH OF IMPLIED WARRANTIES
## (MINN. STAT. §§ 336.2-314, 336.2-315)

982.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

983.    This count is brought on behalf of the Minnesota State Class against Defendants.

984.    Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under MINN. STAT. § 336.2-104, and "sellers" of the Duraspine Turf fields under MINN. STAT. § 336.2-103(1)(d).

985.    The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MINN. STAT. § 336.2-105(1).

986.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MINN. STAT. § 336.2-314.

987.    In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to MINN. STAT. § 336.2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Minnesota State Class intended to use

those fields as athletic fields requiring a particular standard of performance and durability, and that the Minnesota State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

988.     The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

989.     As a direct and proximate result of Defendants' breach of their implied warranties, the Minnesota State Class members have been damaged in an amount to be determined at trial.

990.     Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**Y.     Claims Brought on Behalf of the Missouri Class.**

## COUNT I

### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT (MO. REV. STAT. § 407.010, *ET SEQ.*)

991.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

992.     This count is brought on behalf of the Missouri State Class against Defendants.

993.     Defendants and the Missouri State Class members are "persons" within the meaning of MO. REV. STAT. § 407.020.

994.     The Duraspine Turf fields are "merchandise" within the meaning of MO. REV. STAT. § 407.010(4).

995.     Defendants are engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

996.     The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

997.     In the course of their business, Defendants violated the Missouri MPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Missouri MPA:

   a.     Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

   b.     Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

   c.     Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

998.     Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Missouri State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Missouri State Class would rely on the misrepresentations, concealments, and omissions. Had they known the truth, the Missouri State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

999.    The Missouri State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1000.   Defendants had an ongoing duty to the Missouri State Class to refrain from unfair and deceptive practices under the Missouri MPA in the course of their business.  Specifically, Defendants owed the Missouri State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Missouri State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1001.   The Missouri State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1002.   Defendants are liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, and any other just and proper relief under MO. REV. STAT. § 407.025.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (MO. REV. STAT. § 400.2-313)

1003.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1004.   This count is brought on behalf of the Missouri State Class against Defendants.

1005.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under MO. REV. STAT. § 400.2-104(1), and "sellers" of the Duraspine Turf fields under MO. REV. STAT. § 400.2-103(1)(d).

1006.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MO. REV. STAT. § 400.2-105(1).

1007.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Missouri State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Missouri State Class.

1008.   Defendants' warranties formed a basis of the bargain that was reached when the Missouri State Class members purchased their Duraspine Turf fields.

1009.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Missouri State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Missouri State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1010.   The Missouri State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1011.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Missouri State Class is not limited to its remedies.

1012.   Accordingly, the Missouri State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Missouri State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1013.   As a direct and proximate result of Defendants' breach of express warranty, the Missouri State Class members have been damaged in an amount to be determined at trial.

1014.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**COUNT III**

**BREACH OF IMPLIED WARRANTIES**
**(MO. REV. STAT. §§ 400.2-314, 400.2-315)**

1015.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth here.

1016.   This count is brought on behalf of the Missouri State Class against Defendants.

1017.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under MO. REV. STAT. § 400.2-104(1), and "sellers" of the Duraspine Turf fields under MO. REV. STAT. § 400.2-103(1)(d).

1018.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MO. REV. STAT. § 400.2-105(1).

1019.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MO. REV. STAT. § 400.2-314.

1020.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to MO. REV. STAT. § 400.2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Missouri State Class intended to

use those fields as athletic fields requiring a particular standard of performance and durability, and that the Missouri State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1021.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1022.   As a direct and proximate result of Defendants' breach of their implied warranties, the Missouri State Class members have been damaged in an amount to be determined at trial.

1023.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**Z.      Claims Brought on Behalf of the Montana Class.**

## COUNT I

### VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (MONT. CODE ANN. § 30-14-101, *ET SEQ.*)

1024.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1025.   This count is brought on behalf of the Montana State Class against Defendants.

1026.   Defendants and the Montana State Class members are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).  The Montana State Class members are "consumers" within the meaning of MONT. CODE ANN. § 30-14-102(1).

1027.   The sale of Defendants' Duraspine Turf fields occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8).

1028.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  MONT. CODE ANN. § 30-14-103.

1029.   In the course of their business, Defendants violated the Montana CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Montana CPA:

   a.   Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

   b.   Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

   c.   Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1030.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Montana State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Montana State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Montana State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1031.   The Montana State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1032.   Defendants had an ongoing duty to the Montana State Class to refrain from unfair and deceptive practices under the Montana CPA in the course of their business.  Specifically, Defendants owed the Montana State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Montana State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1033.   The Montana State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1034.   Pursuant to MONT. CODE ANN. § 30-14-133, the Montana State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Montana CPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (MONT. CODE § 30-2-313)

1035.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1036.   This count is brought on behalf of the Montana State Class against Defendants.

1037.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under MONT. CODE § 30-2-104(1), and "sellers" of the Duraspine Turf fields under MONT. CODE § 30-2-103(1)(d).

1038.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MONT. CODE § 30-2-105(1).

1039.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Montana State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Montana State Class.

1040.   Defendants' warranties formed a basis of the bargain that was reached when the Montana State Class members purchased their Duraspine Turf fields.

1041.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Montana State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Montana State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1042.   The Montana State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1043.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Montana State Class is not limited to its remedies.

1044.   Accordingly, the Montana State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Montana State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1045.   As a direct and proximate result of Defendants' breach of express warranty, the Montana State Class members have been damaged in an amount to be determined at trial.

1046.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
### (MONT. CODE §§ 30-2-314, 30-2-315)

1047.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1048.   This count is brought on behalf of the Montana State Class against Defendants.

1049.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under MONT. CODE § 30-2-104(1), and "sellers" of the Duraspine Turf fields under MONT. CODE § 30-2-103(1)(d).

1050.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of MONT. CODE § 30-2-105(1).

1051.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to MONT. CODE § 30-2-314.

1052.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to MONT. CODE § 30-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Montana State Class intended to use

those fields as athletic fields requiring a particular standard of performance and durability, and that the Montana State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1053.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1054.   As a direct and proximate result of Defendants' breach of their implied warranties, the Montana State Class members have been damaged in an amount to be determined at trial.

1055.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**AA.    Claims Brought on Behalf of the Nebraska Class.**

## COUNT I

### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT (NEB. REV. STAT. § 59-1601, *ET SEQ.*)

1056.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1057.   This count is brought on behalf of the Nebraska State Class against Defendants.

1058.   Defendants and the Nebraska State Class members are "persons" under under the Nebraska Consumer Protection Act ("Nebraska CPA"), NEB. REV. STAT. § 59-1601(1).  The Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

1059.   The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  NEB. REV. STAT. § 59-1602.

1060.   In the course of their business, Defendants violated the Nebraska CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Nebraska CPA:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1061.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Nebraska State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Nebraska State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Nebraska State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1062.   The Nebraska State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1063.   Defendants had an ongoing duty to the Nebraska State Class to refrain from unfair and deceptive practices under the Nebraska CPA in the course of their business.  Specifically,

Defendants owed the Nebraska State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Nebraska State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1064.   The Nebraska State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1065.   Pursuant to NEB. REV. STAT. § 59-1609, the Nebraska State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Nebraska CPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (NEB. REV. STAT. UCC § 2-314)

1066.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1067.   This count is brought on behalf of the Nebraska State Class against Defendants.

1068.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under NEB. REV. STAT. UCC § 2-104(1), and "sellers" of the Duraspine Turf fields under NEB. REV. STAT. UCC § 2-103(1)(d).

1069.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of NEB. REV. STAT. UCC § 2-105(1).

1070.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Nebraska State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various

oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Nebraska State Class.

1071.   Defendants' warranties formed a basis of the bargain that was reached when the Nebraska State Class members purchased their Duraspine Turf fields.

1072.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Nebraska State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Nebraska State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1073.   The Nebraska State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1074.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Nebraska State Class is not limited to its remedies.

1075.   Accordingly, the Nebraska State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Nebraska State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1076.   As a direct and proximate result of Defendants' breach of express warranty, the Nebraska State Class members have been damaged in an amount to be determined at trial.

1077.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (NEB. REV. STAT. UCC §§ 2-314, 2-315)

1078.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1079.   This count is brought on behalf of the Nebraska State Class against Defendants.

1080.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under NEB. REV. STAT. UCC § 2-104(1), and "sellers" of the Duraspine Turf fields under NEB. REV. STAT. UCC § 2-103(1)(d).

1081.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of NEB. REV. STAT. UCC § 2-105(1).

1082.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to NEB. REV. STAT. UCC § 2-314.

1083.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to NEB. REV. STAT. UCC § 2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Nebraska State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Nebraska State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1084.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1085.   As a direct and proximate result of Defendants' breach of their implied warranties, the Nebraska State Class members have been damaged in an amount to be determined at trial.

1086.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**BB.    Claims Brought on Behalf of the Nevada Class.**

**COUNT I**

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
(NEV. REV. STAT. § 598.0903, *ET SEQ*.)**

1087.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1088.   This count is brought on behalf of the Nevada State Class against Defendants.

1089.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. § 598.0903, *et seq.* prohibits deceptive trade practices.  NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "5.  Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7.  Represents that goods or services for sale or lease are of a particular standard,

quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

1090.   In the course of their business, Defendants violated the Nevada DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Nevada DTPA:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1091.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Nevada State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Nevada State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Nevada State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1092.   The Nevada State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1093.   Defendants had an ongoing duty to the Nevada State Class to refrain from unfair and deceptive practices under the Nevada DTPA in the course of their business.  Specifically, Defendants owed the Nevada State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Nevada State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1094.   The Nevada State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1095.   Pursuant to NEV. REV. STAT. § 41.600, the Nevada State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Nevada DTPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (NEV. REV. STAT. § 104.2313)

1096.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1097.   This count is brought on behalf of the Nevada State Class against Defendants.

1098.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under NEV. REV. STAT. § 104.2104(1), and "sellers" of the Duraspine Turf fields under NEV. REV. STAT. § 104.2103(1)(c).

1099.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of NEV. REV. STAT. § 104.2105(1).

1100.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Nevada State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Nevada State Class.

1101.   Defendants' warranties formed a basis of the bargain that was reached when the Nevada State Class members purchased their Duraspine Turf fields.

1102.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Nevada State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Nevada State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1103.   The Nevada State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1104.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Nevada State Class is not limited to its remedies.

1105.   Accordingly, the Nevada State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Nevada State Class

members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1106.   As a direct and proximate result of Defendants' breach of express warranty, the Nevada State Class members have been damaged in an amount to be determined at trial.

1107.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**COUNT III**

**BREACH OF IMPLIED WARRANTIES**
**(NEV. REV. STAT. §§ 104.2314, 104.2315)**

1108.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1109.   This count is brought on behalf of the Nevada State Class against Defendants.

