UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE FIELDTURF ARTIFICIAL TURF
SALES AND MARKETING PRACTICES
LITIGATION

Civil Action No. 17-md-02779 MAS TJB

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
Tel: (212) 584-0700
Email: cseeger@seegerweiss.com

*Plaintiffs' Co-Lead Counsel*

Adam M. Moskowitz
**THE MOSKOWITZ LAW FIRM**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Tel: (305) 740-1423
Email: adam@moskowitzlaw.com

*Plaintiffs' Co-Lead Counsel*

James E. Cecchi
**CARELLA, BYRNE, CECCHI,
OLSTEIN BRODY & AGNELLO**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Plaintiffs' Liaison Counsel*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION AND SUMMARY OF THE ALLEGATIONS ................................................ 1

STANDARD OF REVIEW ................................................................................... 6

ARGUMENT ................................................................................................. 7

I.  REPRESENTATION OF ABSENT CLASS MEMBERS SHOULD BE
    DETERMINED AT CLASS CERTIFICATION.............................................................. 7

    A.  The Named Plaintiffs Have Article III Standing .................................................. 7

    B.  The Representation of Absent Class Members Will Be Decided at Class
        Certification ........................................................................................ 8

II. PLAINTIFFS' CONSUMER PROTECTION CLAIMS SHOULD PROCEED ............. 11

    A.  Plaintiffs State a Valid Claim for Relief Under the New Jersey Consumer
        Fraud Act ......................................................................................... 11

        1.  Plaintiffs Are "Persons" and Duraspine Turf Is "Merchandise"
            Covered by the NJCFA ...................................................................... 12

        2.  Plaintiffs Suffered an Ascertainable Loss .................................................. 16

        3.  FieldTurf Has Ample Notice of the Basis for Hudson's Claims .............. 17

        4.  Hudson Alleges a Causal Connection Between FieldTurf's Acts
            and Its Loss. ................................................................................... 18

    B.  Plaintiffs State Valid Claims Under the New York Deceptive Acts Law ............. 19

        1.  Levittown's NY Deceptive Acts Law Claims are Timely ......................... 19

            a.  A Six-Year Limitations Period Applies ......................................... 19

            b.  Levittown's Claims Accrued Long After Purchase ...................... 20

            c.  FieldTurf's Fraud Tolled the Limitations Period ........................... 21

        2.  Plaintiffs Properly Plead NY Deceptive Acts Law Claims ..................... 22

            a.  FieldTurf Committed "Wrongs Against the Consuming
                Public" ........................................................................................ 22

          b.      FieldTurf Defrauded Public and Private Customers ...................... 23

   C.     Plaintiffs State Claims for Relief Under California's UCL and FAL ................... 24

      1.     Plaintiffs Plead Grounds to Toll the Statutes of Limitations .................... 24

          a.      Discovery Rule Tolling Applies Here .............................................. 24

          b.      Plaintiffs Plead Fraudulent Concealment ....................................... 26

      2.     FieldTurf Is Estopped from Asserting a Limitations Defense .................. 27

      3.     Santa Ynez Has Standing to Assert UCL and FAL Claims ...................... 27

III.    PLAINTIFFS PROPERLY PLEAD FRAUDULENT CONCEALMENT ...................... 28

   A.     FieldTurf Made Material Misrepresentations to Induce Plaintiffs to Purchase Duraspine Fields ........................................................................... 29

   B.     FieldTurf Had a Duty to Make Its Prior Statements Not Misleading ................... 30

IV.    PLAINTIFFS ADEQUATELY ALLEGE FRAUD ............................................... 33

   A.     Hudson Adequately Alleges Reliance ................................................. 33

   B.     The "Gist of the Action" Doctrine Does Not Bar the Pennsylvania Claims ......... 34

V.     PLAINTIFFS' BREACH OF WARRANTY CLAIMS SHOULD PROCEED ............... 35

   A.     Plaintiffs' New York and New Jersey Warranty Claims Are Timely ................. 35

   B.     Plaintiffs Adequately Plead New Jersey Implied Warranty Claims ..................... 37

   C.     Plaintiffs Adequately Allege Pennsylvania Express and Implied Warranty Claims ................................................................................................. 39

      1.     Plaintiffs State a Claim for Breach of Express Warranty ......................... 39

      2.     Plaintiffs State a Claim for Breach of Implied Warranty ......................... 40

   D.     Plaintiffs' California Implied Warranty Claims Are Timely ................................ 41

VI.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD PROCEED ...................... 41

CONCLUSION ........................................................................................................ 42

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Dixon,*
    480 F.3d 636 (2d Cir. 2007)..................................................................... 21

*Afzal v. BMW of N. Am., LLC,*
    2017 WL 3207232 (D.N.J. 2017) ............................................................ 34

*Alin v. American Honda Motor Co., Inc.,*
    2010 WL 1372308 (D.N.J. 2010) ............................................................ 30

*Altronics of Bethlehem, Inc. v. Repco, Inc.,*
    957 F.2d 1102 (3d Cir. 1992)................................................................... 38

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................. 10

*American Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974)................................................................................. 20

*April Enters., Inc. v. KTTV,*
    147 Cal. App. 3d 805 (Ct. App. 1983).................................................... 25

*Argabright v. Rheem Mfg. Co.,*
    201 F. Supp. 3d 578 (D.N.J. 2016) ............................................. 31, 33, 38

*Aryeh v. Canon Bus. Sols., Inc.,*
    55 Cal. 4th 1185 (Cal. 2013)................................................................... 25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................... 6

*Auto Fin. Corp. v. DZ Motors, LLC,*
    2017 WL 3176275 (D.N.J. 2017) ............................................................. 6

*Bekins v. AstraZeneca Pharm. LP,*
    239 F. Supp. 3d 1220 (S.D. Cal. 2017)................................................... 26

*Belmont Condo. Ass'n, Inc. v. Geibel,*
    74 A.3d 10 (App. Div. 2013).................................................................. 13

*Bergstein v. Stroock & Stroock & Lavan LLP,*
    236 Cal. App. 4th 793 (Ct. App. 2015)................................................... 27

*Bezdek v. Vibram USA Inc.,*
    2013 WL 639145 (D. Mass. 2013) ........................................................... 8

*BOC Group, Inc. v. Lummus Crest, Inc.*,
    251 N.J. Super. 271 (Superior Ct. 1990)................................................................. 15

*CDK Global LLC v. Tulley Auto. Grp., Inc.*,
    2016 WL 1718100 (D.N.J. 2016) ......................................................................... 12

*Centrum Fin. Serv., Inc. v. Chicago Title Ins. Co.*,
    2010 WL 936201 (D.N.J. 2010) ........................................................................... 15

*Chapman v. Skype Inc.*,
    220 Cal. App. 4th 217 (Ct. App. 2013)................................................................. 28

*Chavez v. Occidental Chem. Corp.*,
    2018 WL 352810 (S.D.N.Y. 2018)........................................................................ 20

*City of Hollister v. Monterey Ins. Co.*,
    165 Cal. App. 4th 455 (Ct. App. 2008)................................................................. 27

*City of New York v. Smokes-Spirits.Com, Inc.*,
    911 N.E.2d 834 (N.Y. 2009)................................................................................. 22

*Corsello v. Verizon N.Y., Inc.*,
    967 N.E.2d 1177 (N.Y. 2012)............................................................................... 21

*Cox v. Chrysler Group LLC*,
    2015 WL 5771400 (D.N.J. 2015) ......................................................................... 38

*Dewey v. Volkswagen AG*,
    558 F. Supp. 2d 505 (D.N.J. 2008)....................................................................... 34

*Doe v. Holy See*,
    793 N.Y.S.2d 565 (N.Y. App. Div. 2005) ............................................................ 21

*Dzielak v. Whirlpool Corp.*,
    26 F. Supp. 3d 304 (D.N.J. 2014) ........................................................................ 39

*D'Ercole Sales, Inc. v. Fruehauf Corp.*,
    206 N.J. Super. 11 (App. Div. 1985) .................................................................... 16

*Ehrlich v. BMW of N. Am., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010) ................................................................. 41

*El Pollo Loco, Inc. v. Hashim*,
    316 F.3d 1032 (9th Cir. 2003) ............................................................................. 26

*Evans v. Visual Tech. Inc.*,
    953 F. Supp. 453 (N.D.N.Y. 1997)....................................................................... 20

*Falco v. Nissan N. Am. Inc.*,
    2013 WL 5575065 (C.D. Cal. 2013).................................................................. 41

*Feldman v. Mercedes-Benz USA, LLC*,
    2012 WL 6596830 (D.N.J. 2012) .................................................................. 30

*Ferrari v. Am. Honda Motor Co.*,
    2009 WL 211702 (N.J. App. Div. 2009) .......................................................... 38

*Fin. Corp. v. DZ Motors, LLC*,
    2017 WL 3176275 (D.N.J. 2017) .................................................................... 6

*Foodtown v. Sigma Mktg. Sys., Inc.*,
    518 F. Supp. 485 (D.N.J. 1980) .................................................................... 36

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)........................................................................... 6

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (Cal. 2005)................................................................... 24, 26

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    750 N.E.2d 1078 (N.Y. 2001).................................................................... 20

*Gall by Gall v. Allegheny County Health Dept.*,
    555 A.2d 786 (Pa. 1989) ............................................................................ 40

*Glass v. BMW of North Am., LLC*,
    2011 WL 6887721 (D.N.J. 2011) ............................................................ 17, 19

*Goshen v. Mut. Life Ins. Co. of New York*,
    774 N.E.2d 1190 (N.Y. 2002).................................................................... 22

*Hass v. Pittsburgh Nat'l Bank*,
    526 F.2d 1083 (3d Cir. 1975)..................................................................... 10

*Herremans v. BMW of N. Am., LLC*,
    2015 WL 12712082 n.40 (C.D. Cal. 2015)..................................................... 25

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) .................................................................... 28

*Hoving v. Transnation Title Ins. Co.*,
    545 F.Supp.2d 662 (E.D. Mich. 2008)............................................................ 9

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) ...................................................................... 25

v

*Imperia v. Marvin Windows of New York, Inc.*,
    747 N.Y.S.2d 35 (N.Y. App. Div. 2002) ............................................................ 37

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
    701 F.Supp.2d 356 (E.D.N.Y.2010) ................................................................... 9

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012) ................................................................ 9

*In re Estate of Evasew*,
    584 A.2d 910 (Pa. 1990) .................................................................................... 33

*In re Hypodermic Prods. Antitrust Litig.*,
    2007 WL 1959225 (D.N.J. 2007) ...................................................................... 9

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
    2017 WL 3131977 (D.N.J. 2017) ................................................................. 9, 15

*In re Lord Abbett Mut. Funds Fee Litig.*,
    407 F. Supp. 2d 616 (D.N.J. 2005) .................................................................. 10

*In re L'Oreal Wrinkle Cream Mktg. and Sales Practices Litig.*,
    2013 WL 6450701 (D.N.J. 2013) ................................................................. 7, 34

*In re Magnesium Oxide Antitrust Litig.*,
    2011 WL 5008090 (D.N.J. 2011) ...................................................................... 11

*In re McCormick & Co., Inc.*,
    217 F. Supp. 3d 124 (D.D.C. 2016) ................................................................... 8

*In re Opana ER Antitrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016) ................................................................. 8

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ............................................................................. 34

*In re Thalomid & Revlimid Antitrust Litig.*,
    2015 WL 9589217 (D.N.J. 2015) ...................................................................... 9

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    2017 WL 1902160 (D.N.J. 2017) ...................................................................... 36

*Karl Storz Endoscopy-Am., Inc. v. Surgical Tech., Inc.*,
    285 F.3d 848 (9th Cir. 2002) ............................................................................ 25

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ...................................................................................... 28

*Kelly v. Legacy Benefits Corp.*,
   950 N.Y.S.2d 608 (Sup. Ct. 2012) ................................................................. 20

*Khan v. Conventus Inter-Ins. Exchange*,
   440 N.J. Super. 372 (Law. Div. 2013) ........................................................... 15

*Kuzian v. Electrolux Home Prods., Inc.*,
   937 F. Supp. 2d 599 (D.N.J. 2013) .......................................................... 16, 42

*Leaf v. City of San Mateo*,
   104 Cal. App. 3d 398 (Ct. App. 1980) ........................................................... 25

*Lee v. Carter-Reed Co.*,
   4 A.3d 561 (N.J. 2010) ..................................................................................... 12

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..................................................................................... 8, 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ...................................................................................... 9

*Lightning Lube v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) ............................................................................. 31

*Low v. SDI Vendome S.A.*,
   2003 WL 25678880 (C.D. Cal. Jan. 7, 2003) ............................................... 26

*Lucker v. Bayside Cemetery*,
   979 N.Y.S.2d 8 (N.Y. App. 2013) ............................................................ 22, 24

*Majdipour* v. *Jaguar Land Rover N. Am., LLC*,
   2015 WL 1270958 (D.N.J. 2015) ............................................................. 31, 33

*Marshall v. Hyundai Motor Am.*,
   51 F. Supp. 3d 451 (S.D.N.Y. 2014) .............................................................. 21

*McGuire v. BMW of N. Am., LLC*,
   2014 WL 2566132 (D.N.J. 2014) .................................................................... 11

