NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE: FIELDTURF ARTIFICIAL TURF
MARKETING AND SALES PRACTICES
LITIGATION

Civil Action No. 3:17-md-2779 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants FieldTurf USA Inc., FieldTurf, Inc., FieldTurf Tarkett SAS, and Tarkett Inc.'s (collectively, "FieldTurf") Motion to Dismiss the Second Consolidated Amended Class Action Complaint filed in this multidistrict litigation. (FieldTurf's Second Mot. to Dismiss, ECF No. 132-1.) Plaintiffs Borough of Carteret ("Carteret"), State Operated School District of the City of Newark ("Newark"), County of Hudson ("Hudson"), City of Fremont ("Fremont"), Santa Ynez Valley Union High School District ("Santa Ynez"), Levittown Union Free School District ("Levittown"), and Neshannock Township School District ("Neshannock") (collectively, "Plaintiffs") opposed (Pls.' Opp'n Br., ECF No. 141), and FieldTurf replied (Reply Br., ECF No. 143). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, FieldTurf's Motion to Dismiss is denied.

**I.    PRIOR PROCEEDINGS**[1]

After the above cases were centralized before the Court, Plaintiffs filed a Consolidated Amended Class Action Complaint ("First Complaint"), which included named plaintiffs Carteret, Newark, and Hudson of New Jersey; Fremont and Santa Ynez of California; Levittown of New

---

[1] The Court incorporates its summary of the factual background from its August 31, 2018 Memorandum Opinion. (ECF No. 117.)

York; and Neshannock of Pennsylvania.[2] (First Compl. ¶¶ 23–30, ECF No. 69.) The First Complaint proposed a nationwide class, comprising all "persons or entities in the United States and its territories who purchased one or more Duraspine Turf fields for their own use and not for resale." (*Id.* ¶ 191.) On behalf of the nationwide class, Plaintiffs brought claims for fraud, fraudulent concealment, fraud in the inducement, and unjust enrichment in the alternative. (*Id.* ¶¶ 219–264.)

The First Complaint also proposed forty-seven subclasses—one for each of forty-six states[3] and one for the District of Columbia—comprising all "persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within [the state] or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in [the state]." (*Id.* ¶ 192.) On behalf of each subclass, Plaintiffs sought to bring claims for breach of express warranty, breach of implied warranties, and breach of the consumer protection laws of the respective jurisdiction. (*See, e.g., id.* ¶¶ 286–316.) Because Plaintiffs resided in and purchased Duraspine Turf fields in California, New Jersey, New York, and Pennsylvania, forty-three proposed subclasses had no named plaintiff as a member.

FieldTurf moved to dismiss portions of the First Complaint on two bases relevant here. (FieldTurf's First Mot. to Dismiss, ECF No. 91-1.) First, FieldTurf sought to dismiss all statutory claims in the forty-three jurisdictions where Plaintiffs did not reside or suffered no injury. (*Id.* at

---

[2] The Township of Medford was a named plaintiff in the First Complaint but since voluntarily dismissed its case without prejudice. (ECF No. 99.)

[3] The forty-six states are: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin.

11–13.) Second, FieldTurf sought to dismiss Plaintiffs' unjust enrichment claims as precluded by Plaintiffs' breach of express warranty claims. (*Id.* at 42–44.)

The Court deferred consideration of Plaintiffs' standing for the nationwide class, holding the inquiry inappropriate prior to class certification. (Aug. 31, 2018 Mem. Op. 15, ECF No. 117.) The Court followed the line of cases holding that named plaintiffs in a class action need not have standing to assert all claims under all state statutes of all putative class members so long as at least one named plaintiff is a member of every class and has standing to assert each of his or her claims. (*Id.*) The Court, however, dismissed the forty-three subclasses and their respective claims because it was clear from the face of the complaint that none of the Plaintiffs could represent any of the subclasses, as Plaintiffs were not members of any of the subclasses. (*Id.* at 16.) The Court denied FieldTurf's motion to dismiss Plaintiffs' claims for unjust enrichment and granted Plaintiffs leave to amend the complaint. (*Id.* at 16, 44–45.)

