**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: FIELDTURF ARTIFICIAL TURF MARKETING AND SALES PRACTICES LITIGATION | Civil Action No. 17-2779 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This matter comes before the Court on two motions: First is a Renewed Motion for Class Certification ("Renewed Motion," ECF No. 274) by the following plaintiffs: (i) Borough of Carteret, State-Operated School District of the City of Newark, and County of Hudson; (ii) the City of Fremont and Santa Ynez Valley Union High School District; (iii) Levittown Union Free School District; (iv) Neshannock Township School District (collectively as a group, "Plaintiffs"). (*See generally* Renewed Mot.) Defendants FieldTurf USA Inc., FieldTurf, Inc., FieldTurf Tarkett SAS, and Tarkett Inc. (collectively, "FieldTurf") opposed (ECF No. 277), and Plaintiffs replied (ECF No. 278). This matter also comes before the Court upon Plaintiffs' Motion to Strike Supplemental Declaration of Dr. Charles A. Daniels ("Dr. Daniels"). ("Motion to Strike," ECF No. 279.) Defendants opposed (ECF No. 280), and FieldTurf replied (ECF No. 281). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in part and denies in part Plaintiffs' Motion to Strike, and grants Plaintiffs' Renewed Motion.

## I.    BACKGROUND

      The Court presumes that the parties are familiar with the factual background and only sets forth the factual and procedural background relevant to the Motions at issue. The Court incorporates by reference the Court's August 31, 2018, Memorandum Opinion (ECF No. 117);

October 8, 2019, Memorandum Opinion (ECF No. 165); and August 18, 2022, Memorandum Opinion ("August 2022 Memorandum Opinion," ECF No. 270).

Previously, in Plaintiffs' first Motion for Class Certification, Appointment of Class Counsel, and Appointment of Class Representatives ("Plaintiffs' First Motion"), Plaintiffs attempted to bring this class action on behalf of themselves and all Duraspine purchasers and moved to certify four types of claims: fraudulent concealment, statutory consumer fraud, implied warranty, and unjust enrichment. (*See generally* Pls.' First Mot., ECF No. 211.) In the August 2022 Memorandum Opinion, the Court denied Plaintiffs' First Motion, finding that Plaintiffs failed to satisfy the requisite elements of Federal Rule of Civil Procedure 23(b)[1] because individual issues predominated over common questions, and therefore, a class action was not the superior method of adjudicating Plaintiffs' claims against FieldTurf. (Aug. 2022 Mem. Op. 45-47.) Specifically, with respect to causation, the Court found that an individualized inquiry would need to be conducted, counter to the requirements of Rule 23(b)(3), to determine why a particular class member's Duraspine turf may have incurred damage, which would include considering whether the purported damage was caused by the respective field owners. (*Id.* at 31-33.) With respect to damages, the Court also found that individual issues predominated, explaining that "Plaintiffs have presented no cognizable method for measuring damages." (*Id.* at 34-35.)

In so holding, however, the Court isolated two issues that could potentially be examined on a class-wide basis, which Plaintiffs identify as the "Defect and Deception Issues" or "Issue Classes:"

> 1.   whether all Duraspine fields sold by FieldTurf to the class
>       share a common inherent defect ("Defect Issue"); and

---

[1] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

> 2.      whether FieldTurf knowingly omitted the facts of this common defect from the proposed class in its marketing and sales presentations ("Deception Issue").

(Pls.' Renewed Mot. Moving Br. 1, ECF No. 274-1.) The Court found that the Defect and Deception Issues satisfy Rule 23(a) and that these issues are susceptible to common, class-wide proof based on reliable class-wide evidence. (*See* Aug. 2022 Mem. Op. 26-31.)

On October 5, 2022, Plaintiffs filed the instant Renewed Motion seeking to certify the Defect and Deception Issues for class treatment pursuant to Rule 23(c)(4). (Pls.' Renewed Mot. Moving Br. 1.) Plaintiffs also renewed their prior requests to appoint certain individuals as class representatives and class counsel. (*Id.* at 6-7.) Additionally, Plaintiffs filed the instant Motion to Strike in response to FieldTurf's Opposition Brief. (*See generally* Pls.' Mot. to Strike Moving Br., ECF No. 279-1.) The Motions are ripe for resolution.

