## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: FIELDTURF ARTIFICIAL TURF MARKETING AND SALES PRACTICES LITIGATION | MDL NO. 2779<br><br>CIVIL ACTION NO. 3:17-MD-02779-MAS-TJB |

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Rd.
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com
*Liaison Counsel for Plaintiffs*

[Additional Attorneys on Signature Page]

836048v6

## INTRODUCTION

Plaintiffs,[1] on behalf of themselves and all others similarly situated, by and through their counsel, respectfully move the Court for preliminary approval of the proposed Settlement set forth in the Settlement Agreement and Release ("Settlement"), attached as Exhibit A to the Declaration of James E. Cecchi in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Cecchi Decl.").[2]

Plaintiffs, with the consent of Defendants,[3] request that the Court enter an Order:

1)   granting preliminary approval of the proposed Settlement;
2)   preliminarily certifying, for settlement purposes only and pursuant to the terms of the Settlement, the proposed Settlement Class[4] for the purpose of providing notice to the members of the proposed Settlement

---

[1] Borough of Carteret, County of Hudson, Levittown Union Free School District, Neshannock Township School District, Santa Ynez Valley Union High School District, State-Operated School District of the City of Newark, and City of Fremont (each a "Plaintiff," and collectively, "Plaintiffs"). All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement.

[2] References to Exhibits are to the documents attached to Cecchi Decl. filed contemporaneously with this brief.

[3] Plaintiffs and Defendants are collectively referred to as the "Parties."

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement.  The Settlement defines the Settlement Class as "all purchasers and owners of a FieldTurf Duraspine turf field in the United States and its territories.  Excluded from the Settlement Class are Defendants, their parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which Defendants have a controlling interest; all employees of any law firm involved in prosecuting or defending this litigation, as well as their immediate family members; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.  Also excluded from the Settlement Class are Settlement Class Members who timely and validly request exclusion under Section 5 [of Exhibit 1] or who are ineligible for either a Tier 1 or a Tier 2 Claim."

Class;

3)      approving the form and content of, the proposed Claim Form and Class Notice, annexed to the Settlement as Exhibits A and B;

4)      directing the distribution of the Class Notice pursuant to the proposed Notice Plan;

5)      preliminarily appointing as Co-Lead Counsel Christopher A. Seeger of Seeger Weiss LLP and Adam Moskowitz of The Moskowitz Law Firm, PLLC;

6)      preliminarily appointing as Liaison Counsel James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.;

7)      preliminarily appointing named Plaintiffs as Settlement Class representatives;

8)      authorizing and directing the Parties to retain Epiq Global as the Settlement Claims Administrator; and

9)      scheduling a date for the Final Approval Hearing not earlier than one hundred and twenty (120) days after Preliminary Approval is granted.

This Litigation has been vigorously contested since early 2017. Class Counsel and Liaison Counsel[5] have significant experience litigating numerous consumer class actions. After extensive investigation, exchange of discovery, in-depth analysis of the factual and legal issues presented, consultations with experts, and arm's-length negotiations with Defendants, Plaintiffs are pleased to present this Settlement between Plaintiffs and FieldTurf USA, Inc., FieldTurf Inc., FieldTurf Tarkett SAS, and Tarkett Inc. (collectively, "FieldTurf" or "Defendants"), which will provide significant monetary and equitable relief to the Settlement Class. Class Counsel and Liaison Counsel have reached the conclusion that the benefits the Settlement Class

---

[5] Class Counsel refers to Christopher A. Seeger and Adam M. Moskowitz and their respective firms Seeger Weiss LLP, and The Moskowitz Law Firm, PLLC, and Liaison Counsel refers to James E. Cecchi and the firm Carella Byrne Cecchi Brody & Agnello, P.C.

836048v6

Members will receive as a result of this Settlement are eminently fair, reasonable, and adequate, especially when compared to similar settlements and in light of the risks of continued litigation.

In particular, as set forth in the Settlement, the Settlement provides Settlement Class Members with the option of selecting either a Cash Award or a Credit Award. The "Cash Award" is a cash distribution of either $7,500 for Tier 1 Claims or $2,000 for Tier 2 Claims. The "Credit Award" is a credit of either $50,000 for Tier 1 Claims or $20,000 for Tier 2 Claims, which may be applied against the purchase of a new FieldTurf field, FieldTurf-provided maintenance services, and/or FieldTurf-provided non-warranty repairs. Credit Awards expire after three years from the Effective Date.

To be eligible for a Tier 1 Claim, the Settlement Class Member must not have accepted an offer from FieldTurf for (i) a full replacement of the applicable Duraspine field at no cost under warranty from FieldTurf, or (ii) a discounted purchase of a new field and a new eight-year warranty (provided that the Settlement Class Member was offered a full replacement of the applicable Duraspine field at no cost). Any purported Tier 1 Claim that fails to meet the requirements of a Tier 1 Claim and is otherwise eligible becomes a Tier 2 Claim, for which Class Payment will be made in the same form of either Cash Award or Credit Award as submitted. To be eligible for a Tier 2 Claim, the Settlement Class Member must not have received a full replacement of the applicable Duraspine field at no cost under

3

warranty from FieldTurf unless the Settlement Class Member provides Qualifying Documentation with their Claim Form concerning complaints about the fiber from the replacement field.

The Settlement is a fair, reasonable, and adequate resolution of the Action and satisfies all of the prerequisites for preliminary approval. For these reasons, and those fully articulated below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order filed contemporaneously herewith.

