# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: FIELDTURF ARTIFICIAL TURF SALES AND MARKETING PRACTICES LITIGATION | MDL NO. 2789<br>Civil Action No. 3:17-md-02779-MAS-TJB |

# CLASS COUNSEL'S MOTION
# FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

## **Table of Contents**

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................1

ARGUMENT ........................................................................................................1

    I.  The Court Should Award The Requested Legal Fees....................................4

        1.  The Lodestar Method Is The Appropriate Means Of Calculating Fees In This Case And It Supports The Requested Award. .............................5

        2.  The Percentage Of Recovery Method Also Supports The Requested Award. ...................................................................................................8

    II.  The Court Should Reimburse Class Counsel For Their Expenses. ...............9

    III. The Court Should Grant Service Awards To The Class Representatives. ..11

CONCLUSION ....................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Sullivan v. DB Invs., Inc.*,
   No. CIV.A. 04-2819 SRC, 2008 WL 8747721 (D.N.J. May 22, 2008) .................8

*Careccio v. BMW of N. Am. LLC*,
   2010 WL 1752347 (D.N.J. Apr. 29, 2010) ........................................................11

*Cox v. Sears Roebuck & Co.*,
   647 A.2d 454 (N.J. 1994) ....................................................................................5

*Dungee v. Davison Design & Dev. Inc*,
   674 F. App'x 153 (3d Cir. 2017) .........................................................................6

*Gelis v. BMW of N. Am., LLC*,
   49 F.4th 371 (3d Cir. 2022) .................................................................................6

*In re AT & T Corp.*,
   455 F.3d 160 (3d Cir. 2006) ................................................................................8

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...................8

*In re Diet Drugs*,
   582 F.3d 524 (3d Cir. 2009) ................................................................................9

*In re Linerboard Antitrust Litig.*,
   No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ....................12

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ................................................................................7

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ................................................................................6

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ......................................................................11

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
   No. CV163087MASLHG, 2022 WL 525807 (D.N.J. Feb. 22, 2022) ..................7

*Mirakay v. Dakota Growers Pasta Co.*,
   No. 13-CV-4429 JAP, 2014 WL 5358987 (D.N.J. Oct. 20, 2014) .........................5

*Polonski v. Trump Taj Mahal Assocs.*,
   137 F.3d 139 (3d Cir. 1998) ............................................................................4, 5

*Rossi v. Procter & Gamble Co.*,
   2013 WL 5523098 (D.N.J. Oct. 3, 2013) ...............................................................5

*Schmoll v. J.S. Hovnanian & Sons, LLC*,
   927 A.2d 146 (N.J. App. Div. 2007) .....................................................................5

*Talone v. Am. Osteopathic Ass'n*,
   No. 1:16-CV-04644-NLH-JS, 2018 WL 6318371 (D.N.J. Dec. 3, 2018) ...........12

*Washington v. Philadelphia Cnty. Ct. of Common Pleas*,
   89 F.3d 1031 (3d Cir. 1996) ..................................................................................8

Statutes

N.J. Stat. Ann. § 56:8-19...............................................................................................5

Rules

Fed. R. Civ. P. 23(h) .....................................................................................................4

iii

# INTRODUCTION

For the last seven years, Class Counsel has vigorously litigated this case. Class Counsel defeated two motions to dismiss, took and produced extensive fact discovery, developed extensive expert discovery, obtained certification of two issue classes, and prepared their case up until the eve of trial. Those efforts have resulted in a settlement which offers considerable benefits to the Class.

Class Counsel now seeks (1) reimbursement for their reasonable costs and expenses, including notice costs, in the amount of $1,845,375.84, (2) service awards of $25,000 for each named Class Representative, for a total amount of $175,000, and (3) attorneys' fees in the amount of $6,479,624.16, for a total amount of $8,500,000. The requested fees are a mere fraction of the more than $30,000,000 lodestar accumulated in this case, based on the more than 45,000 hours Class Counsel and the Plaintiffs' Steering Committee has spent prosecuting this litigation over the course of seven years. And because Fieldturf has agreed to pay any costs and fee award separate from and on top of the settlement relief, a cost and fee award will not dilute the settlement benefits available to the Class.

# BACKGROUND

On June 1, 2017, the United States Judicial Panel on Multidistrict Litigation consolidated Plaintiffs' actions in this Court, finding that Plaintiffs' actions assert common claims relating to purported defects in FieldTurf's Duraspine artificial turf

1

product sold from 2005 to 2012. On January 18, 2018, FieldTurf filed a motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint, which Plaintiffs opposed (ECF No. 91). On August 31, 2018, the Court granted in part and denied in part FieldTurf's motion to dismiss, with leave to amend (ECF Nos. 117 & 118).