1110.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under NEV. REV. STAT. § 104.2104(1), and "sellers" of the Duraspine Turf fields under NEV. REV. STAT. § 104.2103(1)(c).

1111.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of NEV. REV. STAT. § 104.2105(1).

1112.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to NEV. REV. STAT. § 104.2314.

1113.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to NEV. REV. STAT. § 104.2315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Nevada State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and

221

that the Nevada State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1114.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1115.   As a direct and proximate result of Defendants' breach of their implied warranties, the Nevada State Class members have been damaged in an amount to be determined at trial.

1116.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**CC.    Claims Brought on Behalf of the New Hampshire Class.**

### COUNT I

### VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*)

1117.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1118.   This count is brought on behalf of the New Hampshire State Class against Defendants.

1119.   Defendants and Plaintiffs are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. REV. STAT. § 358-A:1(I).  The Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. REV. STAT. § 358-A:1(II).

1120.   The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

1121.   In the course of their business, Defendants violated the New Hampshire CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Hampshire CPA:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1122.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the New Hampshire State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the New Hampshire State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the New Hampshire State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1123.   The New Hampshire State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1124.   Defendants had an ongoing duty to the New Hampshire State Class to refrain from unfair and deceptive practices under the New Hampshire CPA in the course of their business.  Specifically, Defendants owed the Neew Hampshire State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the New Hampshire State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1125.   The New Hampshire State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1126.   Pursuant to N.H. Rev. Stat. § 358-A:10., the New Hampshire State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the New Hampshire CPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (N.H. REV. STAT. ANN. § 382-A:2-313)

1127.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1128.   This count is brought on behalf of the New Hampshire State Class against Defendants.

1129.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.H. REV. STAT. ANN. § 382-A:2-104(1), and "sellers" of the Duraspine Turf fields under N.H. REV. STAT. ANN. § 382-A:2-103(1)(d).

1130.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.H. REV. STAT. ANN. § 382-A:2-105(1).

1131.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the New Hampshire State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the New Hampshire State Class.

1132.   Defendants' warranties formed a basis of the bargain that was reached when the New Hampshire State Class members purchased their Duraspine Turf fields.

1133.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the New Hampshire State Class with Duraspine Turf fields containing defects in material that were never disclosed to the New Hampshire State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1134.   The New Hampshire State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements

offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1135.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the New Hampshire State Class is not limited to its remedies.

1136.   Accordingly, the New Hampshire State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the New Hampshire State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1137.   As a direct and proximate result of Defendants' breach of express warranty, the New Hampshire State Class members have been damaged in an amount to be determined at trial.

1138.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF THE IMPLIED WARRANTIES
### (N.H. REV. STAT. ANN. §§ 382-A:2-314, 382-A:2-315)

1139.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1140.   This count is brought on behalf of the New Hampshire State Class against Defendants.

1141.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.H. REV. STAT. ANN. § 382-A:2-104(1), and "sellers" of the Duraspine Turf fields under N.H. REV. STAT. ANN. § 382-A:2-103(1)(d).

1142.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.H. REV. STAT. ANN. § 382-A:2-105(1).

1143.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.H. REV. STAT. ANN. § 382-A:2-314.

1144.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to N.H. REV. STAT. ANN. § 382-A:2-3145. Defendants knew at the time of sale and installation of the Duraspine Turf fields that the New Hampshire State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the New Hampshire State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1145.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1146.   As a direct and proximate result of Defendants' breach of their implied warranties, the New Hampshire State Class members have been damaged in an amount to be determined at trial.

1147.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**DD.   Claims Brought on Behalf of the New Jersey Class.**

**COUNT I**

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1, *ET SEQ*.)**

1148.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1149.   Plaintiffs Carteret, Hudson, Medord, and Newark (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the New Jersey State Class against Defendants.

1150.   Defendants and the New Jersey State Class members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).  The Defendants engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

1151.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…"  N.J. STAT. ANN. § 56:8-2.

1152.   In the course of their business, Defendants violated the New Jersey CFA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Jersey CFA:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1153.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the New Jersey State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the New Jersey State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the New Jersey State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1154.   The New Jersey State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1155.   Defendants had an ongoing duty to the New Jersey State Class to refrain from unfair and deceptive practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed the New Jersey State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the New Jersey State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1156.   The New Jersey State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1157.   Pursuant to N.J. STAT. ANN. § 56:8-19, the New Jersey State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the New Jersey CFA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (N.J. STAT. ANN. §§ 12A:2-314, 12A:2-315)

1158.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1159.   Plaintiffs Carteret, Hudson, Medord, and Newark (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the New Jersey State Class against Defendants.

1160.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.J. STAT. ANN. § 12A:2-104(1), and "sellers" of the Duraspine Turf fields under N.J. STAT. ANN. § 12A:2-103(1)(d).

1161.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. § 12A:2-105(1).

1162.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the New Jersey State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the New Jersey State Class.

1163.   Defendants' warranties formed a basis of the bargain that was reached when the New Jersey State Class members purchased their Duraspine Turf fields.

1164.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the New Jersey State Class with Duraspine Turf fields containing defects in material that were never disclosed to the New Jersey

State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1165.   The New Jersey State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1166.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the New Jersey State Class is not limited to its remedies.

1167.   Accordingly, the New Jersey State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the New Jersey State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1168.   As a direct and proximate result of Defendants' breach of express warranty, the New Jersey State Class members have been damaged in an amount to be determined at trial.

1169.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (N.J. STAT. ANN. §§ 12A:2-314, 12A:2-315)

1170.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1171.   Plaintiffs Carteret, Hudson, Medord, and Newark (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and the New Jersey State Class against Defendants.

1172.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.J. STAT. ANN. § 12A:2-104(1), and "sellers" of the Duraspine Turf fields under N.J. STAT. ANN. § 12A:2-103(1)(d).

1173.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. § 12A:2-105(1).

1174.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.J. STAT. ANN. § 12A:2-314.

1175.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to N.J. STAT. ANN. § 12A:2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the New Jersey State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the New Jersey State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1176.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1177.   As a direct and proximate result of Defendants' breach of their implied warranties, the New Jersey State Class members have been damaged in an amount to be determined at trial.

1178.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**EE.    Claims Brought on Behalf of the New Mexico Class.**

### COUNT I

### VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. STAT. ANN. § 57-12-1, *ET SEQ.*)

1179.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1180.   This count is brought on behalf of the New Mexico State Class against Defendants.

1181.   Defendants and Plaintiffs are "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. STAT. ANN. § 57-12-2(A).

1182.   The Defendants' sales of Duraspine Turf fields occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2(C).

1183.   The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive."  N.M. STAT. ANN. § 57-12-2(D).

1184.   In the course of their business, Defendants violated the New Mexico UTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Mexico UTPA:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1185.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the New Mexico State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the New Mexico State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the New Mexico State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1186.   The New Mexico State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1187.   Defendants had an ongoing duty to the New Mexico State Class to refrain from unfair and deceptive practices under the New Mexico UTPA in the course of their business. Specifically, Defendants owed the New Mexico State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge,

they intentionally concealed it from the New Mexico State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1188.   The New Mexico State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1189.   Pursuant to N.M. STAT. ANN. § 57-12-10, the New Mexico State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the New Mexico UTPA.

**COUNT II**

**BREACH OF EXPRESS WARRANTY**
**(N.M. STAT. ANN. § 55-2-314)**

1190.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1191.   This count is brought on behalf of the New Mexico State Class against Defendants.

1192.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.M. STAT. ANN. § 55-2-104(1), and "sellers" of the Duraspine Turf fields under N.M. STAT. ANN. § 55-2-103(1)(d).

1193.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.M. STAT. ANN. § 55-2-105(1).

1194.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the New Mexico State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition,

Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the New Mexico State Class.

1195.   Defendants' warranties formed a basis of the bargain that was reached when the New Mexico State Class members purchased their Duraspine Turf fields.

1196.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the New Mexico State Class with Duraspine Turf fields containing defects in material that were never disclosed to the New Mexico State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1197.   The New Mexico State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1198.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the New Mexico State Class is not limited to its remedies.

1199.   Accordingly, the New Mexico State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the New Mexico State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1200.   As a direct and proximate result of Defendants' breach of express warranty, the New Mexico State Class members have been damaged in an amount to be determined at trial.

1201.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (N.M. STAT. ANN. §§ 55-2-314, 55-2-315)

1202.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1203.   This count is brought on behalf of the New Mexico State Class against Defendants.

1204.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.M. STAT. ANN. § 55-2-104(1), and "sellers" of the Duraspine Turf fields under N.M. STAT. ANN. § 55-2-103(1)(d).

1205.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.M. STAT. ANN. § 55-2-105(1).

1206.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.M. STAT. ANN. § 55-2-314.

1207.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to N.M. STAT. ANN. § 55-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the New Mexico State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the New Mexico State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1208.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1209.   As a direct and proximate result of Defendants' breach of their implied warranties, the New Mexico State Class members have been damaged in an amount to be determined at trial.

1210.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**FF.   Claims Brought on Behalf of the New York Class.**

**COUNT I**

**DECEPTIVE ACTS OR PRACTICES**
**(N.Y. GEN. BUS. LAW § 349)**

1211.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1212.   Plaintiff Levittown (for the purposes of this section, "Plaintiff") brings this claim on behalf of themselves and the New York State Class against Defendants.

1213.   Plaintiffs are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h). Defendants are a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

1214.   The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. GEN. BUS. LAW § 349.

1215.   In the course of their business, Defendants violated the New York GBL by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New York GBL:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1216.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the New York State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the New York State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the New York State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1217.   The New York State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1218.   Defendants had an ongoing duty to the New York State Class to refrain from unfair and deceptive practices under the New York GBL in the course of their business. Specifically, Defendants owed the New York State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge,

they intentionally concealed it from the New York State Class, and/or they made

misrepresentations that were rendered misleading because they were contradicted by withheld

facts.

1219.   The New York State Class members suffered ascertainable loss and actual

damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or

failure to disclose material information.

1220.   Pursuant to N.Y. Gen. Bus. Law § 349, the New York State Class seeks an order

awarding damages, treble damages, and any other just and proper relief available under the New

York GBL.

## COUNT II

## BREACH OF EXPRESS WARRANTY
### (N.Y. U.C.C. § 2-313)

1221.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

fully set forth herein.

1222.   Plaintiff Levittown (for the purposes of this section, "Plaintiff") brings this claim

on behalf of themselves and the New York State Class against Defendants.

1223.   Defendants are and were at all relevant times "merchants" with respect to the

Duraspine Turf fields under N.Y. U.C.C. § 2-104(1), and "sellers" of the Duraspine Turf fields

under N.Y. U.C.C. § 2-103(1)(d).