*Meshinsky v. Nichols Yacht Sales, Inc.*,
   541 A.2d 1063 (N.J. 1988) .............................................................................. 18

*Mickens v. Ford Motor Co.*,
   900 F. Supp. 2d 427 (D.N.J. 2012) ................................................................ 18

*Mills v. Forestex Co.*,
   108 Cal. App. 4th 625 (Ct. App. 2003) .......................................................... 27

*Mirizio v. Joseph*,
   4 A.3d 1073 (Pa. Super. 2010) ........................................................................ 35

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
   567 F. Supp. 2d 729 (D.N.J. 2008) ................................................................. 42

*Montich v. Miele USA, Inc.*,
   849 F. Supp. 2d 439 (D.N.J. 2012) ................................................................. 30

*N. State Audobahn, Inc. v. Progressive Ins. Grp. Co.*,
   953 N.Y.S.2d 96 (N.Y. App. Div. 2012) ........................................................ 23

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
   79 F. Supp. 2d 494 (D.N.J. 1999) ................................................................... 13

*Nationwide Ins. Co., v. General Motors Corp.*,
   625 A.2d 1172 (Pa. 1993) ......................................................................... 39, 40

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3rd Cir. 2015) ............................................................................ 8

*Nelson v. Nissan N. Am., Inc.*,
   894 F. Supp. 2d 558 (D.N.J. 2012) ................................................................. 36

*New York v. Feldman*,
   210 F. Supp. 2d 294 (S.D.N.Y. 2002) ............................................................ 22

*New York v. Hendrickson Bros.*,
   840 F.2d 1065 (2d Cir. 1988) ......................................................................... 21

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
   38 F.3d 1380 (3d Cir. 1994) ........................................................................... 21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
   647 N.E.2d 741 (N.Y. 1995) ..................................................................... 23, 24

*Patel v. Patel*,
   2016 WL 3000821 (E.D. Pa. 2016) ................................................................ 35

*Pearl v. City of Long Beach*,
   296 F.3d 76 (2d Cir. 2002) ............................................................................. 21

*Pediatrix Screening, Inc. v. TeleChem Int'l, Inc*,
   602 F.3d 541 (3d Cir. 2010) ........................................................................... 35

*Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir.2005) ............................................................................ 24

*People ex rel. Schneiderman v. Credit Suisse Sec. (USA) LLC*,
    47 N.Y.S.3d 236 (N.Y. App. Div. 2016) ........................................................ 20

*People v. Lynam*,
    253 Cal. App. 2d 959 (Ct. App. 1967) ........................................................... 28

*Piper v. IBM*,
    639 N.Y.S.2d 623 (N.Y. App. Div. 1996) ...................................................... 20

*Prudential Home Mortg. Co. v. Super. Ct.*,
    66 Cal. App. 4th 1236 (Ct. App. 1998) .......................................................... 26

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
    522 F.3d 1049 (9th Cir. 2008) ....................................................................... 27

*Prescription Counter v. AmerisourceBergen Corp.*,
    2007 WL 3511301 (D.N.J. 2007) ............................................................ 13, 14

*Princeton Healthcare System v. Netsmart New York, Inc.*,
    422 N.J. Super. 467 (Sup. Ct. App. Div. 2011) ............................................. 15

*Ramirez v. STI Prepaid LLC*,
    644 F. Supp. 2d 496 (D.N.J. 2009) .................................................................. 9

*Reichhold Chems., Inc. v. Millennium Intern. Tech., Inc.*,
    1999 WL 270391 (E.D. Pa. 1999) ................................................................. 32

*Roberts v. Electrolux Home Prod., Inc.*,
    2013 WL 7753579 (C.D. Cal. 2013) .............................................................. 42

*Robinson v. Kia Motors Am., Inc.*,
    2015 WL 5334739 (D.N.J. 2015) .................................................................. 30

*S. Cal. Stroke Rehab. Assocs., Inc., v. Nautilus, Inc.*,
    782 F. Supp. 2d 1096 (S.D. Cal. 2011) .......................................................... 41

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cir. 1995) ............................................................................. 22

*Sheet Metal Workers Nat'l Health Fund v. Amgen Inc.*,
    2008 WL 3833577 (D.N.J. 2009) .................................................................... 9

*Skeen v. BMW of N. Am., LLC*,
    2014 WL 283628 (D.N.J. 2014) .................................................................... 30

*Smajlaj v. Cambell Soup Co.*,
    782 F. Supp. 2d 84 (D.N.J. 2011) ................................................. 7, 18, 33, 34

ix

*St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l*,
    264 A.D.2d 652 (N.Y. App. Div. 1999) ................................................................ 37

*State v. Al-Deen*,
    2011 WL 2447706 (N.J. Super. Ct. App. Div. 2011) ........................................ 12

*Statler v. Dell, Inc.*,
    775 F. Supp. 2d 474 (E.D.N.Y. 2011) ........................................................ 22, 36

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
    941 F. Supp. 2d 537 (D.N.J. 2013) ............................................................ 13, 36

*Strawn v. Canuso*,
    638 A.2d 141 (N.J. Super. Ct. App. Div. 1994) .............................................. 31

*Strzakowlski v. GMC*,
    2005 WL 2001912 (D.N.J. 2005) ................................................................... 18

*Tatum v. Chrysler Grp. LLC*,
    2012 WL 6026868 (D.N.J. 2012) ................................................................... 11

*Thiedemann v. Mercedes-Benz USA, LLC*,
    183 N.J. 234 (N.J. 2005) .............................................................................. 17

*Transp. Ins. Co. v. TIG Ins. Co.*,
    202 Cal. App. 4th 984 (Ct. App. 2012) ........................................................ 27

*Turuvekere v. ContinuServe, LLC*,
    2012 WL 5961957 (E.D. Pa. 2012) ............................................................... 35

*TVT Records v. Island Def Jam Music Grp.*,
    412 F.3d 82 (2d Cir. 2005) ........................................................................... 32

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
    812 F.3d 294 (3d Cir. 2016) ......................................................................... 34

*U.S. Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) ..................................................................................... 10

*Union Ink Co., Inc. v. AT & T Corp.*,
    352 N.J. Super. 617 (App. Div. 2002) .......................................................... 16

*USI Int'l, Inc. v. Festo Didactic, Inc.*,
    2016 WL 4487858 (D.N.J. 2016) ................................................................. 42

*Viking Yacht Co. v. Composites Inc. LLC*,
    496 F. Supp. 2d 462 (D.N.J. 2007) .............................................................. 31

*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*,
   2009 WL 4730187 (D.N.J. 2009) ................................................................. 9

*Warth v. Seldin*,
   422 U.S. 490 (1975) ..................................................................................... 10

*Williams v. Countrywide Fin. Corp.*,
   2017 WL 986517 (C.D. Cal. 2017) .............................................................. 27

*Williams v. Dow Chem. Co.*,
   2004 WL 1348932 (S.D.N.Y. 2004) ............................................................ 20

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................. 28, 29

*Williams v. Hilton Grp. PLC*,
   93 Fed. Appx. 384 (3d Cir. 2004) ............................................................... 35

*Wiltshire v. A. J. Robins Co.*,
   453 N.Y.S.2d 72 (N.Y. App. Div. 1982) ...................................................... 38

*Zorba Contractors, Inc. v. Housing Auth. of the City of Newark*,
   660 A.2d 550 (N.J. App. Div. 1995) ........................................................... 12

**Statutes**

13 Pa.C.S. § 2313(a)(1) .......................................................................................... 39

Cal. Bus. & Prof. Code § 17200 ............................................................................ 24

Cal. Bus. & Prof. Code § 17500 ............................................................................ 24

Cal. Com. Code § 2503 .......................................................................................... 41

N.J.S.A. 40A:11-34 ................................................................................................ 16

N.J.S.A. 56:8-1(c) ............................................................................................ 12, 14

N.J.S.A. 56:8-1(d) .................................................................................................. 12

N.Y. U.C.C. § 2–313 .............................................................................................. 37

N.Y. U.C.C. § 2–313(1)(a) .................................................................................... 37

New York General Business Law §§ 349 and 350 ................................................ 19

**Rules**

Fed. R. Civ. P. 8(d) .................................................................................................... 42

Fed. R. Civ. P. 8(d)(2) ............................................................................................... 35

Fed. R. Civ. P. 9(b) ................................................................................................. 6, 7

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 5, 6

Fed. R. Civ. P. 23 ............................................................................................... passim

Rule 12(b)(1) ............................................................................................................... 8

**Other Authorities**

Newberg on Class Actions §§ 2:2 & 2:6 .................................................................... 9

Restatement (Second) of Torts §551(2) ................................................................... 32

Plaintiffs Borough of Carteret, City of Fremont, County of Hudson, Levittown Union Free School District, Neshannock Township School District, State operated School District of the City of Newark, and Santa Ynez Valley Union High School District (collectively "Plaintiffs" or "named Plaintiffs")[1] oppose the Partial Motion to Dismiss by Defendants FieldTurf USA, Inc., FieldTurf Inc., FieldTurf Tarkett SAS, and Tarkett Inc. (as successor to FieldTurf Tarkett, Inc.) (collectively "FieldTurf" or "Defendants").[2]

## INTRODUCTION AND SUMMARY OF THE ALLEGATIONS

This case arises from FieldTurf's nationwide campaign of fraud and deceit.  The named Plaintiffs—and hundreds of other FieldTurf customers throughout the country—were duped by FieldTurf into acquiring Duraspine Turf products that FieldTurf knew were defective in design, material, and workmanship and would not meet the representations FieldTurf was making through its sales people, advertisements, brochures, and the like.  Indeed, what sets this case apart from many consumer fraud and product defect cases is that, even without the benefit of discovery of all the facts and documents in FieldTurf's possession, Plaintiffs have clear *admissions* by FieldTurf, its executives, and its experts of the facts of the defects, the facts of FieldTurf's knowing misrepresentations, and the facts of FieldTurf's efforts to cover up its failing product.

As detailed in the Consolidated Amended Complaint [ECF 69] ("Complaint"), FieldTurf sued its fiber vendor, Tencate in 2011.  During that litigation, FieldTurf admitted what it failed and refused to tell its own customers, namely:

- The fiber used to manufacture Duraspine Turf was "inferior" and "defective" in its chemical composition and its design. (Compl. ¶ 180)

---

[1]  Former named Plaintiff, Township of Medford, voluntarily dismissed its individual claims without prejudice, and without prejudice to participation as a class member.  ECF No. 99.

[2]  FieldTurf does not seek dismissal of all claims.  *See* Mem. at 8.

- The fiber was a "cheap[]," "defective," "less durable fiber" that lacked "an adequate amount of the ultraviolet ("UV") stabilizers required to prevent loss of tensile strength, increasing its premature disintegration . . . ." (*id.* ¶ 181)

- The manufacturing process further diminished the fiber's quality. (*id.*)

- FieldTurf's own experts' testing revealed the fiber "exhibited premature and significant signs of both physical and chemical degradation" due to the use of chemicals that had "poor thermal stability" and created a "weakened . . . matrix" that contributed to the fiber's "premature degradation, especially in high temperature, high UV installations." (*id.* ¶ 182)

- FieldTurf's own experts also concluded that the fiber had inadequate levels of UV protection in its chemical composition. (*id.*)

- FieldTurf's experts further concluded that the "breaking, splitting, thinning and overall deterioration of the [Duraspine Turf] fiber in a number of the Duraspine Turf fields confirmed the defective nature of the fiber, including with respect to tensile strength and UV stability." (*id.* ¶ 183)

- FieldTurf's CEO, Eric Daliere, testified that FieldTurf continued to sell, install, and profit from Duraspine Turf fields despite knowing they were defective. (*id.* ¶ 184)

FieldTurf further admitted that "representations that [the] monofilament artificial grass fiber was superior" to other fibers were materially false, as were representations that the fiber was suitable for use in products such as Duraspine Turf fields. *Id,* ¶ 185. [3]

The misrepresentations and half-truths FieldTurf disseminated were concrete and specific. Chief among these were FieldTurf's consistent claims (thru in-person meetings, product brochures, and other marketing materials) that Duraspine was designed *and tested* to provide long-lasting performance of 10+ years. *Id.* ¶¶ 61, 62, 63, 64, 66. Thus, FieldTurf told towns and schools they could "amortize the life of the field on a 10+ year basis" *(id.* ¶ 67) and that Duraspine would be "actually cheaper over the long term. Sometimes almost $1,000,000 cheaper." *Id.* ¶¶ 71. FieldTurf also represented that the Duraspine fiber was designed to spring back and remain

---

[3] However, the defects in Duraspine were not limited to a problem supplier or defective materials. The very design of the monofilament fiber FieldTurf used, with "spines" along the length of the yarn, caused accelerated degradation. *Id.* ¶ 118.

2

upright, would not mat down, had superior UV and wear resistance, and that the turf would be supported by 10 lbs./sq. foot of infill.  *Id.* ¶¶7, 23-30, 61, 134.  These misrepresentations were made to FieldTurf's entire market, including specifically to the named Plaintiffs.[4]

Based on such representations, customers like the named Plaintiffs spent an average of $300,000 to $500,000 for the "revolutionary" fields.  *Id.* ¶¶ 59, 75.