Plaintiffs filed a Second Consolidated Amended Class Action Complaint ("Second Complaint") with the same claims for the same nationwide class as the First Complaint, including claims for unjust enrichment. (*See* Second Compl. ¶¶ 189, 217–62, ECF No. 120.) The Second Complaint does not propose forty-seven subclasses for each jurisdiction, but a single "Subclass of the National Class" (the "Subclass") on behalf of:

> All persons or entities who purchased one or more Duraspine Turf fields for their own use and not for resale within [the same forty-seven jurisdictions identified in the First Complaint], or who purchased one or more Duraspine Turf fields for their own use and not for resale and reside in these jurisdictions.

(*Id.* ¶ 190.) Unlike the First Complaint, where each state statutory claim was "brought on behalf of the [respective State] Class," the Second Complaint "brought [each state statutory claim] on behalf of all members of the National Class and/or the Subclass that purchased Duraspine Turf

3

fields in [each state]" and "on behalf of the Subclass." (*Compare* First Compl. ¶ 287 *with* Second Compl. ¶¶ 286–87.)

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "[review] the complaint to strike conclusory allegations[.]" *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

4

## III. PARTIES' ARGUMENTS

### A. The Subclass

FieldTurf asserts that the Subclass in the Second Complaint amounts to no more than a "linguistic smokescreen" (FieldTurf's Second Mot. to Dismiss 9, ECF No. 132-1), designed to "side step dismissal of the state statutory claims in states where they did not purchase any Duraspine fields" (*id.* at 7). FieldTurf avers that "Plaintiffs still cannot represent purchasers under state law claims if they have not purchased a Duraspine field in that state and do not reside in that state." (*Id.* at 6.) Furthermore, FieldTurf argues that "the Subclass [is] functionally identical to and wholly duplicative of the Nationwide Class" (*id.* at 6), which "renders it entirely without purpose" (Reply Br. 2, ECF No. 143). Finally, FieldTurf asserts that dismissal is required because "the Subclass is overly broad, over inclusive, and will inevitably have to be further divided into state subclasses—implicitly suggesting that the Subclass, as drafted, can never be certified because of its breadth." (FieldTurf's Second Mot. to Dismiss 7.)

Plaintiffs argue that their membership within the Second Complaint's Subclass makes all the difference. Plaintiffs assert that the multistate Subclass "follows exactly the model of the putative Nationwide Class" because Plaintiffs are within the Subclass and are bringing claims on behalf of class members from other jurisdictions under those jurisdictions' laws. (Pls.' Opp'n Br. 7, ECF No. 141.) According to Plaintiffs, FieldTurf's arguments that Plaintiffs cannot represent class members from other jurisdictions are the same arguments that would be made against a nationwide class, which the Court already found better suited for class certification upon the previous motion to dismiss. (*Id.* at 10.)

### B. Unjust Enrichment Claims

FieldTurf urges the Court to reconsider its prior decision denying its motion to dismiss Plaintiffs' unjust enrichment claims in New Jersey. FieldTurf offers a recent decision, *In re GM*

5

*LLC Ignition Switch Litigation*, 339 F. Supp. 3d 262 (S.D.N.Y. 2018), that reaches the same conclusion as cases cited in FieldTurf's motion to dismiss the First Complaint: New Jersey law does not permit claims for unjust enrichment where a valid contract exists or where there is an adequate remedy at law. (FieldTurf's Second Mot. to Dismiss 10–14.)

Plaintiffs argue that FieldTurf's argument amounts to no more than an untimely motion for reconsideration and that the law of the case doctrine should bar relitigation of an issue already decided by this Court. (Pls.' Opp'n Br. 11–14.) On reply, FieldTurf stresses that the court in *In re GM* offered the correct interpretation of New Jersey law and that the law of the case doctrine is discretionary and does not prohibit this Court from reconsidering its prior decision. (Reply Br. 6–7.)