## II.      **LEGAL STANDARDS**

### A.      **Motion to Strike**

For the purposes of class certification, courts may need to consider the expert opinions offered to support or oppose class certification. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2008), *as amended* (Jan. 16, 2009). Where an expert opinion is necessary to class certification and a party challenges that expert's opinion, the court's duty requires that it analyze whether the opinion is admissible as to those aspects under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), before analyzing whether Rule 23's requirements have been met. *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 188 (3d Cir. 2015).

As established under *Daubert*, the trial court serves as a "gatekeep[er]" tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" in deciding whether that testimony is admissible. *Daubert*, 509 U.S. at 597; *see also*

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (applying *Daubert* standard to all expert testimony). To uphold that duty, courts must evaluate three factors in deciding whether to admit the testimony, including whether: (1) the expert is qualified; (2) the expert's testimony is reliable; and (3) the expert's testimony is helpful to the trier of fact, *i.e.*, "fit." *See United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010); Fed. R. Evid. 702. The party offering the expert testimony must prove these three requirements by a preponderance of the evidence. *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (citing *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999)). But proponents of expert testimony need not "prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of [the] evidence that their opinions are reliable." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) (internal quotation marks omitted) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

Federal Rule of Evidence 702 permits those witnesses who are "qualified as an expert by knowledge, skill, experience, training, or education" to offer opinion testimony if:

1.   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
2.   the testimony is based on sufficient facts or data;
3.   the testimony is the product of reliable principles and methods; and
4.   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

**B.   Renewed Motion**

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Based on this rule, the Third Circuit recently instructed district courts to "treat renewed motions for class certification as they would initial motions under

Rule 23." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020). The Third Circuit explained that "concern about parties getting a second opportunity" to certify a class "cannot override the language of Rule 23(c)(1)(C)." *Id.* at 476. The rule "allows for multiple bites at the apple throughout the litigation, and that does not impose an additional requirement on parties to prove a change in law or show new evidence to succeed on a renewed motion for certification." *Id.*

Under Rule 23(c)(4), "when appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). In the Third Circuit, an issue is appropriate for class treatment if it: (1) satisfies Rule 23(a)'s requirements; (2) fits within one of Rule 23(b)'s categories; and (3) is "appropriate" under a framework known as the "*Gates* factors." *See Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 262, 270 (3d Cir. 2021), *cert. denied*, 142 S. St. 2706 (2022) (citing *Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3d Cir. 2011)).

While "Rule 23(a) and Rule 23(b) decide if the proposed issues *can* be brought or maintained as [a] class action," the Court must also perform a rigorous analysis to determine if the matter should be brought as a class action. *Id.* at 270, 275 (emphasis in original); *see Gates*, 655 F.3d at 272 ("Rule 23(c)(4) both imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified, and gives it ample power to treat common things in common and to distinguish the distinguishable."); *see also Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200-01 (3d Cir. 2009) ("[A] court's decision to exercise its discretion under Rule 23(c)(4), like any other certification determination under Rule 23, must be supported by rigorous analysis."). The Third Circuit has instructed that the "rigorous analysis" of the *Gates* factors be "analytically independent from the predominance inquiry under Rule 23(b)(3)," even though the same concerns may be relevant to both. *Russell*, 15 F.4th at 274-75.

To perform this "rigorous analysis," the Third Circuit has provided a multi-factor test—the aforementioned *Gates* factors—to determine whether a class action is appropriate. *See id.* at 270; *Gates*, 655 F.3d at 272-73. The *Gates* factors are a "non-exclusive list of factors [to] guide courts" faced with motions to certify particular issues, listed as follows:

1. the type of claim(s) and issue(s) in question;
2. the overall complexity of the case;
3. the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives;
4. the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy;
5. the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s);
6. the potential preclusive effect or lack thereof that resolution of the proposed issue class will have;
7. the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues;
8. the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others;
9. and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*Russell*, 15 F.4th at 268 (quoting *Gates*, 655 F.3d at 273).