## I.    FACTUAL & PROCEDURAL BACKGROUND

On June 1, 2017, the United States Judicial Panel on Multidistrict Litigation consolidated Plaintiffs' actions in this Court, finding that Plaintiffs' actions assert common claims relating to purported defects in FieldTurf's Duraspine artificial turf product sold from 2005 to 2012. On January 18, 2018, FieldTurf filed a motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint, which Plaintiffs opposed (ECF No. 91). On August 31, 2018, the Court granted in part and denied in part FieldTurf's motion to dismiss, with leave to amend (ECF Nos. 117 & 118).

On October 1, 2018, as permitted by the Court, Plaintiffs filed their Second Consolidated Amended Class Action Complaint (ECF No. 120). On November 16, 2018, FieldTurf filed a motion to dismiss Plaintiffs' Second Consolidated Amended Class Action Complaint, which Plaintiffs opposed (ECF Nos. 132 & 141). On October 8, 2019, the Court denied FieldTurf's motion to dismiss (ECF Nos. 165 &

166). On October 22, 2019, FieldTurf answered the Second Consolidated Amended Class Action Complaint (ECF No. 167).

On April 5, 2021, Plaintiffs moved for class certification, seeking a nationwide class for their fraudulent concealment and unjust enrichment claims, and New Jersey, New York, Pennsylvania, and California subclasses for their statutory consumer fraud and implied warranty claims, which FieldTurf opposed (ECF No. 211). On July 20, 2021, FieldTurf moved to exclude the opinions of Plaintiffs' artificial turf expert and damages expert, which Plaintiffs opposed (ECF Nos. 228 & 246). On August 18, 2022, the Court denied Plaintiffs' motion for class certification, granted FieldTurf's motion to exclude the opinion of Plaintiffs' damages expert, and granted in part and denied in part FieldTurf's motion to exclude the opinion of Plaintiffs' artificial turf expert (ECF Nos. 270 & 271).

On October 5, 2022, Plaintiffs filed a renewed motion for class certification, seeking certification of two issue classes on whether FieldTurf's Duraspine product had an inherent defect and whether FieldTurf omitted material information from its marketing materials, which FieldTurf opposed (ECF Nos. 274 & 277). On July 13, 2023, the Court granted Plaintiffs' renewed motion and certified two issue classes and appointed class counsel and class representatives (ECF No. 285). On July 27, 2023, FieldTurf filed a petition for permission to appeal issue class certification with the United States Court of Appeals for the Third Circuit and a companion Motion to Stay before this Court (ECF No. 291). On August 22, 2023, Plaintiffs opposed the

5

Motion to Stay (ECF No. 292).  On August 24, 2023, permission to appeal was denied and, accordingly, on October 3, 2024, the Court terminated the Motion to Stay via text order (ECF No. 297).

On December 6, 2023, the Court entered a pretrial scheduling order setting a jury trial on the two issues for April 8, 2024 (ECF No. 302). On January 25, 2024, FieldTurf moved for summary judgment and then on January 29, 2024, FieldTurf filed an amended motion for summary judgment, which Plaintiffs opposed (ECF Nos. 309, 311, & 337). On February 8, 2024, the Parties filed their motions *in limine* for trial, which were all opposed. On February 23, 2024, following the completion of briefing for the motions *in limine*, the Court encouraged the parties to engage in settlement negotiations.

The Parties then held multiple negotiation sessions, including with the assistance of experienced and eminently qualified mediator Judge Marina Corodemus (ret.), which involved numerous communications via telephone, email, videoconference, and an in-person meeting, both before and after the formal mediation session. Over the course of the ensuing weeks, terms and conditions of the Settlement were debated and negotiated. Ultimately, after vigorous arm's-length negotiations, the Parties came to agree upon the terms and conditions set forth in the Settlement, which was fully executed on May 3, 2024.

836048v6

## II.    SUMMARY OF THE SETTLEMENT

### A.    THE PROPOSED SETTLEMENT CLASS

The Settlement provides relief to purchasers and owners of a FieldTurf Duraspine turf field in the United States and its territories from a select period. Excluded from the Settlement Class are FieldTurf, their parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which FieldTurf have a controlling interest; all employees of any law firm involved in prosecuting or defending this litigation, as well as their immediate family members; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members. Also excluded from the Settlement Class are Settlement Class Members who timely and validly request exclusion under Section 5 below or who are ineligible for either a Tier 1 or a Tier 2 Claim.

### B.    MONETARY RELIEF

As set forth in detail in the Settlement, Settlement Class Members will be entitled to Cash Payments or Credit Awards.

#### 1.    Tier 1 Claimants

Tier 1 Claimants may choose either a Cash Payment of $7,500 or a Credit Award[6] of $50,000.  To be a Tier 1 Claimant, the Claimant must have complained

---

[6] Tier 1 and Tier 2 Credit Awards may be applied against the purchase of a new FieldTurf field, FieldTurf-provided maintenance services, and/or FieldTurf-provided non-warranty repairs.

7

in writing about the Duraspine fibers prior to December 1, 2016, or the expiration of the field's applicable warranty, whichever is earlier. To be eligible for Tier 1 status, the Claimant must submit its written complaints with its Claim Form. Qualifying Documentation can be a document (including emails, letters, or formal complaints) reflecting a communication to FieldTurf or an authorized FieldTurf local representative or installer of a fiber-related complaint about a Duraspine field(s) from a select period. A Claimant may only receive one Cash Payment or Credit Award per Duraspine field and any Credit Award expires after three years from the Effective Date. To be eligible for Tier 1, the Claimant must not have been offered by FieldTurf and accepted an offer for (i) a full replacement of the applicable Duraspine field at no cost under warranty, or (ii) a discounted purchase of a new field with an upgraded fiber and a new eight-year warranty.