On October 1, 2018, as permitted by the Court, Plaintiffs filed their Second Consolidated Amended Class Action Complaint (ECF No. 120). On November 16, 2018, FieldTurf filed a motion to dismiss Plaintiffs' Second Consolidated Amended Class Action Complaint, which Plaintiffs opposed (ECF Nos. 132 & 141). On October 8, 2019, the Court denied FieldTurf's motion to dismiss (ECF Nos. 165 & 166). On October 22, 2019, FieldTurf answered the Second Consolidated Amended Class Action Complaint (ECF No. 167).

On April 5, 2021, Plaintiffs moved for class certification, seeking a nationwide class for their fraudulent concealment and unjust enrichment claims, and New Jersey, New York, Pennsylvania, and California subclasses for their statutory consumer fraud and implied warranty claims, which FieldTurf opposed (ECF No. 211). On July 20, 2021, FieldTurf moved to exclude the opinions of Plaintiffs' artificial turf expert and damages expert, which Plaintiffs opposed (ECF Nos. 228 & 246). On August 18, 2022, the Court denied Plaintiffs' motion for class certification, granted FieldTurf's motion to exclude the opinion of Plaintiffs' damages expert, and granted in part and denied in part FieldTurf's motion to exclude the opinion of

Plaintiffs' artificial turf expert (ECF Nos. 270 & 271).

On October 5, 2022, Plaintiffs filed a renewed motion for class certification, seeking certification of two issue classes on whether FieldTurf's Duraspine product had an inherent defect and whether FieldTurf omitted material information from its marketing materials, which FieldTurf opposed (ECF Nos. 274 & 277). On July 13, 2023, the Court granted Plaintiffs' renewed motion and certified two issue classes and appointed class counsel and class representatives (ECF No. 285). On July 27, 2023, FieldTurf filed a petition for permission to appeal issue class certification with the United States Court of Appeals for the Third Circuit and a companion Motion to Stay before this Court (ECF No. 291). On August 22, 2023, Plaintiffs opposed the Motion to Stay (ECF No. 292). On August 24, 2023, permission to appeal was denied and, accordingly, on October 3, 2024, the Court terminated the Motion to Stay via text order (ECF No. 297).

On December 6, 2023, the Court entered a pretrial scheduling order setting a jury trial on the two issues for April 8, 2024 (ECF No. 302). On January 25, 2024, FieldTurf moved for summary judgment and then on January 29, 2024, FieldTurf filed an amended motion for summary judgment, which Plaintiffs opposed (ECF Nos. 309, 311, & 337). On February 8, 2024, the Parties filed their motions *in limine* for trial, which were all opposed. On February 23, 2024, following the completion of briefing for the motions *in limine*, the Court encouraged the parties to engage in

3

settlement negotiations.

The Parties then held multiple negotiation sessions, including with the assistance of experienced and eminently qualified mediator Judge Marina Corodemus (ret.), which involved numerous communications via telephone, email, videoconference, and an in-person meeting, both before and after the formal mediation session. Over the course of the ensuing weeks, terms and conditions of the Settlement were debated and negotiated. Ultimately, after vigorous arm's-length negotiations, the Parties came to agree upon the terms and conditions set forth in the Settlement, which was fully executed on May 3, 2024.

On July 2, 2024, the Court granted Plaintiffs' motion for preliminary approval of class action settlement. ECF No. 365.

## ARGUMENT

### I. The Court Should Award The Requested Attorneys' Fees.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). There are two legal bases for a grant of attorneys' fees here. First, "[u]nder the exercise of its equitable powers, . . . a federal court may fashion an attorney's fees award to successful litigants who confer a common benefit upon a class of individuals not participating in the litigation." *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998). "At the heart of this exception [to the

traditional rule that parties bear their own legal fees] is a concern for fairness and unjust enrichment; the law will not reward those who reap the substantial benefits of litigation without participating in its costs." *Id.* Second, many state consumer protection statutes authorize (or mandate) awards of attorneys' fees to prevailing parties. *E.g.*, N.J. Stat. Ann. § 56:8-19. "The fundamental remedial purpose of [such consumer fraud statutes] dictates that plaintiffs should be able to pursue consumer-fraud actions without experiencing financial hardship." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 465 (N.J. 1994). There is no requirement that a plaintiff turn down a settlement that gives them what they want to preserve their right to fees as a prevailing party—courts can and do award fees where a plaintiff wins through settlement. *Schmoll v. J.S. Hovnanian & Sons, LLC*, 927 A.2d 146, 147 (N.J. App. Div. 2007).