1224.   The Duraspine Turf fields are and were at all relevant times "goods" within the

meaning of N.Y. U.C.C. § 2-105(1).

1225.   In connection with the purchase of all Duraspine Turf fields, Defendants provided

the New York State Class with a written warranty covering defects in materials and

workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition,

Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the New York State Class.

1226.   Defendants' warranties formed a basis of the bargain that was reached when the New York State Class members purchased their Duraspine Turf fields.

1227.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the New York State Class with Duraspine Turf fields containing defects in material that were never disclosed to the New York State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1228.   The New York State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1229.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the New York State Class is not limited to its remedies.

1230.   Accordingly, the New York State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the New York State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1231.   As a direct and proximate result of Defendants' breach of express warranty, the New York State Class members have been damaged in an amount to be determined at trial.

1232.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

### COUNT III

### BREACH OF IMPLIED WARRANTIES
### (N.Y. U.C.C. §§ 2-314, 2-315)

1233.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1234.   Plaintiff Levittown (for the purposes of this section, "Plaintiff") brings this claim on behalf of themselves and the New York State Class against Defendants.

1235.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.Y. U.C.C. § 2-104(1), and "sellers" of the Duraspine Turf fields under N.Y. U.C.C. § 2-103(1)(d).

1236.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. § 2-105(1).

1237.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.Y. U.C.C. § 2-314.

1238.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to N.Y. U.C.C. § 2-315. Defendants knew at the time of sale and installation of the Duraspine Turf fields that the New York State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the New York State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1239.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1240.   As a direct and proximate result of Defendants' breach of their implied warranties, the New York State Class members have been damaged in an amount to be determined at trial.

1241.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT IV

### VIOLATION OF NEW YORK'S FALSE ADVERTISING ACT
### (N.Y. GEN. BUS. LAW § 350)

1242.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1243.   Plaintiff Levittown (for the purposes of this section, "Plaintiff") brings this claim on behalf of themselves and the New York State Class against Defendants.

1244.   The Defendants were engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. GEN. BUS. LAW § 350.

1245.   N.Y. GEN. BUS. LAW § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce."  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …."  N.Y. GEN. BUS. LAW § 350-a.

1246.   The Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to the Defendants, to be untrue and misleading to consumers including Plaintiffs.

1247.   The Defendants violated § 350 because the misrepresentations and omissions regarding the Duraspine Turf fields, as set forth above, were material and likely to deceive a reasonable consumer.

1248.   The New York State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1249.   Pursuant to N.Y. GEN. BUS. LAW § 350e, Plaintiffs seek monetary relief against the Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff.  Because the Defendants conduct was committed willfully and knowingly, Plaintiffs are entitled to recover three times actual damages, up to $10,000 each.

**GG.   Claims Brought on Behalf of the North Carolina Class.**

### COUNT I

**VIOLATION OF NORTH CAROLINA'S UNFAIR
AND DECEPTIVE ACTS AND PRACTICES ACT
(N.C. GEN. STAT. § 75-1.1, *ET SEQ.*)**

1250.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1251.   This count is brought on behalf of the North Carolina State Class against Defendants.

1252.   The Defendants engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b) (North Carolina DAPA).

1253.   The North Carolina Act broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. GEN. STAT. § 75-1.1(a).

1254.   In the course of their business, Defendants violated the North Carolina DAPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the North Carolina DAPA:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1255.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the North Carolina State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the North Carolina State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the North Carolina State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1256.   The North Carolina State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1257.   Defendants had an ongoing duty to the North Carolina State Class to refrain from unfair and deceptive practices under the North Carolina DAPA in the course of their business. Specifically, Defendants owed the North Carolina State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the North Carolina State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1258.   The North Carolina State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1259.   Pursuant to N.C. Gen. Stat. § 75-16, the North Carolina State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the North Carolina DAPA.

## COUNT II

## BREACH OF EXPRESS WARRANTY
## (N.C. GEN. STAT. § 25-2-313)

1260.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1261.   This count is brought on behalf of the North Carolina State Class against Defendants.

1262.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.C. Gen. Stat. § 25-2-104(1), and "sellers" of the Duraspine Turf fields under N.C. Gen. Stat. § 25-2-103(1)(d).

1263.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.C. GEN. STAT. § 25-2-105(1).

1264.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the North Carolina State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the North Carolina State Class.

1265.   Defendants' warranties formed a basis of the bargain that was reached when the North Carolina State Class members purchased their Duraspine Turf fields.

1266.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the North Carolina State Class with Duraspine Turf fields containing defects in material that were never disclosed to the North Carolina State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1267.   The North Carolina State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1268.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the North Carolina State Class is not limited to its remedies.

1269.   Accordingly, the North Carolina State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the North Carolina State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1270.   As a direct and proximate result of Defendants' breach of express warranty, the North Carolina State Class members have been damaged in an amount to be determined at trial.

1271.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
## (N.C. GEN. STAT. §§ 25-2-314, 25-2-315)

1272.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1273.   This count is brought on behalf of the North Carolina State Class against Defendants.

1274.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under N.C. GEN. STAT. § 25-2-104(1), and "sellers" of the Duraspine Turf fields under N.C. GEN. STAT. § 25-2-103(1)(d).

1275.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of N.C. GEN. STAT. § 25-2-105(1).

1276.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.C. GEN. STAT. § 25-2-314.

1277.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to N.C. GEN. STAT. § 25-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the North Carolina State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the North Carolina State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1278.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1279.   As a direct and proximate result of Defendants' breach of their implied warranties, the North Carolina State Class members have been damaged in an amount to be determined at trial.

1280.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**HH.    Claims Brought on Behalf of the Ohio Class.**

**COUNT I**

**BREACH OF EXPRESS WARRANTY**
**(OHIO REV. CODE ANN. § 1302.26)**

1281.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1282.   This count is brought on behalf of the Ohio State Class against Defendants.

249

1283.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under OHIO REV. CODE ANN. § 1302.1(A)(5) and "sellers" of the Duraspine Turf fields under OHIO REV. CODE ANN. § 1302.1(A)(4).

1284.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. § 1302.1(A)(8).

1285.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Ohio State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Ohio State Class.

1286.   Defendants' warranties formed a basis of the bargain that was reached when the Ohio State Class members purchased their Duraspine Turf fields.

1287.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Ohio State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Ohio State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1288.   The Ohio State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1289.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Ohio State Class is not limited to its remedies.

1290.   Accordingly, the Ohio State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Ohio State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1291.   As a direct and proximate result of Defendants' breach of express warranty, the Ohio State Class members have been damaged in an amount to be determined at trial.

1292.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT II

### BREACH OF IMPLIED WARRANTIES
### (OHIO REV. CODE ANN. §§ 1302.27, 1302.28)

1293.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1294.   This count is brought on behalf of the Ohio State Class against Defendants.

1295.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under OHIO REV. CODE ANN. § 1302.1(A)(5) and "sellers" of the Duraspine Turf fields under OHIO REV. CODE ANN. § 1302.1(A)(4).

1296.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. § 1302.1(A)(8).

1297.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to OHIO REV. CODE ANN. § 1302.27.

1298.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to OHIO REV. CODE ANN. § 1302.28.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Ohio State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Ohio State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1299.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1300.   As a direct and proximate result of Defendants' breach of their implied warranties, the Ohio State Class members have been damaged in an amount to be determined at trial.

1301.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**II.    Claims Brought on Behalf of the Oklahoma Class.**

**COUNT I**

**VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT**
**(OKLA. STAT. TIT. 15 § 751, *ET SEQ.*)**

1302.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1303.   This count is brought on behalf of the Oklahoma State Class against Defendants.

1304.   Plaintiffs are "persons" under the Oklahoma Consumer Protection Act ("Oklahoma CPA"), OKLA. STAT. TIT. 15 § 752.

1305.   The Defendants are a "person," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15 § 15-751(1).

1306.   The sale of Defendants' Duraspine Turf fields to Plaintiffs was a "consumer transaction" within the meaning of OKLA. STAT. TIT. 15 § 752, and the Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

1307.   The Oklahoma CPA declares unlawful, *inter alia*, the following acts or practices when committed in the course of business:  "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics…, uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice."  *See* OKLA. STAT. TIT. 15, § 753.

1308.   In the course of their business, Defendants violated the Oklahoma CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Oklahoma CPA:

a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1309.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Oklahoma State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Oklahoma State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Oklahoma State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1310.   The Oklahoma State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1311.   Defendants had an ongoing duty to the Oklahoma State Class to refrain from unfair and deceptive practices under the Oklahoma CPA in the course of their business. Specifically, Defendants owed the Oklahoma State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Oklahoma State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1312.   The Oklahoma State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1313.   Pursuant to OKLA. STAT. TIT. 15 § 761.1, the Oklahoma State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Oklahoma CPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (12A OKLA. STAT. ANN. § 2-313)

1314.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1315.   This count is brought on behalf of the Oklahoma State Class against Defendants.

1316.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under 12A OKLA. STAT. ANN. § 2-104(1), and "sellers" of the Duraspine Turf fields under 12A OKLA. STAT. ANN. § 2-103(1)(d).

1317.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of 12A OKLA. STAT. ANN. § 2-105(1).

1318.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Oklahoma State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Oklahoma State Class.

1319.   Defendants' warranties formed a basis of the bargain that was reached when the Oklahoma State Class members purchased their Duraspine Turf fields.

1320.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Oklahoma State Class with

Duraspine Turf fields containing defects in material that were never disclosed to the Oklahoma State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1321.   The Oklahoma State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1322.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Oklahoma State Class is not limited to its remedies.

1323.   Accordingly, the Oklahoma State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Oklahoma State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1324.   As a direct and proximate result of Defendants' breach of express warranty, the Oklahoma State Class members have been damaged in an amount to be determined at trial.

1325.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (12A OKLA. STAT. ANN. §§ 2-314, 2-315)

1326.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1327.   This count is brought on behalf of the Oklahoma State Class against Defendants.

1328.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under 12A OKLA. STAT. ANN. § 2-104(1), and "sellers" of the Duraspine Turf fields under 12A OKLA. STAT. ANN. § 2-103(1)(d).

1329.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of 12A OKLA. STAT. ANN. § 2-105(1).

1330.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 12A OKLA. STAT. ANN. § 2-314.

1331.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to 12A OKLA. STAT. ANN. § 2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Oklahoma State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Oklahoma State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1332.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1333.   As a direct and proximate result of Defendants' breach of their implied warranties, the Oklahoma State Class members have been damaged in an amount to be determined at trial.

1334.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**JJ.   Claims Brought on Behalf of the Oregon Class.**

### COUNT I

### VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (OR. REV. STAT. §§ 646.605, *ET SEQ.*)

1335.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1336.   This count is brought on behalf of the Oregon State Class against Defendants.