FieldTurf, however, knew the truth about Duraspine Turf even before it closed the deal on its first field. *Id.* ¶ 91.  FieldTurf admitted in internal emails at least as early as 2005 that its own testing established that the Duraspine fiber was prematurely degrading and leading to fields failing far earlier than FieldTurf was promising.  *Id.* ¶¶ 92-94, 99.  FieldTurf's own installer said "[FieldTurf] erred in [its] over exuberance in the adoption of the monofilament yarns," and he cautioned against "rushing a product to market." *Id.* ¶¶ 95, 97.

Likewise, in 2007, a FieldTurf executive (the founder's son), admitted internally that:

[Duraspine] is nowhere near as robust or resilient as we initially thought and probably will not last that much longer than a high quality slit-film yarn…. In all likelihood in years 5 and 6 these Duraspine Turf fields will be matted down and fibrillating pretty heavily…. Our marketing claims and sales pitches need to reflect this reality. (*Id.* ¶ 109.)

As you know our sales and marketing guys continually make claims that we can't possibly meet in the real world.  This opens us up to tons of exposure from a legal standpoint.  . . . . On the marketing side the claims made regarding Duraspine . . . fiber are ridiculous.  Every day we are putting stuff out there that can't and won't live up to the marketing spin.  We have to control this somehow!!  (*Id.* ¶ 114.)

FieldTurf did not "control this somehow."  It continued to sell a knowingly defective product and make misrepresentations about it qualities and performance.  In the meantime, as FieldTurf knew and expected, in normal use, the fields deteriorated.  The Duraspine fibers laid

---

[4]  Compl. ¶¶ 23-30, 60-71, 79-86 (detailing FieldTurf's marketing materials and representations to each named Plaintiff).

down and became matted, shredded into pieces, broke off, and, in many cases, simply pulled out of the backing altogether in *vast* quantities. *Id.* ¶¶ 8, 144-78 (detailing field failures and notices to FieldTurf).[5]

As revealed by NJ Advance Media, and as detailed in the Complaint, these were not isolated lies, abuses, and product failures. FieldTurf victimized *hundreds* of U.S. customers through the installation of about 1,400 Duraspine fields at schools, parks, pet facilities, and other locations in New Jersey and throughout the country. The injuries FieldTurf's customers suffered are real, common, and pervasive. *Id.* ¶¶ 3-8, 144-47, 157-78, 186-87. And, although FieldTurf's fraud extended to all its Duraspine customers, many of those customers, such as the named Plaintiffs here, were public or taxpayer funded schools, towns, and other entities, such that FieldTurf's wrongful acts directly impacted the public interest, particularly for schools and towns already facing tight budgets to serve their constituents. *Id.* ¶ 178.

Yet, despite reportedly receiving a sizeable cash settlement in the Tencate lawsuit, FieldTurf did not do the right thing by Plaintiffs and its other customers. *Id.* ¶ 17. It did not go out and tell customers Duraspine was defective. It did not institute the equivalent of a recall program. It did not refund customers any portion of their purchase price. Instead, FieldTurf started a new strategy to deny and delay—FieldTurf actively concealed the fact that there was any defect in Duraspine Turf, assured its customers that there was no problem but that it would monitor the situation. *Id.* ¶¶ 148-50. In many cases, FieldTurf would turn customer concerns about their fields into opportunities to sell useless maintenance or "upgrade" to new products. *Id.* ¶¶ 147-178. All

---

[5] Plaintiffs also allege FieldTurf also used a non-standard process to attach of fastening the fibers to the backing that resulted in fibers shedding in vast amounts. Compl. ¶¶ 122-132. FieldTurf also shorted customers on the amount of infill used, hastening field failure. *Id.* ¶¶ 133-137. The totality of these defects rendered FieldTurf's claims about Duraspine false, and degraded the "playability" of Duraspine fields. *Id.* ¶¶ 139-143.

this was to avoid the massive legal liability FieldTurf knew it was facing. *Id.* ¶¶ 11-16, 203-208, 211-218.

*          *          *

In the face of these detailed—and, in most cases, admitted—facts, FieldTurf cannot avoid Plaintiffs' claims, particularly on a partial motion to dismiss where Plaintiffs' allegations are presumed true under Fed. R. Civ. P. 12(b)(6).

First, FieldTurf's claim that these Plaintiffs lack "standing" to assert claims for absent class members in various states is wrong as a matter of law.  Plaintiffs indisputably have Article III standing to state their own claims; their authority to assert claims on behalf of *other* customers in *other* states is an issue controlled by Fed. R. Civ. P. 23.  The "growing consensus" in this District and across the country is to reject premature efforts to decide class representation issues before discovery and before class certification, as FieldTurf wrongly urges. *Infra*, Section I.

Second, FieldTurf's arguments that certain claims are time-barred misstate the applicable law of accrual and tolling and ignore Plaintiffs' detailed allegations of how FieldTurf actively concealed defects from Plaintiffs and otherwise deterred and delayed legal claims. *Infra*, Sections II.B.1, II.C.1, II.C.2, V.A, and V.D.

Third, FieldTurf misconstrues the consumer fraud and false advertising laws of New Jersey, New York, and California.  These laws were intended, and are construed, to provide broad protections against precisely the type of misrepresentations at issue here that harm customers across the board.  Public entities, towns and schools are entitled to sue to remedy such fraud in each state. *Infra*, Sections II.A, II.B.2, and II.C.3.

Fourth, FieldTurf's challenge to Plaintiffs' fraudulent concealment claims under New York, New Jersey and Pennsylvania law ignores that each state imposes a duty to speak the *whole*

5

*truth* whenever a manufacturer, like FieldTurf, makes materially incomplete or outright false representations in selling its products. *Infra*, Section III.

Fifth, given FieldTurf's admissions and the detailed factual allegations in the Complaint, FieldTurf's various demands for more "particularity" ring hollow. FieldTurf has more than enough notice of the who, what, and when at issue in this case. *Infra*, Section IV.

Sixth, although they provide only an alternative basis for relief here, FieldTurf cannot avoid Plaintiffs' warranty claims, which are both timely and well founded. *Infra*, Section V. Likewise, the law is clear that Plaintiffs are entitled, at this stage, to preserve their right to pursue their alternative claims of unjust enrichment, particularly where, as here, Plaintiffs amply allege that the contracts FieldTurf invokes may not be enforceable given FieldTurf's pre and post-sale fraud. *Infra*, Section VI.

For all these reasons, FieldTurf's partial motion to dismiss should be denied.

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Auto. Fin. Corp. v. DZ Motors, LLC*, 2017 WL 3176275, at *2 (D.N.J. 2017). When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting Iqbal, 556 U.S. at 679).

Fraud claims are subject to Fed. R. Civ. P. 9(b). However, Rule 9(b) does not require "specificity for specificity's sake." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J.

2011).  All that is needed are facts "sufficient [ ]to put Defendants on notice of the 'precise misconduct with which they are charged.'"  *Id.*  "So long as plaintiff 'inject[s] precision or some measure of substantiation into a fraud allegation,' the plaintiff satisfied Rule 9(b)."  *In re L'Oreal Wrinkle Cream Mktg. and Sales Practices Litig.*, 2013 WL 6450701, *5 (D.N.J. 2013).

## ARGUMENT

## I.   REPRESENTATION OF ABSENT CLASS MEMBERS SHOULD BE DETERMINED AT CLASS CERTIFICATION

FieldTurf sold its defective Duraspine product far and wide to customers throughout the country.  Compl. ¶ 6.  Indeed, it has been sued by its customers in multiple federal courts (leading to this MDL), as well as in multiple state courts.  FieldTurf itself sued Tencate claiming the fiber supplied for use in Duraspine was defective.  *Id.* ¶¶ 179-85.  And FieldTurf's executive admitted that the basic Duraspine Turf sales pitch—delivered to customer after customer—was misleading.  *Id.* 108-21.  Thus, there is no serious dispute that, if these named Plaintiffs are entitled to recovery under the fraud, consumer protection, and other laws applicable to their purchases, hundreds of other customers in other states likewise are entitled to recovery under similar laws.

FieldTurf, however, seeks prematurely to cutoff the rights of these defrauded customers in this MDL, arguing the named Plaintiffs lack "standing" to prosecute claims for class members in states in which the named Plaintiffs are not located.  Mem. at 11.  FieldTurf is wrong.  The "growing consensus" of courts in this District and throughout the federal courts reject FieldTurf's out-moded arguments.  The named Plaintiffs indisputably have Article III standing for their own claims.  The separate issue of who will *represent* absent class members on *their* similar claims should addressed, after class discovery, and with full briefing under Fed. R. Civ. P. 23.

### A.   The Named Plaintiffs Have Article III Standing

Constitutional standing, and this Court's jurisdiction under Article III, is not at issue here.

7

Defendants did not move to dismiss for lack of jurisdiction under Rule 12(b)(1) and do not dispute that each named Plaintiff adequately alleges a concrete, particularized injury-in-fact in its own right—*i.e.*, installation of a defective turf product.  Further, Defendants do not dispute that, as a matter of settled law in this Circuit, Plaintiffs are not required to prove Article III standing of absent class members.  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3rd Cir. 2015) ("unnamed, putative class members need not establish Article III standing").  Thus, the only Article III standing issue that could even possibly be ripe here—the named Plaintiffs' standing to pursue their own claims—is not in dispute.

**B.    The Representation of Absent Class Members Will Be Decided at Class Certification**

What FieldTurf really challenges is whether, in addition to seeking relief for themselves, these named Plaintiffs can represent similarly situated, but absent, class members with respect to their claims for their injuries.  That is not a "standing" issue in any true, Article III sense.[6]

The "growing consensus" of courts in this District and throughout the country reject FieldTurf's argument.[7]  Those courts hold that the ability of a named plaintiff to assert claims as a representative of absent class members is an issue that arises squarely under Fed. R. Civ. P. 23 and

---

[6]  *See In re McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 144 (D.D.C. 2016) ("standing analysis cannot address whether one plaintiff should be able to bring claims on behalf of others;" whether plaintiffs can bring claims for class members in other states is a Rule 23 issue).  *See also In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016) ("whether the named plaintiffs 'may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.'") (quoting Lewis v. Casey, 518 U.S. 343, 395-96 (1996) (Souter, J. concurring in part, dissenting in part, and concurring in judgment))); *Bezdek v. Vibram USA Inc.*, 2013 WL 639145, *10 (D. Mass. 2013) (premature to determine on motion to dismiss whether plaintiffs can represent class members with consumer fraud claims under laws of other states)..

[7]  *See* Newberg on Class Actions §§ 2:2 & 2:6 (5th ed.) (agreeing with the "growing consensus" of courts addressing representation in multi-state class actions under Fed. R. Civ. P. 23, not on motion to dismiss for alleged lack of standing).

should be heard and decided in the context of class certification, not on a motion to dismiss for alleged lack of standing.[8]  Defendants cannot circumvent Rule 23—and cut-off Plaintiffs' rights to class discovery, briefing, and hearing under Rule 23—by re-labeling the question as "standing."[9]

This was the very conclusion reached just months ago when Chief Judge Linares rejected the identical argument made by the defendants in *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *19 (D.N.J. 2017).  There, the Court held:

> As [plaintiffs] correctly note, the United States Supreme Court has made it clear that District Courts should defer addressing standing questions concerning putative class members who are not named until after class certification when certification of the class is "logically antecedent" to the issue of standing.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997).  It is true that class certification here is "logically antecedent" to the issue of standing.  This is because class discovery will unveil the various members of the currently unknown class.  Indeed, this Court has previously ruled on a nearly identical issue and declined to rule on standing until the Court addresses class certification. . . .  Upon such revelation, the Court will be able to ascertain whether each of the 33 state-based claims has a proper representative who resides in the subject states and if those claims may

---

[8]  *See, e.g.*, *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *19 (D.N.J. 2017) (representation of absent class members issue for class certification, not standing); *Sheet Metal Workers Nat'l Health Fund v. Amgen Inc.*, 2008 WL 3833577, *8-*9 (D.N.J. 2009) (denying dismissal for lack of standing; issue is one for Rule 23).*Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, 2009 WL 4730187 (D.N.J. 2009) (same); *Ramirez v. STI Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009) (same); *In re Hypodermic Prods. Antitrust Litig.*, 2007 WL 1959225, at *15 (D.N.J. 2007) (same).  *See also In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198,  213-14 (S.D.N.Y. 2012) (class certification is logically antecedent to standing to assert claims in other states; issue is "whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action."); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F.Supp.2d 356, 377 (E.D.N.Y.2010) ( whether plaintiffs have standing to bring suit under each of the state laws alleged is "'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."); *Hoving v. Transnation Title Ins. Co.*, 545 F.Supp.2d 662, 667 (E.D. Mich. 2008) (whether plaintiff can proceed as a class representative for consumers in other states "will be subsumed in the class certification decision").

[9]  Another court in this District further observed that conflating Article III standing with Rule 23 class representation (as FieldTurf urges) also contravenes *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014), which held that, despite their labels, statutory and prudential "standing" questions are not Article III issues.  *Id.* at 1386-87, n.4.  *See In re Thalomid & Revlimid Antitrust Litig.*, 2015 WL 9589217, at *19 (D.N.J. 2015) ("attack on plaintiffs' standing to pursue state law claims on behalf of absent class members is not an Article III jurisdictional issue under *Lexmark*;" class representation issues are for Rule 23).