## IV. DISCUSSION

### A. The Subclass

"[A] class representative *must be part of the class* and 'possess the same interest and suffer the same injury' as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (emphasis added); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360 (3d Cir. 2013) ("It is axiomatic that the lead plaintiff must fit the class definition."). "In the class action context, named representative plaintiffs initially need only establish that they individually have standing to bring their claims," not that they also have standing to bring the claims of every putative class member. *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 504 (D.N.J. 2009). If a named plaintiff lacks standing, the case should be dismissed prior to class certification because the named plaintiff would "also lack standing to assert similar claims on behalf of a class." *Id.* (quoting *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000)). But where named plaintiffs have standing to bring their own individual claims, their ability to bring claims on behalf

of putative class members under the laws of other states is immaterial upon a motion to dismiss. *Id.* at 505. Issues of class certification may be logically antecedent to the issue of a named plaintiff's standing to represent putative class members in other states, because standing issues may not arise unless a class is certified. *See In re Hypodermic Prods. Antitrust Litig.*, No. 05-5892, 2007 WL 1959225, at *15 (D.N.J. June 29, 2007) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 816 (1999)).

Here, accepting the well-pleaded factual allegations as true, the Subclass functions the same as the nationwide class that the Court declined to dismiss. Unlike the forty-three subclasses of the First Complaint, Plaintiffs are members of the Subclass and FieldTurf does not challenge Plaintiffs' standing to assert their own claims. At this stage, Plaintiffs need not demonstrate that they have standing to bring claims for violations of the laws of other states. The issues raised by FieldTurf are more appropriate for class certification because they concern whether Plaintiffs are appropriate representatives for the class, whether the questions of law in the case are common to the nationwide class or the Subclass, and whether the class action is the superior method of adjudicating these claims. *See* Fed. R. Civ. P. 23(a), (b)(3); *Ramirez*, 644 F. Supp. 2d at 505; 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1780.1 (3d ed. 2019) (discussing class certification issues in "multistate class actions involving state-law claims").

Whether the Subclass is duplicative of the nationwide class is also immaterial at this stage and is an issue better addressed at class certification. FieldTurf cites *Brewer v. General Nutrition Corp.*, No. 11-3587, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014), in support of dismissing the Subclass based on its redundancy. (Reply Br. 2.) But *Brewer* addressed the redundancy issue at the class certification stage, which supports the Court's conclusion that these issues should not be decided prior to class certification. *See Brewer*, 2014 WL 5877695, at *13 ("Because the proposed

Unfair Competition Class would be coextensive with those California claims *certified for class treatment herein*, there does not appear to be a need to *certify* a separate class." (emphasis added)). The Court, accordingly, denies FieldTurf's motion to dismiss claims brought on behalf of the Subclass.

### B. Unjust Enrichment Claims

"The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (internal quotation marks and citation omitted). The doctrine protects "traditional ideals such as finality, judicial economy[,] and jurisprudential integrity." *In re City of Phila. Litig.*, 158 F.3d 711, 717–18 (3d Cir. 1998). The doctrine "does not restrict a court's power but rather governs its exercise of discretion"; it does not preclude a court from reconsidering a previously decided issue in "extraordinary circumstances such as where: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 718 (citation omitted).

Here, FieldTurf urges the Court to reconsider its decision denying its motion to dismiss Plaintiffs' unjust enrichment claims in light of the recent decision of the Southern District of New York. FieldTurf offers no new evidence, no new controlling law from the New Jersey state legislature or the New Jersey state courts, and no illustration of manifest injustice. Because none of the traditional extraordinary circumstances apply, the Court declines to revisit its prior decision denying FieldTurf's motion to dismiss the unjust enrichment claims because it is the law of the case.

## V. CONCLUSION

For the reasons set forth above, FieldTurf's Motion to Dismiss is denied. An Order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Date: October 8th, 2019