## III.   DISCUSSION

### A.   Motion to Strike

Plaintiffs move to strike the supplemental declaration of Dr. Daniels (the "Dr. Daniels Declaration"), which FieldTurf submitted in opposition to Plaintiffs' Renewed Motion. (*See generally* Dr. Daniels Decl., ECF No. 277-3.) Plaintiffs contend that (1) the Dr. Daniels Declaration is not admissible because it addresses legal questions that are solely within the purview

of the Court; (2) Dr. Daniels should not be permitted to speculate as to future testimony; and (3) Dr. Daniels's opinion on the record in a prior litigation is not helpful to the Court. (Pls.' Mot. to Strike Moving Br. 1-8.) The Court examines Plaintiffs' points in turn.

Plaintiffs first contend that Dr. Daniels impermissibly discusses legal issues because he opines on jury instructions. (*Id.* at 5.) Specifically, Plaintiffs take issue with Dr. Daniels's opinion that even if Plaintiffs were able to prove a common defect, "an instruction to the jury would not provide enough context or information"; Plaintiffs also take issue with other opinions by Dr. Daniels on the kinds of evidence Dr. Daniels believes he would have to present to the jury to establish whether any defect exists. (*Id.* (quoting Dr. Daniels Decl. ¶ 21); Dr. Daniels Decl. ¶¶ 22-24.) FieldTurf responds that Dr. Daniels is not commenting on the sufficiency of jury instructions, but rather, his opinions can "assist the Court in deciding the legal issues in dispute." (Defs.' Opp'n Br. to Mot. to Strike 4, ECF No. 280.) Yet it is axiomatic that questions involving the sufficiency of evidence or what evidence is necessary to prove elements of a claim is a legal one. *See, e.g.*, *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 643 F. Supp. 2d 675, 695 (E.D. Pa. 2009) ("It is the function of the court to determine whether there is sufficient evidence for a claim to reach the trier of fact."). Indeed, the sufficiency of jury instructions is precisely "a legal question." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 114 (3d Cir. 2018). The Court grants Plaintiffs' Motion to Strike on this point.

Next, Plaintiffs contend that Dr. Daniels should not be permitted to speculate as to the testimony Dr. Daniels would offer to disprove the existence of an inherent defect. (Pls.' Mot. to Strike Moving Br. 6.) FieldTurf responds that Dr. Daniels's opinions are not based upon speculation or conjecture, but rather, his observations and experience as an expert in other Duraspine cases, among other experiences. (Defs.' Opp'n Br. to Mot. to Strike 6-7.) It is true that "expert testimony is excluded if it is based merely on unfounded speculation and unquantified

possibilities." *Ludwig v. Michaels Arts & Crafts Store*, No, 18-10306, 2020 WL 6883451, at \*5 (D.N.J. Nov. 24, 2020); *see also E.E.O.C. v. FAPS, Inc.*, No. 10-3095, 2014 WL 4798802, at \*9 (D.N.J. Sept. 26, 2014) ("It is well-established that expert testimony that is based upon unsupported speculation is unreliable and inadmissible."). Yet Plaintiffs fail to cite to or otherwise identify exactly which opinions by Dr. Daniels constitute speculation. Because the Court cannot examine the contours of Plaintiffs' argument here, the Court denies Plaintiffs' Motion to Strike on this point.

Finally, Plaintiffs contend that Dr. Daniels's opinion on the record in prior litigation (the "TenCate litigation") is not helpful to the Court because the defect articulated by FieldTurf in the TenCate litigation is not at issue in this matter. (Pls.' Mot. to Strike Moving Br. 7-8.) FieldTurf responds that Dr. Daniels's statements about his testimony in the TenCate litigation are not offered as an expert opinion, but rather, to correct mischaracterizations Plaintiffs made regarding his prior testimony. (Defs.' Opp'n Br. to Mot. to Strike 7.) The Court agrees with FieldTurf. In their Renewed Motion, Plaintiffs discuss how the "record before the Court demonstrates that FieldTurf sued its own supplier, TenCate, for the exact same Defect and Deception Issues FieldTurf is guilty of perpetrating on its own customers." (Pls.' Renewed Mot. Moving Br. 2.) Because Plaintiffs opened the door to this issue, FieldTurf should be able to rebut Plaintiffs' argument. The Court denies Plaintiffs' Motion to Strike on this point.

In sum, the Court denies Plaintiffs' Motion to Strike except to the extent Dr. Daniels opines on the sufficiency of jury instructions; as to that limited point, the Court grants the Motion to Strike.