### 2.     Tier 2 Claimants.

Tier 2 Claimants may choose either a Cash Payment of $2,000 or a Credit Award of $20,000. Tier 2 Claims means any submission for a Class Payment by a Settlement Class Member that does not meet the requirements of a Tier 1 Claim and is otherwise eligible. To be eligible for a Tier 2 Claim, the Settlement Class Member must not have received a full replacement of the applicable Duraspine field at no cost under warranty from FieldTurf. Tier 2 Claimants may only receive one Cash

Payment or Credit Award per Duraspine field and any Credit Award expires after three years from the Effective Date.

### C.    CLASS NOTICE PLAN

FieldTurf will provide the Settlement Administrator with the names, email addresses, and physical addresses for all Settlement Class Members whose records it can locate through reasonable efforts.  The Settlement Administrator shall administer the Email, Mail, and Website Notice pursuant to the Preliminary Approval Order.

Class Counsel or the Settlement Administrator shall establish and maintain the Settlement Website with a mutually acceptable domain name. The Settlement Website shall be optimized for viewing on both mobile devices and personal computers.  The Settlement Website will include case-related documents, including, but not limited to, the operative complaint and answer to that complaint, the Settlement, the Claim Form, the Website Notice, the Preliminary Approval Order, Plaintiffs' Motion for Attorneys' Fees and Costs, a set of frequently asked questions, information on how to submit an Objection or request an exclusion, contact information for Class Counsel, FieldTurf Counsel, and the Settlement Administrator, and an email address that Class Members may use to submit the Claim Form and documentation to the Settlement Administrator.  Settlement § 6.3.1.

The Settlement Administrator shall email each Settlement Class Member for whom FieldTurf can locate an email address through reasonable efforts a copy of the

Email Notice substantially in the form provided in the Settlement, annexed hereto as Exhibit B to Exhibit 1.   The Email Notice shall inform Settlement Class Members of the fact of the Settlement and that Settlement information is available on the Settlement Website. Settlement § 6.3.2.

The Settlement Administrator shall mail to each Settlement Class Member (a) for whom FieldTurf can locate through reasonable efforts a physical address, but not an email address, or (b) for whom FieldTurf can locate a physical address through reasonable efforts and the Email Notice is returned as undeliverable, a copy of the Mail Notice. The Mail Notice shall inform Settlement Class Members of the fact of the Settlement and that Settlement information is available on the Settlement Website. Settlement § 6.3.3.

### D.   CLAIMS PROCESS

To receive Class Payment, Settlement Class Members who received direct notice via email or U.S. Mail (the "Known Claimants"), must submit a completed Claim Form and Qualifying Documentation for a Tier 1 Claim or Tier 2 Claim, if applicable, through the Settlement Website, United States Mail, or private courier. Settlement § 6.4.2.  "Unknown Claimants", those Settlement Class Members who did not receive direct notice via email or U.S. Mail, must submit the following items through the Settlement Website, U.S. Mail or private courier: (a) Contact Information; (b) Payment Information; and (c) Claim Form. Settlement § 6.4.1.

The Settlement Administrator and FieldTurf will then review all Claim Forms

10

to determine their validity and eligibility for Tier 1 and Tier 2 Claims.    The Settlement Administrator will reject any Claim Form that does not materially comply with the instructions set forth herein, that is not submitted by a Settlement Class Member, or that is duplicative or fraudulent.   Settlement § 6.5.

Based on information provided by the Parties, the Settlement Administrator has agreed to perform all settlement notice and administration duties required by the Settlement. Settlement § 6.6.

The Email Notice, Mail Notice, and Website Notice shall provide information on the procedure by which Settlement Class Members may request exclusion from the Settlement Class or submit an Objection to the Settlement. Settlement § 6.7.

No later than 14 days after the Objection and Exclusion Deadline, the Settlement Administrator shall give written notice to FieldTurf Counsel and Class Counsel of the total number and identity of Settlement Class Members who have timely and validly requested exclusion from the Settlement Class. Settlement § 6.8.

### E.    RELEASE OF CLAIMS AGAINST DEFENDANTS

As set forth in full in the Settlement, including Section 8.1, Settlement Class Members will release all claims which arise from or in any way relate to purported defects in FieldTurf's Duraspine artificial turf product sold from 2005 to 2012. This does not include, however, claims for any alleged personal physical injuries.

### F.    OPT-OUT RIGHTS

A Settlement Class Member who wishes to opt out of the Settlement Class

must do so according to the terms in the Settlement, as set forth in § 5. Any Settlement Class Member who does not opt out of the Settlement in such a manner shall be deemed to be part of the Settlement Class and shall be bound by all subsequent proceedings, orders, and judgments.