The award of attorneys' fees in a class action settlement is within the Court's discretion. *Rossi v. Procter & Gamble Co.*, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013). "[W]here the 'money paid to attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no potential conflict of interest between attorneys and class members.'" *Mirakay v. Dakota Growers Pasta Co.*, No. 13-CV-4429 JAP, 2014 WL 5358987, at *11 (D.N.J. Oct. 20, 2014) (quoting *Rossi v. Proctor & Gamble Co.*, No. CIV.A. 11-7238 JLL, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013)).

1. **The Lodestar Method Is The Appropriate Means Of Calculating Fees In This Case And It Supports The Requested Award.**

"There are two primary methods for calculating attorneys' fees awards in the class action context: (1) the percentage-of-recovery method; and (2) the lodestar method." *Dungee v. Davison Design & Dev. Inc*, 674 F. App'x 153, 156 (3d Cir. 2017) (internal citations and quotations omitted). The lodestar approach is appropriate in cases, like this, where the settlement is a "claims made" settlement. *Gelis v. BMW of N. Am., LLC*, 49 F.4th 371, 379 (3d Cir. 2022) (lodestar is permitted "where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method."). This is because where, as here, "the ultimate value of the settlement depended upon the number of claims made by [class members]," there is no fund from which "from which a simple percentage could be taken[.]" *Dungee*, 674 F. App'x at 156.

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). "The lodestar is strongly presumed to yield a reasonable fee." *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

This strong presumption is strengthened where, as here, a fee request seeks <u>less</u> than the full amount of the lodestar—sometimes called a negative multiplier. *In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, No. CV163087MASLHG, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022). A negative multiplier is "strong evidence" of a fee request's reasonableness. *Id.* That makes good sense. The Third Circuit has recognized that it is common for lodestar multiples of up to four to be applied to class action settlements. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998). The voluntary application of a negative multiplier thus represents a considerable discount.

Here, Class Counsel seeks a total award of $8.5 million, which will pay for $1.7 million in expenses, $175,000 in Service Awards to Class Representatives, and notice costs currently estimated at $75,000,[1] with the balance going to cover a fraction of the $30 million worth of attorney and other legal professionals' time (more than forty five thousand hours) put into litigating this case over seven years to its successful conclusion.[2] The negative multiplier here is approximately 0.21.

---

[1] This is an estimate of what notice costs will be in total, including future notice costs. At present, Class Counsel has only been invoiced for $38,000 by the vendor providing notice to the Class. Scullion Decl. at ¶ 12. Should the final amount of notice costs be lower than this $75,000 estimate, Class Counsel will notify the Court and seek an appropriate order. Should the amount of notice costs be higher than this estimate, Class Counsel will pay that amount from any fees awarded.

[2] This figure somewhat understates the true extent of Class Counsel's lodestar because it "does not include the additional work that will be needed to fully

7

Because the attorneys' fees portion of the request is based on Class Counsel's lodestar and applies a voluntary negative multiplier, it is presumptively reasonable.

### 2. The Percentage Of Recovery Method Also Supports The Requested Award.

Where, as here, the lodestar method is the primary basis for assessing the reasonableness of attorneys' fees, the percentage-of-recovery method serves only as a cross-check. *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *6 (D.N.J. Nov. 28, 2007) ("[T]he Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee."). A cross-check should not be used to alter the Court's "primary reliance" on the originally chosen method of calculation, however, and need not be done with "mathematical precision[.]" *In re AT & T Corp.*, 455 F.3d 160, 164 & 169 n.6 (3d Cir. 2006) (internal citations and quotations omitted).

The following factors are used to evaluate the reasonableness of a fee under the percentage of recovery method:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies

---

implement the settlement and bring the case to closure[.]" *Sullivan v. DB Invs., Inc.*, No. CIV.A. 04-2819 SRC, 2008 WL 8747721, at *36 (D.N.J. May 22, 2008).

>conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement[.]

*In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009) (internal citations omitted).