1337.   The Defendants are a person within the meaning of OR. REV. STAT. § 646.605(4).

1338.   Defendants' Duraspine Turf fields are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

1339.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following:  "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if they are of another; (i) Advertis[ing] … goods or services with intent not to provide them as advertised;" and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce."  OR. REV. STAT. § 646.608(1).1.

1340.   In the course of their business, Defendants violated the Oregon UTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability,

reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.

Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields,

Defendants engaged in one or more of the following unfair or deceptive acts or practices which

are proscribed by the Oregon UTPA:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1341.  Defendants' scheme and concealment of the true characteristics of the Duraspine

Turf fields were material to the Oregon State Class, and Defendants misrepresented, concealed,

or failed to disclose the truth with the intention that the Oregon State Class would rely on the

misrepresentations, concealments, and omissions.  Had they known the truth, the Oregon State

Class would not have purchased the Duraspine Turf fields, or would have paid significantly less

for them.

1342.  The Oregon State Class members had no way of discerning that Defendants'

representations were false and misleading, or otherwise learning the facts that Defendants had

concealed or failed to disclose.

1343.  Defendants had an ongoing duty to the Oregon State Class to refrain from unfair

and deceptive practices under the Oregon UTPA in the course of their business.  Specifically,

Defendants owed the Oregon State Class members a duty to disclose all the material facts

concerning the Duraspine Turf fields because they possessed exclusive knowledge, they

intentionally concealed it from the Oregon State Class, and/or they made misrepresentations that

were rendered misleading because they were contradicted by withheld facts.

1344.   The Oregon State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1345.   Pursuant to OR. REV. STAT. § 646.638(1), the Oregon State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Oregon UTPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (OR. REV. STAT. § 72.3130)

1346.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1347.   This count is brought on behalf of the Oregon State Class against Defendants.

1348.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under OR. REV. STAT. § 72.1040(1), and "sellers" of the Duraspine Turf fields under OR. REV. STAT. § 72.1030(1)(d).

1349.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of OR. REV. STAT. § 72.1050(1).

1350.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Oregon State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Oregon State Class.

1351.   Defendants' warranties formed a basis of the bargain that was reached when the Oregon State Class members purchased their Duraspine Turf fields.

1352.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Oregon State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Oregon State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1353.   The Oregon State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1354.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Oregon State Class is not limited to its remedies.

1355.   Accordingly, the Oregon State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Oregon State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1356.   As a direct and proximate result of Defendants' breach of express warranty, the Oregon State Class members have been damaged in an amount to be determined at trial.

1357.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
### (OR. REV. STAT. §§ 72.3140, 72.3150)

1358.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1359.   This count is brought on behalf of the Oregon State Class against Defendants.

1360.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under OR. REV. STAT. § 72.1040(1), and "sellers" of the Duraspine Turf fields under OR. REV. STAT. § 72.1030(1)(d).

1361.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of OR. REV. STAT. § 72.1050(1).

1362.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to OR. REV. STAT. § 72.3140.

1363.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to OR. REV. STAT. § 72.3150.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Oregon State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Oregon State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1364.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1365.   As a direct and proximate result of Defendants' breach of their implied warranties, the Oregon State Class members have been damaged in an amount to be determined at trial.

1366.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**KK.   Claims Brought on Behalf of the Pennsylvania Class.**

### COUNT I

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, *ET SEQ.*)

1367.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1368.   Plaintiff Neshannock (for purposes of this section "Plaintiff") bring this count on behalf of itself and the Pennsylvania State Class against Defendants.

1369.   Plaintiffs and Defendants are "persons" within the meaning of 73 P.S. § 201-2(2). Plaintiffs purchased Duraspine Turf fields primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

1370.   All of the acts complained of herein were perpetrated by Defendants in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

1371.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:  (i) "Representing that goods or services have … characteristics, ….  Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising goods or services with intent not to sell them

as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 P.S. § 201-2(4).

1372.   In the course of their business, Defendants violated the Pennsylvania CPL by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Pennsylvania CPL:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1373.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Pennsylvania State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Pennsylvania State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Pennsylvania State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1374.   The Pennsylvania State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1375.   Defendants had an ongoing duty to the Pennsylvania State Class to refrain from unfair and deceptive practices under the Pennsylvania CPL in the course of their business.

Specifically, Defendants owed the Pennsylvania State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Pennsylvania State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1376.   The Pennsylvania State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1377.   Pursuant to 73 P.S. § 201-9.2(a), the Pennsylvania State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Pennsylvania CPL.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (13 PA. CONS. STAT. ANN. § 2313)

1378.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1379.   Plaintiff Neshannock (for purposes of this section "Plaintiff") bring this count on behalf of itself and the Pennsylvania State Class against Defendants.

1380.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under 13 PA. CONS. STAT. ANN. § 2104, and "sellers" of the Duraspine Turf fields under 13 PA. CONS. STAT. ANN. § 2103(a).

1381.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. ANN. § 2105(a).

1382.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Pennsylvania State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Pennsylvania State Class.

1383.   Defendants' warranties formed a basis of the bargain that was reached when the Pennsylvania State Class members purchased their Duraspine Turf fields.

1384.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Pennsylvania State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Pennsylvania State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1385.   The Pennsylvania State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1386.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Pennsylvania State Class is not limited to its remedies.

1387.   Accordingly, the Pennsylvania State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Pennsylvania State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1388.   As a direct and proximate result of Defendants' breach of express warranty, the Pennsylvania State Class members have been damaged in an amount to be determined at trial.

1389.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

### COUNT III

### BREACH OF THE IMPLIED WARRANTIES
### (13 PA. CONS. STAT. ANN. §§ 2314-2315)

1390.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1391.   Plaintiff Neshannock (for purposes of this section "Plaintiff") bring this count on behalf of itself and the Pennsylvania State Class against Defendants.

1392.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under 13 PA. CONS. STAT. ANN. § 2104, and "sellers" of the Duraspine Turf fields under 13 PA. CONS. STAT. ANN. § 2103(a).

1393.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. ANN. § 2105(a).

1394.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 13 PA. CONS. STAT. ANN. § 2314.

1395.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to 13 PA. CONS. STAT. ANN. § 2315.  Defendants knew at the

time of sale and installation of the Duraspine Turf fields that the Pennsylvania State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Pennsylvania State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1396.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1397.   As a direct and proximate result of Defendants' breach of their implied warranties, the Pennsylvania State Class members have been damaged in an amount to be determined at trial.

1398.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**LL.   Claims Brought on Behalf of the Rhode Island Class.**

**COUNT I**

**VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION ACT
(R.I. GEN. LAWS § 6-13.1, *ET SEQ.*)**

1399.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1400.   This count is brought on behalf of the Rhode Island State Class against Defendants.

1401.   Plaintiffs and Defendants are persons within the meaning of R.I. GEN. LAWS § 6-13.1-1(3).  Plaintiffs' purchase of Duraspine Turf fields from Defendants is within the meaning of trade and commerce of R.I. GEN. LAWS § 6-13.1-1(5).

1402.   Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or services are of a particular standard, quality, or grade …, if they are of another"; "(ix) Advertising goods or services with intent not to sell them as advertised"; "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding"; "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer"; and "(xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect."  R.I. GEN. LAWS § 6-13.1-1(6).

1403.   In the course of their business, Defendants violated the Rhode Island CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Rhode Island CPA:

> a.      Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

> b.      Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

> c.      Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1404.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Rhode Island State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Rhode Island State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Rhode Island State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1405.   The Rhode Island State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1406.   Defendants had an ongoing duty to the Rhode Island State Class to refrain from unfair and deceptive practices under the Rhode Island CPA in the course of their business. Specifically, Defendants owed the Rhode Island State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Rhode Island State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1407.   The Rhode Island State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1408.   Pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a), the Rhode Island State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Rhode Island CPA.

## COUNT II

## BREACH OF EXPRESS WARRANTY
### (R.I. GEN. LAWS § 6A-2-314)

1409.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1410.   This count is brought on behalf of the Rhode Island State Class against Defendants.

1411.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under R.I. GEN. LAWS § 6a-2-104(1), and "sellers" of the Duraspine Turf fields under R.I. GEN. LAWS § 6a-2-103(a)(4).

1412.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of R.I. GEN. LAWS § 6a-2-105(1).

1413.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Rhode Island State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Rhode Island State Class.

1414.   Defendants' warranties formed a basis of the bargain that was reached when the Rhode Island State Class members purchased their Duraspine Turf fields.

1415.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Rhode Island State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Rhode Island State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost

within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1416.   The Rhode Island State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1417.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Rhode Island State Class is not limited to its remedies.

1418.   Accordingly, the Rhode Island State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Rhode Island State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1419.   As a direct and proximate result of Defendants' breach of express warranty, the Rhode Island State Class members have been damaged in an amount to be determined at trial.

1420.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF THE IMPLIED WARRANTIES
### (R.I. GEN. LAWS §§ 6A-2-314, 6A-2-315)

1421.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1422.   This count is brought on behalf of the Rhode Island State Class against Defendants.

1423.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under R.I. GEN. LAWS § 6a-2-104(1), and "sellers" of the Duraspine Turf fields under R.I. GEN. LAWS § 6a-2-103(a)(4).

1424.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of R.I. GEN. LAWS § 6a-2-105(1).

1425.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to R.I. GEN. LAWS § 6a-2-314.

1426.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to R.I. GEN. LAWS § 6a-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Rhode Island State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Rhode Island State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1427.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1428.   As a direct and proximate result of Defendants' breach of their implied warranties, the Rhode Island State Class members have been damaged in an amount to be determined at trial.

1429.   Defendants were provided notice of the issues raised in this Count and this

Consolidated Amended Complaint as detailed above.

**MM.   Claims Brought on Behalf of the South Carolina Class.**

### COUNT I

### VIOLATIONS OF THE SOUTH CAROLINA
### UNFAIR TRADE PRACTICES ACT
### (S.C. CODE ANN. § 39-5-10, *ET SEQ.*)

1430.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

fully set forth herein.

1431.   This count is brought on behalf of the South Carolina State Class against

Defendants.

1432.   The Plaintiffs and Defendants are a "person" under S.C. CODE ANN. § 39-5-10.

Plaintiffs' purchase of Duraspine Turf fields from Defendants is within the meaning of trade and

commerce of S.C. CODE ANN. § 39-5-10.

1433.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA")

prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …."

S.C. CODE ANN. § 39-5-20(a).

1434.   In the course of their business, Defendants violated the South Carolina UTPA by

knowingly misrepresenting and intentionally concealing material facts regarding the durability,

reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.

Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields,

Defendants engaged in one or more of the following unfair or deceptive acts or practices which

are proscribed by the South Carolina UTPA:

     a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

b.      Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

c.      Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1435.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the South Carolina State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the South Carolina State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the South Carolina State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1436.   The South Carolina State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1437.   Defendants had an ongoing duty to the South Carolina State Class to refrain from unfair and deceptive practices under the South Carolina UTPA in the course of their business. Specifically, Defendants owed the South Carolina State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the South Carolina State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1438.   The South Carolina State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1439.   Pursuant to S.C. CODE ANN. § 39-5-140(a), the South Carolina State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the South Carolina UTPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (S.C. CODE § 36-2-313)

1440.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1441.   This count is brought on behalf of the South Carolina State Class against Defendants.

1442.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under S.C. CODE § 36-2-104(1), and "sellers" of the Duraspine Turf fields under S.C. CODE § 36-2-103(1)(d).

1443.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of S.C. CODE § 36-2-105(1).

1444.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the South Carolina State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the South Carolina State Class.

1445.   Defendants' warranties formed a basis of the bargain that was reached when the South Carolina State Class members purchased their Duraspine Turf fields.

1446.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the South Carolina State Class with Duraspine Turf fields containing defects in material that were never disclosed to the South Carolina State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1447.   The South Carolina State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1448.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the South Carolina State Class is not limited to its remedies.

1449.   Accordingly, the South Carolina State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the South Carolina State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1450.   As a direct and proximate result of Defendants' breach of express warranty, the South Carolina State Class members have been damaged in an amount to be determined at trial.

1451.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

### BREACH OF THE IMPLIED WARRANTIES
### (S.C. CODE §§ 36-2-314, 36-2-315)

1452.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1453.   This count is brought on behalf of the South Carolina State Class against Defendants.

1454.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under S.C. CODE § 36-2-104(1), and "sellers" of the Duraspine Turf fields under S.C. CODE § 36-2-103(1)(d).

1455.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of S.C. CODE § 36-2-105(1).

1456.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to S.C. CODE § 36-2-314.

1457.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to S.C. CODE § 36-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the South Carolina State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the South Carolina State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1458.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty

repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf

fields, they fail to cure Defendants' breach of implied warranties.

1459.   As a direct and proximate result of Defendants' breach of their implied

warranties, the South Carolina State Class members have been damaged in an amount to be

determined at trial.

1460.   Defendants were provided notice of the issues raised in this Count and this

Consolidated Amended Complaint as detailed above.

**NN.    Claims Brought on Behalf of the South Dakota Class.**

**COUNT I**

**VIOLATION OF THE SOUTH DAKOTA
DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW
(S.D. CODIFIED LAWS § 37-24-6)**

1461.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

fully set forth herein.

1462.   This count is brought on behalf of the South Dakota State Class against

Defendants.

1463.   The Plaintiffs and Defendants are a "person" under S.D. CODIFIED LAWS § 37-24-

1(8).  The Defendants' Duraspine Turf fields are "merchandise within the meaning of S.D.

CODIFIED LAWS § 37-24-1(7).  Plaintiffs' purchase of Duraspine Turf fields from Defendants is

within the meaning of trade and commerce of S.D. CODIFIED LAWS § 37-24-1(13).

1464.   The South Dakota Deceptive Trade Practices and Consumer Protection Law

("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant

purposes to include "[k]nowingly and intentionally act, use, or employ any deceptive act or

practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or

279

omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby [.]" S.D. Codified Laws § 37-24-6(1).

1465.   In the course of their business, Defendants violated the South Dakota CPL by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the South Dakota CPL:

   a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

   b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

   c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1466.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the South Dakota State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the South Dakota State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the South Dakota State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1467.   The South Dakota State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1468.   Defendants had an ongoing duty to the South Dakota State Class to refrain from unfair and deceptive practices under the South Dakota CPL in the course of their business. Specifically, Defendants owed the South Dakota State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the South Dakota State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1469.   The South Dakota State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1470.   Pursuant to S.D. CODIFIED LAWS § 37-24-31, the South Dakota State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the South Dakota CPL.

## COUNT II

## BREACH OF EXPRESS WARRANTY
### (S.D. CODIFIED LAWS § 57A-2-313)

1471.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1472.   This count is brought on behalf of the South Dakota State Class against Defendants.

1473.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under S.D. CODIFIED LAWS § 57A-2-104(1), and "sellers" of the Duraspine Turf fields under S.D. CODIFIED LAWS § 57A-2-103(1)(d).

1474.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of S.D. CODIFIED LAWS § 57A-2-105(1).

1475.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the South Dakota State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the South Dakota State Class.

1476.   Defendants' warranties formed a basis of the bargain that was reached when the South Dakota State Class members purchased their Duraspine Turf fields.

1477.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the South Dakota State Class with Duraspine Turf fields containing defects in material that were never disclosed to the South Dakota State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1478.   The South Dakota State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1479.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the South Dakota State Class is not limited to its remedies.

1480.   Accordingly, the South Dakota State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the South Dakota State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1481.   As a direct and proximate result of Defendants' breach of express warranty, the South Dakota State Class members have been damaged in an amount to be determined at trial.

1482.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

## COUNT III

## BREACH OF THE IMPLIED WARRANTIES
### (S.D. CODIFIED LAWS §§ 57A-2-314, 57A-2-315)

1483.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1484.   This count is brought on behalf of the South Dakota State Class against Defendants.

1485.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under S.D. CODIFIED LAWS § 57A-2-104(1), and "sellers" of the Duraspine Turf fields under S.D. CODIFIED LAWS § 57A-2-103(1)(d).

1486.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of S.D. CODIFIED LAWS § 57A-2-105(1).

1487.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to S.D. CODIFIED LAWS § 57A-2-314.

1488.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to S.D. CODIFIED LAWS § 57A-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the South Dakota State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the South Dakota State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1489.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1490.   As a direct and proximate result of Defendants' breach of their implied warranties, the South Dakota State Class members have been damaged in an amount to be determined at trial.

1491.   Defendants were provided notice of the issues raised in this Count and this Consolidated Amended Complaint as detailed above.

**OO.    Claims Brought on Behalf of the Tennessee Class.**

**COUNT I**

**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
(TENN. CODE ANN. § 47-18-101, *ET SEQ*.)**

1492.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1493.   This count is brought on behalf of the Tennessee State Class against Defendants.

1494.   Defendants and the Tennessee State Class are "persons" within the meaning of TENN. CODE ANN. § 47-18-103 (2), and the Tennessee State Class are "consumers" within the meaning of TENN. CODE ANN. § 47-18-103 (2).  The Tennessee State Class were "natural persons" within the meaning of TENN. CODE ANN. § 47-18-103 (2).

1495.   The Defendants' conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103 (19).  The Duraspine Turf fields were at all relevant times "goods" within the meaning of TENN. CODE ANN. § 47-18-103 (7).

1496.   The Tennessee Consumer Protection Act ("Tennessee CPA") makes unlawful "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce" under Tenn. Code Ann. § 47-18-104. Without limitation, this includes:

> (5)   representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have;

> (7)   representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

> (9)   advertising goods or services with intent not to sell them as advertised.

TENN. CODE ANN. § 47-18-104.

1497.   In the course of their business, Defendants violated the Tennessee CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields,

Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of TENN. CODE ANN. § 47-18-101, *et seq.* by:

> a.  Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;
>
> b.  Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or
>
> c.  Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1498.  Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Tennessee State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Tennessee State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Tennessee State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1499.   The Tennessee State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1500.   Defendants had an ongoing duty to the Tennessee State Class to refrain from unfair and deceptive practices under the Tennessee CPA in the course of their business. Specifically, Defendants owed the Tennessee State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Tennessee State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1501.   The Tennessee State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1502.   Pursuant to TENN. CODE ANN. § 47-18-109 (a), the Tennessee State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Tennessee CPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (TENN. CODE ANN. § 47-2-313)

1503.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1504.   This count is brought on behalf of the Tennessee State Class against Defendants.

1505.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under TENN. CODE ANN. § 47-2-103(a)(d).  The Tennessee State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under TENN. CODE ANN. § 47-2-313 (1).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of TENN. CODE ANN. § 47-2-313 (1) and (2).  At all relevant times, the Defendants also were and are "merchants" within the meaning of TENN. CODE ANN. § 47-2-104(1).

1506.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Tennessee State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields'

durability, reliability, specifications, and performance constituted express warranties to the Tennessee State Class.

1507.   Defendants' warranties formed a basis of the bargain that was reached when the Tennessee State Class members purchased their Duraspine Turf fields.

1508.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Tennessee State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Tennessee State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1509.   The Tennessee State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1510.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Tennessee State Class is not limited to its remedies.

1511.   Accordingly, the Tennessee State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Tennessee State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1512.   As a direct and proximate result of Defendants' breach of express warranty, the

Tennessee State Class members have been damaged in an amount to be determined at trial.

1513.   Defendants were provided notice of the issues raised in this Count and this

Complaint as detailed above.

### COUNT III

### BREACH OF IMPLIED WARRANTIES
### (TENN. CODE ANN. §§ 47-2-314 AND 47-2-315)

1514.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

fully set forth herein.

1515.   This count is brought on behalf of the Tennessee State Class against Defendants.

1516.   Defendants are and were at all relevant times "sellers" with respect to the

Duraspine Turf fields under TENN. CODE ANN. § 47-2-103(a)(d).  The Tennessee State Class are

and were at all relevant times "buyers" with respect to the Duraspine Turf fields under TENN.

CODE ANN. § 47-2-313 (1).  The Duraspine Turf fields are and were at all relevant times "goods"

within the meaning of TENN. CODE ANN. § 47-2-313 (1) and (2).  At all relevant times, the

Defendants also were and are "merchants" within the meaning of TENN. CODE ANN. § 47-2-

104(1).

1517.   A warranty that the Duraspine Turf fields were in merchantable condition and fit

for their ordinary purpose is implied by law pursuant to TENN. CODE ANN. § 47-2-314.

1518.   In addition, a warranty that the Duraspine Turf fields were fit for their particular

purpose is implied by law pursuant to TENN. CODE ANN. § 47-2-315.  Defendants knew at the

time of sale and installation of the Duraspine Turf fields that the Tennessee State Class intended

to use those fields as athletic fields requiring a particular standard of performance and durability,

and that the Tennessee State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1519.   Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Tennessee State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Tennessee State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1520.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1521.   As a direct and proximate result of Defendants' breach of their implied warranties, the Tennessee State Class members have been damaged in an amount to be determined at trial.

1522.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

**PP.    Claims Brought on Behalf of the Texas Class.**

**COUNT I**

**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES -
CONSUMER PROTECTION ACT
(TEX. BUS. & COM. CODE § 17.41, *ET SEQ.*)**

1523.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1524.   This count is brought on behalf of the Texas State Class against Defendants.

1525.   Defendants and the Texas State Class are "persons" within the meaning of TEX. BUS. & COM. CODE § 17.45, and the Texas State Class are "consumers" within the meaning of TEX. BUS. & COM. CODE § 17.45.  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of TEX. BUS. & COM. CODE § 17.45.