9

proceed, even if the named [plaintiffs''] claims become moot. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 413 (1980). Hence, dismissal at this juncture would be inappropriate.

The conclusion of the "growing consensus" is sensible and logical and follows pre-existing Third Circuit authority.[10] Article III standing is personal to the complaining party. *See Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). Thus, no class representative has Article III "standing" to assert a claim for another class member. The authority of a named plaintiff to plead class claims, therefore, is not a matter of "standing," but of the authority Rule 23 provides to certify classes and appoint class *representatives*.[11] As *In re Liquid Aluminum* observed, where, as here, there are well-founded allegations that similarly situated, injured parties exist in states other than those in which the named Plaintiffs reside or purchased their products, class discovery and class certification is the appropriate method to identify and appoint additional, state-specific class representatives (if necessary) under Rule 23.[12]

FieldTurf, and the cases on which it relies, ignore this "growing consensus" within the federal courts. Its reliance on *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132 (D.N.J. 2014) is particularly misplaced given Chief Judge Linares's more recent opinion in *Liquid Aluminum*

---

[10] In *Hass v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1089 (3d Cir. 1975), the Third Circuit held that the fact that the named plaintiff may not have Article III standing with respect to the claims of all absent class members does not require dismissal on the merits, but should instead be addressed under Rule 23, including considering potential substitution of a new representative.

[11] For example, a named Plaintiff with standing to sue with respect to certain investment funds can assert similar, factually related claims on behalf of absent class members with respect to other funds and dismissal of such claims for lack of "standing" is improper. *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 625, n.4 (D.N.J. 2005) (denying motion to dismiss) (opinion vacated in part, 463 F. Supp. 2d 505 (D.N.J. 2006), order vacated on other grounds, 553 F.3d 248 (3d Cir. 2009)).

[12] Plaintiffs here plead a nationwide class of all injured customers, as well as proposed subclasses or, if necessary, separate classes for each state. Compl. ¶¶ 191-192. The Court will decide at class certification whether state-specific class representatives are needed for any subclass or whether consumers in multiple states can be represented by one or more named Plaintiffs.

*Sulfate* revisiting the same legal question and finding that determining who can and should represent absent class members from other states must await class certification. Moreover, the concern driving *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *10 (D.N.J. 2011) and FieldTurf's other cases citing it—namely, that a defendant should not be subject to nationwide discovery based on a single plaintiff's conclusory assertion of a multi-state class—plainly does not exist here. Plaintiffs amply allege that this is a nationwide problem with nationwide victims.[13]

In sum, FieldTurf's motion to dismiss all claims asserted on behalf of absent class members in 43 jurisdictions for lack of "standing" should be denied.

## II.   PLAINTIFFS' CONSUMER PROTECTION CLAIMS SHOULD PROCEED

### A.   Plaintiffs State a Valid Claim for Relief Under the New Jersey Consumer Fraud Act

Plaintiffs allege FieldTurf violated the New Jersey Consumer Fraud Act ("NJCFA"), by lying to its customers, including Plaintiffs Carteret, Hudson, and Newark. Contrary to what FieldTurf argues, Plaintiffs are "persons" entitled to sue under the NJCFA and its widely marketed Duraspine product is "merchandise" covered by the Act. Moreover, the Complaint provides FieldTurf with more than adequate notice of the lies, misrepresentations and omissions at issue.

---

[13]   *Lewis v. Casey*, 518 U.S. 343 (1996) (cited at Mem. at 12) did not address whether a named Plaintiff has standing to assert claims of absent class members. Rather, in that case, the plaintiff sought to bolster his own standing to make a *Bounds* claim (lack of access to legal services for prisoners) by relying on alleged injuries to class members where his own claimed injury was insufficient to state the claim. Here, Plaintiffs' standing in their own right is not disputed. *Tatum v. Chrysler Grp. LLC,* 2012 WL 6026868, at *4 (D.N.J. 2012) is similarly irrelevant because the named Plaintiffs' do not seek to rely on "generalized allegations" about absent class members to bolster the Plaintiffs' own, undisputed standing.

### 1.    Plaintiffs Are "Persons" and Duraspine Turf Is "Merchandise" Covered by the NJCFA

FieldTurf's claim that Plaintiffs are not "consumers" and Duraspine Turf is not "merchandise" covered by the NJCFA (Mem. at 14-16) misstates the applicable law.

The NJCFA is "intended to be 'one of the strongest consumer protection laws in the nation.'" *Zorba Contractors, Inc. v. Housing Auth. of the City of Newark*, 660 A.2d 550, 551 (N.J. App. Div. 1995); *Lee v. Carter-Reed Co.*, 4 A.3d 561, 577 (2010) ("Because the [NJCFA] "is 'remedial legislation,' [it] is 'construe[d] liberally to accomplish its broad purpose of safeguarding the public.'"). Thus, each term used in the NJCFA is broadly interpreted to realize the Act's remedial purpose. *Zorba Contractors*, 660 A.2d at 551.

The NJCFA does not use the term "consumers." Instead, the NJCFA uses the term "person," which it defines as "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association . . . ." N.J.S.A. 56:8-1(d). This broad definition of "persons" encompasses corporations, including municipal entities, such as these Plaintiffs. *Zorba Contractors*, 660 A.2d at 552 (finding city Housing Authority "is a person" entitled to sue under the NJCFA); *State v. Al-Deen*, 2011 WL 2447706, at *5 (N.J. Super. Ct. App. Div. 2011) (citing *Zorba Contractors*).

Similarly, the NJCFA's definition of "merchandise" is intentionally broad and includes "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56-8:1(c). "The NJCFA is not confined . . . to items on the shelves of retail stores." *CDK Global LLC v. Tulley Auto. Grp., Inc.*, 2016 WL 1718100, at *6 (D.N.J. 2016). Nor is it limited to inexpensive items, as FieldTurf wrongly asserts. Mem. at 15. The NJCFA plainly covers large and expensive products purchased by sophisticated buyers.

For example, in *Prescription Counter v. AmerisourceBergen Corp.*, 2007 WL 3511301 (D.N.J. 2007), the plaintiff pharmacy sued over computer software specifically tailored to pharmacies. The court there rejected the same argument FieldTurf makes here, holding that "the [NJCFA] applies to products that, although expensive, uncommon, or only suited to the needs of a limited clientele, are nevertheless available to the public at large." *Id.* at *14.

Likewise, in *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494 (D.N.J. 1999), the plaintiff corporation sued under the NJCFA concerning the sale of a large construction crane. The court held that, although the case concerned "a transaction between [] two large commercial entities for a piece of equipment," the NJCFA applied. *Id.* at 508. The court explained that "[a]lthough a crane is a large, expensive piece of machinery, cranes are in use at construction sites across the globe," and, therefore, was "merchandise." *Id.* at 509. *See also Belmont Condo. Ass'n, Inc. v. Geibel*, 74 A.3d 10 (App. Div. 2013) (upholding NJCFA claim involving sale of condominium). As another court in this District observed, "[e]ven the most world-wise business entity can be inexperienced and uninformed in a given consumer transaction. Unlawful practices thus can victimize business entities as well as individual consumers." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 543 (D.N.J. 2013) (upholding NJCFA claim involving business-to-business transaction).[14]

The NJCFA, as well as the cases cited above, makes clear that the touchstone is whether the "merchandise" is offered to the public at large. N.J.S.A. 56-8:1(c) (merchandise is "anything

---

[14] FieldTurf's claim that Plaintiffs should be denied protection under the NJCFA because they supposedly were "sophisticated" enough to assess Duraspine's qualities on their own (Mem. at 14) plainly raises a classic factual issue that cannot be resolved on the pleadings. Plaintiffs cogently plead they are not turf experts and lacked the means to ferret out FieldTurf's deception and the product's defects before purchasing Duraspine. Compl. ¶ 48. Indeed, FieldTurf knew a field could be close to catastrophic failure, yet have a visually good appearance. *Id.* ¶ 144.

offered to the public for sale"); *Naporano,* 79 F. Supp. at 508-09 ("if the Crane is an object, ware, or good offered to the public at large, Naporano's claims should survive the motion to dismiss, regardless of whether the Crane is extremely expensive or uncommon"); *Prescription Counter*, 2007 WL 3511301 at *14. Here, Plaintiffs allege FieldTurf touted a branded turf product that it advertised widely and publicly through nationwide marketing and sales efforts, including in print media and on the internet. *E.g.*, Compl. ¶¶ 6-7, 10, 47, 60-71. Although colors and installation details may have been tailored for certain customers (such as to create a school logo in a field), the *product* being sold was the Duraspine turf. *Id.* ¶¶ 51, and 61-70. Indeed, FieldTurf's sales people used boxed samples of the product in their sales pitches. *Id.* ¶ 83. The customized aspects of any field installation were not supposed to change the Duraspine Turf product itself. Thus, Duraspine Turf was "merchandise" under the NJCFA in the same way a new car is "merchandise" regardless of which package of features a customer might choose.

Moreover, FieldTurf made no distinction in its advertising between one installation of Duraspine Turf and another. Rather, it showcased high-profile installations (such as for NFL teams) in its marketing to all its customers, touting the *product's* allegedly "proven success in over 2000 installations worldwide." *Id.* ¶¶ 61, 64. As a result, Duraspine Turf was purchased by a wide array of customers, including sports teams, schools, parks, and pet resorts. *Id.* ¶¶ 1, 6, 61.[15]

By contrast, the cases FieldTurf cites involved products either not marketed to the public at large or essentially bespoke creations. *Khan v. Conventus Inter-Ins. Exchange*, 440 N.J. Super. 372 (Law. Div. 2013) concerned medical malpractice insurance *not* "sold to the public at large."

---

[15]  *See Paw Inc. v. FieldTurf USA Inc., et al.*, 17-CV-4030 (MAS) (TJB) (D.N.J.) (suit by pet resort). *See generally*, Find potentially faulty artificial turf fields in your neighborhood, NJ.Com, http://www.nj.com/news/index.ssf/2016/12/duraspine_fields_in_the_us.html (last visited March 19, 2018 (referencing The 100-Yard Deception, NJ Advance Media).

*Id.* at 375-76 (medical malpractice insurance is offered only to physicians who "complete a lengthy education and training process spanning many years and then obtain licensure from the state"). *Centrum Fin. Serv., Inc. v. Chicago Title Ins. Co.*, 2010 WL 936201 (D.N.J. 2010) (NJCFA did not apply to property title insurance sold only to skilled attorneys).

Similarly, *Princeton Healthcare System v. Netsmart New York, Inc.*, 422 N.J. Super. 467 (Sup. Ct. App. Div. 2011) concerned a *highly customized* software program purchased after a two-year RFP and evaluation process. *BOC Group, Inc. v. Lummus Crest, Inc.*, 251 N.J. Super. 271 (Superior Ct. 1990) is likewise inapposite; it concerned licensing of an intangible "idea," not tangible "merchandise" under the NJCFA. *Id.* at 278.

FieldTurf also tries to use the New Jersey (and New York) competitive bidding process to shield itself from its lies. Mem. at 15, 23. But it cites no cases immunizing public bidders. To the contrary, at least one recent decision upheld claims under New York and other consumer protection claims in a case involving competitive bidding for sales to municipalities. *See In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, *4 and *24, n. 25-26. In any event, FieldTurf's misrepresentations and omissions infected the bidding process (since no entity would put out a bid for knowingly defective products). And, of course, FieldTurf's fraud extended to its private customers as well as public entities. E.g., *Ranney School v. FieldTurf USA*, 17-CV-03414 (MAS) (TJB) (D.N.J.) (private school alleging fraud); *Paw, Inc. v. FieldTurf USA*, 17-CV-4030 (MAS) (TJB) (D.N.J.) (private pet resort alleging fraud). Far from being a shield, FieldTurf's lies and material omissions in a bidding process likely only mean it violated public contract laws, as well as the consumer fraud acts. *See e.g.* N.J.S.A. 40A:11-34 (entities submitting bids based on "a false, deceptive or fraudulent statement[s]" face criminal punishment).

### 2.    Plaintiffs Suffered an Ascertainable Loss

Contrary to what FieldTurf argues (Mem. at 16-17), its written warranty does not preclude Plaintiffs from proving ascertainable loss under the NJCFA.

An ascertainable loss occurs when a consumer receives less than what was promised. *Union Ink Co., Inc. v. AT & T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002).  Here, Defendants sold Duraspine Turf (and the warranty) knowing its product would not live up to FieldTurf's representations.  Thus, from the outset, the fields were *not* what was promised—a working field with all the attributes FieldTurf represented—and were worth less than promised.  In any event, Plaintiffs are entitled to prove, as a factual matter, the common-sense proposition that they would not have paid the same amount for a product *knowing* it was defective and would have to be repaired or replaced, even under warranty.  That is particularly true when the product is a field installation, not a toaster that can be returned at the mall.