### B.   Renewed Motion

As mentioned, Plaintiffs move to certify the Defect and Deception Issues for class treatment pursuant to Rule 23(c)(4). (Pls.' Renewed Mot. Moving Br. 1.) Plaintiffs contend that

the proposed Issue Classes satisfy the requirements of Rule 23(a), Rule 23(b), and the *Gates* factors; overall, Plaintiffs contend that certifying the Issue Classes will materially advance this litigation. (*See generally id.*) The Court examines each requirement in turn.

### 1.   Rule 23(a)

Plaintiffs first contend that the Issue Classes meet the requirements of Rule 23(a). (Pls.' Renewed Mot. Moving Br. 8.) Indeed, Plaintiffs explain that the Court, in the August 2022 Memorandum Opinion, already ruled that these requirements of numerosity, commonality, typicality, and adequacy have been met. (*Id.*) FieldTurf, perhaps in recognition of this ruling, does not meaningfully contest that the proposed Issue Classes pass muster under Rule 23(a), except to contend, in a footnote, that "to the extent Plaintiffs' defect theory is centered on the TenCate Issue,"[2] (Defs.' Opp'n Br. to Renewed Mot. 20 n.54, ECF No. 277.) Plaintiffs cannot satisfy Rule 23(a) because Plaintiffs' own experts have acknowledged that none of the named plaintiffs' fields in this case experience that issue. (*Id.*) Because the Class definitions are the same as those in Plaintiffs' First Motion, and the Court previously found that the Issue Classes satisfy Rule 23(a), the Court once more finds that the proposed Issue Classes satisfy Rule 23(a). (*See* Aug. 22 Mem. Op. 19-22 ("Fieldturf also does not challenge class certification on numerosity, commonality, typicality, or adequacy grounds. Likewise, the Court is satisfied that Plaintiffs have met those requirements.").)

### 2.   Rule 23(b)

Next, Plaintiffs contend that the proposed Issue Classes satisfy Rule 23(b) because the Defect and Deception Issues satisfy Rule 23(b)'s predominance and superiority requirements.

---

[2] The "TenCate Issue" was an allegation by FieldTurf in the TenCate litigation that a subset of Duraspine fibers was manufactured by TenCate with less UV protection than required for mid- or high-UV areas, causing some fibers to become prematurely embrittled. (Defs.' Opp'n Br. to Renewed Mot. 4.)

(Pls.' Renewed Mot. Moving Br. 8-17.) Defendants contend that the proposed Issue Classes meet neither of these requirements, nor can Plaintiffs meet their burden to demonstrate how this case can be tried in a manageable manner. (Defs.' Opp'n Br. to Renewed Mot. 10-12.)

"Once beyond Rule 23(a)'s four prerequisites, plaintiffs then must seek to certify a class of one of three 'types,' each with additional requirements." *Russell*, 15 F.4th at 266; *see* Fed. R. Civ. P. 23(b). For instance, Rule 23(b)(3)—the provision at issue here (Am. Compl. ¶ 189, ECF No. 120)—"states that a class may be maintained where 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Russell*, 15 F.4th at 266[3]

### i.    *Predominance*

The Court begins with Rule 23(b)'s predominance requirement for the Defect and Deceptions Issues. Though seemingly similar to Rule 23(a)'s commonality requirement, Rule 23(b)(3)'s predominance requirement is much more demanding. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Predominance requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance is intended to "test[] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In other words, predominance compels a court to determine whether there are questions common to

---

[3] The Court must also find that "the class is 'currently and readily ascertainable based on objective criteria.'" *Buck v. Am. Gen. Life Ins. Co.*, No. 17-13278, 2021 WL 733809, at *10 (D.N.J. Feb. 25, 2021) (quoting *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Because the Court already found ascertainability, the Court declines to reconsider this issue. (*See* Aug. 2022 Mem. Op. 19 ("The Court finds that ascertainability is satisfied here.").)

the class that predominate over individual questions. "[A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member[.]" *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 260 (3d Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)), *as amended* (Sept. 29, 2016). In comparison, "a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (alteration in original).