### G. CLASS COUNSEL FEES AND EXPENSES AND NAMED PLAINTIFF SERVICE AWARDS

Class Counsel may apply to the Court for up to $8.5 million in total for Administrative and Notice Costs, Service Awards, attorneys' fees and reasonable reimbursable out-of-pocket costs and expenses to compensate Class Counsel, Liaison Counsel, and Plaintiffs' Counsel for the attorneys' fees and expenses incurred in this litigation. The Motion for Attorneys' Fees and Costs shall be filed at least sixty days (60) days after the Notice Date and shall be posted on the Settlement Website within three (3) days of filing. Defendants reserve the right to object to or oppose Class Counsel's requests for fees, costs, and expenses. FieldTurf, recognizing that the Settlement may entitle Class Counsel to seek a reasonable Service Award for Plaintiffs will not object to the application or object to or oppose the amount of the Service Awards sought, provided the amount of the Service Award sought does not exceed $25,000/field for any single Plaintiff.

### H. OBJECTIONS AND SETTLEMENT APPROVAL

Any potential Settlement Class Member who does not opt out of the Settlement may object to the Settlement. To object, the Objector must comply with the procedures and deadlines in the Settlement, § 4. Written objections must be filed

with the Clerk of Court. The Deadline of Objection is 75 days after the Notice Date. Settlement § 4.4. Any Objector who timely submits an Objection has the option to appear and request to be heard at the Final Approval Hearing, either in person or through the Objector's counsel. *Id*. at § 4.6. Any Objector wishing to appear and be heard at the Final Approval Hearing must include a request to appear and provide notice of his or her intention to appear in the body of the Objector's Objection. *Id*.

## I.    PROPOSED SCHEDULE FOLLOWING PRELIMINARY APPROVAL

Plaintiffs, with the consent of Defendants, propose that along with granting preliminary approval of the Settlement, the Court adopt the schedule set forth below in its Preliminary Approval Order, to allow the Parties to effectuate the various steps in the settlement approval process under the Settlement.

| Event | Deadline Pursuant to Settlement Agreement |
|---|---|
| Notice shall be mailed in accordance with the Notice Plan and this Order | 30 days after Preliminary Approval Order is entered |
| Class Counsel's Fee and Expense Application and request for service awards for the Plaintiffs-Settlement Class Representatives | 60 Days after the Notice Date |
| Deadline for Objections to the Settlement, Class Counsel's Fee and Expense Application, and/or the request for Settlement Class Representative service awards | 75 days after the Notice Date |
| Deadline for Requests for Exclusion from the Settlement | 75 days after the Notice Date |

13

| | |
|---|---|
| Plaintiffs to file Motion for Final Approval of the Settlement | 100 Days after the Notice Date |
| Claim Administrator shall submit a declaration to the Court (i) reporting the names of all persons and entities that submitted timely and proper Requests for Exclusion; and (ii) attesting that Notice was disseminated in accordance with the Settlement Agreement and this Preliminary Approval Order. | 89 Days after the Notice Date |
| Responses of Any Party to any Objections and/or Requests for Exclusion | 100 Days after the Notice Date |
| Any submissions by Defendant concerning Final Approval of Settlement | 100 Days after the Notice Date |
| Final Fairness Hearing will be held at Martin Luther King Building & <br><br> U.S. Courthouse, 50 Walnut St., Newark, NJ 07102 or by video conference as determined by the Court | 120 Days after the Notice Date |

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Plaintiffs present this Settlement to the Court for its review under Fed. R. Civ. P. 23(e), which provides in pertinent part that the Court must direct notice regarding the settlement in a reasonable manner and may approve a class action settlement after a hearing and upon finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Amendments to Rule 23 that took effect on December 1, 2018, clarified the standard that guide a district court's preliminary review of a proposed settlement. As amended, Rule 23(e)(1)(B)(i)–(ii) now provides specific requirements that a district

court must ensure are satisfied prior to granting <u>preliminary</u> approval. *See* Fed. R. Civ. P. 23 advisory comm.'s note to 2018 amendment to Subdivision (c)(2) (noting that Rule 23(e)(1) addresses the "decision [that] has been called 'preliminary approval' of the proposed class certification in Rule 23(b)(3) actions"). Specifically, the court must be satisfied that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Maverick Neutral Levered Fund, Ltd. v. Valeant Pharms. Int'l, Inc*., 2021 WL 7872087, at *5 (D.N.J. Jan. 26, 2021) ("Thus, in connection with an order preliminarily granting approval of a class action settlement, the Court is not certifying the class at the preliminary approval stage, but rather, is making a preliminary determination that it will likely be able to certify the class at the final approval stage.") (citing William B. Rubenstein, *4 Newberg on Class Actions* § 13:17 (5th Ed.)). If these requirements are satisfied, then notice of the proposed settlement will be disseminated to the class. Fed. R. Civ. P. 23(e)(1).[7]

---

[7] At the final approval stage, courts in the Third Circuit apply a more rigorous, nine-factor analysis to assess the fairness, adequacy, and reasonableness of the proposed class action settlement. *See Checchia v. Bank of Am., N.A*., 2023 WL 2051147, at *2 n.1 (E.D. Pa. Feb. 16, 2023) ("These factors are distinct from the nine-factor test adopted by the Third Circuit to ultimately approve settlements as fair, reasonable, and adequate under Rule 23(e)."); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Gregory v. McCabe, Weisberg & Conway, P.C*., 2014 WL 2615534, at *2 n.6 (D.N.J. June 12, 2014) ("At the preliminary approval stage . . . [the Court] need not address all of [these] factors …."'). Specifically, the court would review the settlement in light of the factors established by *Girsh*, 521 F.2d at 157: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery

15

The court considers two sets of factors in assessing the fairness of a settlement agreement: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)" and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The first set of factors require consideration of whether:

    (A)  the class representatives and class counsel have adequately represented the class;

    (B)  the proposal was negotiated at arm's length;

    (C)  the relief provided for the class is adequate, taking into account:

        (i)   the costs, risks, and delay of trial and appeal;

        (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"Review of a proposed class action settlement is a two-step process: (1) preliminary approval, and (2) a subsequent fairness hearing." *Smith v. Merck & Co.*, 2019 WL 3281609, at *4 (D.N.J. July 19, 2019). "[P]reliminary approval is not

---

completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See also In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 437 (3d Cir. 2016); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).