Each of these factors weighs in favor of approving the requested fee. The first factor, the size of the fund created and the number of beneficiaries, weighs in favor of approval. The total settlement value made available to more than 1,200 Class members in cash and credits exceeds $50 million. The second factor, the presence or absence of substantial objections, also weighs in favor of approval. There is no sign any substantial objections have been raised against the settlement. The third factor, the skill and efficiency of the attorneys involved, weighs strongly in favor of settlement. Class Counsel are highly experienced in litigating complex class actions. The quality of the work presented to the Court speaks for itself, including defeating motions to dismiss and certifying two issue classes for trial. The fourth factor, the complexity and duration of the litigation, weighs in favor of approval. The settlement is the product of many years of difficult litigation, vigorously contested by Defendants, which included examination of a voluminous historical record and domestic and foreign experts from multiple fields of learning. The fifth factor, the risk of nonpayment, weighs in favor of approval. Class Counsel invested substantial sums, both of money and attorney time, into litigating this case on a pure contingency basis for seven years with no guarantee of recovery. Indeed, Class

Counsel continued to invest substantially in this case even after Plaintiffs' initial motion for class certification was denied—a point in time in which the risks of non-recovery were particularly acute. The sixth factor, the amount of time devoted to the case by plaintiffs' counsel, weighs strongly in favor of approval. As discussed above, Class Counsel collectively spent more than 50,000 hours litigating this case. The seventh factor, awards in similar cases, is neutral to favorable because the requested lodestar multiplier is much lower than the Third Circuit has deemed presumptively reasonable. The eighth factor, whether benefits are attributable to the work of other groups, weighs in favor of approval because this is not a case in which Plaintiffs piggybacked off of the work of another entity, such as a government regulator or enforcer, to achieve a favorable result. The ninth factor, the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, is neutral because the exact value of the settlement recovery cannot be calculated at present. And the tenth factor, the existence of innovative settlement terms, is neutral because the settlement uses a tried-and-tested structure common to class settlements, namely options for different tiers of injured Class members to receive (at their option) cash or product credit. Overall, consideration of the factors that are used in the percentage-of-recovery method confirms that Class Counsel's lodestar-based fee request is eminently reasonable

## II. The Court Should Reimburse Class Counsel For Their Expenses.

Along with their request for attorneys' fees, Class Counsel request reimbursement for certain out-of-pocket expenses totaling $1,844,351.86, including an estimate of $75,000 in notice costs. It is well established such expenses are recoverable. *Careccio v. BMW of N. Am. LLC*, 2010 WL 1752347, at *8 (D.N.J. Apr. 29, 2010); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (finding counsel to be "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action"). The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as copying fees, costs for producing and reviewing voluminous document productions, expert fees, computerized research, travel in connection with this litigation, and deposition expenses. All the costs were reasonable and necessary for the successful prosecution of this case and should be approved.

## III. The Court Should Grant Service Awards To The Class Representatives.

Class Counsel also requests that the Court award $25,000 for each named class representative (an aggregate amount of $175,000). Fieldturf has agreed not to oppose service awards in the amount sought here. Settlement Agreement at Section 5.1.

Courts "routinely" approve incentive or service awards to class

11

representatives when class actions settle. *Talone v. Am. Osteopathic Ass'n*, No. 1:16-CV-04644-NLH-JS, 2018 WL 6318371, at *17 (D.N.J. Dec. 3, 2018). Where, as here, the amount of such an award comes from the amount that might otherwise be awarded as attorneys' fees, the awards "need not be subject to intensive scrutiny[.]" *Id.* Here, each of the named class representatives is deserving of a service award because they participated in years of significant discovery, including substantial document production and deposition testimony. The amounts sought also are well in line with service awards permitted in comparable litigation. *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004) (collecting cases).

## **CONCLUSION**

For the reasons above, Class Counsel respectfully requests that the Court grant this Motion and award a total of $8.5 million for Administrative and Notice Costs, Service Awards, attorneys' fees and reasonable reimbursable out-of-pocket costs and expenses to compensate Class Counsel, Liaison Counsel, and members of the Plaintiffs Steering Committee for their reasonable expenses and a portion of the attorneys' fees incurred in this litigation.

Dated: September 24, 2024                    Respectfully submitted,

*s/ Jennifer R. Scullion*
Christopher A. Seeger
Jennifer R. Scullion
Christopher L. Ayers

12

**SEEGER WEISS LLP**
55 Challenger Rd., 6th Fl.
Ridgefield Park, NJ 07660
Tel: 973-639-9100
cseeger@seegerweiss.com
jscullion@seegerweiss.com
cayers@seegerweiss.com
*Co-Lead Counsel for Plaintiffs*


*s/ Adam M. Moskowitz*
Adam M. Moskowitz
Howard M. Bushman
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Tel: 305-740-1423
adam@moskowitz-law.com
howard@moskowitz-law.com
*Co-Lead Counsel for Plaintiffs*

*s/ James E. Cecchi*
James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Rd.
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com

*Liaison Counsel for Plaintiffs*