1526.   The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") makes unlawful "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" under TEX. BUS. & COM. CODE § 17.46.  Without limitation, this includes:

> (5)   representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;
>
> (7)   representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> (24)   failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

TEX. BUS. & COM. CODE § 17.46.  It also provides a right of action for "breach of an express or implied warranty" and "an unconscionable action or course of action by any person."  TEX. BUS. & COM. CODE § 17.50(a)(2) & (3).

1527.   In the course of their business, Defendants violated the Texas DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields,

Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of TEX. BUS. & COM. CODE § 17.41, *et seq.* by:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1528.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Texas State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Texas State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Texas State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1529.   The Texas State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1530.   Defendants had an ongoing duty to the Texas State Class to refrain from unfair and deceptive practices under the Texas DTPA in the course of their business.  Specifically, Defendants owed the Texas State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Texas State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1531.   The Texas State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1532.   Pursuant to TEX. BUS. & COM. CODE § 17.50 *et seq*., the Texas State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Texas DTPA.

1533.   Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above.  In addition, on October 19, 2017, a notice letter was sent on behalf of the Texas State Class to Defendants pursuant to TEX. BUS. & COM. CODE § 17.505(a). Because Defendants failed to remedy their unlawful conduct within the requisite time period, the Texas State Class seeks all damages and relief to which they are entitled.

## COUNT II

## BREACH OF EXPRESS WARRANTY
## (TEX. BUS. & COM. CODE § 2.313)

1534.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1535.   This count is brought on behalf of the Texas State Class against Defendants.

1536.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under TEX. BUS. & COM. CODE § 2.103(a)(4).  The Texas State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under TEX. BUS. & COM. CODE § 2.313 (a).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of TEX. BUS. & COM. CODE § 2.313 (a) and (b).  At all relevant times, the Defendants also were and are "merchants" within the meaning of TEX. BUS. & COM. CODE § 2.104(a).

1537.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Texas State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Texas State Class.

1538.   Defendants' warranties formed a basis of the bargain that was reached when the Texas State Class members purchased their Duraspine Turf fields.

1539.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Texas State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Texas State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1540.   The Texas State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1541.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Texas State Class is not limited to its remedies.

1542.   Accordingly, the Texas State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Texas State Class

members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1543.   As a direct and proximate result of Defendants' breach of express warranty, the Texas State Class members have been damaged in an amount to be determined at trial.

1544.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (TEX. BUS. & COM. CODE §§ 2.314 AND 2.315)

1545.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1546.   This count is brought on behalf of the Texas State Class against Defendants.

1547.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under TEX. BUS. & COM. CODE § 2.103(a)(4).  The Texas State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under TEX. BUS. & COM. CODE § 2.313 (a).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of TEX. BUS. & COM. CODE § 2.313 (a) and (b).  At all relevant times, the Defendants also were and are "merchants" within the meaning of TEX. BUS. & COM. CODE § 2.104(a).

1548.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to TEX. BUS. & COM. CODE § 2.314.

1549.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to TEX. BUS. & COM. CODE § 2.315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Texas State Class intended to

use those fields as athletic fields requiring a particular standard of performance and durability, and that the Texas State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1550.   Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Texas State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Texas State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1551.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1552.   As a direct and proximate result of Defendants' breach of their implied warranties, the Texas State Class members have been damaged in an amount to be determined at trial.

1553.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

**QQ.   Claims Brought on Behalf of the Utah Class.**

## COUNT I

### VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT
### (UTAH CODE ANN. § 13-11-1, *ET SEQ.*)

1554.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1555.   This count is brought on behalf of the Utah State Class against Defendants.

1556.   Defendants are "suppliers" within the meaning of UTAH CODE ANN. § 13-11-3. The Utah State Class members are "persons" within the meaning of UTAH CODE ANN. § 13-11-3. The sale of the Duraspine Turf fields are and were at all relevant times a "consumer transaction" within the meaning of UTAH CODE ANN. § 13-11-3.

1557.   The Utah Consumer Sales Practices Act  ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under UTAH CODE ANN. § 13-11-4.  Without limitation, this includes if the supplier knowingly or intentionally:

> (a)   indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;
>
> (b)   indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

UTAH CODE ANN. § 13-11-4.  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  UTAH CODE ANN. § 13-11-5.

1558.   In the course of their business, Defendants violated the Utah CSPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.  Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of UTAH CODE ANN. § 13-11-1, *et seq.)* by:

> a.   Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;
>
> b.   Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

c.      Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1559.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Utah State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Utah State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Utah State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1560.   The Utah State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1561.   Defendants had an ongoing duty to the Utah State Class to refrain from unfair and deceptive practices under the Utah CSPA in the course of their business.  Specifically, Defendants owed the Utah State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Utah State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1562.   The Utah State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1563.   Pursuant to UTAH CODE ANN. § 13-11-1, *et seq.,* the Utah State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Utah CSPA.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (UTAH CODE ANN. § 70A-2-313)

1564.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1565.   This count is brought on behalf of the Utah State Class against Defendants.

1566.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under UTAH CODE ANN. § 70A-2-103(1)(a).  The Utah State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under UTAH CODE ANN. § 70A-2-313 (1).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of UTAH CODE ANN. § 70A-2-313 (1) and (2).  At all relevant times, the Defendants also were and are "merchants" within the meaning of UTAH CODE ANN. § 70A-2-104(1).

1567.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Utah State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Utah State Class.

1568.   Defendants' warranties formed a basis of the bargain that was reached when the Utah State Class members purchased their Duraspine Turf fields.

1569.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Utah State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Utah State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year

warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1570.   The Utah State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1571.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Utah State Class is not limited to its remedies.

1572.   Accordingly, the Utah State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Utah State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1573.   As a direct and proximate result of Defendants' breach of express warranty, the Utah State Class members have been damaged in an amount to be determined at trial.

1574.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (UTAH CODE ANN. §§ 70A-2-314 AND 70A-2-315)

1575.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1576.   This count is brought on behalf of the Utah State Class against Defendants.

1577.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under UTAH CODE ANN. § 70A-2-103(1)(a).  The Utah State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under UTAH CODE ANN. § 70A-2-313 (1).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of UTAH CODE ANN. § 70A-2-313 (1) and (2).  At all relevant times, the Defendants also were and are "merchants" within the meaning of UTAH CODE ANN. § 70A-2-104(1).

1578.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to UTAH CODE ANN. § 70A-2-314.

1579.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to UTAH CODE ANN. § 70A-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Utah State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Utah State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1580.   Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Utah State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Utah State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1581.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty

repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1582.   As a direct and proximate result of Defendants' breach of their implied warranties, the Utah State Class members have been damaged in an amount to be determined at trial.

1583.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

**RR.     Claims Brought on Behalf of the Vermont Class.**

**COUNT I**

**VIOLATION OF VERMONT CONSUMER FRAUD ACT
(VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)**

1584.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1585.   This count is brought on behalf of the Vermont State Class against Defendants.

1586.   Defendants are "sellers" within the meaning of VT. STAT. ANN. TIT. 9, § 2451(c). The Vermont State Class members are "consumers" within the meaning of VT. STAT. ANN. TIT. 9, § 2451(a).

1587.   The Duraspine Turf fields are "goods" within the meaning of VT. STAT. ANN. TIT. 9, § 2451(b).

1588.   The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce…." VT. STAT. ANN. TIT. 9, § 2453(a).

1589.   In the course of their business, Defendants violated the Vermont CFA by knowingly misrepresenting and intentionally concealing material facts regarding the durability,

302

reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.

Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields,

Defendants engaged in one or more of the following unfair or deceptive acts or practices within

the meaning of VT. STAT. ANN. TIT. 9, § 2451 *et seq.*) by:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1590.   Defendants' scheme and concealment of the true characteristics of the Duraspine

Turf fields were material to the Vermont State Class, and Defendants misrepresented, concealed,

or failed to disclose the truth with the intention that the Vermont State Class would rely on the

misrepresentations, concealments, and omissions.  Had they known the truth, the Vermont State

Class would not have purchased the Duraspine Turf fields, or would have paid significantly less

for them.

1591.   The Vermont State Class members had no way of discerning that Defendants'

representations were false and misleading, or otherwise learning the facts that Defendants had

concealed or failed to disclose.

1592.   Defendants had an ongoing duty to the Vermont State Class to refrain from unfair

and deceptive practices under the Vermont CFA in the course of their business.  Specifically,

Defendants owed the Vermont State Class members a duty to disclose all the material facts

concerning the Duraspine Turf fields because they possessed exclusive knowledge, they

intentionally concealed it from the Vermont State Class, and/or they made misrepresentations

that were rendered misleading because they were contradicted by withheld facts.

1593.   The Vermont State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1594.   Pursuant to VT. STAT. ANN. TIT. 9, § 2451 *et seq.,* the Vermont State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Vermont CFA.

## COUNT II

## BREACH OF EXPRESS WARRANTY
### (VT. STAT. ANN. TIT. 9 § 2-313)

1595.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1596.   This count is brought on behalf of the Vermont State Class against Defendants.

1597.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under VT. STAT. ANN. TIT. 9 § 2-313 (1) and (2).  At all relevant times, Defendants also were and are "merchants" within the meaning of VT. STAT. ANN. TIT. 9 § 2-104(1).

1598.   The Vermont State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under VT. STAT. ANN. TIT. 9 § 2-313 (1).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of VT. STAT. ANN. TIT. 9 § 2-313 (1) and (2).

1599.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Vermont State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various

oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Vermont State Class.

1600.   Defendants' warranties formed a basis of the bargain that was reached when the Vermont State Class members purchased their Duraspine Turf fields.

1601.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Vermont State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Vermont State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1602.   The Vermont State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1603.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Vermont State Class is not limited to its remedies.

1604.   Accordingly, the Vermont State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Vermont State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1605.   As a direct and proximate result of Defendants' breach of express warranty, the Vermont State Class members have been damaged in an amount to be determined at trial.

1606.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (VT. STAT. ANN. TIT. 9 §§ 2-314 AND 2-315)

1607.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1608.   This count is brought on behalf of the Vermont State Class against Defendants.

1609.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under VT. STAT. ANN. TIT. 9 § 2-313 (1) and (2).  At all relevant times, Defendants also were and are "merchants" within the meaning of VT. STAT. ANN. TIT. 9 § 2-104(1).

1610.   The Vermont State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under VT. STAT. ANN. TIT. 9 § 2-313 (1).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of VT. STAT. ANN. TIT. 9 § 2-313 (1) and (2).

1611.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to VT. STAT. ANN. TIT. 9 § 2-314.

1612.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to VT. STAT. ANN. TIT. 9 § 2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Vermont State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability,

and that the Vermont State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1613.   Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Vermont State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Vermont State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1614.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1615.   As a direct and proximate result of Defendants' breach of their implied warranties, the Vermont State Class members have been damaged in an amount to be determined at trial.