Moreover, a breach of warranty claim does not categorically preclude recovery under the NJCFA.  An injured party can pursue both claims.  *See D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11, 25, 30 (App. Div. 1985) (a breach of warranty under a sales agreement may "under given circumstances, also violate the [NJCFA].").  Where, as here, a defendant is alleged to have knowingly sold a defective product, the plaintiff can sue under the NJCFA as an alternative to any warranty claim, on the theory that the warranty is not effective.  *See Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 619 (D.N.J. 2013) (allowing alternative claim that warranty is not effective because defendant knowingly sold defective goods).  Plaintiffs pled their NJCFA and warranty claims here in the alternative.  Compl. at 81, n 9.

FieldTurf's reliance on two automobile cases—*Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234 (2005), and *Glass v. BMW of North Am., LLC*, 2011 WL 6887721 (D.N.J. 2011) — is misplaced.  In *Thiedemann*, the court noted that Mercedes fixed *all* the alleged problems in the

vehicles and the plaintiff had no additional damages.  183 N.J. at 242-43.  Here, FieldTurf has not repaired the New Jersey Plaintiffs' defective fields, nor fully compensated them (or, in the case of Hudson, deceptively induced an "upgrade").  Compl. ¶¶ 23, 25, 29, 157-61, 162-63, 168-69.

In *Glass*, the court held that the plaintiff's NJCFA claims did not survive because the defect at issue was fully covered by a warranty (which had lapsed).  2011 WL 6887721 at *6.  And, unlike here, there was no alternative claim for fraud because the defendant engaged in mere puffery. *Id.* at *11.  *Glass* did not hold that a warranty precludes NJCFA claims as a matter of law.

Finally, Plaintiffs' claims do not fall exclusively within the four corners of the warranty, even if it were enforceable despite FieldTurf's fraud.  FieldTurf asserts that the warranty is limited to defects in material or workmanship.  Mem. at 16.  But Plaintiffs alleged Duraspine Turf also was defectively *designed*.  *See, e.g.* Compl. ¶¶ 2, 9, 13, 55, 61, 118, 147.  Moreover, Plaintiffs more than adequately plead injury due to actionable fraud by FieldTurf, not mere "puffery."  *E.g. Id.* ¶¶ 60-71, 91-121, and 220-31.  Plaintiffs are entitled to more than warranty damages for such deceit, including "compensatory damages, and costs for economic loss and out-of-pocket costs," "punitive and exemplary damages," reimbursement and compensation for full purchase and installation price and costs for maintenance or equipment purchased to care for their fields, pre-judgment and post-judgment interest.  *Id.* ¶ 330.

### 3.   FieldTurf Has Ample Notice of the Basis for Hudson's Claims

FieldTurf's repeated pleas that it requires more particularity about its alleged fraud ring particularly hollow given the history and context here.  This litigation does not arise out of thin air or speculation.  As discussed above, FieldTurf knows exactly what "unlawful conduct" is at issue here because (a) it sued Tencate over many of the defects at issue, (b) its experts testified to multiple product defects in that case, and (c) FieldTurf's executives *were fully aware the company was misleading customers and had vast exposure for its fraud*.  *E.g.* Compl. ¶¶ 91-121, 106-17,

180-84.  Indeed, at least one executive sought to destroy evidence of the fraud *because it could be discoverable*.  *Id.* ¶ 112.  Add to this the detailed exposé by NJ Advance Media (cited and referenced in the Complaint (¶¶ 18-19 and 186-88)) *and* Plaintiffs' more than 180 paragraphs of factual allegations and there is no serious doubt that FieldTurf has ample notice of the alleged wrongdoing here.

Rule 9(b) is designed to give notice and guard against wholly speculative fraud claims.  It does not require "specificity for specificity's sake."  *Smajlaj*, 782 F. Supp. 2d at 104.  Here, the Complaint exceeds Rule 9(b)'s requirements as to the "who, what, and when" of the fraud.  Plaintiffs allege the "who": FieldTurf.  Plaintiffs allege the "what": the legion misrepresentations and material omissions concerning Duraspine Turf throughout the class period.  And Plaintiffs allege the "when", namely when Plaintiffs (including Hudson) purchased their Duraspine fields.  E.g., Compl. ¶¶ 25, 86.

### 4. Hudson Alleges a Causal Connection Between FieldTurf's Acts and Its Loss.

The causation element of the NJCFA requires only allegations that the plaintiff "'suffer[ed] a loss due to' an unlawful practice."  *Meshinsky v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1067 (N.J. 1988).  At the pleading stage, "it is sufficient if a plaintiff avers that had the alleged defect been disclosed, consumers would not have purchased defendant's product."  *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 447 (D.N.J. 2012); *see also Strzakowlski v. GMC*, 2005 WL 2001912, at *7-8 (D.N.J. 2005).

Here, the Complaint clearly, and plausibly, alleges the requisite causal connection:  Hudson would not have purchased, or would have paid less for, the product had it know of the fraud.  Compl. ¶¶ 25, 86, 162-63.

Again, FieldTurf's reliance on *Glass*, 2011 WL 6887721 is misplaced.  Whereas *Glass* involved mere, non-actionable puffery, Plaintiffs allege in detail the widespread, specific, measurable misrepresentations and omissions FieldTurf disseminated to the market through sales people, print media, brochures, etc.—misrepresentations that FieldTurf's own executive admitted (1) were being made across the board, (2) the product could not meet, and (3) exposed the company to massive liability.  *E.g.* Compl. ¶¶ 6-10, 60-71, and 91-121.  And, unlike the plaintiff in *Glass*, Hudson and the other Plaintiffs allege they would not have purchased Duraspine Turf if they, like FieldTurf, had known of its many defects.

### B.     Plaintiffs State Valid Claims Under the New York Deceptive Acts Law

As set forth at length in the Complaint, FieldTurf violated New York's prohibition on deceptive acts and false advertising, New York General Business Law §§ 349 and 350 (collectively, "NY Deceptive Acts Law"), by deceiving its customers, including Plaintiff Levittown, as part of a marketing and sales campaign to sell Duraspine Turf.  Compl. ¶¶ 1211-20.  FieldTurf cannot avoid these claims by arguing they are time barred or that its conduct was not "consumer oriented" or sufficiently widespread to fall under the statutes.  Mem. at 19-22.  FieldTurf's fraud tolled the limitations period and is the very type of conduct prohibited by the NY Deceptive Acts Law.

### 1.     Levittown's NY Deceptive Acts Law Claims are Timely

### a.     A Six-Year Limitations Period Applies

FieldTurf incorrectly asserts Levittown's NY Deceptive Acts Law claim is governed by a three-year statute of limitations.  Mem. at 20-21. Where, as here, a complaint pleads fraud, a six-year period applies.  *See People ex rel. Schneiderman v. Credit Suisse Sec. (USA) LLC*, 47 N.Y.S.3d 236, 238 (N.Y. App. Div. 2016); *see also Williams v. Dow Chem. Co.*, 2004 WL 1348932, at *6 (S.D.N.Y. 2004).  FieldTurf does not dispute that Levittown alleges the elements

19

of fraud here.  *See*, *e.g.* Compl. ¶¶ 26, 83, 91-121, 166, 219-31, 246-53.

### b.   Levittown's Claims Accrued Long After Purchase

FieldTurf also mistakenly claims Levittown's injury accrued in 2008, when it acquired the

fields.  Mem. at 20-21.  A claim based on misrepresentations as to future performance does not

accrue until performance fails.  *See Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078,

1082 (N.Y. 2001); *Kelly v. Legacy Benefits Corp.*, 950 N.Y.S.2d 608 (Sup. Ct. 2012).  This

comports with New York's longstanding doctrine claims accrues at the time of the injury, not the

wrongdoing.  *See Evans v. Visual Tech. Inc.*, 953 F. Supp. 453, 459 (N.D.N.Y. 1997) (citing *Piper

v. IBM*, 639 N.Y.S.2d 623 (N.Y. App. Div. 1996)).

Here, FieldTurf made knowing misrepresentations to Levittown about the quality and

durability of its product—most importantly that Duraspine Turf would last over ten years.  *See*

Compl. ¶ 26.  Accordingly, Levittown's claims did not accrue until the fields failed in 2016, long

before the promised lifespan.  *See id.* ¶¶ 146(a), 166; *see also Gaidon*, 750 N.E.2d at 1084.

Levittown filed its claims in 2017, well within the six-year (or even three-year) period.[16]  Even

under FieldTurf's theory that it warranted only an eight-year lifespan, Levittown's claims still are

timely because they would not have accrued until eight years after installation, again in 2016.[17]

---

[16]  Further, Plaintiffs Carteret and Newark filed their Class Action Complaints in December
2016.  Thus, under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) and its progeny,
the statute of limitations was tolled for all putative class members, including those now suing as
named Plaintiffs here.  New York, like New Jersey and the majority of states, follows *American
Pipe*'s reasoning and tolls state statutes of limitations during the pendency of a class action. *See,
e.g., Chavez v. Occidental Chem. Corp.*, 2018 WL 352810, at *8 (S.D.N.Y.
2018), *reconsideration denied,* 2018 WL 620488 (S.D.N.Y. 2018).

[17]  Levittown's injuries continue to accrue, for example, in the form of costs incurred in the
replacement of its fields as a result of FieldTurf's denial of Levittown's warranty claims.
Compl. ¶ 166.  *See, e.g., Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 466 (S.D.N.Y. 2014)
(statute of limitations for N.Y. Deceptive Acts Law claims may run from date of warranty denial).

### c.    FieldTurf's Fraud Tolled the Limitations Period

Even if FieldTurf were correct about accrual or the applicable statutory period, Levittown's claims still would be timely because FieldTurf's fraud equitably tolled any applicable limitations period.  Under New York law, equitable tolling applies "when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See*, 793 N.Y.S.2d 565 (N.Y. App. Div. 2005)). Thus, the limitations period is tolled by the defendant's "active fraudulent concealment," *Pearl v. City of Long Beach*, 296 F.3d 76, 88 (2d Cir. 2002), or when "the wrong itself [is] self-concealing." *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988).  Federal courts also have inherent powers to toll a statute of limitations.  *See generally, Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994).

Here, Plaintiffs allege FieldTurf knew, but actively concealed, the fact that Duraspine Turf would degrade and ultimately fail prematurely, contrary to its promises and representations that fibers would remain upright and that the turf would perform 10 years or more given its UV resistance, tensile strength, and design.  Compl. ¶¶ 9-14, 26, 91-121, 147, 185, 211-14, 232-45. FieldTurf's deception continued post-purchase, including when it reassured customers, like Levittown, that the fields were wearing normally and asserting that any issues were the result of improper maintenance or overuse.  *Id.* ¶¶ 147-56, 166.

By contrast, the cases FieldTurf cites did not involve active fraudulent concealment, but mere failure to disclose prior wrongdoing.  *See, e.g., Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012) (rejecting equitable tolling where plaintiffs failed to allege defendants actively concealed their wrongdoing); *Lucker v. Bayside Cemetery*, 979 N.Y.S.2d 8, 18 (N.Y. App. 2013) (same).  Here, Levittown alleges FieldTurf actively concealed the defects both before *and* after the sale.  It initially made misrepresentations about the durability and qualities of Duraspine

21

Turf and, once the Duraspine Turf was visibly degrading, it followed its deny-and-delay practice, falsely telling Levittown that "grooming the fields . . . would rejuvenate the fibers and lift them back up," which Levittown did, "[b]ut the very same problem returned."  *See* Compl, ¶ 166; *see also Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011).

### 2.    Plaintiffs Properly Plead NY Deceptive Acts Law Claims

FieldTurf also wrongly argues that Levittown's claims do not satisfy the elements of the NY Deceptive Acts Law.  Mem. at 21-23.  Each contested element is properly pled.

#### a.    FieldTurf Committed "Wrongs Against the Consuming Public"

The NY Deceptive Acts Law broadly applies to "virtually all economic activity," *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 (N.Y. 2002) (statute is "intentionally broad"); *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (same).  Under the Law, "[t]he critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor."  *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).  Thus, a municipality can sue under the NY Deceptive Acts Law.  *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009).

Here, FieldTurf's deceptive acts against Levittown and countless other schools and public entities throughout New York (and the country) clearly implicate the public interest, as well as non-public consumers (such as private schools and sports facilities, pet resorts, and other customers).  *See* Compl. ¶ 59, ¶ 257 (alleging FieldTurf sold more than 1,400 Duraspine Turf fields in the U.S.).[18]  Moreover, many of FieldTurf's customers, including Levittown, are publicly funded entities that purchased FieldTurf's defective product for the benefit of the public in

---

[18]  There are approximately 113 Duraspine Turf fields in New York alone.  *See* http://www.nj.com/news/index.ssf/2016/12/duraspine_fields_in_the_us.html.

recreation and athletics. *Id.* ¶ 178. Clearly, FieldTurf's misconduct was directed at consumers, implicates the public interest, and is prohibited by the NY Deceptive Act Law.

### b.   FieldTurf Defrauded Public and Private Customers

Finally, FieldTurf erroneously argues that Levittown protected by the NY Deceptive Act Law because it is a "business entity." Mem. at 21. Even if Levittown, a school district, were considered a "business entity," the NY Deceptive Act Law permits business entities to sue where the alleged deceptive practices "potentially affect[ed] similarly situated customers." *See N. State Audobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96 (N.Y. App. Div. 2012); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). Here, FieldTurf's deception is alleged to have reached hundreds of customers in New York and nationally. Compl. ¶ 59.