Whether this precondition is met turns on the "nature of the evidence" and whether the evidence used at trial to prove the "essential elements" of a plaintiff's claim is better suited for class or individual treatment. *See Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 319 (3d Cir. 2016) (quoting *Hydrogen Peroxide*, 552 F.3d at 311). To assess whether predominance is met, the Third Circuit describes the district court's task as follows:

> In practice, this means that a district court must look first to the elements of the plaintiffs' underlying claims and then, "through the prism" of Rule 23, undertake a "rigorous assessment of the available evidence and the method or methods by which [the] plaintiffs propose to use the evidence to prove" those elements.

*Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 128 (3d Cir. 2018). If, after doing this rigorous assessment, a district court determines that "proof of the essential elements of the [claim] requires individual treatment, then class certification is unsuitable." *Id.* (alteration in original) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).

This Court has already examined Plaintiffs' claims and concluded that the Defect and Deception Issues are subject to generalized class-wide proof on the allegations that Duraspine turf fields suffer from a uniform design defect and that FieldTurf omitted the existence of this defect from sales and marketing presentations to Plaintiffs. (*See generally* Aug. 2022 Mem. Op.) As to the Defect Issue, the Court previously found that "Plaintiffs have met their burden of demonstrating that the question of whether Duraspine is inherently defective is subject to

class-wide proof." (Aug. 2022 Mem. Op. 26.)[4] As to the Deception Issue, the Court found that there is class-wide evidence asserting that "FieldTurf concealed the defects impacting durability when marketing and selling to Plaintiffs," with "discovery produced thus far indicat[ing] that FieldTurf was aware of issues with the Duraspine turf and did not disclose those issues to purchasers." (*Id.* at 29-30.) The Court further found that considering, among other things, allegations that FieldTurf "did not reveal to [Plaintiffs] that defects would cause wear to the turf fields limiting their worth," the "evidence weighs in favor of finding that common issues predominate and that Plaintiffs may establish reliance through common evidence because FieldTurf omitted Duraspine's defects." (*Id.* at 31.)

FieldTurf's "predominance" argument against certification rests almost entirely on the premise that Plaintiffs have somehow changed their defect theory. (*See* Defs.' Opp'n Br. to Renewed Mot. 16.) Essentially, FieldTurf argues that the Court should not rely on the fact the Court previously determined that the Defect Issue can be resolved by common evidence because Plaintiffs have shifted their theory as to why Duraspine is defective. (*Id.*) According to FieldTurf, Plaintiffs previously argued that the TenCate Issue was a secondary reason as to why Duraspine is defective, yet now, Plaintiffs contend it is the primary reason. (*Id.*) And because the TenCate Issue is not "common" to all Duraspine fibers or fields, its inclusion in Plaintiffs' theory of product failure renders issue class treatment unsuitable. (*Id.* at 18.)

The Court need not enter the thicket of the TenCate Issue, however, because the Court finds that Plaintiffs' theory in the Renewed Motion matches their theory previously presented to the Court in Plaintiffs' First Motion. (*See* Aug. 2022 Mem. Op. 25 (explaining Plaintiffs' theory

_____

[4] The Court clarified, however, that the Court's finding that Plaintiffs' theory of the defect and its existence is susceptible to common class-wide proof "does not mean that the Court finds that the defect *actually* exists or that Plaintiffs will, in fact, be able to prove the defect at trial." (*Id.* at 27 (emphasis in original).)

that Duraspine's fiber was defectively designed and used unsuitable polymers); Pls.' Renewed Mot. Br. 4 (summarizing the Court's ruling on this same theory as support for certification of the Defect Issue).) And Plaintiffs represent to the Court that the Defect Issue they seek to certify is the same one the Court already found can be decided based on Plaintiffs' theory of Duraspine's defective design (the Duraspine's "spine and wing" shape) and unsuitable polymer. (*See* Pls.' Renewed Mot. Reply Br. 4, ECF No. 278.) Thus, the Court rejects FieldTurf's contention that the theory on the defect before the Court now differs from the theory previously before the Court.