16

binding and is granted unless the proposed settlement is obviously deficient." *Kress v. Fulton Bank, N.A.*, 2021 WL 9031639, at *9 (D.N.J. Sept. 17, 2021), *R. & R. adopted*, 2022 WL 2357296 (D.N.J. June 30, 2022). Moreover, there is an "overriding public interest in settling class action litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc.*, 2023 WL 3983877, at *3 (D.N.J. June 13, 2023) ("[T]here is a strong public policy in favor of settlements. . . . Courts, therefore, will 'strain to give effect to the terms of a settlement whenever possible.'"). Settlement is particularly favored "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Warfarin*, 391 F.3d at 535 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) (for motions seeking approval of "settlement only" class actions, "we favor the parties reaching an amicable agreement" and should not "intrude overly on the parties' hard-fought bargain[,]" but also, "[a]t the same time, [a] district court has an obligation as a fiduciary for absent class members to examine the proposed settlement with care"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement Agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."). As such, courts are "hesitant to undo an agreement that has

836048v6

resolved a hard-fought, multi-year litigation," such as this one. *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh*, 521 F.2d at 156.

### A.    RULE 23(E)(2) FACTORS

Each of the Rule 23(e)(2) factors is likely to be satisfied here:

#### 1.    Civil Rule 23(e)(2)(A) – Whether Plaintiffs and Plaintiffs' Counsel "have adequately represented the class"

Rule 23(e)(2)(A) and (B) look "to the conduct of the litigation" and "the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory comm.'s notes to 2018 amendment. The "focus at this point is on the actual performance of counsel" for the class, and courts may consider "the nature and amount of discovery"; the "conduct of the negotiations"; the "involvement of a neutral . . . mediator"; and other factors. *Id.* A key goal is to determine whether counsel "had an adequate information base." *Id.*; *see also In re NFL Players*, 821 F.3d at 439 (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims").

Here, this factor is likely to be satisfied. Class Counsel and Liaison Counsel spent extensive time and resources over the better part of a decade representing the class. This case had significant motion practice and extensive fact and expert discovery. Class Counsel and Liaison Counsel defeated two motions to dismiss,

obtained certification of two issue classes, opposed FieldTurf's motion for summary judgment, prepared for trial – including filing and opposing multiple motions *in limine*, and mediated before Judge Maria Corodemus (ret.), after which the Parties reached a settlement in principle.

Further, as evidenced by the typicality and commonality considerations discussed below, the interests of the named Plaintiff representatives and the Class Members appear aligned. Finally, there are no apparent conflicts of interest. Settlement Class Counsel and the named Plaintiffs have adequately represented the interests of the class.

### 2. Civil Rule 23(e)(2)(B) – Whether the settlement "was negotiated at arm's length."

This factor is satisfied where, as here, the parties reach settlement during negotiations overseen by a respected third-party mediator. Class Counsel and Liaison Counsel negotiated the Settlement meeting all requirements of Rule 23, and specifically providing an administrative process to assure Class Members receive equal and sufficient due process. The Settlement was the result of extensive arm's-length negotiations conducted by sophisticated counsel, who consulted with highly qualified experts regarding the claims at issue and follows specific claims-related and class discovery. These negotiations were facilitated by Judge Marina Corodemus (ret.), after which the Parties reached a settlement in principle.

It is also Class Counsels' and Liaison Counsel's experienced opinion that, given the alternative of long and complex trials, the risks involved in such litigation, continued preparation for the issue class trial, and the possibility of later appellate litigation, the availability of prompt relief under the Settlement is meaningful, timely, and highly beneficial to the Class Members. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (noting that a settlement that would eliminate delay and expenses and provides immediate benefit to the settlement class strongly favors settlement approval).

Through the course of negotiations, Settlement Class Members were represented by a team of attorneys who have considerable experience (and success) in prosecuting (and settling) class actions, have been vigorously prosecuting this Action for the better part of a decade, and are well-versed in the disputed issues and. Class Counsels' and Liaison Counsel's approval of the Settlement should weigh in favor of the Settlement's fairness. *Varacallo*, 226 F.R.D. at 240 ("[T]he Court puts credence in the fact that Class Counsel consider[s] the Proposed Settlement to be fair, reasonable and adequate.").

After reaching an agreement in principle, additional negotiations, involving correspondence, and the exchange of numerous iterations of draft agreements were necessary for the Parties to come to an agreement regarding the Settlement terms.

20

### 3.   Rule 23(e)(2)(C)(i) – Whether the relief "is adequate, taking into account the costs, risks, and delay of trial and appeal."

This factor "balances the 'relief that the settlement is expected to provide to class members' against 'the cost and risk involved in pursuing a litigated outcome.'" *Hall v. Accolade, Inc.*, 2019 WL 3996621, at *4 (E.D. Pa. Aug. 23, 2019) (quoting Fed. R. Civ. P. 23 advisory comm.'s notes (Dec. 1, 2018)). Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.* As the Third Circuit has observed, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution – a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly." *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 173-74.