1616.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

**SS.    Claims Brought on Behalf of the Virginia Class.**

**COUNT I**

**VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT
(VA. CODE ANN. § 59.1-196, *ET SEQ.*)**

1617.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1618.   This count is brought on behalf of the Virginia State Class against Defendants.

1619.   Defendants and the Virginia State Class members are "persons" within the meaning of VA. CODE ANN. § 59.1-198.  Defendants are and were at all relevant times a "supplier" under VA. CODE ANN. § 59.1-198.

1620.   The sale of the Duraspine Turf fields are and were at all relevant times a "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198.

1621.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction…" and lists prohibited practices which include:

> (5)   Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

> (6)   Misrepresenting that goods or services are of a particular standard, quality, grade, style or model;

> (8)   Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;

> (14)   Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

VA. CODE ANN. § 59.1-198

1622.   In the course of their business, Defendants violated the Virginia CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of VA. CODE ANN. § 59.1-198 *et seq.* by*:*

> a.   Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

b.      Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

c.      Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1623.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Virginia State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Virginia State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Virginia State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1624.   The Virginia State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1625.   Defendants had an ongoing duty to the Virginia State Class to refrain from unfair and deceptive practices under the Virginia CPA in the course of their business.  Specifically, Defendants owed the Virginia State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Virginia State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1626.   The Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1627.   Pursuant to VA. CODE ANN. § 59.1-204, the Virginia State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Virginia CPA.

**COUNT II**

**BREACH OF EXPRESS WARRANTY**
**(VA. CODE ANN. § 8-2-313)**

1628.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1629.   This count is brought on behalf of the Virginia State Class against Defendants.

1630.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under VA. CODE ANN. § 8-2-313 (1) and (2).  At all relevant times, Defendants also were "merchants" within the meaning of VA. CODE ANN. § 8-2-104(1).

1631.   The Virginia State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under VA. CODE ANN. § 8-2-313 (1).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning VA. CODE ANN. § 8-2-313 (1) and (2).

1632.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Virginia State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Virginia State Class.

1633.   Defendants' warranties formed a basis of the bargain that was reached when the Virginia State Class members purchased their Duraspine Turf fields.

1634.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Virginia State Class with Duraspine

Turf fields containing defects in material that were never disclosed to the Virginia State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1635.   The Virginia State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1636.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Virginia State Class is not limited to its remedies.

1637.   Accordingly, the Virginia State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Virginia State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1638.   As a direct and proximate result of Defendants' breach of express warranty, the Virginia State Class members have been damaged in an amount to be determined at trial.

1639.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (VA. CODE ANN. §§ 8.2-314 AND 8.2-315)

1640.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1641.   This count is brought on behalf of the Virginia State Class against Defendants.

1642.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under VA. CODE ANN. § 8-2-313 (1) and (2).  At all relevant times, Defendants also were "merchants" within the meaning of VA. CODE ANN. § 8-2-104(1).

1643.   The Virginia State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under VA. CODE ANN. § 8-2-313 (1).  The Duraspine Turf fields are and were at all relevant times "goods" within the meaning VA. CODE ANN. § 8-2-313 (1) and (2).

1644.    A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to VA. CODE ANN. § 8.2-314.

1645.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to VA. CODE ANN. § 8.2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Virginia State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Virginia State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1646.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty

repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1647.   As a direct and proximate result of Defendants' breach of their implied warranties, the Virginia State Class members have been damaged in an amount to be determined at trial.

1648.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

**TT.   Claims Brought on Behalf of the Washington Class.**

## COUNT I

### VIOLATION OF THE CONSUMER PROTECTION ACT (REV. CODE WASH. § 19.86.010, *ET SEQ.*)

1649.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1650.   This count is brought on behalf of the Washington State Class against Defendants.

1651.   Defendants and the Washington State Class members are "persons" within the meaning of REV. CODE WASH. § 19.86.010(1).

1652.   Defendants are engaged in "trade" or "commerce" within the meaning of REV. CODE WASH. § 19.86.010(2).

1653.   The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."  REV. CODE WASH. § 19.86.020.

1654.   In the course of their business, Defendants violated the Washington CPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.

Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of REV. CODE WASH. § 19.86.010 *et seq.* by:

    a.    Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

    b.    Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

    c.    Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1655.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Washington State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Washington State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Washington State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1656.   The Washington State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1657.   Defendants had an ongoing duty to the Washington State Class to refrain from unfair and deceptive practices under the Washington CPA in the course of their business. Specifically, Defendants owed the Washington State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Washington State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1658.   The Washington State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1659.   Pursuant to REV. CODE WASH. §§ 19.86.140 and 19.86.090, the Washington State Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Washington CPA.

## COUNT II

## BREACH OF EXPRESS WARRANTY
## (WASH. REV. CODE § 62A.2-313)

1660.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1661.   This count is brought on behalf of the Washington State Class against Defendants.

1662.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under WASH. REV. CODE § 62A.2-313 (1) and (2).  At all relevant times, Defendants also were "merchants" within the meaning of WASH. REV. CODE § 62A.2-104(1).

1663.   The Washington State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under WASH. REV. CODE § 62A.2-313 (1).The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of WASH. REV. CODE § 62A.2-313 (1) and (2).

1664.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Washington State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields'

durability, reliability, specifications, and performance constituted express warranties to the Washington State Class.

1665.   Defendants' warranties formed a basis of the bargain that was reached when the Washington State Class members purchased their Duraspine Turf fields.

1666.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Washington State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Washington State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1667.   The Washington State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1668.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Washington State Class is not limited to its remedies.

1669.   Accordingly, the Washington State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Washington State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1670.   As a direct and proximate result of Defendants' breach of express warranty, the Washington State Class members have been damaged in an amount to be determined at trial.

1671.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

## COUNT III

## BREACH OF IMPLIED WARRANTIES
## (WASH. REV. CODE §§ 62A.2-314 AND 62A.2-315)

1672.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1673.   This count is brought on behalf of the Washington State Class against Defendants.

1674.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under WASH. REV. CODE § 62A.2-313 (1) and (2).  At all relevant times, Defendants also were "merchants" within the meaning of WASH. REV. CODE § 62A.2-104(1).

1675.   The Washington State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under WASH. REV. CODE § 62A.2-313 (1).The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of WASH. REV. CODE § 62A.2-313 (1) and (2).

1676.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to WASH. REV. CODE § 62A.2-314.

1677.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to WASH. REV. CODE § 62A.2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Washington State Class intended to use those fields as athletic fields requiring a particular standard of performance and

durability, and that the Washington State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1678.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1679.   As a direct and proximate result of Defendants' breach of their implied warranties, the Washington State Class members have been damaged in an amount to be determined at trial.

1680.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

**UU.    Claims Brought on Behalf of the West Virginia Class.**

## COUNT I

### VIOLATION OF THE CONSUMER CREDIT AND PROTECTION ACT
### (W. VA. CODE § 46A-1-101, *ET SEQ.*)

1681.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1682.   This count is brought on behalf of the West Virginia State Class against Defendants.

1683.   Defendants and the West Virginia State Class members are "persons" within the meaning of W. VA. CODE § 46A-1-102(31).  The West Virginia State Class members are "consumers" within the meaning of W. VA. CODE §§ 46A-1-102(12) and 46A-6-102(2).

1684.   The Duraspine Turf fields are "goods" within the meaning of W. VA. CODE §

46A-1-102(12).   The sales of the Duraspine Turf fields were "sales" within the Meaning of W.

VA. CODE § 46A-6-102(5).

1685.   Defendants are engaged in "trade" or "commerce" within the meaning of W. VA.

CODE § 46A-6-102(6).

1686.   The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA")

prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce…."

W. VA. CODE § 46A-6-104.   Without limitation, "unfair or deceptive" acts or practices include:

> (I)   Advertising goods or services with intent not to sell them as
> advertised;
>
> (K)   Making false or misleading statements of fact concerning
> the reasons for, existence of or amounts of price reductions;
>
> (L)   Engaging in any other conduct which similarly creates a
> likelihood of confusion or of misunderstanding;
>
> (M)   The act, use or employment by any person of any
> deception, fraud, false pretense, false promise or
> misrepresentation, or the concealment, suppression or
> omission of any material fact with intent that others rely
> upon such concealment, suppression or omission, in
> connection with the sale or advertisement of any goods or
> services, whether or not any person has in fact been misled,
> deceived or damaged thereby;
>
> (N)   Advertising, printing, displaying, publishing, distributing or
> broadcasting, or causing to be advertised, printed,
> displayed, published, distributed or broadcast in any
> manner, any statement or representation with regard to the
> sale of goods or the extension of consumer credit including
> the rates, terms or conditions for the sale of such goods or
> the extension of such credit, which is false, misleading or
> deceptive or which omits to state material information
> which is necessary to make the statements therein not false,
> misleading or deceptive;

W. VA. CODE § 46A-6-102(7).

1687.   In the course of their business, Defendants violated the West Virginia CCPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above. Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in W. VA. CODE § 46A-6-102(7) by:

a.   Representing that the Duraspine Turf fields have approval, characteristics, uses, benefits, or qualities that they do not have;

b.   Representing that the Duraspine Turf fields are of a particular standard, quality and grade when they are not; and/or

c.   Advertising the Duraspine Turf fields with the intent not to sell them as advertised.

1688.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the West Virginia State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the West Virginia State Class would rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the West Virginia State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1689.   The West Virginia State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1690.   Defendants had an ongoing duty to the West Virginia State Class to refrain from unfair and deceptive practices under the West Virginia CCPA in the course of their business. Specifically, Defendants owed the West Virginia State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge,

they intentionally concealed it from the West Virginia State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1691.   The West Virginia State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1692.   Pursuant to W. VA. CODE §§ 46A-5-104 and 46A-6-106, the West Virginia State Class seeks an order awarding damages, and any other just and proper relief available under the West Virginia CCPA.

1693.   Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above.  In addition, on October 19, 2017, a notice letter was sent on behalf of the West Virginia State Class to Defendants pursuant to W. VA. CODE § 46A-6-106(c). Because Defendants failed to remedy their unlawful conduct within the requisite time period, the West Virginia State Class seeks all damages and relief to which they are entitled.

## COUNT II

### BREACH OF EXPRESS WARRANTY
### (W.VA. CODE § 46-2-313)

1694.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1695.   This count is brought on behalf of the West Virginia State Class against Defendants.

1696.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under W. VA. CODE § 46-2-313 (1) and (2).  At all relevant times, Defendants also were "merchants" within the meaning of VA. CODE § 46-2-104(1).

1697.   The West Virginia State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under W. Va. Code § 46-2-313 (1).The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of W. Va. Code § 46-2-313 (1) and (2).