FieldTurf likewise cannot avoid the NY Deceptive Acts Law by arguing that its deceptive practices were not sufficiently widespread or "standardized." Mem. at 22-23. The NY Deceptive Acts Law requires no such thing. Offending conduct need only be capable of impacting similarly situated customers or the public interest. *See Oswego*, 647 N.E.2d at 744 (holding that applicable conduct "does not require a repetition or pattern of deceptive behavior"); *N. State Autobahn*, 953 N.Y.S.2d at 101 ("[C]onduct has been held to be sufficiently consumer-oriented to satisfy the statute where it involved an extensive marketing scheme, where it involved the multi-media dissemination of information to the public."). Plaintiffs clearly allege a multi-media marketing and sales campaign by FieldTurf. *E.g.* Compl. ¶¶ 6-7, 10, 47, 60, 62. The possibility of minor variations in widespread deceptive practices or the product do not defeat application of the NY Deceptive Acts Law. *See Oswego*, 647 N.E.2d at 744.

FieldTurf also argues, without support, that Levittown does not allege FieldTurf's "misrepresentations were in fact deceptive," or "direct injury of any kind sustained as a result of

23

FieldTurf's alleged misconduct."  Mem. at 20.  Levittown alleges it was deceived by FieldTurf (Compl. ¶¶ 26, 83), and injured as a result.  *Id.* ¶¶ 26, 1216-20, 1242-49.  Under the NY Deceptive Acts Law, a plaintiff is not required to prove individual reliance upon a defendant's deceptive practice.  *See*, *e.g.*, *Pelman v. McDonald's Corp.*, 396 F.3d 508, 512 (2d Cir. 2005) (noting that reliance is not an essential element of a claim under GBL 349).

Finally, as discussed above (*supra* p. 15) FieldTurf offers no support for its suggestion that the use of a competitive bidding process takes its fraud beyond the reach of the Law.  Mem. at 23.

## C.  Plaintiffs State Claims for Relief Under California's UCL and FAL

Contrary to FieldTurf's claim (Mem. at 23-25), Plaintiffs' claims under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 are timely.  These Plaintiffs are entitled to rely on the discovery rule and doctrine of fraudulent concealment in light of FieldTurf's fraud.  FieldTurf's challenge to Santa Ynez's FAL standing (Mem. at 25-26) similarly fails.

### 1.  Plaintiffs Plead Grounds to Toll the Statutes of Limitations

Under either the discovery rule or the doctrine of fraudulent concealment, the statute of limitations for Plaintiffs' UCL and FAL claims is tolled.

#### a.  Discovery Rule Tolling Applies Here

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover," the claim.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (Cal. 2005).  It "protect[s] the plaintiff who is 'blamelessly ignorant.'"  *Leaf v. City of San Mateo*, 104 Cal. App. 3d 398, 408 (Ct. App. 1980); *see generally April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 831 (Ct. App. 1983).

FieldTurf acknowledges that the discovery rule applies to FAL claims (Mem. at 23-24), but it relies on *Karl Storz Endoscopy-Am., Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir.

2002) to argue that UCL claims cannot be equitably tolled under the rule.  Mem. at 25.  *Karl Storz* is no longer good law.  In 2013, the California Supreme Court held that equitable tolling doctrines, such as the discovery rule, *do* apply to UCL claims.  *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192-97 (Cal. 2013).  *Aryeh* "clearly indicates that *Karl Storz Endoscopy* incorrectly held that the delayed discovery rule does not apply to UCL claims."  *Herremans v. BMW of N. Am., LLC*, 2015 WL 12712082, at *2-3 n.40 (C.D. Cal. 2015).

FieldTurf's additional attack on the sufficiency of Plaintiffs' allegations under the discovery rule is improper and ignores the ample, allegations supporting application of the discovery rule here.

First, because the "applicability of equitable tolling depends on matters outside the pleadings, [] it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss.… if equitable tolling is at issue."  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006).

Second, the discovery rule is well supported here.  *See* Compl. ¶¶ 201-14 (summarizing facts supporting discovery rule).  As a result of FieldTurf's continuing course of lies, Plaintiffs were precluded until 2016 from appreciating that the wear starting to appear in their Duraspine fields was not, as FieldTurf insisted, ordinary wear, but a sign of premature degradation already underway due to defects well-known to FieldTurf.  Thus, this is a case in which the "blameless innocence" of Plaintiffs (in stark contrast to FieldTurf's guilt) is evident.

For example, FieldTurf tested Fremont's Irvington Ballfield in 2011 and determined the Duraspine Turf was, in fact, defective and already degrading at an alarmingly early rate.  *Id.* ¶¶ 146b, 164-65.  Yet, FieldTurf used its deny-and-delay approach to conceal the testing and deny there was any issue with the fields. *Id.* ¶ 164.

Moreover, the law protects Plaintiffs given the clear advantage FieldTurf had in knowing

25

about the underlying problem with Plaintiffs' Duraspine Turf fields. *Prudential Home Mortg. Co. v. Super. Ct.*, 66 Cal. App. 4th 1236, 1246 (Ct. App. 1998) ("Even when the breach and damage are not physically hidden, they may be beyond what the plaintiff could reasonably be expected to comprehend."). That is exactly what Plaintiffs have alleged here. Compl. ¶¶ 48, 144; *see also* n. 12, *supra*. That Plaintiffs might have seen some deterioration in their fields does not mean they failed to conduct a "reasonable investigation." *Fox*, 35 Cal. 4th at 803. To the contrary, Plaintiffs allege (and are entitled to prove as a factual matter) that assessing the design and performance of artificial turf fields requires specialized engineering knowledge that these Plaintiffs lacked. Compl. ¶¶ 12, 48 (alleging FieldTurf knew customers would not be able to see irreversible, premature degradation). Even if Plaintiffs could have uncovered the fraud by hiring specialized experts, "the recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he undertaken an investigation." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040 (9th Cir. 2003).

### b.    Plaintiffs Plead Fraudulent Concealment

The doctrine of fraudulent concealment compels the same conclusion. The doctrine "toll[s] the statute of limitations 'where a defendant, through deceptive conduct, has caused a claim to grow stale.'" *Bekins v. AstraZeneca Pharm. LP*, 239 F. Supp. 3d 1220, 1226 (S.D. Cal. 2017). Allegations of affirmative misrepresentations suffice under the doctrine. *See e.g. Low v. SDI Vendome S.A.*, 2003 WL 25678880, at *5 (C.D. Cal. Jan. 7, 2003). A plaintiff must plead only "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008).

Plaintiffs allege they discovered FieldTurf's fraud in 2016, and detail FieldTurf's campaign

26

to deny that its product was defective, including actively misleading customers even when fields began to visibly fail.  Compl. ¶¶ 147-78, 211-14.  FieldTurf's claim that Plaintiffs could have discovered its fraud earlier is a classic factual issue inappropriate for resolution at this stage.  *See Williams v. Countrywide Fin. Corp.*, 2017 WL 986517, at *8 (C.D. Cal. 2017).

### 2.  FieldTurf Is Estopped from Asserting a Limitations Defense

FieldTurf's active concealment of material facts also estops it from raising a statute of limitations defense.  *Bergstein v. Stroock & Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 820 (Ct. App. 2015) (a defendant is estopped from arguing claim is time barred when defendant deliberately induced the plaintiff to delay filing suit); *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 487 (Ct. App. 2008) (same).  Again, "estoppel is a question of fact to be resolved by the trier of facts."  *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 652 (Ct. App. 2003).  Both affirmative representations and concealment of material facts can support estoppel.  *Transp. Ins. Co. v. TIG Ins. Co.*, 202 Cal. App. 4th 984, 1013 (Ct. App. 2012).

Here, FieldTurf engaged in a concerted course of affirmative misrepresentation and concealment both pre- and post-sale.  Compl. ¶¶ 7, 8, 47, 60-71, 78-86, 148-78, 215-218.  Given FieldTurf's conduct, it would be "intolerably unfair" to allow FieldTurf to find refuge in the delay it induced.  *City of Hollister*, 165 Cal. App. 4th at 486.

### 3.  Santa Ynez Has Standing to Assert UCL and FAL Claims

FieldTurf also contests Santa Ynez's standing to maintain a FAL claim.  Mem. at 25-26.[19] Its argument has no merit.

To have standing under the UCL or FAL, a plaintiff need only have "suffered an economic

---

[19]  FieldTurf's standing argument addresses only Santa Ynez and does not mention Fremont, thus conceding Fremont's standing.

injury caused by the alleged violation … that is, that the plaintiff suffered an economic injury as a result of his or her reliance on the truth and accuracy of the defendant's representations." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 228 (Ct. App. 2013).  Actual reliance may be "inferred from the misrepresentation of a material fact"—so "a plaintiff need only allege a misrepresentation of a material fact" (*id.* at 229), and that "he would not have made the purchase but for the misrepresentation." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).  Dismissal of FAL's claims on the pleadings is "rare" (*Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)) and not appropriate given the substantial allegations here.

All the prerequisites to establish Santa Ynez's standing are plausibly alleged.  The Complaint alleges that Santa Ynez purchased a Duraspine Turf field because of FieldTurf's representations that it would last longer than existing products, and well over 10 years.  Compl. ¶¶ 30, 81.  FieldTurf's advertising, therefore, was not only likely to deceive purchasers like Santa Ynez, it actually did.  Santa Ynez would not have purchased the Duraspine Turf field had it known the field was defective.  *Id.* ¶ 30.  Based on these allegations, Santa Ynez has standing to sue for false advertising under California law.[20]

## III.    PLAINTIFFS PROPERLY PLEAD FRAUDULENT CONCEALMENT

Notwithstanding FieldTurf's arguments, this is a paradigmatic case for recovery based on fraudulent concealment.  As discussed in detail in the Complaint, even without the benefit of full discovery, Plaintiffs already know, from the records in the Tencate litigation and their own

---

[20]  FieldTurf inexplicably cites outdated pleading standards from a 50-year old case, *People v. Lynam*, 253 Cal. App. 2d 959, 965 (1967).  Mem. at 25.  The California Supreme Court has since made clear that "to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (internal quotation marks omitted).  Furthermore, "California courts … have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

experience, that FieldTurf knew Duraspine Turf was defective and knew the product would not meet the claims FieldTurf's sale people and marketing materials were making.  Compl. ¶¶ 91-121, 125-43, 180-85, 234.  Yet, FieldTurf failed to disclose these obviously material facts needed to make its half-truths complete and honest.  *Id.* ¶¶ 120, 234.  Further, FieldTurf actively misled these and other Plaintiffs about whether early signs of wear were "normal" (FieldTurf knew they were not) and whether maintenance would improve matters (FieldTurf knew it would not).  These deny-and-delay strategies were intentional.  *Id.* ¶¶ 146(b), 147-78, 239.

Plaintiffs allege more than ample facts to support their claims of fraudulent concealment.  Compl. ¶¶ 144-78, 211-45.  FieldTurf's arguments, at best, raise factual disputes to be decided on the merits after a full airing of the evidence.

### A.    FieldTurf Made Material Misrepresentations to Induce Plaintiffs to Purchase Duraspine Fields

Plaintiffs allege that FieldTurf's material misrepresentations included false statements about Duraspine's lifespan, Duraspine's resistance to matting, Duraspine's UV resistance, Duraspine's wear resistance, testing of Duraspine, and the amount of infill FieldTurf used in Duraspine Turf systems.  Compl. ¶¶ 189, 223, 226, 248 (summarizing misrepresentations).

The Complaint alleges at length that FieldTurf defrauded Plaintiffs and Class members by knowingly and intentionally misrepresenting that Duraspine Turf had specific physical and chemical qualities that gave it a 10+ year lifespan and rendered it superior to existing products.  *Id.* ¶¶ 91-143, 189.  Plaintiffs allege that FieldTurf knew that the representations were false and intended to induce Plaintiffs and class members to buy Duraspine Turf and later lied to avoid warranty obligations. *Id.* ¶¶ 147-78, 224.  Plaintiffs had no reasonable means of knowing that FieldTurf's representations were false and that FieldTurf successfully induced them to purchase Duraspine.  *Id.* ¶¶ 12, 48, 72-86, 90, 235-43.

29

Having trumpeted (falsely) the virtues of Duraspine Turf, which were material to each of the Plaintiffs, Plaintiffs allege that FieldTurf had a duty to inform them of the fundamental, pervasive defects in the product. *Id.* ¶¶ 236-41.

## B.     FieldTurf Had a Duty to Make Its Prior Statements Not Misleading

FieldTurf does not dispute it made these false and misleading representations. Nor could it, particularly given the admissions detailed above and in the Complaint that FieldTurf knew the fiber was "defective" and that the product "can't possibly meet" the quality, performance, and durability representations FieldTurf was making.[21]  Instead, FieldTurf claims it had no duty to tell Plaintiffs the truth under New Jersey, New York, and Pennsylvania law. Mem. at 26-31. FieldTurf is wrong.  A manufacturer cannot knowingly sell a defective product without disclosing a *known* defect.  *See, e.g., Alin v. American Honda Motor Co., Inc.*, 2010 WL 1372308, at *12 (D.N.J. 2010) (denying dismissal of fraud claims based on failure to disclose known defects).  No state allows a business to make representations in the course of selling its product (here, for example, that the fiber will stand up and last 10 or more years), but withhold material facts needed to make those representations truthful (here, for example, that the fibers were known to prematurely fail, mat, and degrade).  New Jersey, New York, and Pennsylvania are no exception.