Given the Court's prior findings, and after further review of the submissions in this case, the Court finds by a preponderance of the evidence that Plaintiffs "present a pair of issues that can most efficiently be determined on a class-wide basis, consistent with" Rule 23(c)(4). *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012), *abrogated on other grounds by Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 559 (7th Cir.), *reh'g and suggestion for reh'g en banc denied*, (7th Cir. Aug. 3, 2016). "An issue is common to the class when it is susceptible to generalized, class-wide proof." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). Here, the Court reiterates its findings that the same expert evidence will help resolve the Defect and Deception Issues on a class-wide basis. For example, the Deception Issue turns on FieldTurf's knowledge and conduct in marketing its materials. Similarly, as mentioned, the Defect Issue turns on whether FieldTurf used a defective design and unsuitable polymer. (*See* Aug. 2022 Mem. Op. 21, 25.) Because the Defect and Deception Issues, which are relevant to FieldTurf's liability for all causes of action, can be resolved on a class-wide basis, these issues predominate. *See C.P. v. N.J. Dep't of Educ.*, No. 19-12807, 2022 WL 3572815, at *12 (D.N.J. Aug. 19, 2022) (finding common issues predominated for issue class certification because "[e]ach of these issues would not require 'individualized review' in order to dispose of them") (citation omitted).

*ii.    Superiority*

The Court turns next to the superiority requirement of Rule 23(b). Rule 23(b)'s superiority requirement involves a court determining that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, No. 11-7382, 2019 WL 2521958, at *14 (D.N.J. June 18, 2019) (quotation omitted). The Court examines "(1) the interest of individual members of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action." *Ridley v. MRS BPO, LLC*, No. 18-12696, 2019 WL 6888532, at *10 (D.N.J. Dec. 18, 2019) (citation omitted).

Plaintiffs contend that the superiority requirement is met here, where certification of the proposed Issue Classes would resolve common issues, as held previously by the Court. (Pls.' Renewed Mot. Moving Br. 11-13.) FieldTurf contends that the superiority requirement cannot be met because certifying the proposed Issue Classes does not present any greater practical advantages to resolving the cases than do other available dispute resolution mechanisms. (Defs.' Opp'n Br. to Renewed Mot. 14-16.) This point merges with FieldTurf's separate argument on the management issues that would come with certifying a class action in this case. (*Id.* at 11.)

The Court begins by analyzing the fraudulent concealment claim. The Court previously determined that "the elements of fraudulent concealment are similar nationwide," and that most states require a plaintiff to establish that "(1) [the] defendant made a material misrepresentation or omission of fact; (2) knowing the misrepresentation to be false or the omission to be material and intending the other party to rely on it; and (3) the other party did in fact rely on the

misrepresentation or omission to its detriment." (Aug. 2022 Mem. Op. 36.) The Court did not opine on whether common evidence would prove the legal elements of fraudulent concealment because the Court instead found that "the issue of damages requires an individual inquiry that overwhelms in this instance." (*Id.*) The Court also acknowledged, however, the existence of some common evidence. (*Id.*)

The Court's analysis of the unjust enrichment claim followed a similar path, with the Court once again denying class certification related to questions about causation—*i.e.*, whether the defect manifested on every field—and damages distinct from the Defect and Deception Issues. (*Id.* at 44); *see In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697-98 (S.D. Fl. 2004) (certifying a class of indirect purchasers in part because "the same common operative facts that form the basis for each of the state classes' antitrust claims form[] the basis for the unjust enrichment claims")).

The Court's analysis of the state consumer protection laws also shows that the Defect and Deception Issues can materially advance liability determinations for Class members. The Court's findings support the existence of class-wide evidence in regard to the following: (a) that FieldTurf engaged in "unlawful conduct," as required by the New Jersey Consumer Fraud Act; (b) that FieldTurf engaged in "consumer-oriented conduct" that is "materially misleading," as required by New York's General Business Law; and (c) that FieldTurf's "omissions" were "likely to deceive a reasonable consumer," as required by California's Unfair Competition Law and False Advertising Law. (*See* Aug. 2022 Mem. Op. 37-43.)

As to breach of implied warranty claims, the Court found that individual inquiries will be needed to determine whether each Class member used the field during or past the warranty period. (*Id.* at 42-43.) While the Court postulated that "Plaintiffs will be hard pressed to demonstrate that under each of the[] state's respective laws,"—that is, the laws of New Jersey, New York, Pennsylvania, and California—"the fields were not fit for their ordinary purpose," a disposition at

trial on the Defect Issue in FieldTurf's favor would likely cease all inquiries into warrantability issues, because the existence of a defect is an element of all the states' warranty laws. (*Id.* at 43; Pls.' Renewed Mot. Br. 15-16.)