Here, this factor is likely to be satisfied. The proposed recovery here represents significant value when viewed against the pertinent litigation risks. *See, e.g.*, *Myers v. Jani-King of Phila., Inc.*, 2019 WL 4034736, at *9 (E.D. Pa. Aug. 26, 2019) (approving settlement amount representing "between 20% and 39% of the maximum damages' calculations"). Moreover, continued litigation would, in addition to presenting uncertainty, require the Court to resolve Defendant's motion for summary judgment and, if denied, hold a trial on Defect and Deception Issues. And, if Plaintiffs prevailed, individual matters on liability would not begin until sometime in 2025. Settlement enables the Class Members to avoid uncertainty, the risk of negative outcomes, and delays.

4. **Civil Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of distributing relief" and "the method of processing class-member claims"**

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 advisory comm.'s notes to 2018 amendment. This factor is likely to be satisfied where, as here, the Settlement provides for individualized notices to each class member and where the notice form clearly describes the process for class members to object to or exclude themselves from the settlement. *See Hall*, 2019 WL 3996621, at *5. As detailed above, each class member will receive a copy of the Notice via email and direct mail with all relevant documents available on the website. *See* Settlement § 6.

5. **Civil Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorneys' fee award**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23, advisory comm.'s notes to 2018 amendment. As stated above, Class Counsel may apply to the Court for up to $8.5 million in total for Administrative and Notice Costs, Service Awards, attorneys' fees and reasonable reimbursable out-of-pocket costs and expenses to compensate Class Counsel, Liaison Counsel, and Plaintiffs' Counsel for the attorneys' fees and expenses incurred in this litigation. Settlement §7.2.

At the final approval stage, Plaintiffs will fully brief the fairness and

reasonableness of the requested attorneys' fees under the Third Circuit's *Gunter* factors. *See, e.g.*, *Tumpa v. IOC-PA, LLC*, 2021 WL 62144, *10-12 (W.D. Pa. Jan. 7, 2021). However, such detailed analysis is not necessary at the preliminary approval stage. *See, e.g.*, *Altnor v. Preferred Freezer Servs., Inc.*, 2016 WL 9776078, at *1 n.1 (E.D. Pa. Feb. 9, 2016) (attorney's fees "will be addressed at the final fairness hearing"); *Kopchak v. United Res. Sys.*, 2016 WL 4138633, at *5 n.8 (E.D. Pa. Aug. 4, 2016) ("I will defer approval of attorneys' fees until after the final fairness hearing.").

### 6. Civil Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3)

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, this factor will be satisfied because the accompanying Settlement is the *only* agreement connected to the subject matter of this lawsuit or settlement.

### 7. Civil Rule 23(e)(2)(D) – Whether the settlement treats class members equitably relative to each other

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." Fed. R. Civ. P. 23, advisory comm.'s notes to 2018 amendment. Here, this factor is satisfied because, as discussed above, each Class Member is entitled to the same relief depending on its status as either Tier One or Tier Two. *See* Settlement § 2. Accordingly, this factor supports approving the Settlement. *See Hays v. Eaton Grp. Att'ys, LLC*, 2019 WL 427331, at *13 (M.D. La. Feb. 4, 2019) (the

23

equitable-treatment factor "easily met as each class member, save the Class representative, will receive the same amount").

The Settlement does offer each of the named Plaintiffs, subject to the Court's approval, a reasonable Service Award of up to $25,000/field that recognizes the important contribution they made to the prosecution of the action. Settlement § 7.1. Because of the named Plaintiffs' efforts and willingness to become involved in this action, potentially over one-thousand class members will benefit from the Settlement. "[S]ubstantial authority exists for the payment of an incentive award to the named plaintiff."[8] *Smith*, 2007 WL 4191749, at *3 (citing *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)).  In addition, the proposed Service Award is in line with awards that have been approved in this Circuit and elsewhere. *See, e.g.*, *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) (approving incentive awards of $30,000 for each class representative); *In re Linerboard Antitrust Litigation*, 2004 WL 1221350, at 18 (E.D. Pa. June 2, 2004) (approving incentive award of $25,000 for class representative, noting "[t]he Court finds ample authority in this district and in other circuits for such an incentive award.");  *In re Suboxone Antitrust Litigation*, 2024 WL 815503, at *19 (approving incentive awards of $100,000 for each class

---

[8] Courts generally defer assessment of service awards until the final approval stage. *Hardy v. Embark Tech., Inc.*, 2023 WL 6276728, at *8 (N.D. Cal. Sept. 26, 2023); *Hale v. Manna Pro Prods., LLC*, 2020 WL 3642490, at *12 (E.D. Cal. July 6, 2020).

representative); *cf.* Newberg and Rubenstein on Class Actions § 17:8, table 1 (6th ed.) (summarizing two empirical studies of class action incentive awards with the mean per plaintiff award being between $14,371 and $24,517[adjusting for inflation in 2021]).

In sum, as discussed above, the Court "will likely be able to … approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).

### B.    THE COURT "WILL LIKELY BE ABLE TO CERTIFY THE CLASS"

Having determined that the parties "will likely be able to … approve the proposal under Rule 23(e)(2)," Plaintiff addresses the second part of the preliminary approval analysis concerning whether the Court "will likely be able to … certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii).