1698.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the West Virginia State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the West Virginia State Class.

1699.   Defendants' warranties formed a basis of the bargain that was reached when the West Virginia State Class members purchased their Duraspine Turf fields.

1700.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the West Virginia State Class with Duraspine Turf fields containing defects in material that were never disclosed to the West Virginia State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1701.   The West Virginia State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by

Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1702.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the West Virginia State Class is not limited to its remedies.

1703.   Accordingly, the West Virginia State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the West Virginia State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1704.   As a direct and proximate result of Defendants' breach of express warranty, the West Virginia State Class members have been damaged in an amount to be determined at trial.

1705.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

**COUNT III**

**BREACH OF IMPLIED WARRANTIES**
**(W. VA. CODE §§ 46-2-314 AND 46-2-315)**

1706.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1707.   This count is brought on behalf of the West Virginia State Class against Defendants.

1708.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under W. VA. CODE § 46-2-314(1), and "sellers" of the Duraspine Turf fields under W. VA. CODE §§ 46-2-314(1) and 46-2-315.

1709.   The West Virginia State Class are and were at all relevant times "buyers" within the meaning of W. VA. CODE § 46-2-315.

323

1710.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-314(1) and (2) and 46-2-315.

1711.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to W. Va. Code § 46-2-314.

1712.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to W. Va. Code § 46-2-315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the West Virginia State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the West Virginia State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1713.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1714.   As a direct and proximate result of Defendants' breach of their implied warranties, the West Virginia State Class members have been damaged in an amount to be determined at trial.

1715.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

**VV.     Claims Brought on Behalf of the Wisconsin Class.**

## COUNT I

**VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT
(WIS. STAT. § 100.18, *ET SEQ.*)**

1716.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1717.   This count is brought on behalf of the Wisconsin State Class against Defendants.

1718.   Defendants are all a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).  The Wisconsin State Class members are members of "the public" within the meaning of WIS. STAT. § 100.18(1).

1719.   The Duraspine Turf fields are "merchandise" within the meaning of WIS. STAT. § 100.18(1).  The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading."  WIS. STAT. § 100.18(1).

1720.   In the course of their business, Defendants violated the Wisconsin DTPA by knowingly misrepresenting and intentionally concealing material facts regarding the durability, reliability, performance, and cost-effectiveness of the Duraspine Turf fields, as detailed above.  Specifically, in marketing, offering for sale, and selling the defective Duraspine Turf fields, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in WIS. STAT. § 100.18(1) by:

a.      f

1721.   Defendants' scheme and concealment of the true characteristics of the Duraspine Turf fields were material to the Wisconsin State Class, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that the Wisconsin State Class would

rely on the misrepresentations, concealments, and omissions.  Had they known the truth, the Wisconsin State Class would not have purchased the Duraspine Turf fields, or would have paid significantly less for them.

1722.   The Wisconsin State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1723.   Defendants had an ongoing duty to the Wisconsin State Class to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of their business. Specifically, Defendants owed the Wisconsin State Class members a duty to disclose all the material facts concerning the Duraspine Turf fields because they possessed exclusive knowledge, they intentionally concealed it from the Wisconsin State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1724.   The Wisconsin State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1725.   Pursuant to WIS. STAT. § 100.18(11)(b)(2), the Wisconsin State Class seeks an order awarding damages, double damages, and any other just and proper relief available under the Wisconsin DTPA.

## COUNT II

## BREACH OF EXPRESS WARRANTY
### (WIS. STAT. § 402.313)

1726.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1727.   This count is brought on behalf of the Wisconsin State Class against Defendants.

1728.   Defendants are and were at all relevant times "sellers" with respect to the Duraspine Turf fields under WIS. STAT. § 402.313 (1) and (2).  At all relevant times, Defendants also were "merchants" within the meaning of WIS. STAT. § 402.104(1).

1729.   The Wisconsin State Class are and were at all relevant times "buyers" with respect to the Duraspine Turf fields under WIS. STAT. § 402.313 (1).

1730.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of WIS. STAT. § 402.313 (1) and (2).

1731.   In connection with the purchase of all Duraspine Turf fields, Defendants provided the Wisconsin State Class with a written warranty covering defects in materials and workmanship of the Duraspine Turf fields for eight years, as detailed above.  In addition, Defendants' various oral and written representations regarding the Duraspine Turf fields' durability, reliability, specifications, and performance constituted express warranties to the Wisconsin State Class.

1732.   Defendants' warranties formed a basis of the bargain that was reached when the Wisconsin State Class members purchased their Duraspine Turf fields.

1733.   Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (1) knowingly providing the Wisconsin State Class with Duraspine Turf fields containing defects in material that were never disclosed to the Wisconsin State Class, (2) failing to repair or replace the defective Duraspine Turf fields at no cost within the eight-year warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and (4) supplying products and materials that failed to conform to the representations made by FieldTurf.

1734.   The Wisconsin State Class have given Defendants a reasonable opportunity to cure their breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Defendants can neither cure the defect in the Duraspine Turf fields nor resolve the incidental and consequential damages flowing therefrom.

1735.   Thus, Defendants' written warranty fails of its essential purpose and the recovery of the Wisconsin State Class is not limited to its remedies.

1736.   Accordingly, the Wisconsin State Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the Wisconsin State Class members of the purchase price of all Duraspine Turf fields currently owned, and for such other incidental and consequential damages as allowed.

1737.   As a direct and proximate result of Defendants' breach of express warranty, the Wisconsin State Class members have been damaged in an amount to be determined at trial.

1738.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

## COUNT III

### BREACH OF IMPLIED WARRANTIES
### (WIS. STAT. §§ 402.314 AND 402.315)

1739.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1740.   This count is brought on behalf of the Wisconsin State Class against Defendants.

1741.   Defendants are and were at all relevant times "merchants" with respect to the Duraspine Turf fields under WIS. STAT. § 402.314(1), and "sellers" of the Duraspine Turf fields under WIS. STAT. §§ 402.314(1) and 402.315.

1742.   The Wisconsin State Class are and were at all relevant times "buyers" within the meaning of WIS. STAT. §402.315.

1743.   The Duraspine Turf fields are and were at all relevant times "goods" within the meaning of WIS. STAT. §§ 402.314(1) and (2) and 402.315.

1744.   A warranty that the Duraspine Turf fields were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to WIS. STAT. § 402.314.

1745.   In addition, a warranty that the Duraspine Turf fields were fit for their particular purpose is implied by law pursuant to WIS. STAT. § 402.315.  Defendants knew at the time of sale and installation of the Duraspine Turf fields that the Wisconsin State Class intended to use those fields as athletic fields requiring a particular standard of performance and durability, and that the Wisconsin State Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1746.   The Duraspine Turf fields, when sold and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and were not fit for their particular purpose as a result of their inherent defects, as detailed above.  In addition, because any warranty repairs or replacements offered by Defendants cannot cure the defect in the Duraspine Turf fields, they fail to cure Defendants' breach of implied warranties.

1747.   As a direct and proximate result of Defendants' breach of their implied warranties, the Wisconsin State Class members have been damaged in an amount to be determined at trial.

1748.   Defendants were provided notice of the issues raised in this Count and this Complaint as detailed above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide and State Classes, respectfully request that the Court certify the proposed Nationwide and State Classes, including designating the named Plaintiffs as representatives of the Nationwide Class and their respective State Classes and appointing the undersigned as Class Counsel, and the designation of any appropriate issue classes, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in their favor and against Defendants including the following relief:

A.      A declaration that any applicable statutes of limitations are tolled due to Defendants' fraudulent concealment and that the Defendants are estopped from relying on any statutes of limitations in defense;

B.      Restitution, compensatory damages, and costs for economic loss and out-of-pocket costs;

C.      Punitive and exemplary damages under applicable law;

D.      Rescission of all agreements with Plaintiffs and the Class Members for the purchase and installation of any Duraspine Turf field, including reimbursement and compensation of the full purchase and installation price, including any taxes, licenses, or other fees, and including the costs for any maintenance or equipment purchased to care for any Duraspine Turf field;

E.      Reimbursement and compensation of the full purchase and installation price for any replacement field any Plaintiff or Class Member purchased from Defendants within the warranty period;

F.      A determination that Defendants are financially responsible for all Class notices and the administration of class relief;

G.      Any applicable statutory or civil penalties;

H.      An order requiring Defendants to pay both pre-judgment and post-judgment interest on any amounts awarded;

I.      An  award  of  reasonable  counsel  fees, plus reimbursement of reasonable costs, expenses, and disbursements, including reasonable allowances for the fees of  experts

J.      Leave to amend this Consolidated Amended Complaint to conform to the evidence produced in discovery and at trial; and

K.      Any   such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Classes hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: October 20, 2017

  s/ Christopher A. Seeger
**SEEGER WEISS LLP**
77 Water Street
New York, New York 10005
Tel: (212) 584-0780
Email: cseeger@seegerweiss.com

*Plaintiffs' Co-Lead Counsel*

  s/ James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN
BRODY & AGNELLO**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Email:jcecchi@carellabyrne.com

*Plaintiffs' Liaison Counsel*

  s/ Adam M. Moskowitz
**KOZYAK TROPIN &
THROCKMORTON**
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Email: amm@kttlaw.com

*Plaintiffs' Co-Lead Counsel*

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Tel:  (206) 623-7292
Email: steve@hbsslaw.com

*Plaintiffs' Executive Committee*

Lawrence E. Bathgate, II
**BATHGATE WEGENER & WOLF, P.C.**
1 Airport Road
Lakewood, NJ 08701
Tel: (732) 363-0666
Email: lbathgate@bathweg.com

*Plaintiffs' Executive Committee*

Daniel K. Bryson
**WHITFIELD BRYSON & MASON**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Email: dan@wbmllp.com

*Plaintiffs' Executive Committee*

Michael Critchley, Sr.
**CRITCHLEY, KINUM & DENOIA, LLC**
75 Livingston Avenue
Roseland, NJ 07068
Tel: (973) 422-9200
Email: mcritchley@critchleylaw.com

*Plaintiffs' Executive Committee*

Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000
Email: MDearman@rgrdlaw.com

*Plaintiffs' Executive Committee*

Lance J. Kalik
**RIKER, DANZIG, SCHERER, HYLAND & PERETTI, LLP**
Headquarters Plaza, One Speedwell Avenue
Morristown, NJ 07962-1981
Tel: (973) 538-0800
Email: lkalik@riker.com

*Plaintiffs' Executive Committee*

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Email: Brian.Gudmundson@zimmreed.com

*Plaintiffs' Executive Committee*

Alexander Robertson IV
**ROBERTSON & ASSOCIATES**
32121 Lindero Canyon Rd., Suite 200
Westlake Village, CA 91361
Tel: (818) 851-3850
Email: arobertson@arobertsonlaw.com

*Plaintiffs' Executive Committee*