FieldTurf suggests the duty to reveal material facts exists in New Jersey only where there is a special or fiduciary relationship with a customer.  But New Jersey imposes a duty to disclose

---

[21]  Numerous courts recognize that omission-based fraud claims are necessarily held to a lower pleading standard because it is impossible to plead with particularity something known only to the one who lied. *See, e.g., Robinson v. Kia Motors Am., Inc.*, 2015 WL 5334739, at *5 (D.N.J. 2015) ("[t]he bar for [pleading] omissions is lower") (alteration in original) (citing Skeen v. BMW of N. Am., LLC, 2014 WL 283628, at *10 (D.N.J. 2014 (discussing relaxed standard for fraudulent omission)); *Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830, at *10 (D.N.J. 2012) ("[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim."); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012) (Rule 9(b)'s "heightened standard is somewhat relaxed in a case based on a fraudulent omission," rather than one based on misrepresentation).

whenever disclosure is necessary to make a previous statement true.  *See e.g., Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993); *Strawn by Strawn v. Canuso*, 638 A.2d 141, 149 (N.J. Super. Ct. App. Div. 1994) ("[O]ne who elects to speak must tell the truth when it is apparent that another may reasonably rely on the statements made."), *aff'd*, 657 A.2d 420 (N.J. 1995); *see also Viking Yacht Co. v. Composites Inc. LLC*, 496 F. Supp. 2d 462, 472 (D.N.J. 2007) (defendant had a duty to disclose test results on gel coat performance if those results indicated the gel coat was less flexible than defendant initially represented).

The cases FieldTurf cites likewise acknowledge that a "special relationship" is only *one* of several bases for a duty to speak:  "[w]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is *necessary to make a previous statement true or* the parties share a 'special relationship.'" *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 602-03 (D.N.J. 2016) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1185 (3d Cir.1993)) (emphasis added); *see also Majdipour* v. *Jaguar Land Rover N. Am., LLC*, 2015 WL 1270958, at *7-8 (D.N.J. 2015) (where a claim for fraud is based on silence or concealment, New Jersey courts will imply a duty to disclose when "such disclosure is necessary to make a previous statement true or the parties share a special relationship.*").

FieldTurf itself concedes that, under New York law, a duty to disclose similarly arises where (1) the defendant has made only a partial or ambiguous statement, (2) a "duty to be complete" exists between the parties, or (3) "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Mem. at 29 (quoting TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 90-91 (2d Cir. 2005)).  Likewise, Pennsylvania law provides for a duty to disclose "as a result of one party's reliance on the other's representations, if one party is the only source of information to the other

party, or the problems are not discoverable by other reasonable means." *Reichhold Chems., Inc. v. Millennium Intern. Tech., Inc.,* 1999 WL 270391, at *2 (E.D. Pa. 1999). These requirements are consistent with the Restatement (Second) of Torts §551(2) (Liability for Nondisclosure), which makes clear that a fiduciary relationship is not the sole basis for creating a duty to disclose.[22]

Here, the Complaint is replete with allegations that FieldTurf intentionally misled Plaintiffs and its other customers to promote the sales of Duraspine Turf, despite knowing its defects and its inability to live up to the representations being made.[23]   Plaintiffs—mostly public towns and

---

[22]   Section 551(2) of the Restatement (Second) of Torts provides:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> (b) *matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading*; and
> (c) *subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so*; and
> (d) *the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him*; and
> (e) *facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts*."

*Id.* (emphases added).

[23]   Accordingly, Defendants have no basis to rely on *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 603 (D.N.J. 2016) where the plaintiff did not allege that the defendant knew of a potential defect adversely affecting the quality and longevity of their HVAC units when the defendant made its misrepresentations and omissions.   Defendants' other cases are factually inapposite.   For example, in *Majdipour v. Jaguar Land Rover North America, LLC*, 2015 WL 1270958, at * 9-10 (D.N.J. 2015), the court held only that New Jersey did not recognize a duty to speak based solely on superior knowledge (but found that New York does recognize such a duty).   Additionally, *In re Estate of Evasew*, 584 A.2d 910 (Pa. 1990), involved a real estate sale by an executrix to an appraiser, which was not "a confidential relationship" giving rise to a duty to speak on that particular basis, but not addressing others.   *Id.* at 912.

schools—necessarily relied on FieldTurf's superior knowledge, particularly with respect to the composition, design, quality, performance, and technology of Duraspine Turf.  Having spoken (indeed, lied), FieldTurf had a duty to tell the whole truth.  Its failure to do so is fraud.

## IV.   PLAINTIFFS ADEQUATELY ALLEGE FRAUD

### A.     Hudson Adequately Alleges Reliance

FieldTurf does not challenge the Plaintiffs' allegations of misrepresentations and reliance other than for one remaining Plaintiff, Hudson.  Mem. at 31.  But Plaintiffs allege FieldTurf made the same representations about Duraspine Turf's quality and durability to Hudson as each of the other named Plaintiffs, including other New Jersey Plaintiffs FieldTurf does not challenge.  Like each of the named Plaintiffs, Hudson alleges it "decided to buy the Duraspine Turf . . . based . . . on FieldTurf's representations that the [Duraspine Turf] had superior materials and design such that they had greater durability and resistance of wear, matting, and UV than competing products and a useful lifespan of more than 10 years.  These representations, along with the claimed comparative cost savings of Duraspine Turf fields, were among the primary reasons Plaintiff[s] chose . . . Duraspine Turf."  Compl. ¶¶ 25.

Again, FieldTurf improperly demands "specificity for specificity's sake."  *Smajlaj*, 782 F. Supp. 2d at 104.  The purpose of the heightened pleading requirements is only to "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge."  *Afzal v. BMW of N. Am., LLC*, 2017 WL 3207232, at *6 (D.N.J. 2017).  Here, the allegations regarding Hudson exceed Rule 9(b)'s requirements.  Hudson alleges the "who": FieldTurf; the "what": FieldTurf's legion misrepresentations concerning Duraspine Turf fields; and the "when", namely the time of Hudson's purchase of Duraspine.  Compl. ¶¶ 25, 27, 85, 86; *see e.g. U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d

33

Cir. 2002)).   And Hudson alleges it believed and reasonably relied on FieldTurf's misrepresentations.  Compl. ¶¶ 25, 86, 220-31.  A plaintiff need only "allege[] reliance [] generally, [and] such general allegations of reliance are sufficient in light of the fact that the specific facts as to the misrepresentations are within Defendants' control, not Plaintiff's." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008) (denying motion to dismiss); s*ee also In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig.*, 2013 WL 6450701, at *5–6 (D.N.J. 2013) (denying motion to dismiss fraud claims where plaintiffs adequately pled misrepresentations that led to their purchases); *Smajlaj*, 782 F.Supp.2d at 105 (plaintiffs pled fraud claims even though only one consumer alleged she purchased "after viewing misleading statements and representations on the labels of the cans and Campbell's website").

### B.     The "Gist of the Action" Doctrine Does Not Bar the Pennsylvania Claims

FieldTurf wrongly argues that Pennsylvania's "gist of the action" doctrine bars Plaintiffs' Pennsylvania fraud claims.  Mem. at 32-34.  That doctrine is inapplicable where, as here, Plaintiffs' claims do not arise *solely* from a breach of contract.

The "gist of the action" doctrine does not preclude a plaintiff from suing under both contract and tort theories when the defendant's wrongdoing straddles both.  Moreover, as the Eastern District of Pennsylvania recently acknowledged, the doctrine calls for a "fact-intensive judgment as to the true nature of a claim."  *Patel v. Patel*, 2016 WL 3000821, at *4 (E.D. Pa. 2016) (quoting Williams v. Hilton Grp. PLC, 93 Fed. Appx. 384, 386 (3d Cir. 2004)). Accordingly, there is no categorical prohibition on tort claims simply because the parties may also have a contractual relationship.  *Mirizio v. Joseph*, 4 A.3d 1073, 1084 (Pa. Super. 2010) ("there may be particular tort claims that are barred by the gist of the action doctrine while others are not.").

Where, as here, a plaintiff alleges fraud in the inducement, the "gist of the action" doctrine

does not preclude the fraud claims, particularly on the pleadings.  *See Turuvekere v. ContinuServe, LLC*, 2012 WL 5961957, at *4 (E.D. Pa. 2012) ("Courts have cautioned against deciding whether the gist of an action is in contract or tort at the motion to dismiss stage of a proceeding.").  That is particularly true given Fed. R. Civ. P. 8(d)(2), which allows pleading claims in the alternative, as Plaintiffs have here, regardless of their consistency.  *Id.* at *4; Compl. at 81, n. 9.

In any event, FieldTurf's "gist of the action" argument ignores Plaintiffs' actual claims.

First, Plaintiffs' claims do not solely concern what FieldTurf couches as a "material or workmanship" warranty.  Mem. at 34.  Plaintiffs also allege Duraspine failed due to the product's *design*.  *E.g.*, Compl. ¶¶ 2, 9, 13, 55, 61, 118, 147.

Second, Plaintiffs also assert claims for fraud in the inducement and for the wider course of FieldTurf's deceit in the marketing and sale of Duraspine and in FieldTurf's "deny-and-delay" scheme to avoid its warranty obligations.  Compl. ¶¶ 20, 72, 77, 89, 91-143, 144-78, 224-28, 246-53.  FieldTurf obviously cannot assert its warranty as a basis to preclude Plaintiffs' alternative fraud claims challenging the warranty itself.  Compl. at 81, n. 9.  In sum, the "gist of the action" doctrine asks "What's this case really about?"  Mem. at 33 (quoting Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 550 (3d Cir. 2010)).  As Plaintiffs' allege, this case is about FieldTurf's multiple frauds which, if proven, may void the underlying contracts and written warranty altogether.  *E.g.*, Compl, p. 81, n.9.

## V.   PLAINTIFFS' BREACH OF WARRANTY CLAIMS SHOULD PROCEED

### A.   Plaintiffs' New York and New Jersey Warranty Claims Are Timely

FieldTurf claims Plaintiffs' New York and New Jersey warranty claims are untimely.  Mem. at 35-38.  Again, FieldTurf ignores that Plaintiffs adequately plead equitable tolling of the statute of limitations based on FieldTurf's fraudulent concealment.  Compl. ¶¶ 211-13.  "It is well established in New Jersey that where there is fraudulent concealment of a cause of action the period

of limitation will not commence until discovery of [the] wrong or of facts which reasonably put

one on notice." *Foodtown v. Sigma Mktg. Sys., Inc.*, 518 F. Supp. 485, 488 (D.N.J. 1980).  Thus,

New Jersey tolls the statute of limitations where, as here, the defendant engages in "an act of

concealment or trickery beyond the original act of wrongdoing."  *Stockroom, Inc. v. Dydacomp*

*Dev. Corp.*, 941 F. Supp. 2d 537, 541 (D.N.J. 2013).

For example, equitable tolling applies where, as here, a customer raises a concern about

the product during the warranty period, but the manufacturer fails to advise of a known defect.

*Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 567 (D.N.J. 2012) (applying equitable tolling

to implied warranty claim).  That is precisely what Plaintiffs allege here: FieldTurf's deny-and-

delay scheme was intended to keep Plaintiffs ignorant of the defect in their Duraspine Turf.

Compl. ¶¶ 148-68.  The same is true under New York law, as discussed above.  *Supra* Section

B.1.c; *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *13-14

(D.N.J. 2017) (denying motion to dismiss class-action warranty claims for motor vehicle defects;

*inter alia*, plaintiffs adequately pled fraudulent concealment to toll the statute of limitations under

New York law); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 483 (E.D.N.Y. 2011) (denying motion

to dismiss warranty claim for sale of defective computers because a more developed record was

necessary to determine whether equitable tolling applied).

FieldTurf also wrongly claims that Levittown's express warranty claim accrued when

Levittown acquired its field.  Mem. at 39.[24]  Express warranties include any material representation

or description of the product by the seller and relied on by the buyer.  N.Y. U.C.C. § 2–313.  As

FieldTurf acknowledges, when a warranty extends to future performance—such as by representing

---

[24]  FieldTurf does not move for the dismissal of Plaintiffs' claims for breach of express warranty
under New Jersey law.  Mem. at 8 (chart).

a product will work for a specified period of time—the claim for breach does not accrue until the breach is or should have been discovered. Mem. at 37-38 (citing *St. Patrick's Home for the Aged & Infirm v. Laticrete Int'l*, 264 A.D.2d 652, 657 (N.Y. App. Div. 1999)).