When considering these findings alongside the *Ridley* factors, the Court finds that "resolving this matter by way of class action appears to be the superior method for bringing the present class members' claims to resolution." *Ridley*, 2019 WL 6888532, at *11. First, the Court finds that with respect to the Defect and Deception Issues, the interest of individual members in controlling the prosecution of the actions "would be minimal to nonexistent," as they would likely not "turn on the particulars of any individual class member's case." *See C.P.*, 2022 WL 3572815, at *12. Indeed, it would be difficult for any individual Class member to gather the requisite litigation resources, such as the experts to testify on any potential defect in the Duraspine turf fields. (*See* Pls.' Renewed Mot. Moving Br. 3 (explaining that Plaintiffs are mostly small towns and public schools).) As for the second factor, FieldTurf contends that it has already reviewed and resolved claims arising from identical issues. (Defs.' Opp'n Br. to Renewed Mot. 14.) While FieldTurf contends that these "alternative procedures" are more efficient and cost-effective, the Court is not convinced, considering the potential of answers to the Defect and Deception issues to streamline this case. (*See id.*) In any event, a claim that some individuals or entities have already commenced actions based on the same alleged conduct is not a bar to finding superiority. *See C.P.*, 2022 WL 3572815, at *13 (finding superiority even where some putative class members already commenced individual actions based on the same conduct). Similarly for factor three, the Court finds that there is a high desirability to concentrate claims in one forum for purposes of both consistency and efficiency. (*See* Pls.' Renewed Mot. Moving Br. 16-17 (explaining the risk of collateral estoppel that would come with proceeding with individual claims).) Finally, the Court is not concerned about management difficulties that may arise as a result of certifying these two

discrete issues while leaving other aspects of liability and damages to individual adjudication. *See Chiang v. Veneman*, 385 F.3d 256, 267 (3d Cir. 2004) ("[C]ourts commonly use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication–or, perhaps more realistically, settlement.").

Thus, after weighing all the factors, the Court is satisfied that superiority exists here.

### iii.    Gates *Factors*

The Court turns next to the *Gates* factors. The first factor asks the Court to consider the type of claims and issues in question. *Gates*, 655 F.3d at 273. "While there is not much gloss in the case law on how to weigh this factor, the Court finds that it counsels in favor of certifying the issues class." *See C.P.*, 2022 WL 3572815, at *15. As already foreshadowed earlier, the Defect and Deception Issues would apply to the class as a whole. Factors two and three, on the complexity of the case and the efficiencies to be gained by partial certification, also counsel in favor of granting certification because of the complex issues of fact that apply to the class members regarding, for instance, the existence of a defect. Factor four focuses on the substantive law underlying the claims and considerations such as choice-of-law issues. *See Gates*, 655 F.3d at 273. The Court's August 2022 Memorandum Opinion analyzed, in depth, the substantive law underlying the claims— including choice-of-law issues. (Aug. 2022 Mem. Op. 35.) As to the nationwide claims, this Court has already concluded that the elements of fraudulent concealment are similar nationwide (*id.* at 36), and that the Court may apply New Jersey law to adjudicate the unjust enrichment claim (*id.* at 44); meanwhile, the few state subclasses are each governed by their own state laws. Thus, the Court does not foresee choice-of-law issues here as a barrier to class certification. Moreover, while "resolution of the certified issues 'will not resolve the question of [d]efendants' liability either to the class as a whole or to any individual therein[,]' it "will go a long way toward doing so, and this is the most efficient way of resolving the [two] issues that the district court has certified."

17

*Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 416 (6th Cir. 2018). This favors certification.