Plaintiffs request that the Court preliminarily certify a Settlement Class and direct dissemination of notice concerning the Action and the Settlement. Defendants do not object to certification of the Settlement Class for purposes of settlement only and the Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997). In conducting this task, a court's "dominant concern" is "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621. To be certified under Rule 23, a putative class must satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a) as well as the requirements of one of the three provisions

25

of Rule 23(b). *See* Fed R. Civ. P. 23.

### 1.      Rule 23(a) is Satisfied

For a class to be certified under Rule 23, a named plaintiff must establish that the proposed class meets each of the four requirements of subsection (a) of the Rule. Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a). Here, as set forth below, all four elements are satisfied in regard to the proposed Settlement Class.

### 2.      Rule 23(a)(1) – "Numerosity" – is met

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R Civ. P. 23(a)(1). "[G]enerally, where the potential number of plaintiffs is likely to exceed forty members, the numerosity requirement will be met." *Martinez-Santiago v. Public Storage*, 312 F.R.D. 380, 388 (D.N.J. 2015) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012)). Here, there are approximately 1,400 Settlement Class fields. The numerosity requirement is therefore readily satisfied.

### 3.    Rule 23(a)(2) – "Commonality" – is met

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-50 (2011). The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Invs., Inc.*, 667 F. 3d 273, 297 (3d Cir. 2011) ("[C]ommonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members[.]"). A finding of commonality does not require that all class members share identical claims as long as there are common questions at the heart of the case. *In re NFL Players*, 821 F.3d at 426-27 (stating that Rule 23(a) commonality is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class"); *Warfarin*, 391 F.3d at 530. "For purposes of Rule 23(a)(2), 'even a single common question will do.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

Here, the claims of the Settlement Class raise common questions of fact and law. The fraudulent concealment claims raise common evidence of FieldTurf's conduct, such as when FieldTurf learned of any problems with Duraspine fields and whether it failed to disclose and/or concealed known material defects of the product. The consumer protection claims raise the common issue of whether FieldTurf's marketing of Duraspine  misled a reasonable purchaser into purchasing its products. The implied warranty claims raise the common issue of whether Duraspine was unsuitable for normal, expected use.  And the unjust enrichment claims raise the

common issue of FieldTurf's retention of any benefit from its course of conduct.

**4.    Rule 23(a)(3) – "Typicality" –is satisfied**

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. As the Third Circuit has stated, "the named plaintiffs' claims must merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009). Where it is alleged that the defendant engaged in a behavior common to all members of the class, "there is a strong presumption that the claims of the representative parties will be typical of the absent class members." *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, 2012 WL 4482041, at *4 (D.N.J., Sept. 25, 2012). Likewise, "[w]hen a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types." *Marcus*, 687 F.3d at 599; *see also Yaeger*, 2016 WL 4541861, at *6 (finding typicality where "plaintiffs allege that the class claims arise out of the same conduct of the defendants related to their design, manufacture, and sale of the class vehicles that suffered from an alleged oil consumption defect, and defendants' alleged failure to disclose that material fact").

Here, the named Plaintiffs' claims, and those of the Settlement Class, arose from a common course of alleged conduct by Defendants: the marketing and selling

of Duraspine during a select period.

### 5.   Rule 23(a)(4) – "Adequacy"

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R Civ. P. 23(a)(4). In the Third Circuit, this requirement is met when two prongs are satisfied: 1) the plaintiffs have no interests antagonistic to those of the class; and 2) the plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed litigation. *In re Schering Plough Corp.*, 589 F.3d at 602. The core analysis for the first prong is whether Plaintiffs have interests antagonistic to those of the Settlement Class. The second prong analyzes the capabilities and performance of Class Counsel based upon factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Here, Plaintiffs satisfy both prongs.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Settlement Class Members. Plaintiffs seek to hold Defendants accountable for, among other things, manufacturing and selling Duraspine fields that allegedly degraded prematurely, thus allegedly causing monetary loss.  Further, Plaintiffs have demonstrated their allegiance and commitment to this litigation by consulting with Plaintiffs' Counsel, collecting documents for litigation, reviewing the pleadings, responding to discovery propounded by Defendants, and keeping informed of the progress of the litigation. Their interests are aligned with the interests of absent Settlement Class Members.

29

Second, in its July 13, 2023 Memorandum Opinion (ECF No. 285), the Court appointed Seeger Weiss LLP and The Moskowitz Law Firm, PLLC as Class Counsel and the law firm of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Liaison Counsel (ECF No. 285).

### 6. Rule 23(b)(3) – "Predominance" of Common Issues

Having demonstrated that each of the mandatory requirements of Rule 23(a) are met for settlement purposes only, Plaintiffs now turn to consideration of the Rule 23(b)(3) factors—predominance and superiority. Under Rule 23(b)(3), a class action should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re NFL Players*, 821 F.3d at 434. Here, the Settlement Class readily meets both requirements.

First, common questions of both law and fact predominate. Settlement Class Members' claims arise out of an alleged common defect in Duraspine fields. Additionally, Class Members seek remedy of alleged "common legal grievances"— Defendants' alleged failure to disclose any defect. These claims thus present common operative facts and common questions of law that predominate over any

factual variations. FieldTurf's defenses to those claims would similarly raise common questions of fact.  Second, certification of the Settlement Class under Rule 23 is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The settlement affords benefits to numerous putative Settlement Class Members who, absent a class settlement, may not have been aware of their legal rights or may not have had the desire or resources to pursue an individual suit involving the matters at issue. The class settlement also serves the interest of judicial economy by avoiding multiple similar lawsuits. Thus, resolving the Settlement Class Members' claims in a single, consolidated settlement proceeding is far superior to individual adjudication of their claims. And, as this is a class settlement, the court need not address manageability issues that may otherwise exist in a contested class action. *Amchem Prods., Inc.*, 521 U.S. at 620.

Accordingly, Plaintiffs have satisfied this Circuit's standards for preliminary approval of the Settlement. This Court should grant preliminary approval so the proposed class may be certified for settlement purposes, Settlement Class Counsel may be appointed, and Class Notices may be mailed. Once the Class Notice process is complete, the Court can then fully evaluate the fairness and adequacy of the Settlement at a Final Approval hearing.

## IV.   SETTLEMENT CLASS COUNSEL SATISFY RULE 23(G)

Pursuant to Rule 23(g), Plaintiffs also move to appoint the counsel previously appointed as interim Co-Lead (Christopher A. Seeger and Adam Moskowitz) and

836048v6

Liaison Counsel (James E. Cecchi) as Co-Lead and Liaison Class Counsel.[9] Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. Fed. R. Civ. P. 23. While a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interest of the class," Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

*Id.* Here, each of the Rule 23(g)(1)(A)'s considerations weigh strongly in favor of finding Class and Liaison Counsel adequate. Class and Liaison Counsel did substantial work identifying and investigating potential claims and properly supporting the allegations in the Complaints. Class Counsel and Liaison Counsel defeated two motions to dismiss, obtained certification of two issue classes, opposed FieldTurf's motion for summary judgment, prepared for trial – including filing and opposing multiple motions *in limine*, and mediated before Judge Maria Corodemus (ret.), after which the Parties reached a settlement in principle.

---

[9] The Court previously appointed Mr. Seeger and Mr. Moskowitz as Co-Lead and Mr. Cecchi as Liaison Counsel in the context of Rule 23(c)(4) (ECF No. 285).

836048v6

As reflected in their firm resumes, Settlement Class Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation, including claims of the type asserted in this action. *See* Cecchi Decl., at Exhibits B, C, and D. Hence, Settlement Class Counsel's extensive efforts in prosecuting this case, combined with their in-depth knowledge of the subject area, satisfy Rule 23(g).

## V.   THE FORM AND MANNER OF NOTICE ARE PROPER

The way Class Notice is disseminated, as well as its content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process. *See In re Ocean Power Techs, Inc.*, 2016 WL 6778218, at *9 (D.N.J. Nov. 15, 2016). The Settlement satisfies these requirements.

Rule 23(e) requires that notice of a proposed settlement be provided to class members. Fed. R. Civ. P. 23. "[D]ue process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re NFL Players*, 821 F.3d at 446. Additionally, Rule 23(c)(2) requires "the best notice practicable under the circumstances" and that such notice contain "sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Ocean Power Techs., Inc.*, 2016 WL 6778218 at *10 (quoting *In re NFL Players*, 821 F.3d at 435).

836048v6

Here, the Class Notice plan satisfies all requirements. The language of the Class Notice was drafted and agreed to by the Parties. The proposed Class Notice will be disseminated via email and mail written in plain, simple terminology, which directs Settlement Class Members to the Settlement Website that includes detailed information about this Settlement and ligation, including: (1) a description of the Settlement Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for exercising the right to opt-out; (5) the identity of counsel for the Settlement Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. The Class Notice provides Settlement Class Members with clear and accurate information as to the nature and principal terms of the Settlement to make an informed and intelligent decision whether to object to the Settlement. In addition, pursuant to Rule 23(h), because Attorneys' Fees and Expenses have not been negotiated, and Plaintiffs' motion for fees, expenses and a service award is not due until after Notice is disseminated, the proposed Class Notice makes clear that any motion for fees and expenses and Settlement Class Representative service awards will be available for review at the settlement website when filed.

The dissemination of the Class Notice likewise satisfies all requirements. Under the Settlement, the Claims Administrator will send individualized Class Notices and Claims Forms to Settlement Class Members via email and first-class

mail to the last known address in FieldTurf's records.  In addition, a website will be created so that Settlement Class Members can readily have questions answered, obtain additional copies of materials sent by the Claims Administrator, and find instructions for how to submit a Claim for reimbursement either by mail or through online submission.

Accordingly, the proposed Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (D.N.J. 2013) (approving notice plan that utilized post-card notices and website to provide settlement information as the "notice plan was thorough and included all of the essential elements necessary to properly apprise absent Settlement Class members of their rights").

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval and enter the Proposed Order.

836048v6

Dated: May 3, 2024

Respectfully submitted,

*s/ James E. Cecchi*
James E. Cecchi
Michael A. Innes
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Rd.
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com
minnes@carellabyrne.com
*Liaison Counsel for Plaintiffs*

*s/ Adam M. Moskowitz*
Adam M. Moskowitz
Howard M. Bushman
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Tel: 305-740-1423
adam@moskowitz-law.com
howard@moskowitz-law.com
*Co-Lead Counsel for Plaintiffs*

*s/ Christopher A. Seeger*
Christopher A. Seeger
Jennifer R. Scullion
Christopher L. Ayers
**SEEGER WEISS LLP**
55 Challenger Rd., 6th Fl.
Ridgefield Park, NJ 07660
Tel: 973-639-9100
cseeger@seegerweiss.com
jscullion@seegerweiss.com
cayers@seegerweiss.com
*Co-Lead Counsel for Plaintiffs*

36