FieldTurf argues that the written warranties do not include future performance, but only to repair or replace the fields. But this ignores Plaintiffs' specific allegations that FieldTurf made express warranties *beyond* the written warranty documents, including that the fields would last ten or more years. Compl. ¶¶ 61-71. Levittown has a claim for breach of those warranties. N.Y. U.C.C. § 2–313(1)(a), (2) ("*any* affirmation of fact or promise made by the seller to the buyer creates an express warranty."); *Imperia v. Marvin Windows of New York, Inc.*, 747 N.Y.S.2d 35, 36-37 (N.Y. App. Div. 2002) (denying summary judgment on claim for breach of future performance warranty where salespersons represented products would be maintenance free for ten years, and provided literature containing representations about the durability of the products). Here, FieldTurf's representations of Duraspine's supposed useful life are actionable warranties of future performance, and Levittown's claims for breach accrues when the breach was discovered, i.e., when it realized the fields would not last 10+ years. Any dispute as to when Levittown discovered this breach is a factual issue not appropriate to resolve now. *Wiltshire v. A. J. Robins Co.*, 453 N.Y.S.2d 72, 73-74 (N.Y. App. Div. 1982).

### B.      Plaintiffs Adequately Plead New Jersey Implied Warranty Claims

FieldTurf also argues that the New Jersey implied warranty claims fail because "[n]one of the New Jersey Plaintiffs alleges that they were unable to use the FieldTurf fields for the purpose for which they were installed—i.e. playing sports." Mem. at 37. That is not the standard and the New Jersey Plaintiffs adequately plead their implied warranty claims.

The implied warranty of merchantability "protect[s] buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Argabright v.*

37

*Rheem*, 201 F.Supp.3d 578, 598 (D.N.J. 2016) (denying motion to dismiss).  The implied warranty is breached when a product is defective or not fit for the general purpose for which it was manufactured and sold.  *See Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992); *Ferrari v. Am. Honda Motor Co.*, 2009 WL 211702, at *3 (N.J. App. Div. 2009).

Contrary to what FieldTurf argues, breach of the implied warranty does not require allegations that the product is completely useless.  In *Cox v. Chrysler Group LLC*, 2015 WL 5771400 (D.N.J. 2015) (Shipp, J.), this Court rejected that argument.  There, the plaintiffs' vehicles had leaking sunroofs.  Although the roofs, like the cars, functioned in good weather, this Court upheld the implied warranty claims because "[t]he Vehicles are difficult or, in some cases, impossible to drive in the rain, sleet or other moisture conditions," and "the leaks were aggravating enough that at least some of the named Plaintiffs repeatedly sought repairs."  *Id.* at *10.

Similarly, in *Argabright*, the plaintiff sued when a part in its air conditioner unit failed, reducing the unit's ability to cool after several years of operation.  The court denied a motion to dismiss the implied warranty claim because, although the plaintiffs were able to use the unit, it was alleged to fall below the applicable standard.  201 F. Supp. 3d at 598.

Likewise, in *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304 (D.N.J. 2014), the court allowed plaintiffs' implied warranty claims to proceed with respect to washing machines with an Energy Star label.  Although the washing machines functioned to wash clothes, they were alleged to consume more energy than disclosed by the Energy Star label.  The court found that was sufficient to support a claim for breach of the implied warranty because "plaintiffs were not just promised that their clothes would be washed. The Energy Star label, they say, impliedly promised that their clothes would be washed efficiently."  *Id.* at 329-30.

The implied warranty claims here are equally valid.  Plaintiffs allege that the fields did not

meet basic industry standards of durability and were matting down, shedding, falling apart, and generally failing years before already existing products. Compl. ¶¶ 8-9, 16-20, 94, 145, 146, 167-70, 186-87, 189.  Plaintiffs were not promised just a field for playing, but a field with endurance, good aesthetics, and low maintenance.  *Id.* ¶¶ 7, 8, 23-30, 47, 61-64, 69, 78-86.  The fields they were given did not meet these standards and imposed excessive repair and maintenance costs on Plaintiffs. *Id.* ¶¶ 144-146, 157-63, 168-69, 180-85.  That alone supports an implied warranty claim. Plaintiffs also had to work around their failing fields, denying them full use.  *Id.* ¶ 146.

### C.   Plaintiffs Adequately Allege Pennsylvania Express and Implied Warranty Claims

FieldTurf's arguments concerning Plaintiffs' Pennsylvania express and implied warranty claims also fail.  Plaintiffs more than adequately allege each claim.

#### 1.   Plaintiffs State a Claim for Breach of Express Warranty

In Pennsylvania, an express warranty can be created by "[a]ny affirmation of fact or promise. . . .which relates to the goods." 13 Pa.C.S. § 2313(a)(1).  An express warranty is a promise made by the seller to the buyer which relates to the goods.  *Nationwide Ins. Co., v. General Motors Corp.,* 625 A.2d 1172, 1177 (Pa. 1993).  A successful claim for breach of express warranty must only plead such statements, reliance, and damages.  *Id.*

Here, Plaintiffs allege specific factual statements FieldTurf promised through its marketing and sales campaign, including representations as to Duraspine's durability and quality to Neshannock. Compl. ¶¶ 7, 8, 23, 25-29, 47, 61-64, 78-86.  Plaintiffs also allege these statements were a primary reason for Plaintiff's decision to purchase Duraspine Turf, becoming the basis for the bargain. *Id.* ¶¶ 28, 78, 227, 1383.  Neshannock further alleges it suffered a concrete injury as a direct and proximate result of FieldTurf's sale of defective goods, and would not have purchased its field, or would have paid less for it, had it known of the product's defects. *Id.* ¶ 28.  As a result

39

of FieldTurf's breaches of the warranties, Neshannock has spent money on repairs (*id.* ¶ 167) and has suffered incidental and consequential damages from a product that is not what FieldTurf promised.  *Id.* ¶¶ 144-46, 169, 180-85.

FieldTurf argues Plaintiff failed to allege that there was a breach and that Neshannock failed to provide notice.  The Complaint is replete with allegations of Duraspine's defects and makes clear Neshannock notified FieldTurf about the visible "breaking, splitting and thinning of the individual fibers characterized by fibrillation fiber breakage and pile layover" in 2015. *Id.* ¶ 167.  FieldTurf sent out a technician, but the defect was not remedied.  *Id.*

### 2.    Plaintiffs State a Claim for Breach of Implied Warranty

FieldTurf's challenge to Plaintiffs' Pennsylvania implied warranty claims again relies on the wrong standard.  Mem. at 40.  The implied warranty of merchantability does not turn solely on the "inherent soundness" of a product (although fields that fall apart and prematurely degrade plainly are not "inherently sound.").  The implied warranty ensures goods are suitable for the purpose for which they are designed, free from significant defects, perform in the way such goods should, and are of reasonable quality within expected variations and for their ordinary purpose. *Gall by Gall v. Allegheny County Health Dept.,* 555 A.2d 786, 789-90 (Pa. 1989).

Here, Plaintiffs allege in detail that fields intended to be used outdoor, year-round, for extensive athletic and other activities were prematurely degrading and falling apart in ordinary, expected use due to significant defects in, among other things, UV resistance, resistance to foot traffic, and attachment of the fibers to the turf backing.  Compl. ¶¶ 144-46, 162, 180-85.  As such, Plaintiffs allege Duraspine Turf was neither "in merchantable condition" nor "fit for [its] ordinary purpose."  *Id.* ¶ 1396.  Moreover, Duraspine Turf was degrading *earlier* than existing artificial turf products and otherwise was an inferior product that left Neshannock with fields that were breaking, splitting, thinning, laying down, and containing sink holes.  *Id.* ¶ 167.  Products that are so riddled

with substantial, fundamental defects plainly cannot be "merchantable" and are not "fit for their ordinary purpose."

### D.     Plaintiffs' California Implied Warranty Claims Are Timely

FieldTurf incorrectly asserts that Plaintiffs' California implied warranty claims accrued when the California Plaintiffs took delivery.  Mem. at 41.  That is not the law.

In California, "a cause of action for breach of warranty does not accrue until tender of delivery is made" and only *conforming* goods satisfy the "tender of delivery" requirement.  *S. Cal. Stroke Rehab. Assocs., Inc., v. Nautilus, Inc.*, 782 F. Supp. 2d 1096, 1113 (S.D. Cal. 2011) (citing Cal. Com. Code § 2503).  Here, because Plaintiffs allege FieldTurf failed to deliver conforming goods (turf free of defects), "delivery" has not occurred and the statute of limitations has not even started, let alone expired.

Further, even if "delivery" had occurred under Cal. Com. Code § 2503, under California law, the statute of limitations was tolled for the duration of FieldTurf's eight-year express warranty because a breach of a future performance warranty accrues when the promised future performance fails.  *See Falco v. Nissan N. Am. Inc.*, 2013 WL 5575065, at *10 (C.D. Cal. 2013); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 924–25 (C.D. Cal. 2010).  As discussed above, Plaintiffs also adequately plead that fraudulent concealment and the discovery rule each separately toll the statute.  *Supra*, Section C.1.; *see also Roberts v. Electrolux Home Prod., Inc.*, 2013 WL 7753579, at *7-8 (C.D. Cal. 2013) (fraudulent concealment tolled statute of limitations, even where future performance exception to accrual upon delivery did not apply).  As a result, Plaintiffs' implied warranty claims are timely on multiple bases.

## VI.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD PROCEED

FieldTurf does not dispute the merits of Plaintiffs' unjust enrichment claim, but claims Plaintiffs cannot plead unjust enrichment where they also plead breach of express warranty.  Mem.

at 42-43.  Again, that is not the law.  As this Court has held, under Fed. R. Civ. P. 8(d), a plaintiff may "plead a claim for unjust enrichment as an alternative to breach of contract."  *USI Int'l, Inc. v. Festo Didactic, Inc.,* 2016 WL 4487858 (D.NJ. 2016) (Shipp, J.) (denying motion to dismiss); *see also Kuzian v. Electrolux Home Prod., Inc.,* 937 F. Supp. 2d 599, 618 (D.N.J. 2013) (same).

Here, Plaintiffs plead their unjust enrichment and express warranty claims in the alternative.  Compl. ¶ 256.  Plaintiffs do so, in part, because FieldTurf's conduct may make the warranties unenforceable.  *Id.*  It is premature to decide which claim will survive.  *MK Strategies, LLC v. Ann Taylor Stores Corp.,* 567 F. Supp. 2d 729, 736 (D.N.J. 2008) ("This Court has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature.").

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs request that Defendants' Partial Motion to Dismiss be denied.

Dated: March 19, 2018                     Respectfully Submitted,

  s/ Christopher A. Seeger                       s/ Adam M. Moskowitz
Christopher A. Seeger                      Adam M. Moskowitz
Jennifer R. Scullion                        Howard B. Bushman
Scott A. George                          **THE MOSKOWITZ LAW GROUP**
Christopher Ayers                         2 Alhambra Plaza, Suite 601
**SEEGER WEISS LLP**                       Coral Gables, FL 33134
55 Challenger Rd., 6th Floor                Tel: (305) 740-1423
Ridgefield Park, NJ 07660                  Email: adam@moskowitzlaw.com
Tel: (212) 584-0700
Email: cseeger@seegerweiss.com             *Plaintiffs' Co-Lead Counsel*

*Plaintiffs' Co-Lead Counsel*

  s/ James E. Cecchi
James E. Cecchi
Donald A. Ecklund
Michael A. Innes
**CARELLA, BYRNE, CECCHI, OLSTEIN
BRODY & AGNELLO**

42

5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Plaintiffs' Liaison Counsel*

Steve W. Berman
Jason A. Zweig
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Tel:  (206) 623-7292
Email: steve@hbsslaw.com

*Plaintiffs' Executive Committee*

Lawrence E. Bathgate, II
**BATHGATE WEGENER & WOLF, P.C.**
1 Airport Road
Lakewood, NJ 08701
Tel: (732) 363-0666
Email: lbathgate@bathweg.com

*Plaintiffs' Executive Committee*

Daniel K. Bryson
**WHITFIELD BRYSON & MASON**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Email: dan@wbmllp.com

*Plaintiffs' Executive Committee*

Michael Critchley, Sr.
**CRITCHLEY, KINUM & DENOIA, LLC**
75 Livingston Avenue
Roseland, NJ 07068
Tel: (973) 422-9200
Email: mcritchley@critchleylaw.com

*Plaintiffs' Executive Committee*

Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Tel: (561) 750-3000
Email: MDearman@rgrdlaw.com

*Plaintiffs' Executive Committee*

Lance J. Kalik
**RIKER, DANZIG, SCHERER, HYLAND & PERETTI, LLP**
Headquarters Plaza, One Speedwell Avenue
Morristown, NJ 07962-1981
Tel: (973) 538-0800
Email: lkalik@riker.com

*Plaintiffs' Executive Committee*

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Email: Brian.Gudmundson@zimmreed.com

*Plaintiffs' Executive Committee*

Alexander Robertson IV
**ROBERTSON & ASSOCIATES**
32121 Lindero Canyon Rd., Suite 200
Westlake Village, CA 91361
Tel: (818) 851-3850
Email: arobertson@arobertsonlaw.com

*Plaintiffs' Executive Committee*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify, that on March 19, 2018, Plaintiffs' Opposition to Defendants' Partial Motion to Dismiss was filed electronically via the CM/ECF System which will send notification to all counsel of record.


Dated: March 19, 2018                    s/ Jennifer R. Scullion
                                         Jennifer R. Scullion