Factors five through nine require the Court to consider the effect that issue class certification will have on later stages of the litigation. *Gates*, 655 F.3d at 273. In general, the Court finds these factors weigh in favor of issue class certification; as noted earlier, the Defect Issue is central to all of Plaintiffs' causes of action, and the Deception Issue is relevant to Plaintiffs' claims of fraudulent concealment, violation of state consumer protection laws, and unjust enrichment. Resolution of these issues on a class-wide basis will therefore increase judicial efficiency, ensure that similarly situated class members are treated fairly, and allow for a more fair and less costly determination of each Class member's damages. As to factor five, the Court does not find that partial certification would harm FieldTurf's statutory or constitutional rights because "[a]s long [FieldTurf] is given the opportunity to challenge each [C]lass member's claim to recovery during the damages phase, [FieldTurf's] due process rights are protected." *See Mullins v. Direct Digit., LLC*, 795 F.3d 654, 671 (7th Cir. 2015). Here, FieldTurf would be able to challenge causation (and relatedly, manifestation) individually, for instance. As to factor six, resolution of the proposed issue classes will allow for one trial with a single, preclusive determination regarding FieldTurf's conduct, rather than repeated trials regarding the same evidence of the alleged defect and deception—inquiries the Court has already determined are susceptible to class-wide proofs. For factor eight, the Court again reiterates that assuming Plaintiffs prevail at trial as to the Defect and Deception Issues, the remaining individual trials will largely focus on causation and damages— which will be presented to and decided by a jury—and will thus not create indivisible remedies that would make relief as to one claimant determinative of the claims of others.

Factor nine is perhaps the trickiest hurdle for Plaintiffs to surpass, because it asks for an assessment of the risk that subsequent triers of fact will need to reexamine evidence and findings

despite resolution of the common issues. *See Gates*, 655 F.3d at 273. It is true that some of the evidence presented to resolve the Defect and Deception Issues will necessarily need to be presented in subsequent separate individual trials. For example, with the Defect Issue, a jury will need to consider how any potential identified defect manifested on a particular field. Similarly, with the Deception Issue, a jury will need to consider whether FieldTurf actually omitted information from the specific plaintiff in question in the subsequent case. Yet the Court stills find that, on balance, the common evidence that does exist will materially push the litigation forward. If the jury finds, for instance, that Duraspine has an inherently defective geometry and was made using an unsuitable polymer, as testified to by Plaintiffs' expert Dr. Gustaaf Schouckens (*see* Pls.' Renewed Mot. 4), then a future proceeding need not rehash the intricacies of such a defect; rather, the jury could focus on other issues, such as whether the particular field owner's own actions contributed to such a defect.

In sum, upon analyzing Plaintiffs' causes of action, the Court finds that certification will significantly advance this litigation by determining key elements of FieldTurf's liability using class-wide evidence. The Court, therefore, finds that certification of the Defect and Deception Issues is appropriate here under the *Gates* factors.

### 3. Class representatives and class counsel

Finally, the Court turns to Plaintiffs' renewed request to appoint class counsel and class representatives for certain subclasses. (Pls.' Renewed Mot. 6-7.) Specifically, Plaintiffs renew their request to appoint them as Class Representatives and request that, consistent with the Interim Counsel Order ("Interim Counsel Order," ECF No. 61), the counsel previously appointed as interim Co-Lead and Liaison Counsel now be appointed as Co-Lead and Liaison Class Counsel and that the members of the Court-appointed interim Plaintiffs' Executive Committee be appointed as Additional Class Counsel. (Pls.' Renewed Mot. 6-7.) FieldTurf does not appear to oppose such

requests in its briefing—instead focusing its briefing on opposition to issue certification in general. (*See generally* Defs.' Opp'n Br. to Pls.' Renewed Mot.)

Rules 23(a)(4) and 23(g) require a court to assess the adequacy of proposed class counsel. *See C.P.*, 2022 WL 3572815, at *15. The Court already touched on this issue in its analysis of Rule 23(a)(4) in the August 2022 Memorandum Opinion. (*See* Aug. 2022 Mem. Op. 22 ("Here, class counsel has presented sufficient information demonstrating their qualifications, and the class representatives easily satisfy the adequate requirement [of Rule 23(a)].")). Similarly, the Court previously entered the aforementioned Interim Counsel Order appointing interim lead counsel and managing Plaintiffs' leadership structure following the Court's review of the qualifications and experience of each applicant pursuant to Rule 23(g). (*See generally* Interim Counsel Order.)

Given the Court's previous Interim Counsel Order, as well as the Court's findings on the qualifications of counsel in the August 2022 Memorandum Opinion, the Court grants Plaintiffs' requests.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court grants-in-part and denies-in-part Plaintiffs' Motion to Strike and grants Plaintiffs' Renewed Motion. An appropriate order will follow.


/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE